UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                              )
NATIVE VILLAGE OF BARROW,     )
                              )
     Plaintiff,               )
                              )
v.                            )     Civil Action No. 99-886 (RWR)
                              )
NATIONAL INDIAN GAMING        )
COMMISSION, et al.,           )
                              )
     Defendants.              )
                              )
```

**FILED**

DEC 31 2001

## MEMORANDUM OPINION

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

Plaintiff Native Village of Barrow ("NVB" or "Village") filed this lawsuit seeking review of the decision by the National Indian Gaming Commission ("NIGC") denying approval of the NVB's ordinance for gaming on its leased property.  The parties have filed cross-motions for summary judgment.  Because the NIGC's decision was not arbitrary or capricious, plaintiff's motion will be denied and defendants' motion will be granted.

### BACKGROUND

The NVB is a federally recognized Indian Tribe of Inupiat Natives in the northernmost part of Alaska.  The NVB has never had a reservation.  Instead, many of the NVB's members reside on restricted townsite lots.  Alienation of these lots is not permitted without the approval of the Secretary of the Interior.

In 1994, the NVB adopted a tribal gaming ordinance under the Indian Gaming Regulatory Act ("IGRA") for the operation of a

*89*

**Exhibit I, Page 1 of 14**

class II gaming facility.[1]  The Village leased a restricted
townsite lot from a tribal member to use as the site for the
gaming operation.  The Village submitted the gaming ordinance to
the NIGC for review and approval.

In April 1995, the NIGC's Chairman disapproved the NVB's
ordinance.  Before issuing this decision, the NIGC sought the
advice of the Department of the Interior's Office of the
Solicitor.  The Acting Associate Solicitor responded that he
"could not conclude, based on the information [provided], that
Barrow exercises governmental power over the land."
Administrative Record ("A.R.") at 14.[2]  He specifically noted,
however, that he would reconsider his opinion if "Barrow were to
provide some additional information regarding a tribal nexus and
the exercise of Barrow's governmental power over the land in
question[.]"  Id.

The NVB then submitted an amended gaming ordinance for
review and approval.  The Village also submitted evidence which

---

[1] Class II gaming includes bingo and related gaming.  25
U.S.C. § 2710(a)(2) (West 2000).

[2] The exercise of governmental power over the land in
question is a separate inquiry from whether the tribe has
jurisdiction over that land, and both must be established in
order to obtain NIGC approval of a gaming ordinance under the
IGRA.  See, e.g., Kansas v. United States, 249 F.3d 1213, 1228
(10th Cir. 2001).

- 3 -

it believed supported a finding that it exercised governmental power.  In October 1995, the NIGC Chairman disapproved the ordinance without discussing the Village's new evidence.

The NVB appealed the Chairman's decision to the full commission, submitting two additional documents in support of its argument that the Village exercises governmental power.  In a letter dated February 1, 1996, the NIGC denied the appeal.  A.R. at 12.  The NIGC discussed the NVB's evidence and concluded that "to the extent that the Village claims that it is in fact exercising present day governmental powers over such land, the Village has not provided sufficient evidence to establish its exercise of governmental powers."  Id. at 11.

In January 1997, the NVB requested reconsideration.  In support of its request, the NVB filed its ordinance and the same evidence previously submitted.  The only material difference between the NVB's prior submission and its January 1997 submission was the NVB's argument that a new decision from the United States Court of Appeals for the Ninth Circuit supported the Village's position.[3]  The ordinance was again rejected and, in May 1997, the NVB appealed to the full commission.  The NIGC

_____

[3] The Ninth Circuit decision, Alaska v. Native Village of Venetie, 101 F.3d 1286 (9th Cir. 1996), was later reversed by the United States Supreme Court.  Alaska v. Native Village of Venetie, 522 U.S. 520 (1998).

- 4 -

denied the appeal in August 1997 noting that the Village's
evidence had previously been considered and deemed inadequate.
A.R. at 1-2.  The NIGC also noted that the United States Supreme
Court had granted certiorari in the Ninth Circuit case relied on
by the Village.  Id. at 1.[4]

   After it received the NIGC's final decision, the Village
filed this lawsuit.

## DISCUSSION

   The IGRA provides for judicial review of agency decisions
under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.
25 U.S.C. § 2714.  Under the APA, courts review agency
determinations in order to ascertain whether the agency has
"'examined the relevant data and articulated a satisfactory
explanation for its action.'"  See Novicki v. Cook, 946 F.2d 938,
941 (D.C. Cir. 1991) (citing Motor Vehicle Mfrs. Ass'n v. State
Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).  A court
should engage in a searching and careful review of agency action
but should not attempt to substitute its own judgment for the
judgment of the agency.  See Citizens to Preserve Overton Park,

_____

[4]Although not discussed by the NIGC in its decision, the
Native Village of Venetie case involved whether certain lands not

- 5 -

Inc. v. Volpe, 401 U.S. 402, 416 (1971).  "Generally speaking,
district courts reviewing agency action under the APA's arbitrary
and capricious standard do not resolve factual issues, but
operate instead as appellate courts resolving legal questions."
James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1096 (D.C. Cir.
1996), cert. denied, 519 U.S. 1077 (1997).  "Like appellate
courts, district courts do not duplicate agency fact-finding
efforts.  Instead, they address a predominantly legal issue:  Did
the agency 'articulate a rational connection between the facts
found and the choice made'?"  Id. (citing Bowman Transp., Inc. v.
Arkansas-Best Freight Sys. Inc., 419 U.S. 281, 285 (1974)).

     "When a court reviews an agency's construction of the
statute which it administers, it is confronted with two
questions.  First, always, is the question whether Congress has
directly spoken to the precise question at issue.  If the intent
of Congress is clear, that is the end of the matter; for the
court, as well as the agency, must give effect to the
unambiguously expressed intent of Congress."  Chevron, U.S.A.,
Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837,
842-43 (1984).  "Where, as here, Congress has not 'directly
spoken to the precise question at issue,' a court is required to
uphold the agency's interpretation 'if it is based on a
permissible construction of the statute.'"  Kansas v. United

- 6 -

States, 249 F.3d 1213, 1228 (10th Cir. 2001) (quoting Chevron, 467 U.S. at 843, in connection with IGRA's definition of "Indian land").

I.    The Indian Gaming Regulatory Act

The IGRA provides that an Indian Tribe may "engage in, or license and regulate, class II gaming on Indian lands within such Tribe's jurisdiction" under certain circumstances.  25 U.S.C. § 2710(b)(1).  The statute permits gaming only if it is to occur "on Indian lands" as that term is defined in the IGRA and if the site is "within such Tribe's jurisdiction."  Id.  The IGRA defines "Indian lands" as:

> (A)  all lands within the limits of any Indian reservation; and
>
> (B)  any lands title to which is . . . held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian Tribe exercises governmental power.

25 U.S.C. § 2703(4); see also 25 C.F.R. § 502.12.  In this case, it is undisputed that the lot on which the NVB seeks to conduct class II gaming is not within the limits of an Indian reservation.  It is also undisputed that the lot is held by an individual and is subject to restrictions against alienation.

- 7 -

The disputed factor in this case is whether the NVB "exercises governmental power" over the subject lot.[5]

II.  "Exercises Governmental Power" Requirement

The NIGC considered and evaluated the NVB's evidence and concluded that the evidence was not adequate to establish that the Village was exercising governmental powers over the restricted lot on which it sought to conduct gaming operations.[6]

---

[5] Plaintiff contends that the NIGC wrongly concluded that lot in question is not within the tribe's jurisdiction. Plaintiff's contention is not supported by the record in this case. Although the NIGC cited prior decisions by the NIGC and comments by the Department of the Interior's Acting Associate Solicitor questioning tribal jurisdiction over restricted lots unless there was a "clear tribal nexus" to the lots, the NIGC's final decision is clearly based on the Village's failure to present evidence which satisfied its burden of proof regarding whether the subject lot was "Indian land" over which the Village "exercises governmental power." See NIGC Letter dated August 12, 1997 ("Final Decision"), A.R. at 1. The NIGC in its Final Decision did not conclude that the subject lot was not within the Village's jurisdiction, a separate element from the requirement that the lot be on Indian land as defined by the IGRA. Id.

[6] Plaintiff argues that its exercise of governmental power need not relate to the lot on which it seeks to conduct gaming. Plaintiff's argument is inconsistent with the clear language of the IGRA, which permits a tribe to engage in class II gaming only "on Indian lands" as defined by the statute. 25 U.S.C. § 2710(b)(1). To qualify as "Indian lands" under the IGRA, non-reservation lands must be restricted lands "*over which* an Indian Tribe exercises governmental power." 25 U.S.C. § 2703(4) (emphasis added). Gaming operations conducted on a townsite lot over which the tribe does not exercise governmental power are not conducted "on Indian lands" for purposes of the IGRA, even if the tribe exercises governmental power elsewhere.

- 8 -

The NIGC's decision was supported by the record and was not arbitrary and capricious.

Plaintiff's argument that the existence of tribal jurisdiction requires a finding that the tribe is exercising governmental powers is not supported by the cases on which plaintiff relies. In Miami Tribe of Oklahoma v. United States, 927 F. Supp. 1419, 1422-23 (D. Kan. 1996) ("Miami I"), the district court noted that the proper exercise of governmental power is dependent on the existence of tribal jurisdiction. The court in Miami I did not hold that the exercise of governmental power follows necessarily from the existence of tribal jurisdiction. In State of Rhode Island v. Narragansett Tribe of Indians, 19 F.3d 685, 702 (1st Cir. 1994), the First Circuit stated that a tribe must exercise governmental powers over land "[i]n addition to having jurisdiction" over land in order for the land to qualify under the IGRA. The First Circuit also stated that the requirement that a tribe exercise governmental powers "does not depend upon the Tribe's theoretical authority, but upon the presence of concrete manifestations of that authority." Id. at 703. More recently, the Tenth Circuit also stated that the IGRA requires that the Tribe must have jurisdiction over the property in question "*and* . . . the Tribe must exercise

- 9 -

governmental power over the tract." <u>Kansas v. United States</u>, 249
F.3d 1213, 1228 (10th Cir. 2001).

Plaintiff also argues that the NIGC's decision was arbitrary
and capricious because it was inconsistent with prior decisions,
it failed to consider all the relevant factors or considered
factors that were irrelevant, and it "ignored important aspects
of the problem." Plaintiff's Memorandum in Support of Summary
Judgment at 32. The "prior decisions" to which plaintiff
refers,[7] however, relate to issues of tribal jurisdiction in
Indian country, not to whether the evidence submitted by
plaintiff establishes that the Village exercises governmental
powers over the leased townsite lot at issue in this case.

The NIGC's analysis in this case is consistent with prior
court decisions. Consistent with the NIGC's analysis in this
case, the First Circuit described the governmental powers
actually exercised by the Narragansett tribe on the 900 acres
held in trust by the United States for the benefit of the tribe
and on which the tribe proposed to conduct gaming operations.

_____

[7] Plaintiff cites the Interior Department's listing of Barrow
as a federally recognized tribe, the Treasury Department's
determination that the Native Village of Barrow has the
governmental power to tax and to exercise police powers, and the

- 10 -

Narragansett, 19 F.3d at 703.  Consistent with the NIGC's
analysis in this case, the District of Kansas approved the
"NIGC's construction of the statute to involve consideration of a
number of factors under the totality of the circumstances . . . ."
See Miami Tribe of Oklahoma v. United States, 5 F. Supp. 2d 1213,
1218 (D. Kan. 1998) ("Miami II").  The NIGC's decision in this
case was not inconsistent with prior decisions.

    The NIGC considered and addressed all the factual evidence
submitted by the Village.  A.R. at 1, 11-12.  The NIGC also
considered, but rejected, the Village's legal argument regarding
the Ninth Circuit's decision in Venetie.  Id. at 2.  Based on its
review of the record, the NIGC concluded that the evidence did
not satisfy the NVB's burden of proof regarding whether it was
exercising governmental powers over the restricted townsite lot.
This decision, which is supported by and adequately explained in
the record, was neither arbitrary nor capricious.

    Plaintiff argues that the NIGC "failed to consider an
important aspect of the problem."  See Plaintiff's Memorandum in
Support of Summary Judgment at 38-41.  In support of this
argument, plaintiff cites language from the Miami II decision
that the failure to consider evidence of tribal activities
submitted by the tribe constituted a failure "to consider an
important aspect of the problem."  Id. at 38 (citing Miami II, 5

- 11 -

F. Supp. 2d at 1219).  Contrary to plaintiff's argument, however, the NIGC in this case considered the evidence submitted by the NVB and found it lacking.  The factors plaintiff complains should have been considered, such as the tribal membership of the lot's owner, the Village's constitution, and the location of the lot in the Village's aboriginal territory, may have some relevance to the jurisdiction issue, but they are not relevant to whether the tribe is exercising governmental powers over the lot.  As has been noted consistently in the cases cited above, the existence of jurisdiction is not the same as the exercise of governmental powers and proof of the former does not establish the latter. See, e.g., Kansas v. United States, 249 F.3d at 1228; Narragansett, 19 F.3d at 703; Miami II, 5 F. Supp. 2d at 1218 (noting that "Congress used (and separately defined) the term 'Indian lands' instead of 'Indian country,' the term generally used to define the limits of a tribe's jurisdiction").

The NIGC's conclusion that plaintiff's evidence did not establish that the Village was exercising governmental powers over the property on which it sought to conduct gaming operations was based on the relevant evidence in the record.  Plaintiff's arguments and the administrative record do not support a conclusion that the NIGC's decision was arbitrary and capricious.

**Exhibit I, Page 11 of 14**

As a result, defendants' motion for summary judgment will be granted.

III. <u>Alleged Violation of 25 U.S.C. § 476</u>

Federal law prohibits a decision which "classifies, enhances, or diminishes the privileges and immunities available to the Indian tribe relative to other federally recognized tribes by virtue of their status as Indian tribes." 25 U.S.C. § 476(f). Plaintiff argues that the NIGC's decision was based on a 1993 Solicitor Opinion, M-36975, which was based on the conclusion that "tribes in Alaska do not have jurisdiction over Indian country, as is true for other tribes." <u>See</u> Plaintiff's Memorandum in Support of Summary Judgment at 43. Plaintiff argues that, as a result, the NIGC's decision in this case violates § 476. <u>Id.</u>

Initially, the NIGC did not base its decision exclusively, or even primarily, on Solicitor Opinion M-36975. The NIGC's decision was based not on the absence of tribal jurisdiction, but on its finding that the Village's evidence failed to establish that it was exercising governmental power over the townsite lot.

Moreover, Solicitor Opinion M-36975 did not hold that tribes in Alaska do not have jurisdiction over Indian country. Instead, the Solicitor questioned whether tribes in Alaska had jurisdiction over allotments and townsite lots and noted the need

- 13 -

for a particularized inquiry into the circumstances of each case.
See A.R. at 642.

Plaintiff has not shown that the NIGC's decision or
Solicitor Opinion M-36975 violated 25 U.S.C. § 476.

CONCLUSION

The NIGC concluded that the evidence submitted by the NVB
did not satisfy the Village's burden to establish that it was
exercising governmental power over the leased property.  This
conclusion was neither arbitrary nor capricious.  Because the
NIGC reasonably concluded that the NVB was not exercising
governmental power, the Village did not satisfy the statutory
definition of "Indian land" irrespective of whether there was
tribal jurisdiction over the leased property.  Because the NIGC's
decision was not arbitrary and capricious, plaintiff's motion for
summary judgment will be denied and defendants' motion will be
granted.[8]  A separate Order accompanies this Memorandum Opinion.

——————————————

[8] It appears from plaintiff's arguments in this case that the
NVB did not previously understand that the existence of tribal
jurisdiction did not conclusively establish that the Village was
exercising governmental powers or that the exercise of
governmental powers must cover the townsite lot in question.
Nothing in this Memorandum Opinion should be construed to prevent
the NVB from submitting for review and approval a new ordinance
supported by any existing evidence that the Village actually
exercises governmental powers over the townsite lot on which it
seeks to conduct class II gaming.  Similarly, nothing in this
Memorandum Opinion should be construed to prevent the NIGC from
(continued...)

**Exhibit I, Page 13 of 14**

- 14 -

SIGNED this  31st  day of  December  , 2001.

RICHARD W. ROBERTS
United States District Judge

---

[8] (...continued)
fully and completely considering any new application and
supporting evidence submitted by the NVB.