**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIVE VILLAGE OF EKLUTNA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | Case No. 1:19-cv-02388-DLF |
| THE INTERIOR, *et al.*, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STATE OF ALASKA, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |

**DECLARATION OF RICHARD FARBER IN SUPPORT OF PLAINTIFF'S MOTION
FOR LEAVE TO TAKE EXTRA-RECORD DISCOVERY AND COMPEL PRODUCTION**

I, Richard Farber, declare pursuant to 28 U.S.C. § 1746 that:

1.      I am over the age of 21 years and am competent to testify about the matters stated

herein. I know the facts stated in this declaration on my personal knowledge, and they are true to

the best of my knowledge, information, and belief.

2.      I currently serve as Tribal Administrator for the Native Village of Eklutna ("the

Tribe"), a federally recognized Indian tribe and the plaintiff in this action.  I have served in this

position since 2016.  In my role as Tribal Administrator, I coordinate and help administer many

of the Tribe's governmental functions.

3.      Prior to my current position, I served as the Economic Development Director for

the Tribe beginning in September 2015.  In that capacity and in my current role as Tribal

Administrator, I have been involved with the Tribe's proposed economic development project

since 2015.

4.      During the time when the Department of the Interior ("Department") was considering the Tribe's request for an Indian lands determination, I attended multiple meetings between tribal representatives and Department employees to discuss the Tribe's request, including but not limited to the meetings descried herein.

5.      On or about June 29, 2016, I participated in a meeting between tribal representatives and Acting Assistant Secretary—Indian Affairs Lawrence Roberts in Spokane, Washington, to discuss the Tribe's Indian lands determination request.  Mr. Roberts informed us that in order to facilitate consideration of the Tribe's request, the Tribe should meet with officials from several offices within the Department, including the Department's Office of the Solicitor ("Solicitor's Office").

6.      On or about July 7, 2016, I participated in a meeting between tribal representatives and the Bureau of Indian Affairs' Regional Director Weldon Loudermilk, along with staff from the Solicitor's Office, in Anchorage, Alaska.  At this meeting we discussed the general process for the Department's review of the Tribe's request.  Mr. Loudermilk was supportive of the Tribe's request and the proposed economic development project.

7.      On or about August 8, 2016, I participated in a meeting in Washington, DC, between tribal representatives and  Acting Assistant Secretary Roberts, National Indian Gaming Commission ("NIGC") Chairman Jonodev Chaudhuri, other NIGC staff, and several Solicitor's Office staff members.  During that meeting the NIGC and Department representatives appeared interested in the Tribe's request and proposed project.  Also during that meeting, I recall Acting Assistant Secretary Roberts saying that the review of the Tribe's request would likely be a collaboration between NIGC and the Solicitor's Office.

8.      On or about August 1, 2017, I participated in a teleconference with tribal representatives, Senator Murkowski, and members of Senator Murkowski's staff.  The purpose of this meeting was to inform Senator Murkowski about the Tribe's proposed economic development project.  I recall that during this teleconference Senator Murkowski stated that gaming creates a moral dilemma for her, and that she did not wish to see tribal gaming in Alaska. While Senator Murkowski stated that she would analyze and consider the Tribe's proposed project, I recall that she stated her personal moral objections to gaming multiple times during the conversation.

9.      On or about August 15, 2017, I participated in a meeting in Washington, DC, between tribal representatives and Associate Deputy Secretary James Cason and staff from the Solicitor's Office.  Tribal representatives explained the history of the allotment, its relationship to the Tribe and the Tribe's historical lands, and the Tribe's serious need for economic development. My recollection is that during this meeting Mr. Cason indicated that he would need to know the views of the Alaska congressional delegation, meaning Senator Lisa Murkowski, Senator Dan Sullivan, and Representative Don Young, and their support would be needed in order for the Department to make a positive Indian lands determination.  At this meeting, I recall that Mr. Cason discussed the timing of the Department's process and pledged to issue a decision on the Tribe's request by the end of calendar year 2017.

10.      In early October 2017, I participated in a meeting in Washington, DC, with tribal representatives and staff from Senator Murkowski's office.  Senator Murkowski had indicated that she would meet with us in person, but ultimately she did not attend the meeting; we spoke with her only briefly outside the Senate chamber.  During the meeting with Senator Murkowski's

staff, the staff appeared to oppose the Tribe's proposed project but suggested that the Senator's office would be willing to learn more about the project.

11.     On or about May 7, 2018, I participated in a meeting with tribal representatives, staff from the National Indian Gaming Commission, and Principal Deputy Assistant Secretary—Indian Affairs John Tahsuda.  At this meeting Mr. Tahsuda stated that the Department still needed more time to review the Tribe's request.

12.     On or about May 8, 2018, I participated in a meeting with Aaron Leggett, President of the Native Village of Eklutna and Senator Murkowski and her staff.  During this meeting, I recall that Senator Murkowski said she personally and morally could not support the Tribe's proposed project because she was afraid it would "change" the Alaska Native people.

13.     I had several personal conversations with a senior political appointee within the Department between late 2018 and mid-2018.  Through these conversations, I learned that Senator Murkowski's office may have asked Mr. Cason's office to delay a decision on the Tribe's request while Senator Murkowski studied the Tribe's proposed project.  Through these conversations, I was told that Mr. Cason wanted to know Senator Murkowski's views on the proposed project in particular.  I was also told that Senator Murkowski's office was in frequent communication with the Department and that they communicated her negative views to the Department at some point, or at multiple points, during the Department's decision process.  Finally, through these conversations I was also told that in the time leading up to the Department's decision, one or more Department employees who supported the Tribe's proposed project were pulled off the review process by their superiors, and were prohibited from being involved in the process any further.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 26, 2020.

Richard Farber

5