UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIVE VILLAGE OF EKLUTNA, | ) |
| Plaintiff, | ) |
| v. | ) |
| UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*, | ) Case No. 1:19-cv-02388-DLF |
| Defendants, | ) |
| and | ) |
| STATE OF ALASKA, | ) |
| Defendant-Intervenor. | ) |

**PLAINTIFF'S OPPOSITION TO MOTION TO INTERVENE FILED BY ALASKA CHARITABLE GAMING ASSOCIATION**

## INTRODUCTION

The Native Village of Eklutna ("Eklutna" or "Tribe") opposes the motion to intervene filed by the Alaska Charitable Gaming Association ("ACGA").

As an initial matter, ACGA lacks Article III standing because it has failed to demonstrate that its members face an actual or imminent threat of injury. ACGA's factual assertions consist of unsupported assumptions that are too conclusory to form a basis for standing and that are, in any event, insufficient to demonstrate that any claimed injury is "certainly impending."

ACGA also fails to establish that its interests are not adequately represented by the existing parties in this case. As the only basis for its claim of inadequate representation, ACGA asserts that it seeks to make two arguments that the existing defendants to not plan to make. But both of these arguments fall outside the scope of review permitted under the Administrative

1

Procedure Act because they were never raised by the Department of the Interior in its decision. They are also legally unfounded, having been rejected *multiple* times by *multiple* courts in repeated attempts by ACGA's counsel to challenge the status of all 229 federally recognized tribes in Alaska. Boiled down, ACGA's motion seeks to turn this case into yet another vehicle in which to raise issues that have long since been resolved. ACGA has failed to establish any valid interest that is inadequately represented, and permitting ACGA to intervene would only complicate the case with irrelevant briefing on issues that are not properly part of the case nor subject to legal debate. ACGA's motion should be denied.

## ARGUMENT

**I.      ACGA LACKS STANDING.**

It is the proposed intervenor's burden to establish standing, *Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*, 717 F.3d 189, 193 (D.C. Cir. 2013), and the ACGA has failed to do so here. Although ACGA only discusses standing in the context of Rule 24(a), *see* Mot. at 7-10, ECF No. 32, the weight of authority in the D.C. Circuit also requires Article III standing for permissive intervention under Rule 24(b), *see, e.g.*, *NYC C.L.A.S.H., Inc. v. Carson*, No. CV 18-1711 (ESH), 2019 WL 2357534, at *3 (D.D.C. June 4, 2019) (while the standing requirement under Rule 24(b) technically remains an open question, "the D.C. Circuit has repeatedly 'declined to review the denial of a Rule 24(b) motion once [it] determined the potential intervenor lacked standing.'" (quoting *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1327 (D.C. Cir. 2013))). At the very least, a lack of standing "undercuts a claim for permissive intervention." *Id.* And one D.C. Circuit judge has specifically stated that allowing *any* type of intervention without requiring a party to show standing would be "intolerable" because it would mean that "any organization or individual with only a philosophic identification with a defendant—or a concern with a possible

2

unfavorable precedent—could attempt to intervene and influence the course of litigation." *Deutsche Bank*, 717 F.3d at 195 (Silberman, J., concurring). That is precisely the case here. Both intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b) should be denied because ACGA lacks standing.

"To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted). The Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Id.* (emphasis in original) (internal quotation marks and alterations omitted). ACGA cannot meet that standard.

In considering a motion to intervene and accompanying materials such as a declaration, courts "take all *well-pleaded*, *nonconclusory* allegations in the motion to intervene . . . and declarations supporting the motion as true absent sham, frivolity *or other objections*." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 9 (D.D.C. 2010) (emphasis added) (quoting *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001)). Importantly, "declarations . . . fail to establish Article III standing" where they are "speculative . . . conclusory or silent" with respect to the core elements of standing. *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 242 (D.C. Cir. 2015); *cf. Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008) ("standing is not created by a declaration in court pleadings" where [t]he record is bereft of evidence" supporting the assertions in the declaration). Here, the Declaration of Sandy Powers is rife with precisely the type of speculative and conclusory allegations and assumptions that are not properly taken as true, and that are insufficient to establish standing.

Powers' declaration is focused on the conclusory assertion that ACGA's members "will not be able to compete against" the Tribe's proposed gaming facility. Powers Decl. at ¶ 6, ECF No. 32-1. This conclusion is based on a series of assumptions regarding the operations at the Tribe's proposed facility about which she cannot reasonably claim personal knowledge, specifically: (1) the Tribe's proposed facility will be full of "beeping and blinking" gaming machines, *id.* (ACGA's motion takes this assertion one step further, alleging that the Tribe's proposed facility will be "full to bursting" with such machines, Mot. at 4); (2) because "Indian casinos in the coterminous states" advertise large jackpots and hold raffles and prize giveaways, "there is *no reason to believe* that the NVE casino will not" do the same, Powers Decl. at ¶ 7 (emphasis added); (3) "it is reasonable to assume" the Tribe's proposed facility will serve alcohol because one stage of the proposed plans included mention of a bar, *id.*;[1] and (4) the Tribe's facility may allow smoking because some Indian casinos *in California* allow smoking, *id.* A court may not accept as true such vague suppositions for purposes of a declaration. *See Wildearth Guardians*, 272 F.R.D. at 9. And where a statement in a declaration "does not state a fact" and instead uses conjectural language, it cannot form the factual basis for the constitutional standing requirement because "[t]he Court cannot assume a critical element to establish . . . standing." *Welborn v. Internal Revenue Serv.*, 218 F. Supp. 3d 64, 80 (D.D.C. 2016).

Ms. Powers alleges that all these assumed characteristics of the Tribe's facility will compete with her members' bingo halls, but she provides no evidence that this is so—either based on personal experience, market research, or otherwise. In fact, she highlights the *contrast* between the Tribe's proposed facility and her members' bingo halls, which, according to Ms.

---

[1] Furthermore, a bar serving alcoholic beverages would need a liquor license issued under state law, Alaska Stat. §§ 04.11.010(a), 04.11.260, and a tribal ordinance approved by the Secretary of Interior, 18 U.S.C. § 1161, neither of which are certain.

4

Powers, are focused on "a slow game that has been designed to provide players hours of social recreational enjoyment." Powers Decl. ¶ 6. This contrast suggests that the Tribe's proposed facility will *not* compete directly with existing bingo halls, which (even according to Ms. Powers) provide an entirely different environment and experience.

These conclusory assertions are advanced as the core factual basis for ACGA's argument that its members will be economically harmed by the Tribe's proposed project. *See* Mot. at 9 (relying on Powers Decl. ¶¶ 6-7). But because they are wholly conclusory and are based on assumptions regarding matters of which Ms. Powers lacks personal knowledge, they cannot be taken as true, *see Wildearth Guardians*, 272 F.R.D. at 9, and they fail to provide a sufficient factual basis to establish injury in fact, *see Welborn*, 218 F. Supp. 3d at 80. ACGA therefore cannot establish standing.[2] *See Swanson*, 790 F.3d at 242.

Finally, even if the conclusory assertions made in the Powers declaration could be taken as true, they would fail to establish that ACGA's alleged injury is concrete or "certainly impending." *Clapper*, 568 U.S. at 409 (internal quotation marks omitted). This is so because even if the Court grants the Tribe the full relief it requests, multiple intervening steps remain before the Tribe could begin operating any type of gaming facility on the Ondola Allotment. The Supreme Court has explained that a court must be "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Clapper*, 568 U.S. at 413. Here (among other steps), the Chairman of the National Indian Gaming Commission ("NIGC") would need to approve a tribal ordinance that meets the

---

[2] Because there are multiple independent grounds on which ACGA's motion to intervene should be denied, the Court need not necessarily reach this issue. But if the Court believes that the facts asserted in the Powers Declaration may be dispositive, the Tribe requests the opportunity to depose Ms. Powers regarding the statements made in her declaration.

requirements of 25 U.S.C. § 2710(b) to govern gaming activities on the Allotment.  25 U.S.C. §§ 2710(b)(1)(B), (2)-(4); 25 C.F.R. Part 522.  Also, the NIGC would need to conduct a review of the proposed project under the National Environmental Policy Act ("NEPA") in connection with approval of a management contract.  25 C.F.R. § 531.1(b)(16); 77 Fed. Reg. 24,730, 24,732 (2012) ("The NIGC has identified one type of action it undertakes that requires review under NEPA—approving third-party management contracts for the operation of gaming activity under IGRA.").  The outcome of each of these steps is uncertain and will be determined not by this Court but by decisionmakers within a federal agency.  Where, as here, the claimed injury rests upon "speculation about the decisions of independent actors," the alleged injury is not "certainly impending."  *Clapper*, 568 U.S. at 409, 413.

ACGA's claimed injury is also uncertain because ACGA has not shown that the Tribe's proposed project will be a "direct and current competitor" with their members' bingo halls.  *Arpaio v. Obama*, 797 F.3d 11, 23 (D.C. Cir. 2015) (internal quotations marks omitted).  As noted above, the Powers declaration emphasizes the contrast between many tribal casinos and the ACGA members' bingo halls where patrons enjoy "a slow game that has been designed to provide players hours of social recreational enjoyment."  Powers Decl. ¶ 6.  It is self-evident that not all forms of entertainment compete directly with one another, and here ACGA has failed to demonstrate that the Tribe's proposed facility will compete directly with ACGA members' bingo halls for the same clientele.  Indeed, many patrons may prefer the familiar atmosphere of ACGA's bingo halls, in which families often gather for a social evening in population centers that are convenient for local residents to visit.

ACGA's claimed injury is therefore much more speculative than the injury in *Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003), which was a direct "loss of tourist

6

dollars, and the consequent reduction in funding for Mongolia's conservation program," that would result from a decision barring trophy hunting, *id.* at 733. Even in cases where courts have found economic injury based on competitive interests, the competition has been much more certain and direct. In one case the court found direct competition where the statute authorizing a proposed casino had been passed *in order to* create competition with the intervenor's existing casino across state lines (in an effort to keep jobs in the state), which would result in "two large casinos within fifteen miles of one another." *Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 300 (D.D.C. 2018). The court also emphasized that "the only condition remaining to be fulfilled" was the administrative approval disputed in that case. *Id.*; *see also Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 9 (D.D.C. 2019) (finding direct competition between multiple large casinos supported by specific facts regarding competition, including that existing casino would lose 30 percent of its market, forcing layoffs of 500 employees, and that the decision under review "likely represents the last significant hurdle" to the proposed casino opening). ACGA's interest here is far more speculative and rests on unsupported assumptions about the nature of competition between two very different types of entertainment enterprises located in very different geographic settings. It also rests on speculation about the outcome of independent decision processes that have yet to occur. For all of these reasons, ACGA cannot carry its burden to establish that it has Article III standing, and the Court should deny both intervention as of right and permissive intervention.

For the same reasons, ACGA cannot establish that it has "a legally protected interest" or "that the action, as a practical matter, impairs or impedes that interest" as required for intervention under Rule 24(a). *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 320 (D.C. Cir. 2015) (citing *Deutsche Bank*, 717 F.3d at 192); *see also*

7

Fed. R. Civ. P. 24(a)(2) (requiring that an intervenor have an interest in the action and that it be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest").  Intervention under Rule 24(a) should be denied on this ground, as well.

> II.  **ACGA CANNOT ESTABLISH INADEQUATE REPRESENTATION BY ATTEMPTING TO RAISE ARGUMENTS THAT FALL OUTSIDE THE SCOPE OF APA REVIEW.**

Even if ACGA could establish standing, intervention must still be denied because ACGA has shown no legally valid grounds on which its interests are inadequately represented by the Federal Defendants and defendant-intervenor State of Alaska.  Under Rule 24, it is the proposed intervenor's burden to "demonstrate a legally protected interest" that would be impaired by the action, and to demonstrate "that no party to the action can be an adequate representative of the [intervenor]'s interests."  *Deutsche Bank Nat. Tr. Co.*, 717 F.3d at 192 (citation and internal quotation marks omitted).  Here, ACGA asserts inadequate representation solely on the ground that it wishes to make two arguments that are entirely new to this case, namely that the longstanding federal recognition of all 229 Tribes in Alaska is legally invalid despite congressional ratification, and that the definition of "Indian country" under 25 U.S.C. § 1151(c) silently excludes Alaska allotments from the Indian allotment provision, despite Supreme Court precedent to the contrary.  ACGA asserts that neither the Federal Defendants nor the State of Alaska plan to make these arguments.  With good reason:  these arguments were not addressed in the Department's decision and thus are not properly part of this APA action.  Moreover, these arguments have been repeatedly rejected by the courts and are simply not legally credible.

### A. An Intervenor Cannot Raise New Issues in an APA Case.

As the Federal Defendants rightly note in their response, ECF No. 34 at 3, as recently as last month the Supreme Court has held that "judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action'" (except as to claims of bad faith or improper behavior, not at issue in ACGA's motion). *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, No. 18-587, --- S. Ct. ---, 2020 WL 3271746, at *9 (U.S. June 18, 2020) (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419-20 (1971). Under this "foundational principle of administrative law," agency action must "not [be] upheld on the basis of impermissible '*post hoc* rationalization.'" *Regents*, 2020 WL 3271746, at *10 (internal quotation marks omitted) (quoting *Michigan*, 576 U.S. at 758, and *Overton Park*, 401 U.S. at 420). Because "*judicial review* of agency action" is limited to the reasons articulated by the agency, *id.* at *9 (emphasis added), agencies and intervenors alike are limited to defending an agency's decision on the originally articulated grounds. Thus, just like other parties, intervenors may not ask a court to consider arguments on which the agency itself did not rely. *See Van Hollen v. FEC*, 851 F. Supp. 2d 69, 88-89 & n.14 (D.D.C. 2012) ("the intervenors may not defend the challenged regulation on grounds not invoked by the FEC"), *rev'd on other grounds sub nom. Ctr. for Individual Freedom v. Van Hollen*, 694 F.3d 108 (D.C. Cir. 2012); *see also Vill. of Bensenville v. Fed. Aviation Admin.*, 457 F.3d 52, 61 (D.C. Cir. 2006) ("[I]ntervenors may only argue issues that have been raised by the principal parties." (internal and quotation omitted)).[3] By the same principle, a proposed

---

[3] The D.C. Circuit recognizes a limited exception to this rule where the new arguments raised by an intervenor "have been fully litigated in the agency proceedings and are potentially determinative of the outcome of judicial review." *Vill. of Bensenville*, 457 F.3d at 61 (quotations and alteration omitted). Here, neither of the arguments raised by ACGA were even disputed—

9

intervenor cannot claim inadequate representation by invoking an issue that it does not have the right to raise in the first place.

ACGA's *only* assertion of inadequate representation is that the Federal and State Defendants will not make two new arguments that ACGA wishes to bring into the case: first, that federally recognized tribes within Alaska are *not* federally recognized, and second, that the "allotment" language in 25 U.S.C. § 1151 does not include allotments in Alaska.[4]  ACGA readily *admits* that neither of these arguments were relied on by the Department in the decision here on review—indeed, this is ACGA's very reason for seeking intervention.  See Mot. at 11 ("the federal defendants . . . are required to limit their legal arguments to the reasoning and conclusions" in the Solicitor's Opinion on which their Decision relied); *id.* at 21 ("ACGA agrees with the federal defendants . . . [b]ut for reasons different than the legal analysis" that the Department applied).  The Department's decision correctly acknowledged that the Native Village of Eklutna *is* a federally recognized tribe, AR 2123, and that Alaska Native allotments *do* constitute "Indian country" under 25 U.S.C. § 1151, AR 2126.[5]  Simply put, because neither of ACGA's arguments were relied on in the Department's decision—indeed they directly contradict the Department's decision on both points—ACGA cannot intervene for the purpose of raising those arguments here.

---

much less "fully litigated"—before the Department, nor are they determinative of the outcome here.  This limited exception therefore has no application here.

[4] As the Federal Defendants correctly note, ACGA would not have independent standing to challenge the Department's decision on the Tribe's petition.  ECF No. 34 at 3-4.  Nor has the ACGA alleged that it does.  *See* Mot. at 9 (alleging that the ACGA will be injured "if in the instant action NVE prevails" but not alleging injury from the Department's decision itself).

[5] While the Tribe and the Federal Defendants disagree about whether the Tribe has jurisdiction over the allotment, neither party disputes that it constitutes Indian country under the statutory definition provided in 25 U.S.C. § 1151.  AR 2126.

ACGA has not cited a single case to suggest that its new arguments may properly be considered by the Court in this APA case (and we have found none). Instead, ACGA cites a *non*-APA case that is, by definition, not subject to the well-established limitations on judicial review of agency action discussed above. *See* Mot. at 10-11 (citing *Dimond v. District Of Columbia*, 792 F.2d 179, 192-93 (D.C. Cir. 1986) (in turn citing *Blake v. Pallan*, 554 F.2d 947, 954-55 (9th Cir. 1977)).[6] Even in non-APA cases, the desire to raise new arguments is not automatically sufficient to show inadequate representation. *See*, *e.g.*, *Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 105 F.R.D. 106, 113 (D.D.C. 1985) (finding adequate representation because proposed intervenor's interests were aligned with existing parties, even though it was "hardly 'clear' that each of the existing parties will 'undoubtedly' make the same arguments that the [proposed intervenors] would advance if allowed to intervene") , *aff'd*, 784 F.2d 1131 (D.C. Cir. 1986).

ACGA briefly suggests in footnotes that its arguments relate to the Tribe's Article III standing, and that for this additional reason the Court may consider them. But ACGA does not explain how this could possibly be so. ACGA asserts without explanation in two identical

---

[6] Where a proposed intervenor has, unlike here, established inadequate representation but the parties are concerned that the proposed intervenor may attempt to broaden the case with new issues, courts sometimes impose conditions that expressly limit the scope of intervention to the existing issues. *E.g. Cayuga Nation v. Zinke*, 324 F.R.D. 277, 284 (D.D.C. 2018) (collecting cases and ordering that the plaintiff-intervenor "shall confine its arguments to the existing claims in this action and shall not interject new claims or stray into collateral issues"); *see also Fund For Animals*, 322 F.3d at 738 n.11 (endorsing a similar approach). Here, the appropriate course is to deny intervention entirely because the *only* grounds on which ACGA alleges inadequate representation are the two issues it is barred from raising. *See* Mot. at 7 ("ACGA filed this motion only after" the existing defendants informed ACGA that they would not be making ACGA's desired arguments on these two issues; "[i]t was at that point that ACGA concluded that the existing parties will not adequately represent" its interests). Nonetheless, if the Court does grant ACGA's motion to intervene, the Court should require ACGA to limit its arguments to the existing issues raised by the Tribe and the Federal Defendants.

footnotes—"a dangerous place to put an important point," *Sheikh v. Republic of Sudan*, 172 F. Supp. 3d 124, 131 (D.D.C. 2016)—that the Tribe lacks standing if ACGA's misplaced tribal status argument is "correct." Mot. at 18-19 n.8, 29 n.12. Putting aside that ACGA's tribal status argument is frivolous, *see infra* II.B, that argument has no impact whatsoever on the Tribe's standing to challenge an agency decision on a petition *the Tribe itself filed*.

In review of an agency adjudication, as here, the plaintiff is "nearly always" the "object of the action . . . at issue.'" *Fund For Animals*, 322 F.3d at 733–34 (quoting *Sierra Club v. EPA*, 292 F.3d at 900 (D.C. Cir. 2002)). In such cases "there should be 'little question that the action . . . has caused [the plaintiff] injury, and that a judgment preventing or requiring the action will redress it.'" *Id.* (quoting *Sierra Club*, 292 F.3d at 900). Thus, "[i]n many if not most cases the petitioner's standing to seek review of administrative action is self-evident." *Id.* (alteration in original) (quoting *Sierra Club*, 292 F.3d at 899-900). Such is precisely the case here; the Tribe's standing to challenge an agency decision on its own petition is not legitimately in question.[7] Finally, ACGA does not even attempt to assert that its argument regarding the scope of 25 U.S.C. § 1151(c) impacts the Tribe's standing, nor could it do so. *See* Mot. at 29 n.12 (in footnote accompanying discussion of § 1151, asserting that the *tribal status* argument impacts the Tribe's standing). ACGA has therefore asserted no grounds on which the Court could conceivably consider that argument.

---

[7] Indeed, even if an entity that was not a federally recognized tribe filed a petition for an Indian lands determination, and the Department denied the petition on the ground that the entity was not a federally recognized tribe (or any other ground), plainly the entity would still have standing to challenge that decision.

12

In essence, ACGA's *only* asserted ground for inadequate representation is a desire to make arguments that the Court is barred from considering. This attempt to shoehorn improper arguments into this case must fail.

### B. The Desire to Make Legally Unfounded Arguments Cannot Sustain a Claim of Inadequate Representation.

Even if the Court could consider the ACGA's two proposed arguments, they are legally unfounded and frivolous. ACGA asserts that it will present "a legal argument regarding tribal status" that, according to the ACGA, "is colorable and potentially determinative." Mot. at 18. In fact, it is neither. The argument has been repeatedly rejected by state and federal courts over several decades. ACGA's argument regarding the application of § 1151 to Alaska Native allotments is equally frivolous. Mot. at 28-29. Such baseless arguments are not proper grounds for intervention.

The ACGA's articulation of its argument regarding tribal status is particularly egregious, as counsel for the ACGA has *repeatedly and unsuccessfully* urged other courts to adopt this precise argument. *See, e.g.*, *Simmonds v. Parks*, 329 P.3d 995, 1004 (Alaska 2014) ("Parks, represented by Mitchell, repeated his argument that the Native Village of Minto is not a federally recognized tribe and that the superior court should disregard precedent to the contrary from the U.S. District Court, the Ninth Circuit, and the Alaska Supreme Court."). While it is neither necessary nor practical to exhaustively list all of the other cases in which counsel has unsuccessfully advanced these arguments, a few examples illustrate the point.

Following the Department of the Interior's inclusion of Alaska Native Tribes on the list of federally recognized tribes, 58 Fed. Reg. 54,364, 54,368–69 (Oct. 21, 1993), and Congress's enactment of the Federally Recognized Tribe List Act of 1994, Pub. L. No. 103–454, tit. I, § 102, 108 Stat. 4791, and the Tlingit and Haida Status Clarification Act, Pub. L. No. 103–454, tit. II,

108 Stat. 4791, 4792 (1994), federal and state courts have consistently held that Alaska tribes appearing on the Department's list of federally recognized tribes are, indeed, properly considered federally recognized Indian tribes. This approach is consistent with the D.C. Circuit's recognition that "Congress delegated to the Secretary the regulation of Indian relations and affairs, *see generally* 25 U.S.C. § 2, including authority to decide in the first instance whether groups have been federally recognized in the past or whether other circumstances support current recognition." *Mackinac Tribe v. Jewell*, 829 F.3d 754, 757 (D.C. Cir. 2016). The seminal Alaska case on this issue was *John v. Baker*, 982 P.2d 738 (Alaska 1999), in which the Alaska Supreme Court recognized that Alaska tribes appearing on the Department's list were properly considered federally recognized tribes: "Through the 1993 tribal list and the 1994 Tribe List Act, the federal government has recognized the historical tribal status of Alaska Native villages." *id.* at 750. The court went on to hold that "[i]n deference to that determination, we also recognize such villages as sovereign entities." *Id.* The *John v. Baker* decision has since been reaffirmed multiple times. *E.g.*, *McCrary v. Ivanof Bay Village*, 265 P.3d 337, 342 (Alaska 2011); *State v. Native Vill. of Tanana*, 249 P.3d 734, 750 (Alaska 2011); *In re C.R.H.*, 29 P.3d 849, 851 n.5 (Alaska 2001).

In the federal courts, despite some initial divergence in the test applied to determine tribal status, by the time of the U.S. Supreme Court's decision in *Alaska v. Native Village of Venetie Tribal Government*, 522 U.S. 520 (1998), the federally recognized sovereign status of tribes in Alaska was no longer seriously questioned. *See id.* (determining that "the Tribe's lands" are not Indian country because they are not subject to federal superintendence, but noting no question regarding the Tribe's status as an Indian tribe). Numerous federal cases have similarly affirmed Alaska tribes' federally recognized sovereign status. *E.g.*, *Chilkat Indian Vill. of Klukwan v.*

*Bureau of Land Mgmt.*, No. 3:17-CV-00253-TMB, 2018 WL 9854668, at *1 (D. Alaska May 24, 2018) ("Plaintiff Chilkat Indian Village of Klukwan is a federally recognized Indian tribe."); *Douglas Indian Ass'n v. Cent. Council of Tlingit & Haida*, No. 1:15-CV-00004-RRB, 2015 WL 4909955, at *1 (D. Alaska Aug. 17, 2015) ("Plaintiff Douglas Indian Association . . . is a federally recognized Indian tribe."); *Akiachak Native Cmty. v. Salazar*, 935 F.Supp.2d 195 (D.D.C. 2013) (holding invalid a regulation that treated federally recognized tribes in Alaska differently from federally recognized tribes elsewhere, in violation of the "privileges and immunities" statute, 25 U.S.C. § 476(g), that mandates treating all federally recognized tribes alike), *vacated as moot on other grounds*, 827 F.3d 100 (D.C. Cir. 2016).[8]

Yet in the face of this overwhelming precedent, counsel for ACGA has repeatedly pressed the same failed theory that is urged here. In *Runyon ex rel. B.R. v. Association of Village Council Presidents*, 84 P.3d 437 (Alaska 2004), for instance, counsel (representing an amicus) urged the court to overrule *John v. Baker* and hold that tribes in Alaska were not properly federally recognized. *See* Brief for the Legislative Council of the Alaska Legislature as Amicus Curiae in Support of Appellants at 8, 18-21, *Runyon ex rel. B.R. v. Ass'n of Village Council Presidents*, 84 P.3d 437 (Alaska 2004) (Nos. S-10772, S-10838), 2003 WL 24048558. The court rejected counsel's argument, "declin[ing] the invitation[] of . . . amicus Legislative Council to revisit *John v. Baker*." *Id.* at 439 n.3. In *State v. Native Village of Tanana*, 249 P.3d 734 (Alaska 2011), counsel represented another putative intervenor again seeking to argue that *John*

---

[8] *See also, e.g.*, *Koniag, Inc. v. Kanam*, No. 3:12-CV-00077-SLG, 2012 WL 2576210, at *4 (D. Alaska July 3, 2012) ("The Native Village of Karluk is a federally recognized Indian tribe in Alaska eligible to receive services from the United States Bureau of Indian Affairs. (citing 75 Fed. Reg. 60810, 60814 (Oct. 1, 2010))); *Ninilchik Traditional Council v. Fleagle*, No. 3:06 CV 213 JWS, 2006 WL 2711522, at *2 (D. Alaska Sept. 20, 2006) ("The Ninilchik Traditional Council is the governing body of Ninilchik Village, a federally recognized Indian tribe.").

*v. Baker* should be overruled, and—in striking similarity with the motion filed here—urged that the State of Alaska did not adequately represent his client's interests because the State had "conceded" that Alaska tribes were federally recognized tribes.  Ex. A to Hampson Decl. (Motion to Intervene at 10, *Native Vill. Of Tanana*, 249 P.3d 734 (No. S-13332)).  The court denied the motion to intervene.  Ex. B to Hampson Decl. (*Native Vill. of Tanana*, No. S-13332 (Alaska Mar. 30, 2010) (Order denying motion to intervene)).  It then reaffirmed *John v. Baker* yet again, explaining that "*John v. Baker* is foundational Alaska authority regarding Alaska Native tribal jurisdiction."  249 P.3d at 750.

Undeterred, counsel has continued to make the same tired argument in multiple other cases, almost always based on the same reasoning and sometimes with nearly the same language as in ACGA's motion here.  In *McCrary v. Ivanof Bay Village*, counsel (representing the plaintiff-appellant) argued that the Department of the Interior lacked the authority to designate federally recognized tribes in Alaska, asking:

> So what was the statute in which Congress delegated Assistant Secretary Deer authority to on October 21, 1993 exercise Congress's Indian Commerce Clause authority in Congress's stead by creating more than two hundred "federally recognized tribes" in Alaska by unilateral agency action?

Brief of Appellant at 20, *McCrary v. Ivanof Bay Vill.*, 265 P.3d 337 (Alaska 2011) (No. S-13972), 2010 WL 6351949.  The Alaska Supreme Court again rejected the argument that Alaska tribes were not properly federally recognized on this basis, holding that "McCrary has not sustained his heavy burden to demonstrate our precedent in *John v. Baker* should be overturned. . . . Ivanof Bay is a federally recognized tribe."  265 P.3d at 342.  Counsel made the same

16

argument on behalf of McCrary in his petition for certiorari to the U.S. Supreme Court,[9] which was denied.  566 U.S. 963 (2012).  These arguments closely mirror those made by ACGA here, in which counsel asks the same rhetorical question regarding Secretary Deer's alleged lack of authority.  *See* Mot. at 17.[10]  This question has now been answered many times over, and the law is clear that Alaska tribes appearing on the Department's list of federally recognized tribes *are* federally recognized tribes.  Again, counsel discloses none of this caselaw to the Court, much less the two controlling 1994 statutes on which the caselaw is based.

In short, this case is just the latest in a long series of cases in which counsel for ACGA has attempted to push a theory regarding Alaska tribal status that is not only wrong but has been *repeatedly* rejected by the courts.[11]

---

[9] The certiorari petition asked the same rhetorical question:

> What statute delegated Assistant Secretary Deer authority to create more than 200 "federally recognized tribes" in Alaska in purposeful contravention of Congress's Alaska Native policy simply by publishing a list of Native Entities in the Federal Register? Assistant Secretary Deer cited two statutes: 25 U.S.C. §§ 2 and 9. Id. at 54,364. But neither statute delegated the authority that Assistant Secretary Deer purported to exercise.

Petition for a Writ of Certiorari at 24, *McCrary v. Ivanof Bay Village*, 566 U.S. 963 (2012) (No. 11-1092), 2012 WL 727231.

[10] Again, counsel asks:

> In what statute did Congress delegate Assistant Secretary Deer authority to create more than two hundred federally recognized tribes in Alaska by unilateral agency administrative action? According to Assistant Secretary Deer, Congress intended 25 U.S.C. 2 and 9 to delegate the authority she purported to exercise. Ibid. at 54364. But neither statute, which Congress enacted in 1832 and 1834 respectively, did so.

Mot. at 17-18.

[11] Other cases involving counsel for ACGA have followed the same pattern.  *See, e.g.*, *Parks v. Simmonds*, No. 4FA-09-2508CI (Alaska Super. Ct. 2011) (challenging tribe's sovereign status and jurisdiction; argument rejected on appeal, *Simmonds*, 329 P.3d at 999, 1004-05); Brief of Edward Parks & Donielle Taylor as Amici Curiae in Support of Petitioners at 18 n.9, *Hogan v. Kaltag Tribal Council*, 562 U.S. 827 (2010) (No. 09-960), 2010 WL 1049413 (again

While the scope of 25 U.S.C. § 1151(c) has been subject to less litigation, the argument is equally frivolous as it contradicts direct Supreme Court precedent. In *Alaska v. Native Village of Venetie Tribal Government*, the Supreme Court stated that (aside from one reservation not relevant here) "Indian country exists in Alaska post-ANCSA only if the land in question meets the requirements of a 'dependent Indian communit[y]' under our interpretation of § 1151(b), *or if it constitutes 'allotments' under § 1151(c)*." 522 U.S. 520, 527 n.2 (1998) (alteration in original) (emphasis added). This direct statement from the Supreme Court makes clear that allotments within Alaska fall within § 1151(c) and leaves no room for ACGA's theory that § 1151(c) categorically excludes Alaska.[12] Both of ACGA's desired arguments, therefore, are legally untenable and barred by longstanding binding precedent.

Continuing to push these theories without citing the overwhelming precedent rejecting them is not only frivolous and vexatious, it also reflects a lack of candor with this Court. The desire to continue making such arguments is not a legally valid interest, and it cannot form the basis of inadequate representation for purposes of intervention.

---

unsuccessfully arguing *John v. Baker* was wrongly decided), *cert. denied*, 562 U.S. 827 (2010); *S.P. ex rel. Parks v. Native Vill. of Minto*, No. 3:09-cv-0092 (HRH), 2009 WL 9124375 at *1, 5, 8 (D. Alaska Dec. 2, 2009) (unsuccessfully challenging tribal sovereignty; court abstained from deciding case under *Younger*), *aff'd*, 443 F. App'x 264 (9th Cir. 2011); *McCrary v. Ivanof Bay Vill.*, No. 3:08-CV-00259-JWS, 2009 WL 10676088, at *1, 4 (D. Alaska Sept. 15, 2009) (challenging the sovereign immunity of the tribe; case dismissed for lack of subject matter jurisdiction); *McCrary v. Native Vill. of Ivanof Bay & Edgar Shangin*, No. 3AN-08-11451 CI (Alaska Super. Ct. Oct. 28, 2008) (challenging the sovereign immunity of the tribe; plaintiff moved to dismiss case without prejudice).

[12] Courts have repeatedly treated Alaska Native allotments like Indian allotments in the Lower 48 states, further undercutting any argument that a statute referencing "allotments" silently excludes allotments in Alaska. E.g., *Pence v. Kleppe*, 529 F.2d 135, 138 (9th Cir. 1976); *Olympic v. United States*, 615 F. Supp. 990, 995 (D. Alaska 1985); *Aguilar v. United States*, 474 F. Supp. 840, 846 (D. Alaska 1979); *State of Alaska, Dept. of Public Works v. Agli*, 472 F. Supp. 70, 72 (D. Alaska 1979).

### C. Permissive Intervention Should Be Denied For The Same Reasons.

For all the reasons described above, permissive intervention is equally inappropriate. Far from assisting the Court with "increased information," *see* Mot. at 30, allowing ACGA to intervene would only bog down the case with frivolous arguments on issues that are not legitimately in dispute. In short, because the two arguments ACGA wishes to raise are barred in this APA action and are, in any event, legally unfounded, no possible benefit could be derived from allowing intervention.

As noted above, at least one other court has been faced with this same situation—where counsel for ACGA filed a motion to intervene on the basis of the unfounded tribal status theory that is urged again here—and that court denied intervention. *See* Ex. B to Hampson Decl. (*Native Vill. of Tanana*, No. S-13332 (Alaska Mar. 30, 2010)). This Court should do the same.

### CONCLUSION

For the reasons stated above, this Court should deny ACGA's motion to intervene under both Rule 24(a) and (b).

Respectfully submitted this 8th day of July 2020.

        SONOSKY, CHAMBERS, SACHSE,
         ENDRESON & PERRY, LLP

By:    */s/ Colin C. Hampson*
        Colin Cloud Hampson, D.C. Bar No. 448481
        145 Willow Road, Suite 200
        Bonita, CA 91902
        Telephone: (619) 267-1306
        Facsimile: (619) 267-1388
        champson@sonoskysd.com

        Whitney A. Leonard
        Alaska Bar No. 1711064
        Montana Bar No. 36409732
        Pro hac vice
        Sonosky, Chambers, Sachse, Miller &

Monkman, LLP
725 East Fireweed Lane, Suite 420
Anchorage, AK 99503
Telephone: (907) 258-7388
Facsimile: (907) 272-8332
whitney@sonosky.net

*Attorneys for the Native Village of Eklutna*