Lael A. Harrison
Assistant Attorney General
Alaska Bar No. 0811093
Alaska Department of Law
PO Box 110300
Juneau, AK 99811-0300
Telephone: 907.465.3600
Facsimile: 907.465.3019
Email: lael.harrison@alaska.gov

*Attorney for State of Alaska*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIVE VILLAGE OF EKLUTNA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF THE INTERIOR, et. al, | ) | Case No. 1:19-cv-02388-DLF |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STATE OF ALASKA, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

**OPPOSITION TO MOTION TO SUPPLEMENT RECORD**

The Department of the Interior's "Indian Lands" determination issued to the

Native Village of Eklutna is well-reasoned, well-grounded in the law and well-grounded

in an extensive factual record. It is consistent with the Department's several prior

decisions addressing this same question,[1] issued during the Clinton administration,[2] including at least one opinion regarding this precise allotment.[3] The plaintiff has identified no serious evidence that this decision was the result of improper political influence. And the plaintiff certainly has not made the required "strong showing of bad faith or improper behavior" necessary to conduct extra-record discovery into the possibility of improper political influence.[4]

Actions of administrative agencies, including certification of the administrative record, are entitled to a "presumption of regularity."[5] As a general rule, the subjective

---

[1]    The State is aware of at least three such determinations, regarding whether an Alaska Native allotment, or analytically similar townsite lot, could be considered "Indian Lands" for purposes of IGRA. Those were issued to the Native Village of Barrow, the Kenaitze Tribe, and the Native Village of Akiachak in the mid-1990s. The determinations relating to the Native Village of Barrow and the Native Village of Akiachak are attached to this opposition as Exhibit A.  The State has been unable to obtain a copy of the original opinion letter issued to the Kenaitze Tribe, but based on the withdrawal letter attached to this opposition as Exhibit B, it appears that it contained similar reasoning to the Native Village of Barrow opinion.

[2]    These prior decisions also draw heavily on a Solicitor General opinion (the "Sansonetti Opinion") issued during the administration of George H.W. Bush (issued January 11, 1993).

[3]    In 1995, the Office of the Solicitor for the Division of Indian Affairs issued a brief opinion stating that the Native Village of Eklutna's request for an Indian Lands determination for an Alaska Native allotment should be denied for reasons basically consistent with the determination now on appeal to this Court. That opinion appears to address the same allotment as is at issue in this case. The letter is attached to this opposition as Exhibit C.

[4]    *Dep't of Comm. v. New York*, 588 U.S. __, 139 S.Ct. 2551, 2573-74 (2019) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).

[5]    *See e.g. Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971); *Stand Up for California! v. United States Dep't of Interior*, 315 F. Supp. 3d 289, 293 (D.D.C. 2018).

motivations behind an agency's action are immaterial to a Court's review of that action under the Administrative Procedure Act.[6] This reflects the principle that "judicial inquiry into executive motivation represents a substantial intrusion into the workings of another branch of Government and should normally be avoided."[7] In this motion, the plaintiff seeks to invoke a narrow exception to this rule which allows extra-record discovery into an agency's deliberative processes upon a "strong showing of bad faith or improper conduct."[8]

The plaintiff has not made that requisite "strong showing." There is nothing improper about an agency communicating with political actors regarding a particular issue. "[A] court may not set aside an agency's policymaking decision solely because it might have been influenced by political considerations or prompted by an Administration's priorities."[9] However, an agency decision may be considered arbitrary and capricious if it was the result of improper political pressure.[10] But this requires both a showing that political pressure was applied to the agency's decision makers and that it caused those decision makers to rely on improper factors.[11] Examples include a

---

[6]     *See e.g. In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998).

[7]     *Dep't of Comm. v. New York*, 588 U.S. __, 139 S.Ct. 2551, 2573 (2019) (internal quotations omitted).

[8]     *Id.* at 2573-74.

[9]     *Dep't of Comm. v. New York*, 588 U.S. __, 139 S.Ct. 2551, 2573 (2019).

[10]    *Connecticut v. U.S. Dep't of Interior*, 363 F. Supp. 3d 45, 63-64 (D.D.C. 2019).

[11]    *Id. See also Schaghticoke Tribal Nation v. Kempthorne,* 587 F.3d 132, 134 (2nd Cir. 2009) ("To support a claim of improper political influence on a federal administrative agency, there must be some showing that the political pressure was intended to and did cause the agency's action to be influenced by factors not relevant

politician's overt threats to withhold funding for a valuable project based on the outcome

of an unrelated decision;[12] an agency's rushed decision issued on the day of

administration change after two months of "continuous pressure" from the overseeing

Senate subcommittee to approve the project before the "deadline";[13] and an agency

casting about for a rationale to support a pre-determined politically-motivated decision.[14]

  In its motion, the plaintiff seems to allege that *any* political contacts relative to an

"Indian Lands" determination under IGRA are necessarily improper because the statute

does not expressly allow for consideration of political viewpoints. But the cases cited by

plaintiff do not actually stand for this proposition.[15] They are consistent with the general

legal rules described above.[16] As a factual matter, the evidence relied on by the plaintiffs

---

under the controlling statute") (quoting *Town of Orangetown v. Ruckelshaus,* 740 F.2d 185, 188 (2nd Cir.1984)).

[12] *See D.C. Federation of Civic Ass'ns v. Volpe*, 459 F.2d 1231, 1245-46 (D.C. Cir. 1971).

[13] *See Stand Up for California! v. United States Dep't of Interior*, 315 F. Supp. 3d 289, 297 (D.D.C. 2018).

[14] *See Dep't of Comm. v. New York*, 588 U.S. __, 139 S.Ct. 2551, 2575 (2019).

[15] *See* Motion for Leave to Take Extra Record Discovery (June 26, 2020) at page 14 (citing *Connecticut v. U.S. Dep't of Interior*, 363 F. Supp. 3d 45 (D.D.C. 2019) and *Sokaogon Chippewa Comm'y v. Babbit*, 961 F. Supp. 1276 (W.D. Wis. 1997)).

[16] *See Connecticut,* 363 F. Supp. 3d. at 63-64; *Sokaogan Chippewa Comm'y*, 961 F. Supp. at 1279 ("[I]nteraction between the department and congressional and presidential officials concerning an application such as plaintiffs' is not improper per se. But that does not mean that it is permissible for White House staff to dictate the outcome of a decision that is delegated by Congress to the Department of the Interior.")

in both those cases was significantly more suggestive of impropriety than the evidence relied on by the plaintiff here.[17]

The plaintiff overstates the import of the actual evidence that it relies on in support of its motion. The evidence to which the plaintiff points seems to show that the three members of Alaska's congressional delegation privately shared their views on the plaintiff's proposed project with the Department, but contains no hint of threats, demands, or pressure of any kind.[18] It appears from the record that one of those delegates informed the Department he was in favor of the project,[19] one informed the Department

---

[17]     *See Connecticut,* 363 F. Supp. 3d. at 63-64 (finding amendment of complaint to add claim of improper political influence not futile where amended complaint alleged that the department "reversed course" at the "eleventh hour" in response to months of political pressure); *Sokaogan Chippewa Comm'y*, 961 F. Supp. at 1279 (describing numerous contacts between political actors and the Department, overt pressure on political actors by political donors opposed to the project, overt references to competing Democrat and Republican financial interests, a mysterious recusal after the decision was made, a mysterious pair of faxes seeming to invite political actors to choose between two competing courses for the agency, culminating in a three-page decision on an issue that typically is resolved in much longer opinions, and noting that "it will be the rare case in which a party will be able to present evidence similar to the evidence plaintiffs have produced here").

[18]     *See e.g. D.C. Federation of Civic Ass'ns v. Volpe,* 459 F.2d 1231, 2346 (D.C. Cir. 1971) (remanding for reconsideration of agency decision that may have been improperly influenced by Congress member's threats to withhold funding for an unrelated project based on outcome of agency's process); *Stand Up for California! v. United States Dep't of Interior*, 315 F. Supp. 3d 289 (D.D.C. 2018) (ordering production of privilege log where evidence showed two months of "continuous pressure" from controlling Senate subcommittee to issue decision by the "deadline" of administration change and decision was in fact issued on that precise day). *C.f. Schaghticoke Tribal Nation v. Kempthorne,* 587 F.3d 132 (2nd Cir. 2009) (finding no improper political influence despite "political clamor" surrounding the issue).

[19]     In fact, the strongest statement from any of these delegates in the record is Rep. Young's letter to the Department in support of the project. AR 2093-94.

he was neutral,[20] and one informed the Department that she had concerns about gaming in general but apparently did not take a position on this particular project.[21] The plaintiff points to no evidence that Senator Murkowski ever informed the Department that she opposed this specific project.[22] Furthermore, at the meeting between the Department and the delegates' representatives to which plaintiff primarily points for evidence of improper behavior, the Department stated that its decision was "largely done" and expected to issue it within a "couple of months."[23] The Department then proceeded to issue its highly detailed seventeen-page decision about two months thereafter, corroborating this

---

[20]     Notes from the meeting on April 13, 2018 between Department and political representatives state: "Sullivan—Neutral." AR 2555.

[21]     Notes from the April 13, 2018 meeting state only: "Murkowski—concerns for gaming effects statewide / state-level action—not a fan of gaming." AR 2555. This is consistent with notes from a meeting with representatives of the plaintiff on April 3, 2018, ten days earlier, that state: "Murkowski is neutral … her objection is moral, but supports economic self-determination." AR 2552 The plaintiff's declarants describe private meetings with Senator Murkowski at which she expressed moral opposition to the project, but do not allege that any representatives of the Department were present at these meetings. See e.g. Declaration of R. Faber (June 26, 2020) at ¶¶8, 10, 12. Similarly, one of the plaintiff's declarants describes a private meeting with Senator Sullivan, at which no Department representatives were present, in which the Senator expressed concerns about the jurisdictional issues presented by the plaintiff's request. See Declaration of A. Marnell (June 23, 2020) at ¶7.

[22]     One of the plaintiff's declarants makes a hearsay allegation that an unnamed "senior political appointee within the Department between late 2018 and mid-2018" told him that Senator Murkowski's office "may have asked" the department to hold off a decision in order to give her more time to review the project and "communicated her negative views to the Department at some point, or at multiple points." Declaration of R. Faber (June 26, 2020) at ¶13. However, even this vague allegation does not go so far as to assert that Senator Murkowski informed the Department she opposed this specific project, far less exerted any pressure on the Department with regards to the substance of its final decision.

[23]     AR 2555.

*Native Village of Eklutna v. U.S. Dep't. of Interior, et al.*    Case No. 1:19-cv-02388-DLF
OPPOSITION TO MOTION TO SUPPLEMENT RECORD                    Page 6 of 8

statement. The decision does not present the appearance of something thrown together at the last minute.[24] So this evidence actually indicates that the Department reached its decision independently prior to that meeting.

The decision ultimately issued by the Department was well-reasoned and well-supported by the extensive factual record.[25] It was consistent with the Department's prior decisions from prior presidential administrations.[26] The plaintiff has not made a "strong showing of bad faith or improper behavior" that would justify intruding into the Department's subjective decision-making.[27] This Court should deny the plaintiff's motion for extra-record discovery.

DATED:  July 16, 2020.

KEVIN G. CLARKSON
ATTORNEY GENERAL

By:  /s/ LAEL A. HARRISON
Lael A. Harrison
Assistant Attorney General
Alaska Bar No. 0811093
Alaska Department of Law

---

[24]    *C.f. Sokaogon Chippewa Comm'y v. Babbit*, 961 F. Supp. 1276, 1284 (W.D. Wis. 1997) ("the brevity and lack of detailed factual findings in [the Department's] opinion are suspicious").

[25]    *C.f. Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (allowing for extra-record discovery where administrative agency compiled no contemporaneous record and made no findings in support of its decision).

[26]    *C.f. Connecticut v. U.S. Dep't of Interior*, 363 F. Supp. 3d 45, 64-65 (D.D.C. 2019) (finding amendment of complaint to add claim of improper political influence not futile where amended complaint alleged a sudden change of course by an agency "at the eleventh hour" in response to political pressures).

[27]    *Dep't of Comm. v. New York*, 588 U.S. __, 139 S.Ct. 2551, 2573-74 (2019) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).

PO Box 110300
Juneau, AK 99811-0300
Telephone: 907.465.3600
Facsimile: 907.465.3019
Email: lael.harrison@alaska.gov