# Exhibit 5

To

Federal Defendants' Opposition to Plaintiff's Motion for Extra-Record Discovery

## *Indian Lands Determination for Native Village of Barrow*



# United States Department of the Interior

OFFICE OF THE SOLICITOR

APR 10 1995

In reply, please address to:
Main Interior, Room 6456

Michael J. Cox, General Counsel
National Indian Gaming Commission
1850 M Street, N.W., Suite 250
Washington, D.C. 20036

Dear Mr. Cox:

You have requested our views as to whether a restricted townsite held by a member of the Native Village of Barrow (Barrow) is "Indian lands" as defined by the Indian Gaming Regulatory Act (IGRA) upon which Barrow may conduct Class II gaming.

IGRA defines Indian lands as including "any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power." 25 U.S.C. § 2703(4)(b).

The land in question is an individual Native townsite lot held in restricted fee status. Deeds to individual townsite lots were issued to Natives subject to statutory restrictions on alienation, pursuant to the Alaska Native Townsite Act of May 25, 1926, 44 Stat. 629, formerly codified at 43 U.S.C. §§ 733-737, and the Alaska Native Allotment Act of May 17, 1906, 34 Stat. 197, as amended, formerly codified at 43 U.S.C. §§ 270-1 through 270-3 (1970). Thus, as required by IGRA, the land is held by an individual and subject to restriction by the United States against alienation.

However, whether Barrow exercises governmental power over the townsite allotment is unclear. An assertion of tribal jurisdiction over individual restricted lots would be doubtful if there were no clear tribal nexus to the individual restricted lands. The village has the burden of establishing that it satisfies the statutory requirements, including the fact that it exercises governmental authority over the lot. The exercise of governmental authority can not be inferred merely from the fact that the lot is within the village.

Based on the information before us, it is unclear that a tribal nexus between Barrow and the land in question exists. In our review of this issue, we contacted the Regional Solicitor's Office in Alaska, which in turn contacted the Bureau of Indian Affairs. Neither office could provide further information showing that

Barrow exercises governmental power over the land in question.  The Regional Solicitor's Office indicated that the Village does not own any land, whether in trust or in restricted status.

We note that the Solicitor's Opinion, M-36975, issued by then-Solicitor Thomas Sansonetti on January 11, 1993, discusses the extent of tribal jurisdiction over townsite lots.  The opinion states that the jurisdictional status of individual townsite lots is comparable to that of Alaska Native allotments.  With respect to Native allotments, the Solicitor opined that he was "not convinced that any specific villages or groups can claim jurisdictional authority over allotment parcels."  Id. at 129.  The Sansonetti opinion is subject to review, but unless and until withdrawn or modified, it remains the position of the Department.  Therefore, I suggest that the village be asked for additional proof that the townsite lots are subject to the governmental jurisdiction of the Native Village of Barrow.  See e.g. Alaska v. Native Village of Venetie, 856 F.2d 1384, 1391 (9th Cir. 1988); Oklahoma Tax Comm'n v. Citizen Band of Potawatomi Indians, 498 U.S. 505, 511 (1991); Oklahoma Tax Com'n v. Sac and Fox Nation, 113 S.Ct. 1985, 1991 (1993).

We conclude that while the land in question is held by an individual and subject to restriction by the United States against alienation, we cannot conclude, based on the information before us, that Barrow exercises governmental power over the land.  Therefore, we cannot conclude that the land in question is "Indian land" as defined by IGRA.

If Barrow were to provide some additional information regarding a tribal nexus and the exercise of Barrow's governmental power over the land in question, we would reconsider our opinion.

Sincerely,

Robert T. Anderson
Acting Associate Solicitor
Division of Indian Affairs

2