# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIVE VILLAGE OF EKLUTNA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-02388-DLF |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| THE INTERIOR, *et al.*, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| STATE OF ALASKA, | ) |
| | ) |
| Defendant-Intervenor. | ) |
| | ) |

## JOINT APPENDIX
## VOLUME 4 OF 4
## (AR002300 – AR002584)

Colin Cloud Hampson
SONOSKY, CHAMBERS, SACHSE,
  ENDRESON & PERRY, LLP
D.C. Bar No. 448481
145 Willow Road, Suite 200
Bonita, CA 91902
Telephone: (619) 267-1306
Facsimile: (619) 267-1388
champson@sonoskysd.com

Whitney A. Leonard
SONOSKY, CHAMBERS, SACHSE,
  MILLER & MONKMAN, LLP
Alaska Bar No. 1711064
Montana Bar No. 36409732
*Pro hac vice*
725 East Fireweed Lane, Suite 420
Anchorage, AK 99503
Telephone:  (907) 258-7388
Facsimile:  (907) 272-8332
whitney@sonosky.net

*Attorneys for the Native Village of Eklutna*

**Page**

—— **VOLUME 1 OF 4** ——

| | | | |
|---|---|---|---|
| 1 | Briefing Memorandum, Lee Stephan to James Cason | AR 1-2 | 8/10/2017 |
| 12 | Alaska Department of Law, Legal status of tribal governments in Alaska | AR 12-27 | 10/19/2017 |
| 43 | Affidavit of Aaron Leggett | AR 43-44 | 12/4/2017 |
| 45 | Indian Lands Opinion on Ondola Allotment | AR 45-61 | 6/18/2018 |
| 87 | Olga Ondola Native Allotment Deed | AR 87-88 | 11/13/1963 |
| 594 | State of Alaska, 2007 Letter on Native Village of Eklutna ILD Request (with exhibits) | AR 594-624 | 5/17/2007 |
| 625 | Ex. A: Letter from Robert T. Anderson, US DOI, to Michael Cox, NIGC | AR 625-627 | 5/17/1995 |
| 628 | Ex. B: Memorandum Opinion, *Native Village of Barrow v. NIGC*, Civil Action No. 99-886 (RWR) | AR 628-642 | 12/31/2001 |
| 672 | Ex. E: Alaska Department of Transportation Highway Log Report | AR 672-673 | 4/23/2007 |
| 674 | Ex. F: Affidavit of Monica Jenicek | AR 674-679 | 5/16/2007 |
| 680 | Ex. G: Affidavit of Daniel Patrick O'Tierney | AR 680-685 | 5/10/2007 |

—— **VOLUME 2 OF 4** ——

| | | | |
|---|---|---|---|
| 701 | Ex. M: Geographical Information Systems (MapOptix 4.2 Interface) | AR 701-702 | 4/20/2007 |
| 703 | Ex. N: Eklutna-2.jpg - Aerial Map | AR 703-704 | undated |
| 711 | Ex. R: Department of Interior, 8.3 Indian Allotment, Anch. Ser. No. 055026 | AR 711-714 | 10/21/1963 |
| 720 | Ex. T: Letter from Robert T. Anderson, U.S. Department of Interior, Div. of Indian Affairs, to Michael J. Cox, NIGC | AR 720-722 | 5/12/1995 |

**Page**

| | | | |
|---|---|---|---|
| 723 | Ex. U: Senate Report No. 108-251, Alaska Native Allotment Subdivision Act | AR 723-728 | 5/14/2007 |
| 742 | Business Lease Between the Ondola Family and the Native Village of Eklutna | AR 742-773 | 4/14/2016 |
| 774 | Native Village of Eklutna cover letter and index to Exhibits in support of 6/29/2016 request for Indian lands determination | AR 774-777 | 7/13/2016 |
| 778 | Native Village of Eklutna Request for Indian Lands Determination Regarding Ondola Allotment and Index to Exhibits | AR 778-807 | 6/29/2016 |
| 808 | Ex. 1: James Kari et al. *Shem Pete's Alaska: The Territory of the Upper Cook Inlet Dena'ina* (1987) | AR 808-867 | 6/29/2016 |
| 868 | Ex. 2: Affidavit of George Ondola | AR 868-872 | 1/26/1995 |
| 873 | Ex. 3: Fed. Field Comm, for Dev. Planning in Alaska; *Alaska Natives & the Land* (1968) | AR 873-901 | 6/29/2016 |
| 902 | Ex. 4: Ann Chandonnet, *On the Trail of Eklutna* | AR 902-919 | 1979 |
| 920 | Ex. 5: Ann Chandonnet, *The Once and Future Village of Ikluat/ Eklutna: The History of a Tanaina Athapaskan Settlement* | AR 920-941 | 1979 |
| 952 | Ex. 7: Constitution of the Native Village of Eklutna (1996) | AR 952-963 | 1/27/1996 |
| 965 | Ex. 8: Letter from Office of Solicitor to NIGC (5/17/1995) | AR 964-966 | 5/17/1995 |
| 967 | Ex. 9: Letter from Office of Solicitor to NIGC (5/18/1995) | AR 967-968 | 5/18/1995 |
| 969 | Ex. 10: Native Allotment Deed Nov. 13, 1963 | AR 969-971 | 11/13/1963 |

**Page**

| 972 | Ex. 11: Affidavit of Daniel Alex, Eklutna Tribal Administrator | AR 972-976 | 3/16/2007 |

| 977 | Ex. 12: Maps Showing Distances | AR 977-979 | 6/29/2016 |

| 980 | Ex. 13: Affidavit of George Ondola | AR 980-985 | 3/26/2007 |

| 986 | Ex. 14: Lease Agreement Between the Native Village of Eklutna and the Ondola Family | AR 986-1008 | 6/6/2016 |

| 1019 | Ex. 15: Native Village of Eklutna Dog Ordinance | AR 1019-1021 | undated |

| 1022 | Ex. 16: Native Village of Eklutna Des'na'ka, Ka'nash - Relatives Talk Code | AR 1022-1031 | 4/25/2003 |

| 1032 | Ex. 17: Native Village of Eklutna Tribal Court Codes, Res. No. 98-0026 | AR 1032-1043 | 5/1/1998 |

| 1068 | Ex. 19: Native Village of Eklutna Res. No. 97-22, Environmental Protection Ordinance | AR 1068-1072 | 7/19/1997 |

| 1073 | Ex. 20: Native Village of Eklutna Ordinance 04-001 | AR 1073-1077 | 3/26/2004 |

| 1078 | Ex. 21: Native Village of Eklutna Res. No. 2006-24 | AR 1078-1082 | 12/21/2006 |

| 1083 | Ex. 22: Letter of Agreement Between Native Village of Eklutna and Anchorage Police Department (Dec. 10, 1996) | AR 1083-1085 | 12/10/1996 |

—— **VOLUME 3 OF 4** ——

| 1239 | Request for Withdrawal of the Sansonetti Opinion | AR 1239-1243 | 11/21/2016 |

| 1244 | Native Village of Eklutna Supplement to Request for Indian Lands Determination | AR 1244-1255 | 12/16/2016 |

| 2039 | Native Village of Eklutna Supplemental Information regarding Request for Indian Lands Determination | AR 2039-2043 | 6/7/2017 |

**Page**

| 2046 | Olga Ondola Allotment Application | AR 2046-2048 | 6/28/1961 |
| 2051 | Native Village of Eklutna Second Supplemental Submission with attachments | AR 2051-2061 | 6/22/2017 |
| 2071 | Native Village of Eklutna Letter to James Cason | AR 2071-2091 | 11/6/2017 |
| 2095 | Native Village of Eklutna Letter to James Cason and Affidavit of Aaron Leggett | AR 2095-2099 | 12/4/2017 |
| 2100 | Attachments to December 1, 2017 Affidavit of Aaron Leggett | AR 2100-2110 | 12/4/2017 |
| 2114 | Native Village of Eklutna Email re: Eklutna Follow-up Questions | AR 2114-2121 | 12/20/2017 |
| 2140 | Sansonetti Opinion - Governmental Jurisdiction of Alaska Native Villages Over Land and Nonmembers | AR 2140-2275 | 1/11/1993 |
| 2276 | Secretarial Order of October 30, 1936 | AR 2276-2278 | 10/30/1936 |
| 2283 | Memo from Commissioner, GLO, to Secretary of Interior | AR 2283-2293 | 8/9/1937 |
| 2294 | Public Land Order No. 20 | AR 2294-2298 | 8/4/1942 |

—— **VOLUME 4 OF 4** ——

| 2300 | BLM Field Notes of Dependent Resurvey | AR 2300-2431 | 1/27/1954 |
| 2438 | Report of Projects Development Officer Lado A. Kozely | AR 2438-2445 | 7/24/1963 |
| 2446 | Memorandum: Eklutna Reservation Establishment | AR 2446-2447 | 5/7/1971 |
| 2454 | Memorandum: Iowa Tribe of Oklahoma; Whitecloud Allotment | AR 2454-2465 | 1/7/2010 |
| 2466 | Memorandum: Gaming By the Big Sandy Rancheria on the McCabe Allotment | AR 2466-2472 | 9/6/2006 |

**Page**

| 2480 | Memorandum: Kialegee Tribal Town: Proposed Gaming Site in Broken Arrow, Oklahoma | AR 2480-2496 | 5/24/2012 |
|------|------|------|------|
| 2500 | Memorandum re: Native Village of Barrow Tribal Gaming Ordinance | AR 2500-2506 | 2/1/1996 |
| 2507 | Memorandum: Sampson Johns AIIotment as "Indian Iand" under IGRA | AR 2507-2512 | 9/25/1996 |
| 2513 | Memorandum re: United Keetoowah Band of Cherokee Indians | AR 2513-2518 | 9/29/2000 |
| 2519 | Memorandum: Whether the Maria Christiana Reserve No. 35 is "Indian lands" for Purposes of Gaming under the Indian Gaming Regulatory Act? | AR 2519-2536 | 10/31/2002 |
| 2556 | Executive Order No. 4778 | AR 2556 | 12/5/1927 |
| 2557 | Executive Order No. 6734 | AR 2557 | 6/8/1934 |
| 2565 | Public Land Order 2427 | AR 2565 | 7/12/1961 |
| 2566 | Public Land Order 2516 | AR 2566 | 10/13/1961 |
| 2571 | Leasability of Lands in the Vicinity of Eklutna Withdrawn by Public Land Order No. 2427 | AR 2571-2580 | 5/1/1967 |
| 2582 | DOI Departmental Manual, Pt. 209 Ch. 3 | AR 2582-2584 | 3/16/1992 |

ORIGINAL

4—679
(September 1948)

84



## UNITED STATES
## DEPARTMENT OF THE INTERIOR
### BUREAU OF LAND MANAGEMENT

RECEIVED
JUNEAU, ALASKA
JUN 1 6 1955
BUREAU OF LAND
MANAGEMENT
SURVEY OFFICE

# FIELD NOTES

OF

THE DEPENDENT RESURVEY OF A PORTION OF THE NORTH AND WEST BOUNDARIES,

A PORTION OF THE SUBDIVISIONAL LINES,

THE SUBDIVISION OF SECTIONS 4, 5, 6, 7, 8, 9, 18 and 19,

A PORTION OF THE CENTER LINE TRAVERSE OF THE ALASKA RAILROAD,

TRAVERSE OF THE POWER TRANSMISSION LINE,

AND

THE BOUNDARY OF THE BIRCHWOOD AIRPORT

IN

TOWNSHIP 15 NORTH, RANGE 1 WEST

*Of the* SEWARD *Meridian,*

*In the State of* TERRITORY OF ALASKA

EXECUTED BY

HOBART B. HYATT, CARTOGRAPHER (CADASTRAL)

*Under special instructions dated* June 6 *, 19* 52 *, which provided*

*for the surveys included under Group No.* 82 *, approved* June 30, 1952

*'d assignment instructions dated* April 28 and
May 26 *, 19* 52
1953

*Survey commenced* August 15 th *, 19* 52

*Survey completed* October 21st *, 19* 53

AR002300

Case 1:19-cv-02388-DLF   Document 69   Filed 05/07/21   Page 8 of 238





AR002301



Page    Index



Sec. 7          Sec. 8          Sec. 9

Alaska Railroad
   In Sec. 7, Pages 123 and 124
   In Sec. 6, Page 124
   In Sec. 5, Pages 124, 125 and 126
Power Transmission Line in Sec. 7, Page 127

73 b



Page 3 – Index

Sec. 18



Alaska Railroad in Sec. 18, pages 121,122 and 123.
Power Transmission Line in Sec. 18, pages 126 and 127.

Sec. 19



Alaska Railroad in Sec. 19, page 121

73b

- 1 -



## T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | The northwest portion of the township was originally surveyed by Warner and Williamson, U.S. Surveyors in 1912. The south half of the west boundary of the township with sections 4, 8, 18 and 19, were originally surveyed by Wilhelm, U.S. Surveyor, with Transitmen Cadwell and Streit in 1916. The south and east boundaries of section 9 were surveyed by John M. Short, Cadastral Engineer, in 1949. |

The following dependent resurvey of a portion of the north and west boundaries, a portion of the subdivisional lines, and the subdivision of sections 4, 5, 6, 7, 8, 9, 18 and 19, of T. 15 N., R. 1 W., commenced on August 15, 1952 and was executed with a W. and L.E. Gurley solar transit Serial No. 38117. The horizontal plates read by double opposite verniers to single minutes of arc, which is also the least count on the vernier of the vertical circle. After satisfactory tests, the instrument was found free from appreciable error and was approved by the Chief, Division of Cadastral Engineering for Alaska. Prior to beginning the survey, all the adjustments of the transit were examined and found correct.

All measurements were made with a 5 chain steel tape graduated the first chain to links and the remainder to 10 link intervals; the first and last links were graduated to tenths of links. The tape was tested with a 1 chain standard steel tape kept for that purpose and found correct. All measurements were made on the slope and the vertical angle of each interval was ascertained with the transit circle or a double set of clinometers in good adjustment. The horizontal equivalent to the nearest tenth of a link is entered in the field note record.

The directions of all lines are referred directly by deflection from meridians established by numerous direct altitude observations of the sun for azimuth during the progress of the survey. In order to simplify the record, the true line notes only are supplied herewith, which refer to the completed survey.

Before restoring the corners, the lines of the original survey were retraced and diligent search made for any evidence of the original corners, bearing trees and other calls of the original field note record. When duly identified, the corner positions were remonumented and new bearing trees marked.
The rules of proportionate measurement were applied in order to ascertain the position of lost corners, after completing the necessary retracements to connect with the identified corner locations, but not until exhausting every reasonable possibility of finding direct evidence for the control of each particular corner. The true lines, thus adjusted to the identified original evidence, were then duly run and marked through the timber.

The retracement data were submitted for office examination and verification prior to the conclusion of the field work. The 1/1024, 1/256 and 1/64 section corners are marked with a pine post, 2x3x36 ins., painted white, and set so that on the north and south control lines the scribed corner markings are facing south and the section number on the 2 inch side is facing east. On the east and west control lines the 3 inch side scribed with the corner markings is facing east and the 2 inch side with the section number facing south.

The data furnished with the special instructions give the geographic positions for the SW. corner of the township as latitude 61° 20' 13" N., and longitude 149° 32' 38.8" W.

The magnetic declination in 1952 is 26¼° E.

---

DEPENDENT RESURVEY OF A PORTION OF THE WEST
BOUNDARY OF T. 15 N., R. 1 W.

Reestablishment of the survey Executed
By C.K. Streit, U.S. Transitman in
1916

AR002304

8ð

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | Beginning at the ¼ sec. cor. of Secs. 19 and 24 on the west boundary of the township, which is monumented with an iron post, 1 in. diam., firmly set 4 ins. above ground, mkd. as described in the official record. The original bearing trees were destroyed by fire. |
| | from which new bearing trees |
| | A spruce, 8 ins. diam., bears S. 35½° E., 57½ lks. dist., mkd. ¼ S19 BT. |
| | A spruce, 6 ins. diam., bears N. 61½° W., 77 lks. dist., mkd. ¼ S24 BT. |
| | N. 0° 07' W., bet. secs. 19 and 24. |
| | Over gently rolling land, scattered small spruce timber and brush undergrowth. |
| 15.48 | Power line, bears N. 38° 46' E., and S. 38° 46' W. |
| 19.865 | Point for the N 1/16 sec. cor. of secs. 19 and 24. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div align="center">

N 1/16

S 24  |  S 19

1952
</div>

| | |
|---|---|
| | from which |
| | A birch, 6 ins. diam., bears S. 46° W., 78 lks. dist., mkd. N 1/16 S24 BT. |
| | A birch, 6 ins. diam., bears N. 18½° W., 56½ lks. dist., mkd. N 1/16 S24 BT. |
| 23.40 | Bulldozed road, bears NE. and SW. |
| 32.165 | Center line of the Alaska Railroad, bears N. 41° E., and SW. on curve. |
| 33.45 | Telephone line, bears NE. and SW. |
| 38.40 | Bart Creek, 10 lks. wide, 18 ins. deep, course NW. |
| 39.73 | The cor. of secs. 13, 18, 19 and 24, which is monumented with an iron post, 3 ins. diam., firmly set, 18 ins. above ground, mkd. as described in the official record. |
| | Land, gently rolling. Soil, sandy loam. Timber, spruce, birch and aspen. |

<div align="center">

REESTABLISHEMENT OF THE SURVEY EXECUTED BY J.F. WARNER AND
F.W. WILLIAMSON, U. S. SURVEYORS, IN 1912
</div>

| | |
|---|---|
| | From the cor. of secs. 13, 18, 19 and 24, on west boundary of township. |
| | N. 0° 06'E., bet. secs. 13 and 18. |
| | Over marshy land through scattered small timber. |
| 4.996 | Point for the S-S-S 1/256 sec. cor. of secs. 13 and 18. |

AR002305



T. 15 N., R. 1 W., SM.

| Chains | |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-S-S 1/256 S13 S18. |
| 9.992 | Point for the S-S 1/64 sec. cor. of secs. 13 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-S 1/64 S13 S18. |
| 14.988 | Point for the N-S-S 1/256 sec. cor. of secs. 13 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-S-S 1/256 S13 S18. |
| 19.985 | Point for the S 1/16 sec. cor. of secs. 13 and 18. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 24 ins. in the ground, with brass cap mkd. |

<div align="center">

S 1/16

S 13 | S 18

1952

</div>

from which

A spruce, 10 ins. diam., bears S. 68 3/4° W., 91 lks. dist., mkd. S 1/16 S13 BT.

A spruce, 16 ins. diam., bears N. 45¼° W., 83 lks. dist., mkd. S/16 S13 BT.

| 21.50 | Fire Creek, 15 lks. wide, 18 ins. deep, course NE. |
| 24.981 | Point for the S-N-S 1/256 sec. cor. of secs. 13 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-N-S 1/256 S13 S18. |
| 29.977 | Point for the N-S 1/64 sec. cor. of secs. 13 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-S 1/64 S13 S18. |
| 31.60 | Fire Creek, 20 lks. wide, 18 ins. deep, course NW. |
| 34.973 | Point for the N-N-S 1/256 sec. cor. of secs. 13 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-N-S 1/256 S13 S18. |
| 39.00 | Along right bank of Fire Creek, 10 lks. wide, course N. from SW. |
| 39.970 | The ¼ sec. cor. of secs. 13 and 18 which is monumented with an iron post, 1 in. diam., loosely set 18 ins. above ground, mkd. as described in the official record; I reset this post in its original position 32 ins. in the ground. |

from which

Original bearing trees:

A spruce, 10 ins. diam., bears S. 10° E., 66½ lks. dist., mkd. ¼ S18 BT.

New Bearing tree:

A spruce, 6 ins. diam., bears N.78½° W., 69 lks. dist., mkd. ¼ S13 BT.

AR002306



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | N. 0° 01' W., beginning new measurement. |
| | Over gently rolling land along east edge of Fire Creek, course N. |
| 1.00 | Fire Creek, course NE. |
| 5.006 | Point for the S-S-N 1/256 sec. cor. of secs. 13 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-S-N 1/256 S13 S18. |
| 10.013 | Point for the S-N 1/64 sec. cor. of secs. 13 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-N 1/64 S13 S18. |
| 15.020 | Point for the N-S-N 1/256 sec. cor. of secs. 13 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-S-N 1/256 S13 S18. |
| 20.027 | Point for the N 1/16 sec. cor. of secs. 13 and 18. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 24 ins. in the ground, with brass cap mkd. |

$$\text{N 1/16}$$
$$\text{S 13} \quad | \quad \text{S 18}$$
$$1952$$

| | |
|---|---|
| | from which |
| | A spruce, 8 ins. diam., bears N. 76 3/4° E., 54 lks. dist., mkd. N 1/16 S18 BT. |
| | A spruce, 7 ins. diam., bears S. 34¼° E., 74 lks. dist., mkd. N 1/16 S18 BT. |
| 25.034 | Point for the S-N-N 1/256 sec. cor. of secs. 13 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-N-N 1/256 S13 S18. |
| 30.041 | Point for the N-N 1/64 sec. cor. of secs. 13 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-N 1/64 S13 S18. |
| 35.048 | Point for the N-N-N 1/256 sec. cor. of secs. 13 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-N-N 1/256 S13 S18. |
| | Over muskeg swamp. |
| 40.055 | The cor. of secs. 7, 12, 13 and 18, which is monumented with an iron post, 3 ins. diam., loosely set, mkd. and witnessed as described in the official record. I reset this post in its original position 32 ins. in the ground. The original bearing trees are dead. |
| | From which new bearing trees: |
| | A spruce, 6 ins. diam., bears N. 41¼° E., 103 lks. dist., mkd. T15N R1W S7 BT. |
| | A spruce, 6 ins. diam., bears S. 70° E., 145 lks. dist., mkd. T15N R1W S18 BT. |

AR002307



## T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | A spruce, 6 ins. diam., bears S. 17½° W., 107½ lks. dist., mkd. T15N R2W S13 BT. |
| | A spruce, 6 ins. diam., bears N. 52° W., 83½ lks. dist., mkd. T15N R2W S12 BT. |

Land, gently rolling.
Soil, sandy loam and muck.
Timber, spruce, birch and aspen.

---

NORTH, bet. secs. 7 and 12.

Ascend gradually over rolling land, through heavy spruce and birch timber and dense undergrowth.

| 5.002 | Point for the S-S-S 1/256 sec.cor. of secs. 7 and 12. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-S-S 1/256 S7 S12. |
| 10.005 | Point for the S-S 1/64 sec. cor. of secs. 7 and 12. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-S 1/64 S7 S12. |
| 15.007 | Point for the N-S-S 1/256 sec. cor. of secs. 7 and 12. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-S-S 1/256 S7 S12. |
| 20.010 | Point for the S 1/16 sec. cor. of secs. 7 and 12. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S 1/16 S7 S12. |
| 35.50 | Top gradual slope.  Thence descend over NW. slope. |
| 40.020 | The ¼ sec. cor. of secs. 7 and 12, which is monumented with an iron post, firmly set 8 ins. above ground, mkd. and witnessed as described in the official record. |

Land, rolling.
Soil, sandy loam.
Timber, spruce, birch and aspen.

---

### DEPENDENT RESURVEY OF A PORTION OF THE NORTH BOUNDARY OF T. 15 N., R. 1 W.

---

### Reestablishment of the Survey Executed By J.F. Warner and F.W. Williamson, U.S. Surveyors, in 1912.

---

Beginning at the cor. of secs. 4, 5, 32 and 33, on the north boundary of the township, which is monumented with an iron post, 3 ins. diam., firmly set 12 ins. above ground, mkd. as described in the official record.  The original bearing trees were destroyed by age and fire.

from which new bearing trees:

A birch, 8 ins. diam., bears N. 58° E., 49 lks. dist., mkd. T16N R1W S33 BT.

A birch, 6 ins. diam., bears S. 38½° E., 26 lks. dist., mkd. T15N R1W S4 BT.

AR002308

U. S. GOVERNMENT PRINTING OFFICE      16—28520-1



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | A birch, 8 ins. diam., bears S. 42° W., 71 lks. dist., mkd. T15N R1W S5 BT. |
| | A birch, 8 ins. diam., bears N. 61° W., 25 lks. dist., mkd. T16N R1W S32 BT. |
| | **WEST, bet. secs. 5 and 32.** |
| | Over rolling land through small timber. |
| 1.70 | Descend 20 ft. over cut bank. |
| 2.32 | Center line of the Alaska Railroad, bears S. 35° 36' W., and NE. on curve.  Thence descend 50 ft. over NW. slope. |
| 3.60 | Telephone line follows the railroad. |
| 4.80 | Bottom of descent, bears NE. and SW.  Thence over nearly level land through timber. |
| 4.997 | Point for the E-E-E 1/256 sec. cor. of secs. 5 and 32. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-E-E 1/256 S5 S32. |
| 9.995 | Point for the E-E 1/64 sec. cor. of secs. 5 and 32. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-E 1/64 S5 S32. |
| 14.992 | Point for the W-E-E 1/256 sec. cor. of secs. 5 and 32. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. W-E-E 1/256 S5 S32. |
| 19.990 | Point for the E 1/16 sec. cor. of secs. 5 and 32. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |
| | $$E\ 1/16\ \frac{S32}{S5}$$ <br> 1953 |
| | from which |
| | A birch, 6 ins. diam., bears N. 72½° E., 14 lks. dist., mkd. E 1/16 S32 BT. |
| | A birch, 8 ins. diam., bears S. 49½° E., 29 lks. dist., mkd. E 1/16 S5 BT. |
| 24.987 | Point for the E-W-E 1/256 sec. cor. of secs. 5 and 32. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-W-E 1/256 S5 S32. |
| 29.985 | Point for the W-E 1/64 sec. cor. of secs. 5 and 32. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. W-E 1/64 S5 S32. |
| 39.980 | The ¼ sec. cor. of secs. 5 and 32, which is monumented with an iron post, 1 in. diam., firmly set, 10 ins. above ground, mkd. as described in the official record.  The original bearing trees were destroyed by fire and age. |
| | from which , new bearing trees: |

AR002309

173b

84



### T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | A birch, 6 ins. diam., bears N. 54° E., 15 lks. dist., mkd. ¼ S32 BT. |
| | A birch, 6 ins. diam., bears N. 58° W., 24 lks. dist., mkd. ¼ S32 BT. |

Land, nearly level.
Soil, sandy loam.
Timber, spruce, birch and aspen.

---

### DEPENDENT RESURVEY OF A PORTION OF THE SUBDIVISION LINES IN T.15 N., R. 1 W.

---

Reestablishment of the Surveys Executed by J.F. Warner and
F.W. Williamson, U.S. Surveyors, in 1912, V.H. Wilhelm,
U.S. Surveyor, in 1916 and by J.M. Short, Cadastral Engineer in 1949

---

| Chains | |
|---|---|
| | Beginning at the cor. of secs. 13, 18, 19 and 24 on the west boundary of the township. |
| | S. 89° 59' E., bet. secs. 18 and 19. |
| | Over marshy land. |
| 1.65 | Telephone line, bears approximately N. and S. 6° W. |
| | Ascend 45 ft. over W. slope. |
| 2.535 | Center line of the Alaska Railroad, bears S. 3° 21' E., and N.3° 21'W. |
| | Ascend 20 ft. over NW. slope through dense, small birch timber. |
| 4.00 | Top of spur, slopes SW.  Thence over rolling land through timber. |
| 6.675 | Point for the W-W 1/64 sec. cor. of secs. 18 and 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. W-W 1/64 S18 S19. |
| 11.658 | Point for the E-W-W 1/256 sec. cor. of secs. 18 and 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-W-W 1/256 S18 S19. |
| 16.640 | Point for the W 1/16 sec. cor. of secs. 18 and 19. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

W 1/16
S 18

S 19
1952

from which

A birch, 6 ins. diam., bears N. 83¼° E., 36 lks. dist., mkd.
W 1/16 S18 BT.

A birch, 6 ins. diam., bears N. 34¼° W., 38 lks. dist., mkd.
W 1/16 S18 BT.

| Chains | |
|---|---|
| 19.515 | Power line, bears N. 38° 46' E., and S. 38° 46' W. |
| 19.70 | Bulldozed road, bears NE. and SW. |
| 26.605 | Point for the E-W 1/64 sec. cor. of secs. 18 and 19. |

AR002310

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-W 1/64 S18 S19. |
| 31.588 | Point for the E-E-W 1/256 sec. cor. of secs. 18 and 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-E-W 1/256 S18 S19. |
| 36.570 | The 1/4 sec. cor. of secs. 18 and 19, which is monumented with an iron post, 1 in. diam., loosely set, marked as described in the official record.  I reset this post in its original position 28 ins. in the ground and raise a mound of stone, 3 ft. base around the corner post to top.  The original bearing trees are dead and fallen. |

From which new bearing trees:

    A spruce, 10 ins. diam., bears N. 41 3/4° E., 78 lks. dist., mkd. 1/4 S18 BT.

    A spruce, 16 ins. diam., bears N. 48 1/2° W., 110 lks. dist., mkd. 1/4 S18 BT.

S. 89° 59' E., beginning new measurement.

Over rolling land through large timber.

| 2.500 | Point for the 1/1024 sec. cor. of secs. 18 and 19. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S18 S19. |
| 5.000 | Point for the W-W-E 1/256 sec. cor. of secs. 18 and 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. W-W-E 1/256 S18 S19. |
| 7.500 | Point for the 1/1024 sec. cor. of secs. 18 and 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S18 S19. |
| 10.000 | Point for the W-E 1/64 sec. cor. of secs. 18 and 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. W-E 1/64 S18 S19. |
| 12.500 | Point for the 1/1024 sec. cor. of secs. 18 and 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S18 S19. |
| 15.000 | Point for the E-W-E 1/256 sec. cor. of secs. 18 and 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-W-E 1/256 S18 S19. |
| 17.500 | Point for the 1/1024 sec. cor. of secs. 18 and 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S18 S19. |
| 20.000 | Point for the E 1/16 sec. cor. of secs. 18 and 19. |
| | Set an iron post, 28 ins. long, 2 1/2 ins. diam., 24 ins. in the ground, with brass cap mkd. |

AR002311

4—678 b



- 9 -

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | E 1/16  $\dfrac{\text{S 18}}{\text{S 19}}$ |
| | 1952 |
| | from which |
| | A birch, 10 ins. diam., bears S. 41½° W., 53 lks. dist., mkd. E 1/16 S19 BT. |
| | A birch, 6 ins. diam., bears N. 44½° W., 22½ lks. dist., mkd. E 1/16 S18 BT. |
| 26.00 | Creek, 10 lks. wide, 12 ins. deep, course N. |
| 40.000 | The cor. of secs. 17, 18, 19 and 20, which is monumented with an iron post, 2 ins. diam., firmly set, 12 ins. above ground, mkd. and witnessed as described in the official record of the subdivisional survey of 1949. |
| | Land, hilly.<br>Soil, sandy loam.<br>Timber, spruce, birch and aspen. |
| | From the ¼ sec. cor. of secs. 19 and 20, which is monumented with an iron post, 1 in. diam., firmly set 6 ins. above ground, mkd. and witnessed as described in the official record. |
| | N. 0° 14' W., bet. secs. 19 and 20. |
| | Over rolling land through timber and undergrowth. |
| 15.25 | Power line, under construction, bears approximately N. 38° E., and S. 38° W. |
| 20.000 | Point for the N 1/16 sec. cor. of secs. 19 and 20. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 24 ins. in the ground, with brass cap mkd. |
| | N 1/16  S 19 \| S 20 |
| | 1952 |
| | from which |
| | A birch, 6 ins. diam., bears S. 70 3/4° W., 20 lks. dist., mkd. N 1/16 S19 BT. |
| | A birch, 6 ins. diam., bears N. 60½° W., 44 lks. dist., mkd. N 1/16 S19 BT. |
| 23.30 | Creek, 5 lks. wide, 12 ins. deep, course SW. |
| 23.70 | Ascend 55 ft. over S. slope of ridge. |
| 25.80 | Ridge, bears E. and W.  Thence descend 90 ft. over N. slope. |
| 36.00 | Thence ascend 10 ft. over SE. slope. |
| 40.000 | The cor. of secs. 17, 18, 19 and 20. |
| | Land, rolling.<br>Soil, sandy loam.<br>Timber, spruce, birch and aspen.<br>Undergrowth, small timber, alder, devils club and buck br |

AR002312

4—678 b

- 14 -

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | N. 0° 03' W., bet. secs. 17 and 18. |
| | Descend 75 ft. over NW. slope through timber. |
| 13.30 | Base of slope, bears NE. and SW. Thence over level land through scattered timber. |
| 15.10 | Creek, 6 lks. wide, 10 ins. deep, course SW. |
| 20.000 | Point for the S 1/16 sec. cor. of secs. 17 and 18. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div align="center">

S 1/16

S 18 | S 17

1952

</div>

| | |
|---|---|
| | Dig pits, 18x18x12 ins., N. and S. of post, 3 ft. dist. |
| 20.50 | Descend 10 ft. bank, bears NE. and SW., thence over marshy land through scattered undergrowth. |
| 31.80 | Mink Creek, 10 lks. wide, 18 ins. deep, course SW. |
| 40.000 | The ¼ sec. cor. of secs. 17 and 18, which is monumented with an iron post, 1 in. diam., firmly set, 10 ins. above ground, mkd. and witnessed as described in the official record. |
| | Renew pits, 18x18x12 ins., N. and S. of post, 3 ft. dist. |

————————————

| | |
|---|---|
| | N. 0° 07' W., beginning new measurement. |
| | Over marshy land. |
| 0.50 | Ascend 5 ft. bank, bears NE. and SW., thence over level land through dense small birch and alder timber. |
| 5.000 | Point for the S-S-N 1/256 sec. cor. of secs. 17 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-S-N 1/256 S17 S18. |
| 5.70 | Ascend 5 ft. bank, bears NE. and SW., thence over gently rolling land through small timber. |
| 10.000 | Point for the S-N 1/64 sec. cor. of secs. 17 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-N 1/64 S17 S18. |
| 15.000 | Point for the N-S-N 1/256 sec. cor. of secs. 17 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-S-N 1/256 S17 S18. |
| 20.000 | Point for the N 1/16 sec. cor. of secs. 17 and 18. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div align="center">

N 1/16

S 18 | S 17

1952

</div>

| | |
|---|---|
| | from which |

AR002313



- 11 -

## T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | A birch, 6 ins. diam., bears S. 54½° W., 68 lks. dist., mkd. N 1/16 S18 BT. |
| | A birch, 6 ins. diam., bears N. 42° W., 70 lks. dist., mkd. N 1/16 S18 BT. |
| 25.00 | Point for the S-N-N 1/256 sec. cor. of secs. 17 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-N-N 1/256 S18. |
| 30.000 | Point for the N-N 1/64 sec. cor. of secs. 17 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-N 1/64 S17 S18. |
| 35.000 | Point for the N-N-N 1/256 sec. cor. of secs. 17 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-N-N 1/256 S17 S18. |
| 40.000 | The cor. of secs. 7, 8, 17 and 18, which is monumented with an iron post, 2 ins. diam., firmly set, 10 ins. above ground, mkd. as described in the official record. The original bearing trees were destroyed by fire and age. |
| | Dig pits; 18x18x12 ins., in each section, 3 ft. dist. |
| | Land, gently rolling. Soil, sandy loam. Timber, spruce, birch and aspen. |

From the ¼ sec. cor. of secs. 9 and 16, which is monumented with an
iron post, 2½ ins. diam., firmly set 4 ins. above ground, mkd. and
witnessed as described in the official record.

S. 89° 55' W., bet. secs. 9 and 16.

Ascend 40 ft. to top of ridge, bears N. and S.

| 1.20 | Top of ridge; descend over W. slope through large timber and alder undergrowth. |
| 5.001 | Point for the E-E-W 1/256 sec. cor. of secs. 9 and 16. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-E-W 1/256 S9 S16. |
| 10.002 | Point for the E-W 1/64 sec. cor. of secs. 9 and 16. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-W 1/64 S9 S16. |
| 20.005 | Point for the W-1/16 sec. cor. of secs. 9 and 16. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., flush with the surface, with brass cap mkd. |

$$\text{W 1/16} \quad \frac{\text{S 9}}{\text{S 16}}$$

1953

from which

A birch, 18 ins. diam., bears N. 56½° W., 88 lks. dist., mkd.
W 1/16 S9 BT.



4—678 B

- 12 --

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | A birch, 12 ins. diam., bears S. 70° E., 30 lks. dist., mkd. W 1/16 S16 BT. |
| 30.007 | Point for the W-W 1/64 sec. cor. of sec. 9 and 16.  No corner monument set. |
| 37.40 | SE. edge of swamp, 6.50 chs. wide, extends W. and N. 70° E. |
| 40.010 | The true point for cor. of secs. 8, 9, 16 and 17, as determined from the witness corner which bears S. 0° 07' E., 1.50 chs. dist., and which is monumented with an iron post, 2½ ins. diam., set 8 ins. in above ground, mkd. and witnessed as described in the official record. |

Land, rolling.
Soil, sandy loam to muck.
Timber, spruce, birch and aspen.

---

From the true point for cor. of secs. 8, 9, 16 and 17.

S. 89° 53' W., bet. secs. 8 and 17.

Over marshy land.

| 3.80 | Power line, bears N. 31½° E., and S. 31½° W.;thence ascend steep E. slope of ridge, bears N. and S. |
|---|---|
| 5.002 | Point for the E-E-E 1/256 sec. cor. of secs. 8 and 17. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-E-E 1/256 S8 S17.

Top of ridge; descend over W. slope through timber.

| 10.005 | Point for the E-E 1/64 sec. cor. of secs. 8 and 17. |
|---|---|

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-E 1/64 S8 S17.

| 12.00 | Base of slope; thence over nearly level land through timber. |
|---|---|
| 15.007 | Point for the W-E-E 1/256 sec. cor. of secs. 8 and 17. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. W-E-E 1/256 S8 S17.

| 20.010 | Point for the E 1/16 sec. cor. of secs. 8 and 17. |
|---|---|

Set an iron post, 28 ins. long, 2½ ins. diam., 20 ins. in the ground to bedrock, and in a mound of stone to top, with brass cap mkd.

$$\begin{array}{c} \text{S 8} \\ \hline \text{S 17} \end{array}$$

E 1/16

1953

from which

A spruce, 6 ins. diam., bears S. 5° E., 128 lks. dist., mkd. E 1/16 S17 BT.

A spruce, 6 ins. diam., bears S. 57° W., 106 lks. dist., mkd. E 1/16 S17 BT.

| 25.012 | Point for the E-W-E 1/256 sec. cor. of secs. 8 and 17. |
|---|---|

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-W-E 1/256 S8 S17.

AR002315



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 30.015 | Point for the W-E 1/64 sec. cor. of secs. 8 and 17. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. W-E 1/64 S8 S17. |
| 35.017 | Point for the W-W-E 1/256 sec. cor. of secs. 8 and 17. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. W-W-E 1/256 S8 S17. |
| 40.020 | The ¼ sec. cor. of secs. 8 and 17, which is monumented with an iron post, 1 in. diam., firmly set 6 ins. above ground, mkd. as described in the official record. The original bearing trees were destroyed by fire and age. |
| | From which new bearing trees: |
| | A birch, 8 ins. diam., bears S. 58½° E., 80 lks. dist., mkd. ¼ S17 BT. |
| | A birch, 8 ins. diam., bears S. 55½° W., 97 lks. dist., mkd. ¼ S17 BT. |
| | N. 89° 50' W., beginning new measurement. |
| | Descend NW. slope through large scattered timber. |
| 7.80 | Over marshy land through scattered spruce timber. |
| 19.980 | Point for the W 1/16 sec. cor. of secs. 8 and 17. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |
| | W 1/16 $\dfrac{\text{S 8}}{\text{S 17}}$ |
| | 1952 |
| | Dig pits, 18x18x12 ins., E. and W. of post, 3 ft. dist. |
| | Thence over rolling land through dense small timber. |
| 24.975 | Point for the E-W-W 1/256 sec. cor. of secs. 8 and 17. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-W-W 1/256 S8 S17. |
| 29.970 | Point for the W-W 1/64 sec. cor. of secs. 8 and 17. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. W-W 1/64 S8 S17. |
| 34.965 | Point for the W-W-W 1/256 sec. cor. of secs. 8 and 17. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. W-W-W 1/256 S8 S17. |
| 39.960 | The cor. of secs. 7, 8, 17 and 18. |
| | Land, rolling.<br>Soil, sandy loam.<br>Timber, spruce, birch and aspen. |

AR002316



- 14 -

T. 15 N., R. 1 W., SM.

| Chains | |
|---|---|
| | From the cor. of secs. 7, 8, 17 and 18. |
| | WEST, bet. secs. 7 and 18. |
| | Over rolling land through scattered timber. |
| 4.995 | Point for the E-E-E 1/256 sec. cor. of secs. 7 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-E-E 1/256 S7 S18. |
| 9.756 | Power line, bears N. 17° 07' E., and S. 17° 07' W. |
| 9.990 | Point for the E-E 1/64 sec. cor. of secs. 7 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-E 1/64 S7 S18. |
| 14.985 | Point for the W-E-E 1/256 sec. cor. of secs. 7 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. W-E-E 1/256 S7 S18. |
| 17.40 | Top of bluff, 50 ft. high, bears S. and NE. |
| 18.80 | Base of bluff. |
| 19.980 | Point for the E 1/16 sec. cor. of secs. 7 and 18. |
| | Set an iron post, 2½ ins. diam., 28 ins. long, 24 ins. in the ground, with brass cap mkd. |

$$E \ 1/16 \quad \frac{S \ 7}{S \ 18}$$

1952

from which

A birch, 8 ins. diam., bears S. 72½° W., 146 lks. dist., mkd. E 1/16 S18 BT.

A birch, 6 ins. diam., bears N. 27½° W., 29 lks. dist., mkd. E 1/16 S7 BT.

| 23.60 | Top of bluff, bears NE. and SW.; descend 25 ft. |
| 24.975 | Point for the E-W-E 1/256 sec. cor. of secs. 7 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-W-E 1/256 S7 S18. |
| | Descend 25 ft. over NW. slope. |
| 27.282 | Center line of the Alaska Railroad, bears N. 44°15' E., and S. 44° 15' W. |
| | Ascend 40 ft. over cut bank, slope SE. |
| 29.20 | Top of ridge, bears N. and S.; thence descend over W. slope through timber. |
| 29.970 | Point for the W-E 1/64 sec. cor. of secs. 7 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. W-E 1/64 S7 S18. |

AR002317

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 34.965 | Point for the W-W-E 1/256 sec. cor. of secs. 7 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. W-W-E 1/256 S7 S18. |
| 36.30 | Over marshy land. |
| 39.65 | Fire Creek, 10 lks. wide, 4 ft. deep, course N. |
| 39.960 | The 1/4 sec. cor. of secs. 7 and 18, which is monumented with an iron post, 1 in. diam., loosely set, mkd. as described in the official record. I reset this post in its original position 32 ins. in the ground. |

from which an original bearing tree:

> A spruce, 8 ins. diam., bears S. 58½° E., 44 lks. dist., with marks 1/4 S18 BT legible.

New bearing trees:

> A spruce, 10 ins. diam., bears N. 10¾° E., 65 lks. dist., mkd. 1/4 S7 BT.

> A spruce, 6 ins. diam., bears S. 53° E., 7 lks. dist., mkd. 1/4 S18 BT.

N. 89° 55' W., beginning new measurement.

Over marshy land.

| 1.60 | Ascend 30 ft. over E. slope. |
|---|---|
| 4.994 | Point for the E-E-W 1/256 sec. cor. of secs. 7 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-E-W 1/256 S7 S18. |
| 9.989 | Point for the E-W 1/64 sec. cor. of secs. 7 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-W 1/64 S7 S18. |
| | Continue ascending over rolling land through timber. |
| 14.983 | Point for the W-E-W 1/256 sec. cor. of secs. 7 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. W-E-W 1/256 S7 S18. |
| 19.978 | Point for the W 1/16 sec. cor. of secs. 7 and 18. |
| | Set an iron post, 2½ ins. diam., 28 ins. long, 26 ins. in the ground, with brass cap mkd. |

$$W\ 1/16\ \frac{S\ 7}{S\ 18}$$

1952

from which

> A spruce, 10 ins. diam., bears S. 58 3/4° E., 99 lks. dist., mkd. W 1/16 S18 BT.

> A spruce, 12 ins. diam., bears S. 49¼° W., 92 lks. dist., mkd. W 1/16 S18 BT.

AR002318





- 16 -

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | Descend over NW. slope through timber. |
| 24.972 | Point for the E-W-W 1/256 sec. cor. of secs. 7 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-W-W 1/256 S7 S18. |
| 29.967 | Point for the W-W 1/64 sec. cor. of secs. 7 and 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. W-W 1/64 S7 S18. |
| 34.40 | Base of slope, bears NE. and SW.  Thence over muskeg swamp. |
| 36.440 | The cor. of secs. 7, 12, 13 and 18, on the west boundary of the township. |
| | Land, rolling. Soil, sandy loam. Timber, spruce, birch and aspen. |
| | From the ¼ sec. cor. of secs. 9 and 10, which is monumented with an iron post, 2½ ins. diam., firmly set 4 ins. above the ground, mkd. and witnessed as described in the official record. |
| | N. 0° 05' W., bet. secs. 9 and 10. |
| | Over level land through timber. |
| 1.10 | Graded road, 12 ft. wide, bears N. 50° W., and S. 50° E. |
| | Thence descend over N. slope through alder brush 20 lks. East of and parallel to the graded road. |
| 13.80 | Frame building, 26x15x12 ft., bears W., 1 ch. dist. |
| 18.20 | Graded road, bears E. and W.  Thence over nearly level land. |
| 20.000 | Point for the N 1/16 sec. cor. of secs. 9 and 10, which is monumented with a valve stem, set by a private surveyor, imbedded in the black top surface of the Glenn Highway and mkd. N 1/16 S9 S10. |
| | from which |
| | An iron post, 28 ins. long, 2½ ins. diam., set 26 ins. in the ground for a reference monument, bears S. 45° E., 40.0 ft. dist., with brass cap mkd. N 1/16 S10 RM 40.0' 1953, and an arrow pointing to the true corner. |
| | An iron post, 28 ins. long, 2½ ins. diam., set 26 ins. in the ground, for a reference monument, bears WEST, 40.0 ft. dist., with brass cap mkd. N 1/16 S10 RM 40.0' 1953, and an arrow pointing to the true corner. |
| 20.085 | Intersect center line of Glenn Highway, bears N. 47° 21' E., and S. 47° 21' W.  Thence along E. side of graded road over partly cleardd land. |
| 40.000 | The cor. of secs. 3, 4, 9 and 10, which is monumented with an iron post, 2 ins. diam., firmly set, mkd. and witnessed as described in the official record. |
| | Land, gently rolling. Soil, sandy loam. Timber, spruce, birch and aspen. |

AR002319



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | From the true point for the cor. of secs. 8, 9, 16 and 17. |
| | N. 0° 08' W., bet. secs. 8 and 9. |
| | Over marshy land through scattered spruce timber. |
| 2.00 | Ascend SE. slope through timber. |
| 5.003 | Point for the S-S-S 1/256 sec. cor. of secs. 8 and 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-S-S 1/256 S8 S9. |
| 5.75 | Main power line, bears N. 31½° E., and S. 31½° W. |
| 10.005 | Point for the S-S 1/64 sec. cor. of secs. 8 and 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-S 1/64 S8 S9. |
| 15.008 | Point for the N-S-S 1/256 sec. cor. of secs. 8 and 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-S-S 1/256 S8 S9. |
| 20.010 | Point for the S 1/16 sec. cor. of secs. 8 and 9. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div align="center">

S 1/16

S 8 | S 9

1953

</div>

from which

    A birch, 14 ins. diam., bears N. 55° W., 31 lks. dist., mkd.
      S 1/16 S8 BT.

    A spruce, 6 ins. diam., bears S. 25° "., 50 lks. dist., mkd.
      S 1/16 S8 BT.

| | |
|---|---|
| 25.013 | Point for the S-N-S 1/256 sec. cor. of secs. 8 and 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-N-S 1/256 S8 S9. |
| 28.00 | Top of ascent; bears NE. and SW.  Thence descend NW. slope through large timber and dense undergrowth. |
| 30.015 | Point for the N-S 1/64 sec. cor. of secs. 8 and 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-S 1/64. |
| 35.018 | Point for the N-N-S 1/256 sec. cor. of secs. 8 and 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-N-S 1/256 S8 S9. |
| | Thence over rolling land through large timber. |
| 38.80 | Thence descend over steep N. slope through timber. |
| 40.020 | The ¼ sec. cor. of secs. 8 and 9, which is monumented with an iron post, 1 in. diam., firmly set 5 ins. above ground, mkd. and witnessed as described in the official record. |

AR002320



- 18 -

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | N. 0° 01' W., beginning new measurement. |
| | Descend over S. slope through timber. |
| 0.80 | Power line, bears E. and W.  Thence over hilly land through large timber, downfall, and dense undergrowth. |
| 5.003 | Point for the S-S-N 1/256 sec. cor. of secs. 8 and 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-S-N 1/256 S8 S9. |
| 10.005 | Point for the S-N 1/64 sec. cor. of secs. 8 and 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-N 1/64 S8 S9. |
| 15.008 | Point for the N-S-N 1/256 sec. cor. of secs. 8 and 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-S-N 1/256 S8 S9. |
| 17.60 | Graded road, bears E. and W. |
| 20.010 | Point for the N 1/16 sec. cor. of secs. 8 and 9. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div align="center">

N 1/16

S 8 | S 9

1953

</div>

| | |
|---|---|
| | from which |
| | A birch, 16 ins. diam., bears N. 55° E., 55 lks. dist., mkd. N 1/16 S9 BT. |
| | A birch, 8 ins. diam., bears S. 72° W., 65 lks. dist., mkd. N 1/16 S8 BT. |
| 25.013 | Point for the S-N-N 1/256 sec. cor. of secs. 8 and 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-N-N 1/256 S8 S9. |
| 30.015 | Point for the N-N 1/64 sec. cor. of secs. 8 and 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-N 1/64 S8 S9. |
| 34.75 | Creek, 4 lks. wide, 4 ins. deep, course NW. |
| 35.018 | Point for the N-N-N 1/256 sec. cor. of secs. 8 and 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-N-N 1/256 S8 S9. |
| 40.020 | The cor. of secs. 4, 5, 8 and 9, which is monumented with an iron post, 2 ins. diam., firmly set 6 ins. above ground, mkd. as described in the official record. |
| | from which original bearing trees: |
| | A birch, 12 ins. diam., bears S. 42 3/4° E., 34 lks. dist., mkd. T15N R1W S9 BT. |

AR002321



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | A birch, 8 ins. diam., bears N. 51½° W., 101 lks. dist., mkd. T15N R1W S5 BT. |
| | Land, rolling.<br>Soil, sandy loam.<br>Timber, spruce, birch and aspen. |
| | From the cor. of secs. 3, 4, 9 and 10. |
| | S. 89° 56' W., bet. secs. 4 and 9. |
| | Over rolling land through small timber 50 lks. south of power line bearing E. and W. |
| 0.20 | Graded road, bears S. and W. 20 lks. south of line. |
| 5.30 | Frame house, 20x20 ft., bears S. 30 lks. dist.  End of graded road. |
| 10.00 | Power line, bears S. and N. 50 lks.,then E. |
| 20.010 | Point for the E 1/16 sec. cor. of secs. 4 and 9. |
| | Set an iron post,28 ins. long, 2½ ins. diam., flush with the surface, with brass cap mkd. |
| | E 1/16 $\frac{S 4}{S 9}$ |
| | 1953 |
| | from which |
| | A spruce, 10 ins. diam., bears S. 63° E., 205 lks. dist., mkd. E 1/16 S9 BT. |
| | A birch, 6 ins. diam., bears N. 10° W., 29 lks. dist., mkd. E 1/16 S4 BT. |
| 32.20 | Power line and graded road, bears N. 20° W., and S. 20° E. |
| 34.40 | Main power line, bears N. 31½° E., and S. 31½° W. |
| 40.020 | The ¼ sec. cor. of secs. 4 and 9, which is monumented with an iron post, 1 in. diam., loosely set 6 ins. above ground, mkd. as described in the official record. |
| | Raise a mound of dirt around corner post to cap. |
| | N. 89° 58' W., beginning new measurement. |
| | Over nearly level land through small timber. |
| 0.20 | Graded road, bears N. and S. |
| 5.000 | Point for the E-E-W 1/256 sec. cor. of secs. 4 and 9. |
| | Set a wood post, 2x3x6 ins., painted white, 18 ins. in the ground mkd. E-E-W 1/256 S4 S9. |
| 7.40 | Descend 55 ft. over steep SW. slope of bluff. |
| 10.000 | Point for the E-W 1/64 sec. cor. of secs. 4 and 9. |
| | Set a wood post, 2x3x6 ins., painted white, 18 ins. in the ground, mkd. E-W 1/64 S4 S9. |
| | Descend 65 ft. over SW. slope of bluff. |

AR002322



107

- 20 -

T. 15 N., R. 1 W., S.M.

| Chains | |
|--------|--|
| 12.20 | Base of bluff, bears NW. and SE.  Thence over nearly level land through large timber and dense undergrowth. |
| 15.000 | Point for the W-E-W 1/256 sec. cor. of secs. 4 and 9. |
| | Set a wood post, 2x3x6 ins., painted white, 18 ins. in the ground, mkd. W-E-W 1/256 S4 S9. |
| 18.20 | Peters Creek, 1 ch. wide, 4 ft. deep, course N. 25° W. |
| 20.000 | Point for the W 1/16 sec. cor. of secs. 4 and 9. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., flush with the surface, with brass cap mkd. |

$$W \ 1/16 \ \frac{S \ 4}{S \ 9}$$
$$1955$$

from which

    A birch, 20 ins. diam., bears N. 25° E., 83 lks. dist., mkd. W 1/16 S4 BT.

    A cottonwood, 24 ins. diam., bears S. 18° E., 21 lks. dist., mkd. W 1/16 S9 BT.

| 23.00 | Draw, drains NW. |
| 25.000 | Point for the E-W-W 1/256 sec. cor. of secs. 4 and 9. |
| | Set a wood post, 2x3x6 ins., painted white, 18 ins. in the ground, mkd. E-W-W 1/256 S4 S9. |
| 30.000 | Point for the W-W 1/64 sec. cor. of secs. 4 and 9. |
| | Set a wood post, 2x3x6 ins., painted white, 18 ins. in the ground, mkd. W-W 1/64 S4 S9. |
| | Spring, course NW. |
| 35.000 | Point for the W-W-W 1/256 sec. cor. of secs. 4 and 9. |
| | Set a wood post, 2x3x6 ins., painted white, 18 ins. in the ground, mkd. W-W-W 1/256 S4 S9. |
| 40.000 | The Cor. of secs. 4, 5, 8 and 9. |
| | Land, hilly. |
| | Soil, sandy loam. |
| | Timber, spruce, birch, aspen and cottonwood. |

From the cor. of secs. 7, 8, 17 and 18.

N. 0° 08' W., bet. secs. 7 and 8.

Descend gradually over gently rolling land through undergrowth and scattered timber.

| 5.000 | Point for the S-S-S 1/256 sec. cor. of secs. 7 and 18. |
| | Set a wood post, 2x3x6 ins., painted white, 18 ins. in the ground, mkd. S-S-S 1/256 S7 - S8. |
| 10.000 | Point for the S-S 1/64 sec. cor. of secs. 7 and 8. |
| | Set a wood post, 2x3x6 ins., painted white, 18 ins. in the ground, mkd. S-S 1/64 S7 - S8. |

AR002323

4—678 b

108

T. 15 N., R. 1 W., S.M.

| Chains - | |
|---|---|
| 15.000 | Point for the N-S-S 1/256 sec. cor. of secs. 7 and 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-S-S 1/256 S7 S8. |
| 20.000 | Point for the S 1/16 sec. cor. of secs. 7 and 8. |
| | Set an iron post, 2½ ins. diam., 28 ins. long, 24 ins. in the ground, with brass cap mkd.<br><br>S 1/16<br>S7 \| S8<br>1952<br><br>from which<br><br>A birch, 10 ins. diam., bears S. 69° W., 46 lks. dist., mkd. S 1/16 S7 BT.<br><br>A birch, 12 ins. diam., bears N. 45° W., 68 lks. dist., mkd. S 1/16 S7 BT. |
| 25.000 | Point for the S-N-S 1/256 sec. cor. of secs. 7 and 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-N-S 1/256 S7 S8. |
| 30.000 | Point for the N-S 1/64 sec. cor. of secs. 7 and 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-S 1/64 S7 S8. |
| 31.45 | Power line, bears N. 17° 07' E., and S. 17° 07' W. |
| 35.000 | Point for the N-N-S 1/256 sec. cor. of secs. 7 and 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-N-S 1/256 S7 S8. |
| 35.50 | Graded road, bears NE. and SW. |
| 36.60 | Descend 40 ft. over NW. slope of bank. |
| 38.00 | Base of bank, bears NE. and SW; thence over level land through timber. |
| 40.000 | The ¼ sec. cor. of secs. 7 and 8, which is monumented with an iron post, 1 in. diam., firmly set, 4 ins. above ground, mkd. as described in the official record.<br><br>from which an original bearing tree<br><br>A birch, 14 ins. diam., bears N. 80¼° W., 8 lks. dist., mkd. ¼ S7 BT.<br><br>———————————— |
| | N. 0° 23' W., beginning new measurement. |
| | Over level land through small timber. |
| 4.955 | Point for the S-S-N 1/256 sec. cor. of secs. 7 and 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-S-N 1/256 S7 S8. |
| 9.910 | Point for the S-N 1/64 sec. cor. of secs. 7 and 8. |

AR002324

T..15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-N 1/64 S7 S8. |
| 14.865 | Point for the N-S-N 1/256 sec. cor. of Secs. 7 and 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-S-N 1/256 S7 S8. |
| 16.60 | Leave timber, bears NE. and SW. |
| 18.40 | Unimproved road, bears SE. and NW. Thence through a clearing for storage and sidings in the Alaska Railroad Reserve. |
| 19.820 | Point for the N 1/16 sec. cor. of Secs. 7 and 8. |

Set an iron post, 28 ins. long, 2½ diam., 24 ins. in the ground, with brass cap mkd.

<div align="center">

N 1/16

S 7. | S8

1952

</div>

raise a mound of stone, 3 ft. base, 2 ft. high, west of corner.

| 31.90 | Railroad siding, paralleling main tract of the Alaska Railroad. |
|---|---|
| 39.05 | Railroad siding, paralleling main tract of the Alaska Railroad. |
| 39.640 | The cor. of Secs. 5, 6, 7 and 8, which is monumented with an iron post, 2 ins. diam., firmly set 12 ins. above ground, mkd. as described in the official record. |

Raise a mound of stone, 2 ft. base, around the corner post to top.

Land, gently rolling.
Soil, sandy loam.
Timber, spruce, birch and aspen.

From the cor. of secs. 4, 5, 8 and 9.

WEST, bet. secs. 5 and 8.

Over gently rolling land through large timber and dense undergrowth.

| 0.20 | Creek, 10 lks. wide, 2 ins. deep, course N. |
|---|---|
| 5.002 | Point for the E-E-E 1/256 sec. cor. of secs. 5 and 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-E-E 1/256 S5 S8. |
| 10.005 | Point for the E-E 1/64 sec. cor. of secs. 5 and 8. |
| | Set a wood post, 2x3x36 ins.; painted white, 18 ins. in the ground, mkd. E-E 1/64 S5 S8. |
| 15.007 | Point for the W-E-E 1/256 sec. cor. of secs. 5 and 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. W-E-E 1/256 S5 S8. |
| 20.010 | Point for the E 1/16 sec. cor. of secs. 5 and 8. |

Set an iron post, 2½ ins. diam., 28 ins. long, 26 ins. in the ground, with brass cap mkd.

AR002325

U S. GOVERNMENT PRINTING OFFICE      16—28520-1



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | E 1/16 $\frac{S\ 5}{S\ 8}$ |
| | 1953 |
| | from which |
| | A spruce, 10 ins. diam., bears S. 20° E., 41 lks. dist., mkd. E 1/16 S8 BT. |
| | A birch, 12 ins. diam., bears S. 46° W., 26 lks. dist., mkd. E 1/16 S8 BT. |
| 25.012 | Point for the E-W-E 1/256 sec. cor. of secs. 5 and 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. E-W-E 1/256 S5 S8. |
| 30.015 | Point for the W-E 1/64 sec. cor. of secs. 5 and 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. W-E 1/64 S5 S8. |
| 32.90 | Graded road, bears NW. and SE. |
| 35.017 | Point for the W-W-E 1/256 sec. cor. of secs. 5 and 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. W-W-E 1/256 S5 S8. |
| 39.20 | New power line, bears N. and S. |
| 40.020 | The 1/4 sec. cor. of secs. 5 and 8, which is monumented with an iron post, 1 in. diam., firmly set, 6 ins. above ground, mkd. as described in the official record.  The original bearing trees were destroyed by age and clearing. |
| | from which |
| | New bearing trees: |
| | A birch, 8 ins. diam., bears N. 6° E., 97½ lks. dist., mkd. $\frac{1}{4}$ S5 BT. |
| | A birch, 12 ins. diam., bears S. 68° E., 30 lks. dist., mkd. $\frac{1}{4}$ S8 BT. |
| | ——————————— |
| | S. 89° 27' W., beginning new measurement. |
| | Over gently rolling land through dense small timber. |
| 20.110 | Point for the W 1/16 sec. cor. of secs. 5 and 8. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |
| | W 1/16 $\frac{S\ 5}{S\ 8}$ |
| | 1952 |
| | Dig pits, 18x18x12 ins., E. and W. of post, 3 ft. dist. |
| 24.70 | Graded road following power line. |
| 25.04 | Power line, bears N. 17° 07' E., and S. 17° 07' W. |
| 33.90 | Leave timber; thence over level cleared land. |

AR002326



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 37.70 | Railroad siding, paralleling main track of the Alaska Railroad. |
| 39.90 | Railroad siding, paralleling main track of the Alaska Railroad. |
| 40.220 | The cor. of secs. 5, 6, 7 and 8. |

Land, gently rolling.
Soil, sandy to gravelly loam.
Timber, spruce and birch and aspen.

---

N. 89° 25' W., bet. secs. 6 and 7.

Over gently rolling land.

| 0.725 | Center line of the Alaska Railroad, bears S. 22° 55' W., and N. 26° 11' E., on curve. |
| 1.00 | Telephone line, same bearing as railroad.  Enter timber. |
| 3.00 | Center line of the east gravel runway of the Birchwood Airport, bears N. 27° E., and S. 27° W., approximately 4 chs. wide. |
| 16.00 | Center line of the main gravel runway of the Birchwood Airport, bears N. 40° E., and S. 40° W., approximately 8 chains wide. |
| 19.900 | Point for the E 1/16 sec. cor. of secs. 6 and 7. |

Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd.

$$\text{E 1/16} \quad \frac{\text{S 6}}{\text{S 7}}$$

1952

Raise a mound of stone, 3 ft. base, 2 ft. high, N. of corner.

Thence ascend 10 ft. through timber.

| 21.90 | Top of ridge, bears N. and S.  Thence descend 60 ft. over NW. slope. |
| 24.75 | Base of slope; thence over muskeg swamp. |
| 39.800 | The ¼ sec. cor. of secs. 6 and 7, which is monumented with the remains of a 1 in. iron post, the base firmly set in the ground. |

At the corner point:

Set an iron post, 28 ins. diam., 24 ins. in the ground, with brass cap mkd.

$$\frac{1}{4} \quad \frac{\text{S 6}}{\text{S 7}}$$

1952

Reset the original corner, inverted and alongside the iron post and renew pits, 18x18x12 ins., E. and W. of post, 3 ft. dist.

Land, hilly.
Soil, sandy loam.
Timber, spruce, birch and aspen.

---

From the cor. of secs. 4, 5, 8 and 9.

N. 0° 07' W., bet. secs. 4 and 5.

Over nearly level land through large timber and dense undergrowth.

AR002327

U. S. GOVERNMENT PRINTING OFFICE     16—28520-1



4—678 b

T. 15 N., R. 1 W., S.M.

| Chains | |
|--------|---|
| 4.997 | Point for the S-S-S 1/256 sec. cor. of secs. 4 and 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-S-S 1/256 S4 S5. |
| 8.80 | Creek, 10 lks. wide, 3 ins. deep, course W. |
| 9.995 | Point for the S-S 1/64 sec. cor. of sec. 4 and 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-S 1/64 S4 S5. |
| 12.60 | Peter's Creek, 50 lks. wide, 3 ft. deep, course W.  Thence across island approximately 10 chs. long. |
| 13.90 | Peter's Creek, 1 ch. wide, 4 ft. deep, course N. 60° W. |
| 14.992 | Point for the N-S-S 1/256 sec. cor. of secs. 4 and 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-S-S 1/256 S4 S5. |
| 17.80 | Ascend 20 ft. over S. slope through timber. |
| 19.80 | Creek, 5 lks. wide, 2 ins. deep, course SW. |
| 19.990 | Point for the S 1/16 sec. cor. of secs. 4 and 5. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

S 1/16

S 5 | S 4

1953

from which

    A birch, 10 ins. diam., bears S. 66½° E., 16 lks. dist., mkd. S 1/16 S4 BT.

    A birch, 12 ins. diam., bears S. 38½° W., 56 lks. dist., mkd. S 1/16 S5 BT.

Thence ascend 50 ft. through timber.

| 23.80 | Top of slope, bears NE. and SW.  Thence over the gently rolling land through timber. |
| 24.987 | Point for the S-N-S 1/256 sec. cor. of secs. 4 and 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-N-S 1/256 S4 S5. |
| 29.985 | Point for the N-S 1/64 sec. cor. of secs. 4 and 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-S 1/64 S4 S5. |
| 34.982 | Point for the N-N-S 1/256 sec. cor. of secs. 4 and 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-N-S 1/256 S4 S5. |
| 37.80 | Descend 25 ft. over N. slope through timber. |
| 39.980 | The ¼ sec. cor. of secs. 4 and 5, which is monumented with an iron post, 1 in. diam., firmly set, 10 ins. above ground, mkd. as described in the official record.  Original bearing trees destroyed by fire. |

AR002428



- 26 -

T. 15 N., R. 1 W., S.M.

| Chains | from which |
|--------|-----------|
| | New bearing trees: |
| | A birch, 6 ins. diam., bears N. 24° E., 33 lks. dist., mkd. ¼ S4 BT. |
| | A birch, 6 ins. diam., bears S. 28° E., 31 lks. dist., mkd. ¼ S4 BT. |
| | N. 0° 07' W., beginning new measurement. |
| | Descend 40 ft. over N. slope through timber. |
| 5.012 | Point for the S-S-N 1/256 sec. cor. of secs. 4 and 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-S-N 1/256 S4 S5. |
| | Thence over gently rolling level land through timber. |
| 10.025 | Point for the S-N 1/64 sec. cor. of secs. 4 and 5. |
| | Set a wood post, 2x3x36 ins., painted white; 18 ins. in the ground, mkd. S-N 1/64 S4 S5. |
| 11.50 | Power line, bears NE. and SW. |
| 15.037 | Point for the N-S-N 1/256 sec. cor. of secs. 4 and 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-S-N 1/256 S4 S5. |
| 17.30 | Descend 30 ft. over NW. slope through timber. |
| 20.050 | Point for the N 1/16 sec. cor. of secs. 4 and 5. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div align="center">

N 1/16

S 5 | S4

1953

</div>

| | from which |
|--------|-----------|
| | A birch, 6 ins. diam., bears N. 19° E., 18 lks. dist., mkd. N 1/16 S4 BT. |
| | A birch, 6 ins. diam., bears S. 48° W., 37 lks. dist., mkd. N 1/16 S5 BT. |
| | Thence descend over gently rolling land through timber. |
| 25.062 | Point for the S-N-N 1/256 sec. cor. of secs. 4 and 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. S-N-N 1/256 S4 S5. |
| 30.075 | Point for the N-N 1/64 sec. cor. of secs. 4 and 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-N 1/64 S4 S5. |
| 35.087 | Point for the N-N-N 1/256 sec. cor. of secs. 4 and 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. N-N-N 1/256 S4 S5. |

AR002329



4—678 b

## T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 40.100 | The cor. of secs. 4, 5, 32 and 33, on the N. bdy. of the township. |
| | Land, hilly.<br>Soil, sandy loam.<br>Timber, spruce, birch, aspen and cottonwood. |
| | From the cor. of secs. 5, 6, 7 and 8. |
| | N. 0° 10' E., bet. secs. 5 and 6. |
| | Over nearly level land through small timber and dense undergrowth. |
| 1.49 | Center line of the Alaska Railroad, bears N. 29° 51' E., and S. 26° 11' W., on curve. |
| 2.00 | Telephone line, same bearing as railroad. |
| 5.90 | Center line of the east gravel runway of the Birchwood Airport, bears N. 27° E., and S. 27° W., approximately 4 chs. wide. |
| 19.10 | Center line of the main gravel runway of the Birchwood Airport, bears N. 40° E., and S. 40° W., approximately 6 chs. wide. |
| 20.180 | Point for the S 1/16 sec. cor. of secs. 5 and 6.  No corner monument set. |
| 30.270 | Point for the N-S 1/64 sec. cor. of secs. 5 and 6.  No corner monument set. |
| 30.80 | Center line of the west gravel runway of the Birchwood Airport, bears N. 28° E., and S. 28° W., approximately 4 chains wide. |
| 40.360 | The 1/4 sec. cor. of secs. 5 and 6, which is monumented with an iron post, 1 in. diam., firmly set, 12 ins. above ground, mkd. as described in the official record.  The original bearing trees were destroyed by age. |
| | from which |
| | New Bearing Trees |
| | A birch, 6 ins. diam., bears S. 77° E., 77 lks. dist., mkd. 1/4 S5 BT. |
| | A birch, 12 ins. diam., bears N. 56° W., 95 lks. dist., mkd. 1/4 S6 BT. |
| | Land, nearly level.<br>Soil, gravelly.<br>Timber, spruce, birch and aspen. |
| | ### SUBDIVISION OF SECTION 4, T. 15 N., R. 1 W., S.M. |
| | From the 1/4 sec. cor. of secs. 4 and 9. |
| | N, 0° 06' W., on the N-S center line of Sec. 4. |
| | Over rolling land along E. side of graded road through dense small timber. |
| 5.000 | Point for the C-S-S-S 1/256 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-S 1/256 S4. |
| 10.000 | Point for the C-S-S 1/64 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S 1/64 S4. |

AR002330



- 28 -

T. 15 N., R. 1 W., S.M.

| Chains | |
|--------|--|
| 15.000 | Point for the C-N-S-S 1/256 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-S 1/256 S4. |
| 19.00 | Graded road, bears N., S., and SE. |
| 20.000 | Point for the C-S 1/16 sec. cor. of sec. 4, which falls in the graded road. |
| | Set an iron post, 28 ins. long, 2½ ins. diam. , 4 ins. below the road surface, with brass cap mkd. |

<div align="center">

S 4

C - S

+

1/16

1953

</div>

from which

A birch, 8 ins. diam., bears S. 51° E., 143 lks. dist., mkd. C-S 1/16 S4 BT.

A birch, 6 ins. diam., bears S. 50° W., 109 lks. dist., mkd. C-S 1/16 S4 BT.

| 21.40 | Log house, 24 x 24 x 10 ft., SW. cor. bears E., 50 lks. dist. Power line bears S. 20° E., and NW. to house. |
| 22.60 | Frame house, 30x20x10 ft., SE. cor. bears W., 50 lks. dist., thence along W. edge of graded road through large timber and dense undergrowth. |
| 40.000 | Point for the center ¼ sec. cor. of sec. 4 at the intersection with the E-W center line. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., flush with the surface, with brass cap mkd. |

<div align="center">

S 4

C + ¼

1953

</div>

from which

A birch, 12 ins. diam., bears S. 28½° W., 15 lks. dist., mkd. C¼ S4 BT.

A birch, 14 ins. diam., bears N. 80° W., 68 lks. dist., mkd. C ¼ S4 BT.

| 43.50 | End of graded road, 80 lks. E. of line. |
| 45.30 | Descend 70 ft. over N. slope through timber. |
| 49.00 | Base of slope, bears E. and W., thence ascend 90 ft. over S. slope. |
| 58.00 | Ridge, bears NW. and SE., thence descend over rolling land through timber. |
| 80.150 | The ¼ sec. cor. of secs. 4 and 33 on the north boundary of the township, which is monumented with an iron post, 1 in. diam., firmly set, 12 ins. above ground, mkd. as described in the official record. The original bearing trees were destroyed by age. |

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | from which, new bearing trees |
| | A spruce, 10 ins. diam., bears S. $42\frac{1}{2}°$ E., 77 lks. dist.mkd. $\frac{1}{4}$ S4 BT. |
| | A spruce, 10 ins. diam., bears S. $34\frac{1}{2}°$ W., 59 lks. dist., mkd. $\frac{1}{4}$ S4 BT. |
| | From the $\frac{1}{4}$ sec. cor. of secs. 4 and 5. |
| | EAST, on the E-W center line of Sec. 4. |
| | Ascend over NW. slope through small timber. |
| 5.000 | Point for the C-W-W-W 1/256 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-W 1/256 S4. |
| 5.40 | Descend 30 ft. over NE. slope. |
| 7.40 | Thence over rolling land through timber. |
| 10.000 | Point for the C-W-W-1/64 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W 1/64 S4. |
| 15.000 | Point for the C-E-W-W 1/256 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-W 1/256 S4. |
| 17.50 | Spur, slopes NE.; thence descend 45 ft. over SE. slope. |
| 19.30 | Thence over rolling land through timber. |
| 20.000 | Point for the C-W 1/16 sec. cor. of sec. 4. |
| | Set an iron post, 28 ins. long, $2\frac{1}{2}$ ins. diam., 26 ins. in the ground, with brass cap mkd. |
| | S 4 C – W + 1/16 1953 |
| | from which |
| | An aspen, 6 ins. diam., bears N. $10\frac{1}{2}°$ E., 8 lks. dist., mkd. C-W 1/16 S4 BT. |
| | A birch, 6 ins. diam., bears S. $70°$ E., 22 lks. dist., mkd. C-W 1/16 S4 BT. |
| 26.00 | Ascend 50 ft. over W. slope. |
| 27.60 | Thence over rolling land through timber. |
| 40.000 | The center $\frac{1}{4}$ sec. cor. of sec. 4. |
| 40.60 | Graded road, bears N. and S. |
| 70.30 | Main power line bears N. $31\frac{1}{2}°$ E., and S. $31\frac{1}{2}°$ W. |
| 79.60 | Power line, bears S. and NE. |
| 79.70 | Graded road, same bearing. |

AR002332

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 79.910 | The $\frac{1}{4}$ sec. cor. of secs. 3 and 4, which is monumented with an iron post, 1 in. diam., firmly set, 12 ins. above ground, mkd. as described in the official record. The original bearing trees were destroyed by age. |

from which new bearing trees

    A birch, 6 ins. diam., bears N. $79\frac{1}{2}^\circ$ E., 53 lks. dist., mkd.
    $\frac{1}{4}$ S3 BT.

    A birch, 6 ins. diam., bears S. $58^\circ$ E., 43 lks. dist., mkd.
    $\frac{1}{4}$ S3 BT.

    Log house, 34 x 24 x 10 ft., SE. cor. bears N. $30\frac{1}{2}^\circ$ E., 236
    lks. dist.

---

### SUBDIVISION OF SW$\frac{1}{4}$ SEC. 4, T. 15 N., R. 1 W., S.M.

From the W 1/16 sec. cor. of secs. 4 and 9.

N. $0^\circ$ 06' W., on the N-S center line of SW$\frac{1}{4}$ Sec. 4.

Over rolling land through large timber and dense undergrowth.

| | |
|---|---|
| 4.695 | Selected point for the witness C-S-S-SW 1/256 sec. cor. of sec. 4, on the left bank of Peter's Creek. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. WC C-S-S-SW 1/256 20 FT N   S4.

| | |
|---|---|
| 4.998 | True point for the C-S-S-SW 1/256 sec. cor. of sec. 4, which falls in Peter's Creek, 1 ch. wide, 4 ft. deep, course NW. |
| 7.00 | Creek, 15 lks. wide, 10 ins. deep, course NW. |
| 8.10 | Ascend 45 ft. over SW. slope through dense timber and undergrowth. |
| 9.997 | Point for the C-S-SW 1/64 sec. cor. of Sec. 4. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SW 1/64 S4.

Ascend 60 ft. over SW. slope.

| | |
|---|---|
| 12.30 | Top of ascent; thence over rolling land through dense small timber. |
| 14.996 | Point for the C-N-S-SW 1/256 sec. cor. of sec. 4. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-SW 1/256 S4.

| | |
|---|---|
| 19.995 | Point for the SW 1/16 sec. cor. of sec. 4 at the intersection with the E-W center line. |

Set an iron post, 28 ins. long, $2\frac{1}{2}$ ins. diam., 26 ins. in the ground, with brass cap mkd.

<div align="center">

S 4

SW 1/16

1953

</div>

from which

    A spruce, 12 ins. diam., bears N. $66^\circ$ E., 24 lks. dist , mkd.
    SW 1/16 S4 BT.

AR002333

4—873 b

113

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | A birch, 16 ins. diam., bears N. 71° W., 38 lks. dist., mkd. SW 1/16 S4 BT. |
| 24.993 | Point for the C-S-N-SW 1/256 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-SW 1/256 S4. |
| 29.992 | Point for the C-N-SW 1/64 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SW 1/64 S4. |
| 34.991 | Point for the C-N-N-SW 1/256 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N-SW 1/256 S4. |
| 39.990 | The C-W 1/16 sec. cor. of sec. 4. |
| | From the C-S 1/16 sec. cor. of Sec. 4. |
| | N. 89° 59' W., on the E-W center line of SW¼ Sec. 4. |
| | Over level land along S. edge of clearing. |
| 3.30 | Thence over rolling land through dense small timber. |
| 5.000 | Point for the C-E-E-SW 1/256 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-SW 1/256 S4. |
| 10.000 | Point for the C-E-SW 1/64 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SW 1/64 S4. |
| 15.000 | Point for the C-W-E-SW 1/256 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-SW 1/256 S4. |
| 20.000 | The SW 1/16 sec. cor. of sec. 4. |
| 25.00 | Point for the C-E-W-SW 1/256 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-SW 1/256 S4. |
| 30.000 | Point for the C-W-SW 1/64 sec. cor. of sec.4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SW 1/64 S4. |
| | Descend 40 ft. over NW. slope through timber and undergrowth. |
| 35.000 | Point for the C-W-W-SW 1/256 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-SW 1/256 S4. |
| 39.70 | Creek, 5 lks. wide, 2 ins. deep, course SW. |
| 40.000 | The S 1/16 sec. cor. of secs. 4 and 5. |

AR002334



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | **SUBDIVISION OF SE¼ SW¼ SECTION 4** |
| | From the E-W 1/64 sec. cor. of secs. 4 and 9. |
| | N. 0° 06' W., on the N-S center line of SE¼ SW¼ Sec. 4. |
| | Ascend 70 ft. over SW. slope through timber and undergrowth. |
| 5.000 | Point for the C-S-SE-SW 1/256 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SE-SW 1/256 S4. |
| | Ascend 35 ft. over SW. slope. |
| 6.90 | Top of ascent, bears N. 60° W., and S. 60° E.  Thence over gently rolling land through dense small timber. |
| 10.000 | Point for the SE-SW 1/64 sec. cor. of sec. 4, at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SE-SW 1/64 S4. |
| 15.000 | Point for the C-N-SE-SW 1/256 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SE-SW 1/256 S4. |
| 20.000 | The C-E-SW 1/64 sec. cor. of sec. 4. |
| | From the C-S-S 1/64 sec. cor. of sec. 4. |
| | N. 89° 59' W., on the E-W center line of SE¼ SW¼ Sec. 4. |
| | Over gently rolling land through dense small timber. |
| 0.20 | Graded road, bears N and S. |
| 5.000 | Point for the C-E-SE-SW 1/256 sec. cor. of Sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SE-SW 1/256 S4. |
| 10.000 | The SE-SW 1/64 sec. cor. of sec. 4. |
| 15.000 | Point for the C-W-SE-SW 1/256 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SE-SW 1/256 S4. |
| | Thence descend 50 ft. over SW. slope. |
| 20.000 | The C-S-SW 1/64 sec. cor. of sec.4. |
| | **SUBDIVISION OF SW¼ SW¼ SECTION 4** |
| | From the W-W 1/64 sec. cor. of secs. 4 and 9. |
| | N. 0° 06' W., on the N-S center line of SW¼ SW¼ Sec. 4. |
| | Over rolling land through large timber and dense undergrowth. |
| 4.998 | Point for the C-S-SW-SW 1/256 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SW-SW 1/256 S4. |

AR002335

T. 15 N., R. 1 W., S.M.



| Chains | |
|--------|---|
| 8.50 | Peter's Creek, 1 ch. wide, 4 ft. deep, course NW. |
| 9.996 | Point for the SW-SW 1/64 sec. cor. of sec. 4 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SW-SW 1/64 S4. |
| 10.50 | Creek, 5 lks. wide, 3 ins. deep, course W. Thence ascend 140 ft. over S. slope. |
| 14.90 | Top of bank, bears E. and W. Thence over rolling land through timber. |
| 14.994 | Point for the C-N-SW-SW 1/256 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SW-SW 1/256 S4. |
| 19.992 | The C-W-SW 1/64 sec. cor. of sec. 4. |

From the C-S-SW 1/64 sec. cor. of sec. 4.

N. 89° 59' W., on the E-W center line of SW¼ SW¼ Sec. 4.

Descend 80 ft. over SW. slope through timber and undergrowth.

| | |
|--------|---|
| 5.000 | Point for the C-E-SW-SW 1/256 sec.cor. of Sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SW-SW 1/256 S4. |
| | Thence over nearly level land through timber and dense undergrowth. |
| 10.000 | The SW-SW 1/64 sec. cor. of sec. 4. |
| 14.000 | Selected point for the witness C-W-SW-SW 1/256 sec. cor. of sec. 4 on the right bank of Peter's Creek. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. WC C-W-SW-SW 1/256 66 FT W S4. |
| 15.000 | True point for the C-W-SW-SW 1/256 sec. cor. of Sec. 4, which falls in Peter's Creek, 1 ch. wide, 4 ft. deep, course NW. |
| 20.000 | The S-S 1/64 sec. cor. of secs. 4 and 5. |

### SUBDIVISION OF NW¼ SW¼ SECTION 4

From the C-W-SW 1/64 sec. cor. of sec. 4.

N. 0° 06' W., on the N-S center line of NW¼ SW¼ Section 4.

Descend 40 ft. over NW. slope through timber and undergrowth.

| | |
|--------|---|
| 4.998 | Point for the C-S-NW-SW 1/256 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NW-SW 1/256 S4. |
| | Thence over level marshy land. |
| 9.996 | Point for the NW-SW 1/64 sec. cor. of sec. 4 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NW-SW 1/64 S4. |
| 11.00 | Ascend 35 ft. over S. slope through timber. |

AR002336

121

T. 15 N., R. 1 W., S.M.

| Chains | |
|--------|--|
| 14.994 | Point for the C-N-NW-SW 1/256 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NW-SW 1/256 S4. |
| | Ascend 30 ft. over SE. slope. |
| 17.00 | Top of E. slope of oval shaped hill, bearing E. and W. |
| | Descend NE. slope through timber. |
| 19.993 | The C-W-W 1/64 sec. cor. of sec. 4. |

From the C-N-SW 1/64 sec. cor. of sec. 4.

N. 89° 59' W., on the E-W center line of NW¼ SW¼ Sec. 4.

Descend over W. slope through timber.

| 2.00 | Thence over level marshy land. |
| 5.000 | Point for the C-E-NW-SW 1/256 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NW-SW 1/256 S4. |
| 10.000 | The NW-SW 1/64 sec. cor. of sec. 4. |
| 13.00 | Ascend 30 ft. over SE. slope through small timber. |
| 15.000 | Point for the C-W-NW-SW 1/256 sec. cor. of sec. 4. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NW-SW 1/256 S4. |
| | Thence over rolling land through timber. |
| 20.000 | The N-S 1/64 sec. cor. of secs. 4 and 5. |

### SUBDIVISION OF SECTION 5

From the ¼ sec. cor. of secs. 5 and 8.

N. 0° 05' W., on N-S center line of sec. 5.

Over rolling land through dense small timber along 80 lks. west of new power line to Birchwood.

| 4.997 | Point for the C-S-S-S 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-S 1/256 S5. |
| 9.995 | Point for the C-S-S-S 1/64 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-S 1/64 S5. |
| 11.45 | Graded road, bears NW. and SE. |
| 14.992 | Point for the C-N-S-S 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-S 1/256 S5. |
| 19.990 | Point for the C-S 1/16 sec. cor. of sec. 5. |

AR002337

U S. GOVERNMENT PRINTING OFFICE    16—28520-1

4—678 b

- 35. -



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div align="center">

S 5

C – S

+

1/16

1953

</div>

from which

A birch, 6 ins. diam., bears S. 32° W., 38 lks. dist., mkd. C–S 1/16 S5 BT.

A birch, 12 ins. diam., bears N. 31½° W., 79 lks. dist., mkd. C–S 1/16 S5 BT.

| Chains | |
|---|---|
| 22.55 | Graded road, bears W. and NE. on curve. |
| 24.987 | Point for the C–S–N–S 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C–S–N–S 1/256 S5. |
| 28.70 | Power line, bears N. 68° E., and S. 68° W. |
| 29.985 | Point for the C–N–S 1/64 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C–N–S 1/64 S5. |
| 34.60 | Graded road, bears S. 68° W., and N. 68° E., to Birchwood.  Thence along E. side of graded road bearing N. across railroad tracks, thence NW. to airstrip. |
| 34.982 | Point for the C–N–N–S 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C–N–N–S 1/256 S5. |
| | Birchwood, Alaska, consisting of a railroad section mess hall, quonset type living quarters, 2 houses and four sheds, bears E. from 1 ch. to 8 chs., parallel to the railroad on both sides of the graded road. |
| 36.05 | Center line of the Alaska Railroad, bears N. 68° 26' E., and S. 68°26' W. |
| 36.28 | Railroad siding; same bearing as the center line. |
| 36.75 | Telephone line, follows the railroad. |
| 39.980 | Point for the center ¼ sec. cor. of sec. 5 at the intersection with the E–W center line. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div align="center">

S 5

C + ¼

1953

</div>

Raise a mound of stone, 4 ft. base, 2 ft. high, W. of cor.

| Chains | |
|---|---|
| 42.70 | Graded road around airstrip, bears NW. and SW. on curve.  Thence over gently rolling land through timber and undergrowth. |

AR002338



123

- 36 -

T. 15 N., R 1 W., S.M.

| Chains | |
|--------|--|
| 50.005 | Point for the C-S-N 1/64 sec. cor. of Sec. 5.  No corner monument set. |
| 60.030 | Point for the C-N 1/16 sec. cor. of sec. 5. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div align="center">

S 5

C – N

+

1/16

1953

</div>

<div align="center">Dig pits, 18x18x12 ins., N. and S. of post, 3 ft. dist.</div>

| | |
|--------|--|
| 64.50 | Peter's Creek, 3 chs. wide, 2 ft. deep, course NW.  A sand bar, 50 lks. wide in center of creek. |
| 68.80 | Peter's Creek, 1.5 chs. wide, course NE. |
| 70.055 | Point for C-N-N 1/64 sec. cor. of sec. 5.  No corner monument set. |
| 72.50 | Peter's Creek, 1.5 chs. wide, course NW. |
| 80.080 | The ¼ sec. cor. of secs. 5 and 32 on the north boundary of the township. |

From the ¼ sec. cor. of secs. 4 and 5.

WEST, on the E-W center line of sec. 5.

Descend 40 ft. over NW. slope through timber and undergrowth.

| | |
|--------|--|
| 2.00 | Thence over gently rolling land through timber and undergrowth. |
| 5.000 | Point for the C-E-E-E 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-E 1/256 S5. |
| 10.000 | Point for the C-E-E 1/64 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E 1/64 S5. |
| 12.70 | Descend 35 ft. over NW. slope. |
| 14.00 | Power line, bears NE. and SW. |
| 15.000 | Point for the C-W-E-E 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-E 1/256 S5. |
| | Thence descend over gentle SW. slope through timber and undergrowth. |
| 20.000 | Point for the C-E 1/16 sec. cor. of sec. 5. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div align="center">

S 5

C – E

+

1/16

1953

</div>

U. S. GOVERNMENT PRINTING OFFICE      16—28520-1

AR002339



## T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | from which |
| | A birch, 6 ins. diam., bears N. 43½° E., 45 lks. dist., mkd. C-E 1/16 S5 BT. |
| | A birch, 8 ins. diam., bears S. 33° W., 6 lks. dist., mkd. C-E 1/16 S5 BT. |
| 25.000 | Point for the C-E-W-E 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-E 1/256 S5. |
| 30.000 | True point for the C-W-E 1/64 sec. cor. of sec. 5, which falls on the Alaska Railroad bridge, 60 ft. long, 19 ft. wide, across Peter's Creek.  Course NW. |
| 30.075 | Center line of the Alaska Railroad tracks bears N. 68° 26' E., and S. 68° 26' W. |
| 31.000 | Selected point for the witness C-W-E 1/64 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. WC C-W-E 1/64 66 FT W S5. |
| 31.90 | Telephone line, follows the railroad.  Thence over nearly level land through undergrowth. |
| 35.000 | Point for the C-W-W-E 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-E 1/256 S5. |
| 40.000 | The center ¼ sec. cor. of sec. 5. |
| 42.60 | Graded road, bears NE. and SW. |
| 53.40 | Graded road, bears NW. and SE. |
| 60.020 | Point for the C-W 1/16 sec. cor. of sec. 5.  No corner monument set. |
| 62.20 | Center line of the main gravel runway of the Birchwood Airport, bears N. 40° E., and S. 40° W., approximately 5 chains wide. |
| 70.030 | Point for the C-W-W 1/64 sec. cor. of sec. 5.  No corner monument set. |
| 74.70 | Center line of the west gravel runway of the Birchwood Airport, bears S. 28° W., and NE., approximately 3 chains wide. |
| 80.040 | The ¼ sec. cor. of secs. 5 and 6. |

### SUBDIVISION OF SE¼. SEC. 5

From the E 1/16 sec. cor. of secs. 5 and 8.

N. 0° 06' W., on the N-S center line of SE¼ Sec. 5.

Over rolling land through timber.

| 4.997 | Point for the C-S-S-SE 1/256 sec. cor. of sec. 5. |
|---|---|
| | Set a wood point, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-SE 1/256 S5. |
| 9.995 | Point for the C-S-SE 1/64 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SE 1/64 S5. |

AR002340

U. S. GOVERNMENT PRINTING OFFICE      16—28520-1



125

- 38 -

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 14.992 | Point for the C-N-S-SE 1/256 sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-SE 1/256 S5. |
| 19.990 | Point for the SE 1/16 sec. cor. of sec. 5 at the intersection with the E-W center line. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div align="center">

S 5

SE +1/16

1953

</div>

from which

    A spruce, 10 ins. diam., bears S. 62° E., 68 lks. dist., mkd. SE 1/16 S5 BT.

    A spruce, 12 ins. diam., bears S. 68° W., 55 lks. dist., mkd. SE 1/16 S5 BT.

| | |
|---|---|
| 21.10 | Creek, 10 lks. wide, 1 ft. deep, course NW. |
| 23.30 | Peter's Creek, 1 ch. wide, 4 ft. deep, course NW. |
| 24.987 | Point for the C-S-N-SE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-SE 1/256 S5. |
| 28.10 | Creek, 5 lks. wide, 6 ins. deep, course W. |
| 29.985 | Point for the C-N-SE 1/64 sec. cor. of Sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SE 1/64 S5. |
| 34.982 | Point for the C-N-N-SE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N-SE 1/256 S5. |
| 36.70 | Power line, bears NE. and SW. |
| 39.980 | The C-E 1/16 sec. cor. of sec. 5. |

From the S 1/16 sec. cor. of secs. 4 and 5.

WEST, on the E-W center line of SE¼ Sec. 5.

Ascend over rolling land through timber and undergrowth.

| | |
|---|---|
| 2.30 | Spur, slopes SW.  Descend 35 ft. over NW. slope. |
| 3.70 | Thence over rolling land through timber and undergrowth. |
| 5.001 | Point for the C-E-E-SE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-SE 1/256 S5. |
| 9.002 | Selected point for the witness C-E-SE 1/64 sec. cor. of sec. 5 on the right bank of Peter's Creek. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. WC C-E-SE 1/64 66 FT  E  S5. |

AR002341



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 10.002 | True point for the C-E-SE 1/64 sec. cor. of sec. 5, which falls in Peter's Creek, course W. from SE. |
| 14.70 | Peter's Creek, 1 ch. wide, 3 ft. deep, course NW. Thence across western tip of island. |
| 15.003 | Point for the C-W-E-SE 1/256 sec. cor. of Sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-SE 1/256 S5. |
| 15.60 | Peter's Creek, 50 lks. wide, 1 ft. deep, course NW. |
| 18.55 | Creek, 10 lks. wide, 1 ft. deep, course NW. |
| 20.005 | The SE 1/16 sec. cor.of sec. 5. |
| 25.006 | Point for the C-E-W-SE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-SE 1/256 S5. |
| 30.007 | Point for the C-W-SE 1/64 sec.cor of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SE 1/26 S5. |
| 35.008 | Point for the C-W-W-SE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-SE 1/256 S5. |
| 39.20 | Power line, bears N. and S. |
| 40.010 | The C-S 1/16 sec. cor. of sec. 5. |

### SUBDIVISION OF THE SE¼ SE¼ SECTION 5

From the E-E 1/64 sec. cor. of secs. 5 and 8.

N. 0° 06' W., on the N-S center line of SE¼ SE¼ Section 5.

Over rolling land through timber and undergrowth.

| | |
|---|---|
| 4.997 | Point for the C-S-SE-SE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SE-SE 1/256 S 5. |
| 9.995 | 'Point for the SE-SE 1/64 sec. cor. of sec. 5 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SE-SE 1/64 S5. |
| 11.30 | Peter's Creek, 75 lks. wide, 1 ft. deep, course NW. from E. Thence across island. |
| 14.992 | True point for the C-N-SE-SE 1/256 sec. cor. of sec. 5, which falls in Peter's Creek, course NW. from SW. |
| 15.356 | Selected point for the witness C-N-SE-SE 1/256 sec. cor. of sec. 5 on the right bank of Peter's Creek. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. WC C-N-SE-SE 1/256 24 FT N S5. |
| 19.990 | True point for the C-E-SE 1/64 sec. cor. of sec. 5, which falls in Peter's Creek. |

AR002342



.127

– 40 –

T. 15 N., R. 1 W.

| Chains | |
|---|---|
| | From the S-S 1/64 sec. cor. of secs. 4 and 5. |
| | WEST, on the E-W center line of SE¼ SE¼ Sec. 5. |
| | Over rolling land through timber and undergrowth. |
| 4.80 | Creek, 10 lks. wide, 2 ins. deep, course N. |
| 5.002 | Point for the C-E-SE-SE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SE-SE 1/256 S5. |
| 10.005 | The SE-SE 1/64 sec. cor. of sec. 5. |
| 15.007 | Point for the C-W-SE-SE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SE-SE 1/256 S5. |
| 20.010 | The C-S-SE 1/64 sec. cor. of Sec. 5. |

### SUBDIVISION OF NE¼ SE¼ SECTION 5

| Chains | |
|---|---|
| | From the true point for the C-E-SE 1/64 sec. cor. of sec. 5, which falls in Peter's Creek. |
| | N. 0° 06¼ W., on the N-S center line of NE¼ SE¼ Sec. 5. |
| | Over rolling land through timber and undergrowth. |
| 4.997 | Point for the C-S-NE-SE 1/256 sec. cor. of Sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NE-SE 1/256 S5. |
| | Thence ascend 50 ft. over S. slope. |
| 9.995 | Point for the NE-SE 1/64 sec. cor. of Sec. 5, at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NE-SE 1/64 S5. |
| | Top of spur, slopes W., thence descend 40 ft. over NW. slope. |
| 14.992 | Point for the C-N-NE-SE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NE-SE 1/256 S5. |
| | Ascend 40 ft. over SW. slope through timber. |
| 19.990 | The C-E-E 1/64 sec. cor. of Sec. 5. |

| Chains | |
|---|---|
| | From the N-S 1/64 sec. cor. of secs. 4 and 5. |
| | WEST, on the E-W center line of NE¼ SE¼ of Sec. 5. |
| | Over nearly level land through small timber. |
| 5.000 | Point for the C-E-NE-SE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NE-SE 1/256 S5. |
| 10.000 | The NE-SE 1/64 sec. cor. of sec. 5. |

AR002343



T. 15 N., R. 1 W.,

| Chains | |
|---|---|
| | Thence descend 50 ft. over point of spur. |
| 15.000 | Point for the C-W-NE-SE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NE-SE 1/256 S5. |
| | Thence over nearly level land through timber and dense undergrowth. |
| 20.000 | The C-N-SE 1/64 sec. cor. of sec. 5. |

### SUBDIVISION OF SW¼ SE¼ SEC. 5

From the W-E 1/64 sec. cor. of secs. 5 and 8.

N. 0° 06' W., on the N-S center line of SW¼ SE¼ of sec. 5.

Over nearly level land through small timber.

| | |
|---|---|
| 4.997 | Point for the C-S-SW-SE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SW-SE 1/256 S5. |
| 9.995 | Point for the SW-SE 1/64 sec. cor. of sec. 5 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SW-SE 1/64 S5. |
| 14.992 | Point for the C-N-SW-SE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SW-SE 1/256 S5. |
| 19.990 | The C-W-SE 1/64 sec. cor. of sec. 5. |

From the C-S-SE 1/64 sec. cor. of sec. 5.

WEST, on the E-W center line of SW¼ SE¼ of sec. 5.

Over nearly level land through small timber.

| | |
|---|---|
| 5.001 | Point for the C-E-SW-SE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SW-SE 1/256 S5. |
| 10.002 | The SW-SE 1/64 sec. cor. of sec. 5. |
| 15.003 | Point for the C-W-SW-SE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SW-SE 1/256 S5. |
| 19.00 | Graded road, bears NW. and SE. |
| 20.005 | The C-S-S 1/64 sec. cor. of sec. 5. |

### SUBDIVISION OF NW¼ SE¼ SECTION 5

From the C-W-SE 1/64 sec. cor. of sec. 5.

N. 0°06' W., on the N-S center line of NW¼ SE¼ of sec. 5.

Over nearly level land through small timber.

AR002344

129                          - 42 -

T. 15 N., R. 1 W.

| Chains | |
|--------|---|
| 4.997 | Point for the C-S-NW-SE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NW-SE 1/256 S5. |
| 9.995 | Point for the NW-SE 1/64 sec. cor. of sec. 5 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NW-SE 1/64 S5. |
| 12.70 | Power line, bears N. 68° E., and S. 68° W. |
| 14.992 | Point for the C-N-NW-SE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NW-SE 1/256 S5. |
| 19.990 | True point for the C-W-E 1/64 sec. cor. of sec. 5, which falls in Peter's Creek. |

From the C-N-SE 1/64 sec. cor. of sec. 5.

WEST, on the E-W center line of NW¼ SE¼ of Sec. 5.

Over nearly level land through timber and undergrowth.

| 5.000 | Point for the C-E-NW-SE 1/256 sec. cor. of sec. 5. |
|--------|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NW-SE 1/256 S35. |
| 5.50 | Peter's Creek, course N. |
| 10.000 | The NW-SE 1/64 sec. cor. of sec. 5. |
| 13.50 | Graded road, bears NW. and SE. |
| 15.000 | Point for the C-W-NW-SE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NW-SE 1/256 S5. |
| 16.75 | Power line, bears N. 68° E., and S. 68° W. |
| 19.20 | Power line, bears N. and S. |
| 20.000 | The C-N-S 1/64 sec. cor. of sec. 5. |

SUBDIVISION OF NE¼ SECTION 5

From the C-E 1/16 sec. cor. of sec. 5.

N. 0° 06' W., on the N-S center line of NE¼ of sec. 5.

Over gently rolling land through small timber.

| 4.685 | Center line of the Alaska Railroad, bears N. 44° 33' E., and S. 61° 43' W. |
|--------|---|
| 5.012 | Point for the C-S-S-NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-NE 1/256 S5. |
| 5.35 | Telephone line, follows the railroad. |

AR002345



T. 15 N., R. 1 W., S.M

| Chains | |
|---|---|
| 10.025 | Point for the C-S-NE 1/64 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NE 1/64 S5. |
| 15.037 | Point for the C-N-S-NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-NE 1/256 S5. |
| 20.050 | Point for the NE 1/16 sec. cor. of sec. 5 at the intersection with the E-W center line. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div align="center">

S 5

NE 1/16

1953

</div>

from which

    A birch, 10 ins. diam., bears S. 51½° W., 13 lks. diam., mkd. NE 1/16 S5 BT.

    A birch, 12 ins. diam., bears N. 11° W., 18 lks. dist., mkd. NE 1/16 S5 BT.

| | |
|---|---|
| 25.062 | Point for the C-S-N-NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-NE 1/256 S5. |
| 30.075 | Point for the C-N-NE 1/64 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NE 1/64 S5. |
| 35.087 | Point for the C-N-N-NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N-NE 1/256 S5. |
| 40.100 | The E 1/16 sec. cor. of secs. 5 and 32 on the north boundary of the Township. |

From the N 1/16 sec. cor. of secs. 4 and 5.

WEST, on the E-W center line of the NE¼ of Sec. 5.

Over gently rolling land through small timber.

| | |
|---|---|
| 4.998 | Point for the C-E-E-NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-NE 1/256 S5. |
| 9.997 | Point for the C-E-NE 1/64 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NE 1/64 S5. |
| 11.30 | Descend 40 ft. over W. slope of cut bank. |
| 12.575 | Center line of the Alaska Railroad, bears N. 9° 25' E., and S. 9°25' W. |
| | Descend 50 ft. over W. slope of bank. |

AR002346



131                          — 44 —

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 13.40 | Telephone line, follows the railroad. |
| 14.996 | Point for the C-W-E-NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-NE 1/256 S5. |
| | Thence over level land through timber. |
| 19.995 | The NE 1/16 sec. cor. of sec. 5. |
| 24.993 | Point for the C-E-W-NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-NE 1/256 S5. |
| 29.992 | Point for the C-W-NE 1/64 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NE 1/64 S5. |
| 34.991 | Point for the C-W-W-NE 1/256 sec. cor. of Sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-NE 1/256 S5. |
| 39.00 | Peter's Creek, 1 ch. wide, course NW. |
| 39.990 | The C-N 1/16 sec. cor. of sec. 5. |

### SUBDIVISION OF SE¼ NE¼ SECTION 5

From the C-E-E 1/64 sec. cor. of sec. 5.

N. 0° 06' W., on the N-S center line of SE¼ NE¼ Sec. 5.

Descend over rolling land through timber.

| | |
|---|---|
| 3.30 | Power line, bears NE. and SW. |
| 5.012 | Point for the C-S-SE-NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SE-NE 1/256 S5. |
| 6.30 | Creek, 2 lks. wide, 6 ins. deep, course SW. Thence ascend SE. slope through timber. |
| 10.025 | Point for the SE-NE 1/64 sec. cor. of sec. 5 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SE-NE 1/64 S5. |
| 11.10 | Top of ascent; thence descend SW. slope. |
| 14.00 | Draw, drains W.; thence ascend S. slope through timber and undergrowth. |
| 15.037 | Point for the C-N-SE-NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SE-NE 1/256 S5. |
| 20.050 | The C-E-NE 1/64 sec. cor. of sec. 5. |

From the S-N 1/64 sec. cor. of secs. 4 and 5.

AR002347



| Chains | |
|--------|--|
| | WEST, on the E-W center line of SE¼ NE¼ Sec. 5. |
| | Descend over W. slope through timber. |
| 1.70 | Power line, bears NE. and SW.  Thence ascend SE. slope through timber. |
| 5.000 | Point for the C-E-SE-NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SE-NE 1/256 S5. |
| 10.000 | The SE-NE 1/64 sec. cor. of sec. 5. |
| | Thence descend W. slope through timber. |
| 11.50 | Thence over nearly level land through timber and undergrowth. |
| 15.000 | Point for the C-W-SE-NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SE-NE 1/256 S5. |
| 15.10 | Creek, 5 lks. wide, 6 ins. deep, course N. |
| 15.515 | Center line of the Alaska Railroad, bears N. 28° 27' E., and S. 28° 27' W. |
| 16.40 | Telephone line, follows the railroad. |
| 20.000 | The C-S-NE 1/64 sec. cor. of sec. 5. |

## SUBDIVISION OF NE¼ NE¼ SECTION 5

From the C-E-NE 1/64 sec. cor. of sec. 5.

N. 0° 06' W., on the N-S center line of NE¼ NE¼ Sec. 5.

Ascend over gradual S. slope through timber and undergrowth.

| | |
|--------|--|
| 5.012 | Point for the C-S-NE-NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NE-NE 1/256 S5. |
| 6.50 | Descend 50 ft. over NW. slope of cut bank. |
| 8.68 | Center line of the Alaska Railroad, bears N. 29° 35' E., and S. 29° 35' W.  Thence descend 40 ft. over NW. slope. |
| 9.70 | Telephone line, follows the railroad. |
| 10.025 | Point for the NE-NE 1/64 sec. cor. of sec. 5 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NE-NE 1/64 S5. |
| 10.50 | Thence over gently rolling land through large timber and dense undergrowth. |
| 15.037 | Point for the C-N-NE-NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NE-NE 1/256 S5. |
| 20.050 | The E-E 1/64 sec. cor. of secs. 5 and 32. |

AR002348



133

— 46 —

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | From the N–N 1/64 sec. cor. of secs. 4 and 5. |
| | WEST, on the E–W center line of NE¼ NE¼ Sec. 5. |
| | Over rolling ground, through timber and undergrowth. |
| 4.997 | Point for the C–E–NE–NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C–E–NE–NE 1/256 S5. |
| 8.00 | Descend 40 ft. over NW. slope of cut bank. |
| 9.23 | Center line of the Alaska Railroad, bears N. 29° 35° E., and S. 29° 35' W. |
| 9.90 | Telephone line, follows the railroad. |
| 9.995 | The NE–NE 1/64 sec. cor. of sec. 5. |
| 10.50 | Thence over gently rolling land through large timber and dense undergrowth. |
| 14.992 | Point for the C–W–NE–NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C–W–NE–NE 1/256 S5. |
| 19.990 | The C–N–NE 1/64 sec. cor. of sec. 5. |

### SUBDIVISION OF SW¼ NE¼ SECTION 5

From the true point for the C–W–E 1/64 sec. cor. of sec. 5, which falls on the railroad bridge over Peter's Creek.

N. 0° 06' W., on the N–S center line of SW¼ NE¼ Sec. 5.

Across the bridge.

| | |
|---|---|
| 0.03 | Center line of the Alaska Railroad, bears N. 68° 26' E., and S. 68° 26' W. |
| 0.70 | Telephone line, follows the railroad. |
| 3.00 | Right bank Peter's Creek, bears NW. and SE; thence over gently rolling land through timber. |
| 5.012 | Point for the C–S–SW–NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C–S–SW–NE 1/256 S5. |
| 10.025 | Point for the SW–NE 1/64 sec. cor. of sec. 5 at the intersection with the E–W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SW–NE 1/64 S5. |
| 15.037 | Point for the C–N–SW–NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C–N–SW–NE 1/256 S5. |
| 20.050 | The C–W–NE 1/64 sec. cor. of sec. 5. |

From the C–S–NE 1/64 sec. cor. of sec. 5.

WEST, on the E–W center line of SW¼ NE¼ Sec. 5.

AR002349



4—673 b

[redacted]

134

T. 15 N., R. 1 W., S.M.

| Chains | Over gently rolling land through timber and undergrowth. |
|---|---|
| 5.000 | Point for the C-E-SW-NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SW-NE 1/256 S5. |
| 10.000 | The SW-NE 1/64 sec. cor. of sec. 5. |
| 15.000 | Peter's Creek , 1 ch. wide, 3 ft. deep, course NW. |
| 20.000 | Point for the C-S-N 1/64 sec. cor. of sec. 5. |
| | **SUBDIVISION OF THE NW¼ NE¼ SECTION 5** |
| | From the C-W-NE 1/64 sec. cor. of sec. 5. |
| | N. 0° 06' W., on the N-S center line of NW¼ NE¼ sec. 5. |
| | Over gently rolling land through timber. |
| 5.012 | Point for the C-S-NW-NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NW-NE 1/256 S5. |
| 10.025 | Point for the NW-NE 1/64 sec. cor. of sec. 5 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NW-NE 1/64 S5. |
| 15.037 | Point for the C-N-NW-NE 1/256 sec. cor. of sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NW-NE 1/256 S5. |
| 20.050 | The W-E 1/64 sec. cor. of sec. 5 and 32. |
| | From the C-N-NE 1/64 sec. cor. of sec. 5. |
| | WEST, on the E-W center line of NW¼ NE¼ Sec. 5. |
| | Over gently rolling land through timber. |
| 4.997 | Point for the C-E-NW-NE 1/256 sec. cor. of Sec. 5. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NW-NE 1/256 S5. |
| 9.995 | The NW-NE 1/64 sec. cor. of sec. 5. |
| 18.995 | Peter's Creek, course NE. |
| 19.990 | Point for the C-N-N 1/64 sec. cor. of sec. 5. |
| | **SUBDIVISION OF NW¼ OF SEC. 5** |
| | From the point for the C-W 1/16 sec. cor. of sec. 5. |
| | N. 0° 06' W., on the N-S center line of NW¼ of Sec. 5, on mean bearing bet. the center line and the W. bdy. of Sec. 5. |
| | Over rolling land through dense undergrowth. |
| 2.60 | Center line of the main gravel runway of the Birchwood Airport, bears N. 40° E., and S. 40° W., approximately 5 chs. wide. |

AR002350

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 10.015 | Point for the C-S-NW 1/64 sec. cor. of sec. 5. No corner monument set. |
| 16.50 | Graded road, bears E. and SW. on curve. |
| 20.030 | Point for the NW 1/16 sec. cor. of sec. 5 at the intersection with the E-W center line. |

Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd.

<div align="center">

S 5

NW + 1/16

1953

</div>

Raise a mound of stone, 5 ft. base, 3 ft. high, W. of cor.

From the C-N 1/16 sec. cor. of sec. 5.

S. 89° 58' W., on the E-W center line of NW¼, Sec. 5, on calculated mean bearing between the center line and N. bdy. of Sec. 5.

Over rolling land through undergrowth.

| | |
|---|---|
| 7.30 | Thence through timber; bears NE. and SW. |
| 10.005 | Point for the C-E-NW 1/64 sec. cor. of sec. 5. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NW 1/64 S5.

| | |
|---|---|
| 14.40 | Top of ridge, 10 ft. high, bears SE. and NW. |
| 20.010 | The NW 1/16 sec. cor. of sec. 5. |

<div align="center">

### SUBDIVISION OF SW¼ NW¼ OF SEC. 5

</div>

From the point for the C-W-W-1/64 sec. cor. of sec. 5.

N. 0° 07' W., on the N-S center line of SW¼ NW¼ sec. 5, on the mean bearing bet. the center line of the NW¼ and the W. bdy. of sec. 5.

Over nearly level land through undergrowth

| | |
|---|---|
| 6.00 | Graded road, bears NE. and SW. |
| 10.008 | Point for the SW-NW 1/64 sec. cor. of sec. 5 at the intersection with the E-W center line. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SW-NW 1/64 S5.

From the C-S-NW 1/64 sec. cor. of sec. 5.

S. 89° 59' W., on the E-W center line of SW¼ NW¼ sec. 5, on a calculated mean bearing bet. the center line of the NW¼ and the E-W center line of Sec. 5.

Over nearly level land through undergrowth.

| | |
|---|---|
| 6.00 | Graded road, bears NE. and SW. |
| 10.008 | The SW-NW 1/64 sec. cor. of sec. 5. |

AR002351



136

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | **NORTHWESTERLY BOUNDARY OF BIRCHWOOD AIRPORT RESERVE** |
| | From the ¼ sec. cor. of secs. 5 and 6. |
| | N. 44° 56' E., on the boundary of the Birchwood Airport Reserve as described in Public Land Order No. 802. |
| | Over nearly level land through dense small timber. |
| 14.145 | The SW-NW 1/64 sec. cor. of sec. 5. |
| 28.290 | The NW 1/16 sec. cor. of sec. 5. |

**SUBDIVISION OF SE¼ OF SEC. 6**

From the E 1/16 sec. cor. of secs. 6 and 7.

N. 0° 10' E., on the N-S center line of SE¼ Sec. 6, parallel with E. bdy. of the section.

Over rolling land through undergrowth.

| 6.10 | Descend 45 ft. over NW. slope through undergrowth and small timber. |
|---|---|
| 10.040 | Point for the C-S-SE 1/64 sec. cor. of sec. 6. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SE 1/64 S6. |
| | Base of slope, bears NE. and SW.; thence over level marshy land. |
| 20.080 | Point for the SE 1/16 sec. cor. of sec. 6 at the intersection with the E-W center line. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div align="center">

S 6
SE + 1/16
1953

</div>

from which

> A spruce, 10 ins. diam., bears S. 22½° E., 49 lks. dist., mkd. SE 1/16 S6 BT.

> A spruce, 10 ins. diam., bears N. 6° W., 57 lks. dist., mkd. SE 1/16 S6 BT.

From the point for the S 1/16 sec. cor. of secs. 5 and 6.

N. 89° 42' W., on the E-W center line of SE¼ Sec. 6, on a calculated mean bearing bet. the S. bdy. and the E-W center line of Sec. 6.

Over nearly level land through undergrowth and small timber.

| 5.70 | Center line of the west gravel runway of the Birchwood Airport, bears N. 28° E., and S. 28° W., approximately 4 chs. wide. |
|---|---|
| 9.950 | Point for the C-E-SE 1/64 sec. cor. of sec. 6. No corner monument set. |
| 19.60 | Descend 10 ft. bank; bears N. and S. |
| 19.90 | The SE 1/16 sec. cor. of sec. 6. |

AR002352



137

.T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | **SUBDIVISION OF NE¼ SE¼ OF SEC. 6** |
| | From the point for the C-E-SE 1/64 sec. cor. of sec. 6. |
| | N. 0°10' E., on the N-S center line of NE¼ SE¼ sec. 6, parallel with the E. bdy. of sec. 6. |
| | Over gently rolling land through small timber. |
| 10.065 | Point for the NE-SE 1/64 sec. cor. of sec. 5, at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NE-SE 1/64. |
| | From the point for the N-S 1/64 sec. cor. of secs. 5 and 6. |
| | N. 89° 51' W., on the E-W center line of NE-SE 1/64 sec. 6, on a calculated mean bearing bet. the E-W center line of the SE¼ and the E-W center line of the section. |
| | Over gently rolling land through small timber. |
| 0.30 | Center line of the west gravel runway of the Birchwood Airport, bears N. 28° E.; and S. 28° W., approximately 4 chs. wide. |
| 9.950 | The NE-SE 1/64 sec. cor. of sec. 6. |
| | From the SE 1/16 sec. cor. of sec. 6 |
| | N. 44° 50'E., on the boundary of the Birchwood Airport Reserve as described in Public Land Order No.802. |
| | Ascend 10 ft. bank, bears N. and S. |
| 0.40 | Top of bank; thence over gently rolling land through undergrowth and timber. |
| 14.155 | The NE-SE 1/64 sec. cor. of sec. 6. |
| 28.310 | The ¼ sec. cor. of secs. 5 and 6. |
| | **SUBDIVISION OF SECTION 7** |
| | From the ¼ sec. cor. of secs. 7 and 18. |
| | N. 0° 08' W., on the N-S center line of sec. 17. |
| | Over level land through timber. |
| 1.75 | Fire Creek, 15 lks. wide, 3 ft. deep, course NE. from SE. |
| 4.00 | Same creek, course NW. |
| 5.005 | Point for the C-S-S-S 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-S 1/256 S7. |
| 10.010 | Point for the C-S-S 1/64 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S 1/64 S7. |
| 15.015 | Point for the C-N-S-S 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins.,painted white, 18 ins. in the ground, mkd. C-N-S-S 1/256 S7. |

U S. GOVERNMENT PRINTING OFFICE      16—28520-1

T. 15 N., R. 1 W., S.M

| Chains | |
|---|---|
| 18.80 | Creek, 5 lks. wide, 6 ins. deep, course SW. |
| 20.020 | Point for the C–S 1/16 sec. cor. of sec. 7. |

Set an iron post, 28 ins. long, 2½ ins. diam., 24 ins. in the ground, with brass cap mkd.

<div align="center">

S 7

C – S

+

1/16

1952

</div>

from which

> A spruce, 14 ins. diam., bears S. 25° W., 49 lks. dist., mkd. CS 1/16 S7 BT.

> A spruce, 6 ins. diam., bears N. 46° W., 20 lks. dist., mkd. CS 1/16 S7 BT.

| | |
|---|---|
| 22.50 | Leave timber, bears E. and W.; thence over muskeg swamp. |
| 25.025 | Point for the C–S–N–S 1/256 sec. cor. of sec. 7. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C–S–N–S 1/256 S7.

Thence over gently rolling land through timber.

| | |
|---|---|
| 29.50 | Dry gully, 40 lks. wide, 6 ft. deep, bears E. and W. |
| 30.030 | Point for the C–N–S 1/64 sec. cor. of sec. 7. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C–N–S 1/64 S7.

| | |
|---|---|
| 35.035 | Point for the C–N–N–S 1/256 sec. cor. of sec. 7. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C–N–N–S 1/256 S7.

| | |
|---|---|
| 40.040 | Point for the center ¼ sec. cor. of sec. 7 at the intersection with the E–W center line. |

Set an iron post, 28 ins. long, 2½ ins. diam., 24 ins. in the ground, with brass cap mkd.

<div align="center">

S 7

C ¼

1952

</div>

from which

> A birch, 10 ins. diam., bears N. 21½° E., 76 lks. dist., mkd. C¼ S7 BT.

> A birch, 10 ins. diam., bears S. 72½° E., 65 lks. dist., mkd. C¼ S7 BT.

| | |
|---|---|
| 50.15 | Bulldozed road, bears NE. and SW. |
| 56.20 | Top of bank, bears NE. and SW.; thence descend 45 ft. over NW. slope. |
| 60.50 | Leave timber; thence over muskeg swamp. |
| 80.040 | The ¼ sec. cor. of secs. 6 and 7. |

AR002354



139

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | From the 1/4 sec. cor. of secs. 7 and 8. |
| | N. 89° 57' W., on the E-W center line of Sec. 7. |
| | Over rolling land through timber. |
| 6.63 | Center line of the Alaska Railroad, bears N. 23°50' E., and S. 23° 50' W. |
| 7.25 | Telephone line, same bearing as the railroad. |
| 9.990 | Point for the C-E-E 1/64 sec. cor. of Sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E 1/64 S7. |
| 14.985 | Point for the C-W-E-E 1/256 sec. cor. of Sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-E 1/256 S7. |
| 19.980 | Point for the C-E 1/16 sec. cor. of Sec. 7. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 24 ins. in the ground, with brass cap mkd. |

<div align="center">

S 7

C-E  1/16

1952

</div>

| | from which |
|---|---|
| | A birch, 8 ins. diam., bears S. 4¼° E., 28½ lks. dist., mkd. CE 1/16 S7 BT. |
| | A spruce, 8 ins. diam., bears N. 17½° W., 63 lks. dist., mkd. CE 1/16 S7 BT. |
| 24.975 | Point for the C-E-W-E 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-E 1/256 S7. |
| 29.970 | Point for the C-W-E 1/64 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E 1/64 S7. |
| 34.965 | Point for the C-W-W-E 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-E 1/256 S7. |
| 39.960 | The center ¼ sec. cor. of Sec. 7. |
| 43.20 | Top of bank, bears NE. and SW.; descend 25 ft. over NW. slope through alder timber. |
| 43.80 | Base of slope, leave timber; thence over muskeg swamps. |
| 51.205 | Calculated point of intersection with the meanders of the right bank of Fire Creek. |
| | Thence on a blank line across Fire Creek. |
| 55.845 | Calculated point of intersection with the meanders of the left bank of Fire Creek. |

AR002355



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 59.960 | Point for the C-W 1/16 sec. cor. of sec. 7.  No corner monument set. |
| 70.00 | Ascend N. slope of spur through large timber. |
| 76.320 | The 1/4 sec. cor. of secs. 7 and 12, on the west boundary of the township. |

### SUBDIVISION OF SE¼ OF SEC. 7

From the E 1/16 sec. cor. of secs. 7 and 18.

N. 0° 08' W., on the N-S center line of SE¼ Sec. 7.

Over level land through timber.

| | |
|---|---|
| 5.003 | Point for the C-S-S-SE 1/256 sec. cor. of Sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-SE 1/256 S7. |
| 9.967 | Center line of the Alaska Railroad, bears N.23°50' E.,and S.23°50'W. |
| 10.005 | Point for the C-S-SE 1/64 sec. cor. of Sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 34 ins. in the ground, mkd. C-S-SE 1/64 S7. |
| 11.25 | Telephone line, same bearing as the railroad. |
| 15.008 | Point for the C-N-S-SE 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-SE 1/256 S7. |
| 20.010 | Point for the SE 1/16 sec. cor. of sec. 7 at the intersection with the E-W center line. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 24 ins. in the ground, with brass cap mkd. |

<p align="center">S 7<br>SE 1/16<br>1952</p>

from which

    A spruce, 8 ins. diam., bears N. 4½° E., 25½ lks. dist., mkd. SE 1/16 S7 BT.

    A birch, 10 ins. diam., bears S. 29 3/4° E., 23 lks. dist., mkd. SE 1/16 S7 BT.

| | |
|---|---|
| 25.013 | Point for the C-S-N-SE 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-SE 1/256 S7. |
| 26.25 | Creek, 3 lks. wide, 4 ins. deep, course SW. |
| 30.015 | Point for the C-N-SE 1/64 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SE 1/64 S7. |
| 31.65 | Descend 20 ft. over NW. slope through timber. |
| 32.90 | Base of slope, bears NE. and SW; thence over level land through timber. |



141

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 35.018 | Point for the C-N-N-SE 1/256 sec. cor. of Sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N-SE 1/256 S7. |
| 40.020 | The C-E 1/16 sec. cor. of Sec. 7. |

From the S 1/16 sec. cor. of secs. 7 and 8.

N. 89° 59' W., on the E-W center line of the SE¼ of sec. 7.

Over rolling land through scattered timber.

| 3.55 | Power line, bears N. 17° 07' E., and S. 17° 07' W. |
|---|---|
| 3.75 | Graded road, follows power line.  Descend W. slope. |
| 4.995 | Point for the C-E-E-SE 1/256 sec. cor. of Sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-SE 1/256 S7. |
| 9.990 | Point for the C-E-SE 1/64 sec. cor. of Sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SE 1/64 S7. |
| 10.75 | Creek, 3 lks. wide, 4 ins. deep, course NW. |
| 15.52 | Center line of the Alaska Railroad, bears N. 23° 50' E., and S. 23° 50' W. |
| 16.00 | Telephone line, same bearing as the railroad. |
| 19.980 | The SE 1/16 sec. cor. of sec. 7. |
| 24.975 | Point for the C-E-W-SE 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-SE 1/256 S7. |
| 26.90 | Leave heavy timber; thence over muskeg land through scattered spruce timber. |
| 29.970 | Point for the C-W-SE 1/64 sec.cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SE 1/64 S7. |
| 34.965 | Point for the C-W-W-SE 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-SE 1/256 S7. |
| 37.70 | Creek, 5 lks. wide, 6 ins. deep, course SW.; thence ascend SE. slope. |
| 39.960 | The C-S 1/16 sec. cor. of sec. 7. |

### SUBDIVISION OF SE¼ SE¼ OF SEC. 7

From the E-E 1/64 sec. cor. of secs. 7 and 18.

N. 0° 08' W., on the N-S center line of SE¼ SE¼ Sec. 7.

Over rolling land through undergrowth and small timber.

| 5.002 | Point for the C-S-SE-SE 1/256 sec. cor. of sec. 7.  No corner monument set. |
|---|---|



[redacted]

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 10.003 | Point for the SE-SE 1/64 sec. cor. of sec. 7 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SE-SE 1/64 S7. |
| 10.60 | Descend 50 ft. over SE. slope. |
| 15.004 | Point for the C-N-SE-SE 1/256 sec. cor. of sec. 7 at base of slope. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SE-SE 1/256 S7.½ |
| 19.70 | Creek, 3 lks. wide, 4 ins. deep, course NW. |
| 20.005 | The C-E-SE 1/64 sec. cor. of sec. 7. |
| | From the S-S 1/64 sec. cor. of secs. 7 and 8. |
| | N. 89° 59' W., on the E-W center line of SE¼ SE¼ Sec. 7. |
| | Descend over rolling land through scattered timber. |
| 6.63 | Power line, bears N. 17° 07' E., and S. 17° 07' W. |
| 6.80 | Graded road, follows the power line. |
| 9.990 | The SE-SE 1/64 sec. cor. of sec. 7. Thence descend 60 ft. over NW. slope. |
| 14.985 | Point for the C-W-SE-SE 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SE-SE 1/256 S7. |
| | Continue descending 45 ft. |
| 19.963 | Center line Alaska Railroad bears N. 23° 50' E., and S. 23° 50' W. |
| 19.980 | The C-S-SE 1/64 sec. cor. of sec. 7. |
| | **SUBDIVISION OF NE¼ SE¼ OF SEC. 7** |
| | From the C-E-SE 1/64 sec. cor. of sec. 7. |
| | N. 0° 08' W., on the N-S center line of NE¼ SE¼ Sec. 7. |
| | Descend over rolling land through timber and undergrowth. |
| 5.002 | Point for the C-S-NE-SE 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NE-SE 1/256 S7. |
| 10.003 | Point for the NE-SE 1/64 sec. cor. of Sec. 7 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NE-SE 1/64 S7. |
| 10.80 | Creek, 3 lks. wide, 4 ins. deep, course NW. |
| 12.448 | Center line of the Alaska Railroad, bears N. 23° 50' E., and S. 23°50' W. |
| 13.55 | Telephone line, same bearing as the railroad. |
| 15.004 | Point for the C-N-NE-SE 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NE-SE 1/256 S7. |

## T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 20.005 | The C-E-E 1/64 sec. cor. of Sec. 7. |
| | From the N-S 1/64 sec. cor. of Secs. 7 and 8. |
| | N. 89° 58' W., on the E-W center line of NE¼ SE¼ sec. 7. |
| | Descend over rolling land through timber. |
| 0.448 | Power line, bears N. 17° 07' E. and S. 17° 07' W. |
| 2.75 | Graded road, bears N. and S. Descend 30 ft. over NW. slope through timber and undergrowth. |
| 4.995 | Point for the C-E-NE-SE 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NE-SE 1/256 S7. |
| 9.00 | Creek, 3 lks. wide, 4 ins. deep, course NW. |
| 9.990 | The NE-SE 1/64 sec. cor. of Sec. 7. |
| 11.08 | Center line of the Alaska Railroad, bears N. 23° 50' E., and S. 23° 50' W. |
| 11.55 | Telephone line, same bearing as the railroad. |
| 14.985 | Point for the C-W-NE-SE 1/256 sec. cor. of Sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NE-SE 1/256 S7. |
| 19.980 | The C-N-SE 1/64 sec. cor. of sec. 7. |

### SUBDIVISION OF SW¼ SE¼ OF SEC. 7

| | |
|---|---|
| | From the W-E 1/64 sec. cor. of secs. 7 and 18. |
| | N. 0° 08' W., on the N-S center line of SW¼ SE¼ Sec. 7. |
| | Over rolling land through timber. |
| 5.004 | Point for the C-S-SW-SE 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SW-SE 1/256 S7. |
| 10.008 | Point for the SW-SE 1/64 sec. cor. of sec. 7 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SW-SE 1/64 S7. |
| 15.012 | Point for the C-N-SW-SE 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SW-SE 1/256 S7. |
| 20.015 | The C-W-SE 1/64 sec. cor. of sec. 7. |
| | From the C-S-SE 1/64 sec. cor. of sec. 7. |
| | N. 89° 59' W., on the E-W center line of SW¼ SE¼ Sec. 7. |
| | Descend over NW. slope of the railroad fill; thence over rolling land through timber. |

AR002359



1144

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 0.80 | Telephone line, follows the railroad. |
| 4.995 | Point for the C-E-SW-SE 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SW-SE 1/256 S7. |
| 9.990 | The SW-SE 1/64 sec. cor. of sec. 7. |
| 14.985 | Point for the C-W-SW-SE 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SW-SE 1/256 S7. |
| 19.980 | The C-S-S 1/64 sec. cor. of sec. 7. |

### SUBDIVISION OF NW¼ SE¼ OF SEC. 7

From the C-W-SE 1/64 sec. cor. of sec. 7.

N. 0° 08' W., on the N-S center line of NW¼ SE¼ Sec. 7.

Over rolling land through timber.

| | |
|---|---|
| 4.00 | Creek, 5 lks. wide, 6 ins. deep, course SW. |
| 5.004 | Point for the C-S-NW-SE 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NW-SE 1/256 S7. |
| 10.008 | Point for the NW-SE1/64 sec. cor. of sec. 7, at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NW-SE 1/64 S7. |
| 15.012 | Point for the C-N-NW-SE 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NW-SE 1/256 S7. |
| 20.015 | The C-W-E 1/64 sec. cor. of sec. 7. |

From the C-N-SE 1/64 sec. cor. of sec. 7.

N. 89° 58' W., on the E-W center line of NW¼ SE¼ Sec. 7.

Over rolling land through timber.

| | |
|---|---|
| 4.995 | Point for the C-E-NW-SE 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NW-SE 1/256 S7. |
| 9.990 | The NW-SE 1/64 sec. cor. of sec. 7. |
| 14.985 | Point for the C-W-NW-SE 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NW-SE 1/256 S7. |
| 19.980 | The C-N-S 1/64 sec. cor. of sec. 7. |

AR002360



145

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | **SUBDIVISION OF SW¼ SECTION 7** |
| | From the W 1/16 sec. cor. of secs. 7 and 18. |
| | N. 0° 09' W., on the N-S center line of SW¼ Sec. 7. |
| | Descend over N. slope through timber. |
| 5.003 | Point for the C-S-S-SW 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-SW 1/256 S7. |
| 10.007 | Point for the C-S-SW 1/64 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SW 1/64 S7. |
| 15.011 | Point for the C-N-S-SW 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-SW 1/256 S7. |
| 20.015 | Point for the SW 1/16 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SW 1/16 S7. |
| | Thence over rolling land through timber. |
| 40.030 | Point for the C-W 1/16 sec. cor. of sec. 7. |
| | From the C-S 1/16 sec. cor. of sec. 7. |
| | N. 89° 56' W., on the E-W center line of SW¼ Sec. 7. |
| | Over rolling land through timber. |
| 4.997 | Point for the C-E-E-SW 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-SW 1/256 S7. |
| 9.994 | Point for the C-E-SW 1/64 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SW 1/64 S7. |
| 11.00 | Fire Creek, course N. |
| 14.991 | Point for the C-W-E-SW 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-SW 1/256 S7. |
| 19.988 | The SW 1/16 sec. cor. of sec. 7. |
| 24.985 | Point for the C-E-W-SW 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-SW 1/256 S7. |
| 29.982 | Point for the C-W-SW 1/64 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SW 1/64 S7. |
| 36.400 | The S 1/16 sec. cor. of secs. 7 and 12, on the West boundary of the township. |

AR002361



146

T.15 N., R. 1.W., S.M.

| Chains | SUBDIVISION OF SE¼ SW¼ SECTION 7 |
|--------|----------------------------------|
| | From the E-W 1/64 sec. cor. of secs. 7 and 18. |
| | N. 0° 08' W., on the N-S center line of SE¼ SW¼ sec. 7. |
| | Descend over NE. slope through timber. |
| 5.005 | Point for the C-S-SE-SW 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SE-SW 1/256 S7. |
| 10.010 | Point for the SE-SW 1/64 sec. cor. of sec. 7 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SE-SW 1/64 S7. |
| 15.015 | Point for the C-N-SE-SW 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SE-SW 1/256 S7. |
| 18.00 | Fire Creek, course NW. |
| 20.020 | The C-E-SW 1/64 sec. cor. of sec. 7. |
| | From the C-S-S 1/64 sec. cor. of sec. 7. |
| | N. 89° 56' W., on the E-W center line of SE¼ SW¼ Sec. 7. |
| | Descend over rolling land through timber. |
| 4.996 | Point for the C-E-SE-SW 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SE-SW 1/256 S7. |
| 5.50 | Fire Creek, course NW.; thence ascend NE. slope through timber. |
| 9.992 | The SE-SW 1/64 sec. cor. of sec. 7. |
| 14.988 | Point for the C-W-SE-SW 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SE-SW 1/256 S7. |
| 19.984 | The C-S-SW 1/64 sec. cor. of sec. 7. |
| | SUBDIVISION OF SW¼ SW¼ SEC. 7 |
| | From the W-W 1/64 sec. cor. of secs. 7 and 18. |
| | N. 0° 09' W., on the N-S center line of SW¼ SW¼ Sec. 7. |
| | Over rolling land through timber. |
| 5.003 | Point for the C-S-SW-SW 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SW-SW 1/256 S7. |
| 10.006 | Point for the SW-SW 1/64 sec. cor. of sec. 7 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SW-SW 1/64 S7. |

AR002362




147

T. 15 N., R. 1 W., S.M

| Chains | |
|---|---|
| 15.009 | Point for the C-N-SW-SW 1/256 sec. cor. of sec. 7. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SW-SW 1/256 S7. |
| 20.012 | The C-W-SW 1/64 sec. cor. of sec. 7. |

From the C-S-SW 1/64 sec. cor. of sec. 7.

N. 89° 56' W., on the E-W center line of SW¼ SW¼ Sec. 7.

Over rolling land through timber.

| 4.996 | Point for the C-E-SW-SW 1/256 sec. cor. of sec. 7. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SW-SW 1/256 S7. |
| 9.992 | The SW-SW 1/64 sec. cor. of sec. 7. |
| 16.436 | The S-S 1/64 sec. cor. of secs. 7 and 12, on the west boundary of the township. |

### SUBDIVISION OF SECTION 8

From the 1/4 sec. cor. of secs. 8 and 17.

N. 0° 05' W., on the N-S center line of Sec. 8.

Descend over rolling land through scattered timber.

| 5.014 | Point for the C-S-S-S 1/256 sec. cor. of sec. 8. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-S 1/256 S8. |
| 10.028 | Point for the C-S-S 1/64 sec. cor. of sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S 1/64 S8. |
| 15.042 | Point for the C-N-S-S 1/256 sec. cor. of sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-S 1/256 S8. |
| 20.055 | Point for the C-S 1/16 sec. cor. of sec. 8. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

$$S\ 8$$
$$C - S$$
$$+$$
$$1/16$$
$$1952$$

dig pits, 18x18x12 ins., N. and S. of post, 3 ft. dist.

| 25.069 | Point for the C-S-N-S 1/256 sec. cor. of sec. 8. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-S 1/256 S8. |
| 30.083 | Point for the C-N-S 1/64 sec. cor. of sec. 8. |

AR002363



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C–N–S 1/64 S8. |
| 35.097 | Point for the C–N–N–S 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C–N–N–S 1/256 S8. |
| 40.110 | Point for the center 1/4 sec. cor. of Sec. 8 at the intersection with the E–W center line. |

Set an iron post, 28 ins. long, 2½ ins. diam., 24 ins. in the ground, with brass cap mkd.

<div align="center">

S 8

C ¼

1952

</div>

from which

 A birch, 10 ins. diam., bears S. 4° E., 191 lks. dist., mkd. 0¼ S8 BT.

 A birch, 12 ins. diam., bears N. 67½° W., 56 lks. dist., mkd. 0¼ S8 BT.

| 40.90 | Power line, built in 1953, bears E. and N., 80 lks. E. of line. |
| 44.00 | Descend 50 ft. over NE. slope of bluff. |
| 45.113 | Point for the C–S–S–N 1/256 sec. cor. of Sec. 8 at the base of bluff. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C–S–S–N 1/256 S8.

Over level land through large timber and some dead fall.

| 50.115 | Point for the C–S–N 1/64 sec. cor. of Sec. 8. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C–S–N 1/64 S8.

| 55.118 | Point for the C–N–S–N 1/256 sec. cor. of Sec. 8. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C–N–S–N 1/256 S8.

| 60.120 | Point for the C–N 1/16 sec. cor. of Sec. 8. |

Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd.

<div align="center">

S 8

C – N

1/16

1952

</div>

from which

 A spruce, 10 ins. diam., bears N. 24½° E., 60 lks. dist., mkd. C–N 1/16 S8 BT.

 A spruce, 10 ins. diam., bears N. 18½° W., 39 lks. dist., mkd. C–N 1/16 S8 BT.

AR002364

149

| Chains | |
|--------|--|
| 65.123 | Point for the C-S-N-N 1/256 sec. cor. of sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-N 1/256. |
| 70.125 | Point for the C-N-N 1/64 sec. cor. of sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N 1/64 S8. |
| 75.128 | Point for the C-N-N-N 1/256 sec. cor. of sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N-N 1/256 S8. |
| 80.130 | The 1/4 sec. cor of secs. 5 and 8. |
| | ———————————— |
| | From the 1/4 sec. cor. of Secs. 7 and 8. |
| | EAST, on the E-W center line of Sec. 8. |
| | Over level land through large timber. |
| 2.65 | Power line, bears N. 17° 07' E., and S. 17° 07' W.; also graded road, approximately same bearing. |
| 5.000 | Point for the C-W-W-W 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-W 1/256 S8. |
| | Thence ascend 30 ft. over NW. slope through timber and undergrowth. |
| 10.000 | Point for the C-W-W 1/64 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W 1/64 S8. |
| | Thence over rolling land through timber, undergrowth and deadfall. |
| 15.000 | Point for the C-E-W-W 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-W 1/256 S8. |
| 20.000 | Point for the C-W 1/16 sec. cor. of Sec. 8. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div align="center">

S 8

C-W

+

1/16

1952

</div>

from which

      A birch, 6 ins. diam., bears N. 64½° E., 87 lks. dist., mkd. C-W 1/16 S8 BT.

      A spruce, 8 ins. diam., bears S. 46 3/4° E., 92 lks. dist., mkd. C-W 1/16 S8 BT.

| 25.000 | Point for the C-W-E-W 1/256 sec. cor. of Sec. 8. |
|--------|--|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-W 1/256 S8. |

AR002365



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 30.000 | Point for the C-E-W 1/64 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W 1/64 S8. |
| 35.000 | Point for the C-E-E-W 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-W 1/256 S8. |
| 40.000 | The center 1/4 sec. cor. of Sec. 8. |
| 40.80 | New power line, bears N. and E., 80 lks. N. of line. |
| 44.998 | Point for the C-W-W-E 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-E 1/256 S8. |
| 49.995 | Point for the C-W-E 1/64 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E 1/64 S8. |
| 54.993 | Point for the C-E-W-E 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-E 1/256 S8. |
| 59.990 | Point for the C-E 1/16 sec. cor. of Sec. 8. |
| | Set an iron post, 28 ins. long, $2\frac{1}{2}$ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div align="center">

S 8

C - E

\+

1/16

1953

</div>

from which

    A spruce, 12 ins. diam., bears N. 80° E., 36 lks. dist., mkd. C-E 1/16 S8 BT.

    A birch, 12 ins. diam., bears S. 28° E., 72 lks. dist., mkd. C-E 1/16 S8 BT.

| | |
|---|---|
| 64.988 | Point for the C-W-E-E 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-E 1/256 S8. |
| 69.985 | Point for the C-E-E 1/64 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E 1/64 S8. |
| 74.983 | Point for the C-E-E-E 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-E 1/256 S8. |
| 76.90 | Descend 40 ft. over NE. slope through timber. |
| 79.980 | The 1/4 sec. cor. of Secs. 8 and 9. |

AR002366



151

T. 15 N., R. 1 W., S.M

| Chains | SUBDIVISION OF SE¼ SEC. 8 |
|--------|---------------------------|
|  | From the E 1/16 sec. cor. of Secs. 8 and 17. |
|  | N. 0° 07' W., on the N-S center line of SE¼ Sec. 8. |
|  | Ascend 50 ft. over SE. slope through timber. |
| 5.009 | Point for the C-S-S-SE 1/256 sec. cor. of Sec. 8. |
|  | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-SE 1/256 S8. |
| 6.60 | Ridge, bears NE. and SW.  Thence descend 60 ft. over NW. slope through timber. |
| 10.018 | Point for the C-S-SE 1/64 sec. cor. of Sec. 8. |
|  | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SE 1/64 S8. |
| 15.027 | Point for the C-N-S-SE 1/256 sec. cor. of Sec. 8. |
|  | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-SE 1/256 S8. |
|  | Base of ridge, thence over rolling land through timber. |
| 20.035 | Point for the SE 1/16 sec. cor. of Sec. 8 at the intersection with the E-W center line. |
|  | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |
|  | S 8 |
|  | SE 1/16 |
|  | 1953 |
|  | from which |
|  | A birch, 6 ins. diam., bears N. 20° E., 17 lks. dist., mkd. SE 1/16 S8 BT. |
|  | A birch, 6 ins. diam., bears S. 37° W., 8 lks. dist., mkd. SE 1/16 S8 BT. |
| 25.044 | Point for the C-S-N-SE 1/256 sec. cor. of sec. 8. |
|  | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-SE 1/256 S8. |
| 30.053 | Point for the C-N-SE 1/64 sec. cor. of Sec. 8. |
|  | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SE 1/64 S8. |
| 35.062 | Point for the C-N-N-SE 1/256 sec. cor. of Sec. 8. |
|  | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N-SE 1/256 S8. |
| 40.070 | The C-E 1/16 sec. cor. of Sec. 8. |
|  | From the S 1/16 sec. cor. of Secs. 8 and 9. |
|  | S. 89° 56' W., on the E-W center line of SE¼ Sec. 8. |
|  | Ascend over SE. slope of ridge through timber and undergrowth. |

AR002367



152

T. 15 N.; R. 1 W., S.M

| Chains | |
|---|---|
| 5.000 | Point for the C-E-E-SE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-SE 1/256 S8. |
| | Descend NW. slope of ridge through timber, and undergrowth. |
| 10.000 | Point for the C-E-SE 1/64 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SE 1/64 S8. |
| 15.000 | Point for the C-W-E-SE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-SE 1/256 S8. |
| 20.000 | The SE 1/16 sec. cor. of Sec. 8. |
| 25.000 | Point for the C-E-W-SE 1/256 sec. cor. of Sec. 8.             x |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-SE 1/256 S8. |
| 30.000 | Point for the C-W-SE 1/64 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SE 1/64 S8. |
| 35.000 | Point for the C-W-W-SE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-SE 1/256 S8. |
| 40.000 | The C-S 1/16 sec. cor. of Sec. 8. |

SUBDIVISION OF SE¼ SE¼ SEC. 8

From the E-E 1/64 sec. cor. of Secs. 8 and 17.

N. 0° 07' W., on the N-S center line of SE¼ SE¼, Sec. 8.

Ascend over rolling land through timber and undergrowth.

| 5.007 | Point for the C-S-SE-SE 1/256 sec. cor. of Sec. 8. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SE-SE 1/256 S8. |
| 10.013 | Point for the SE-SE 1/64 sec. cor. of Sec. 8, at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SE-SE 1/64 S8. |
| 15.019 | Point for the C-N-SE-SE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SE-SE 1/256 S8. |
| | Ridge, bears NE. and SW. Descend over NW. slope through timber and undergrowth. |
| 20.025 | The C-E-SE 1/64 sec. cor. of Sec. 8. |

From the S-S 1/64 sec. cor. of Secs. 8 and 9.

AR002368


T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | S. 89° 55' W., on the E-W center line of SE¼ SE¼ Sec. 8. |
| | Ascend SE. slope through timber and undergrowth. |
| 5.001 | Point for the C-E-SE-SE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SE-SE 1/256 S8. |
| 10.002 | The SE-SE 1/64 sec. cor. of Sec. 8. |
| 15.003 | Point for the C-W-SE-SE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SE-SE 1/256 S8. |
| | Ridge, bears NE. and SW.  Descend over NW. slope through timber and undergrowth. |
| 20.005 | The C-S-SE 1/64 sec. cor. of Sec. 8. |

SUBDIVISION OF THE NE¼ SE¼ SEC. 8

From the C-E-SE 1/64 sec. cor. of Sec. 8.

N. 0° 07' W., on the N-S center line of NE¼ SE¼ Sec. 8.

Over rolling land through timber and undergrowth.

| 5.007 | Point for the C-S-NE-SE 1/256 sec. cor. of Sec. 8. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NE-SE 1/256 S8. |
| 10.013 | Point for the NE-SE 1/64 sec. cor. of Sec. 8 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NE-SE 1/64 S8. |
| 15.019 | Point for the C-N-NE-SE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NE-SE 1/256 S8. |
| 20.025 | The C-E-E 1/64 sec. cor. of Sec. 8. |

From the N-S 1/64 sec. cor. of secs. 8 and 9.

S. 89° 57' W., on the E-W center line of NE¼ SE¼ Sec. 8.

Over rolling land through timber and undergrowth.

| 4.998 | Point for the C-E-NE-SE 1/256 sec. cor. of Sec. 8. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NE-SE 1/256 S8. |
| 9.997 | The NE-SE 1/64 sec. cor. of Sec. 8. |
| 14.996 | Point for the C-W-NE-SE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NE-SE 1/256 S8. |
| 19.995 | The C-N-SE 1/64 sec. cor. of Sec. 8. |

AR002369

4—678 b



154

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | ## SUBDIVISION OF THE SW¼ SE¼ SEC. 8 |
| | From the W-E 1/64 sec. cor. of Secs. 8 and 17. |
| | N. 0° 06' W., on the N-S center line of SW¼ SE¼ Sec. 8. |
| | Ascend over SE. slope of ridge. |
| 2.50 | Top of ridge, bears NE. and SW. Descend NW. slope through timber and undergrowth. |
| 5.012 | Point for the C-S-SW-SE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SW-SE 1/256 S8. |
| 10.023 | Point for the SW-SE 1/64 sec. cor. of Sec. 8 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SW-SE 1/64 S8. |
| | Thence over rolling land through timber and undergrowth. |
| 15.034 | Point for the C-N-SW-SE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SW-SE 1/256 S8. |
| 20.045 | The C-W-SE 1/64 sec. cor. of Sec. 8. |
| | ———————— |
| | From the C-S-SE 1/64 sec. cor. of Sec. 8. |
| | S. 89° 55' W., on the E-W center line of SW¼ SE¼ Sec. 8. |
| | Descend over NW. slope through timber and undergrowth. |
| 5.001 | Point for the C-E-SW-SE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SW-SE 1/256 S8. |
| 10.002 | The SW-SE 1/64 sec. cor. of Sec. 8. |
| | Thence over rolling land through timber and undergrowth. |
| 15.003 | Point for the C-W-SW-SE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SW-SE 1/256 S8. |
| 20.005 | The C-S-S 1/64 sec. cor. of Sec. 8. |
| | ## SUBDIVISION OF THE NW¼ SE¼ SEC. 8 |
| | From the C-W-SE 1/64 sec. cor. of Sec. 8. |
| | N. 0° 06' W. on the N-S center line of NW¼ SE¼ Sec. 8. |
| | Over rolling land through timber and undergrowth. |
| 5.012 | Point for the C-S-NW-SE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NW-SE 1/256 S8. |
| 10.023 | Point for the NW-SE 1/64 sec. cor. of sec. 8 at the intersection with the E-W center line. |

AR002370



155

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NW-SE 1/64 S8. |
| 15.034 | Point for the C-N-NW-SE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NW-SE 1/256 S8. |
| 20.045 | The C-W-E 1/64 sec. cor. of Sec. 8. |

From the C-N-SE 1/64 sec. cor. of Sec. 8.

S. 89° 57' W., on the E-W center line of the NW¼ SE¼ Sec. 8.

Over rolling land through timber and undergrowth.

| 4.998 | Point for the C-E-NW-SE 1/256 sec. cor. of Sec. 8. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NW-SE 1/256 S8. |
| 9.997 | The NW-SE 1/64 sec. cor. of Sec. 8. |
| 14.996 | Point for the C-W-NW-SE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NW-SE 1/256 S8. |
| 19.995 | The C-N-S 1/64 sec. cor. of Sec. 8. |

### SUBDIVISION OF THE NE¼ SEC. 8

From the C-E 1/16 sec. cor. of Sec. 8.

N. 0° 03' W., on the N-S center line of NE¼ Sec. 8.

Over rolling land through timber and undergrowth.

| 0.80 | New power line, bears E. and W. |
|---|---|
| 2.40 | Descend 40 ft. over N. slope. |
| 5.003 | Point for the C-S-S-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-NE 1/256 S8. |
| | Thence over rolling land through timber and undergrowth. |
| 10.005 | Point for the C-S-NE 1/64 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NE 1/64 S8. |
| 15.008 | Point for the C-N-S-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-NE 1/256 S8. |
| 20.010 | Point for the NE 1/16 sec. cor. of Sec. 8 at the intersection with the E-W center line. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

S 8
NE 1/16
1953

AR002371



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | from which |
| | A spruce, 14 ins. diam., bears N. 45½° - W., 139 lks. dist., mkd. NE 1/16 S8 BT. |
| | A birch, 14 ins. diam., bears N. 79° W., 147 lks. dist., mkd. NE 1/16 S8 BT. |
| 25.013 | Point for the C-S-N-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-NE 1/256 S8. |
| 26.75 | Graded road, bears NW. and SE. |
| 30.015 | Point for the C-N-NE 1/64 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NE 1/64 S8. |
| 35.018 | Point for the C-N-N-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N-NE 1/256 S8. |
| 40.020 | The E 1/16 sec. cor. of secs. 5 and 8. |
| | From the N 1/16 sec. cor. of Secs. 8 and 9. |
| | WEST, on the E-W center line of NE¼ Sec. 8. |
| | Over rolling land through timber and undergrowth. |
| 5.000 | Point for the C-E-E-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-NE 1/256 S8. |
| 5.80 | Graded road, bears NW. and SE. |
| 10.000 | Point for the C-E-NE 1/64 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NE 1/64 S8. |
| 15.000 | Point for the C-W-E-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-NE 1/256 S8. |
| 20.000 | The NE 1/16 sec. cor. of Sec. 8. |
| 25.000 | Point for the C-E-W-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-NE 1/256 S8. |
| 30.000 | Point for the C-W-NE 1/64 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NE 1/64 S8. |
| 35.000 | Point for the C-W-W-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-NE 1/256 S8. |
| 40.000 | The C-N 1/16 sec. cor. of Sec. 8. |

AR002372

157

T. 15 N., R. 1 W., S.M.

| Chains | |
|--------|--|
| | ## SUBDIVISION OF THE SE¼ NE¼ SEC. 8 |
| | From the C-E-E 1/64 sec. cor. of Sec. 8. |
| | N. 0° 02' W., on the N-S center line of SE¼ NE¼ Sec. 8. |
| | Over rolling land through timber and undergrowth. |
| 0.80 | New power line, bears E. and W. |
| 5.003 | Point for the C-S-SE-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SE-NE 1/256 S 8. |
| 10.005 | Point for the SE-NE 1/64 sec. cor. of Sec. 8 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SE-NE 1/64 S8. |
| 15.008 | Point for the C-N-SE-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SE-NE 1/256 S8. |
| 20.010 | The C-E-NE 1/64 sec. cor. of Sec. 8. |
| | From the S-N 1/16 sec. cor. of Sec. 8 and 9. |
| | WEST, on the E-W center line of SE¼ NE¼ Sec. 8. |
| | Over gently rolling land through timber and undergrowth. |
| 4.998 | Point for the C-E-SE-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SE-NE 1/256 S8. |
| 9.997 | The SE-NE 1/64 sec. cor. of Sec. 8. |
| 14.996 | Point for the C-W-SE-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SE-NE 1/256 S8. |
| 19.995 | The C-S-NE 1/64 sec. cor. of Sec. 8. |
| | ## SUBDIVISION OF NE¼ NE¼ SEC. 8 |
| | From the C-E-NE 1/64 sec. cor. of Sec. 8. |
| | N. 0° 02' W., on the N-S center line of NE¼ NE¼, Sec. 8. |
| | Over rolling land through timber and undergrowth. |
| 1.90 | Graded road, bears NW. and SE. |
| 5.003 | Point for the C-S-NE-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NE-NE 1/256 S8. |
| 10.005 | Point for the NE-NE 1/64 sec. cor. of Sec. 8 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NE-NE 1/64 S8. |

AR002373



### T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 15.008 | Point for the C-N-NE-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NE-NE 1/256 S8. |
| 20.010 | The E-E 1/64 sec. cor. of Secs. 5 and 8. |

From the N-N 1/64 sec. cor. of Secs. 8 and 9.

WEST, on the E-W center line of NE¼ NE¼ sec. 8.

Over rolling land through timber and undergrowth.

| | |
|---|---|
| 5.001 | Point for the C-E-NE-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NE-NE 1/256 S8. |
| 10.002 | The NE-NE 1/64 sec. cor. of Sec. 8. |
| 15.003 | Point for the C-W-NE-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NE-NE 1/256 S8. |
| 20.005 | The C-N-NE 1/64 sec. cor. of Sec. 8. |

### SUBDIVISION OF SW¼ NE¼ SEC. 8

From the C-W-E 1/64 sec. cor. of Sec. 8.

N.0° 04' W., on the N-S center line of SW¼ NE¼ Sec. 8.

Over rolling land through timber and undergrowth.

| | |
|---|---|
| 0.80 | New power line, bears E. and W. |
| 5.003 | Point for the C-S-SW-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SW-NE 1/256 S8. |
| 10.005 | Point for the SW-NE 1/64 sec. cor. of Sec. 8 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SW-NE 1/64 S8. |
| 15.008 | Point for the C-N-SW-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SW-NE 1/256 S8. |
| 20.010 | The C-W-NE 1/64 sec. cor. of Sec. 8. |

From the C-S-NE 1/64 sec. cor. of Sec. 8.

WEST, on the E-W center line of SW¼ NE¼ Sec. 8.

Over rolling land through timber and undergrowth.

| | |
|---|---|
| 4.998 | Point for the C-E-SW-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SW-NE 1/256. |

AR002374



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 9.997 | The SW-NE 1/64 sec. cor. of Sec. 8. |
| 14.996 | Point for the C-W-SW-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SW-NE 1/256 S8. |
| 19.20 | New power line, bears N. and S. |
| 19.995 | The C-S-N 1/64 sec. cor. of Sec. 8. |

### SUBDIVISION OF NW¼ NE¼ SEC. 8

| | |
|---|---|
| | From the C-W-NE 1/64 sec. cor. of Sec. 8. |
| | N. 0° 04' W., on the N-S center line of NW¼ NE¼ Sec. 8. |
| | Over gently rolling land through timber and undergrowth. |
| 5.003 | Point for the C-S-NW-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NW-NE 1/256 S8. |
| 10.005 | Point for the NW-NE 1/64 sec. cor. of Sec. 8, at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NW-NE 1/64 S8. |
| 15.008 | Point for the C-N-NW-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NW-NE 1/256 S8. |
| 16.00 | Graded road, bears NW. and SE. |
| 20.010 | The W-E 1/64 sec. cor. of secs. 5 and 8. |

| | |
|---|---|
| | From the C-N-NE 1/64 sec. cor. of Sec. 8. |
| | WEST, on the E-W center line of NW¼ NE¼ Sec. 8. |
| | Over gently rolling land through timber. |
| 3.50 | Graded road, bears NW. and SE. |
| 5.001 | Point for the C-E-NW-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NW-NE 1/256 S8. |
| 10.002 | The NW-NE 1/64 sec. cor. of Sec. 8. |
| 15.003 | Point for the C-W-NW-NE 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NW-NE 1/256 S8. |
| 19.20 | New power line, bears N. and S. |
| 20.005 | The C-N-N 1/64 sec. cor. of Sec. 8. |

AR002375

4—878 b



T. 15 N., R. 1 W., S.M.

| Chains | SUBDIVISION OF SW¼ SECTION 8 |
|---|---|
| | From the W 1/16 sec. cor. of secs. 8 and 17. |
| | N. 0° 07' W., on the N-S center line of SW¼, Sec. 8. |
| | Over muskeg land. |
| 5.007 | Point for the C-S-S-SW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-SW 1/256 S8. |
| 10.015 | Point for the C-S-SW 1/64 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SW 1/64 S8. |
| 15.22 | Point for the C-N-S-SW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-SW 1/256 S8. |
| | Thence over rolling land through timber. |
| 20.030 | Point for the SW 1/16 sec. cor. of Sec. 8 at the intersection with the E-W center line. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |
| | S 8 |
| | SW 1/16 |
| | 1952 |
| | dig pits, 18x18x12 ins., N. and S. of post, 3 ft. dist. |
| 25.037 | Point for the C-S-N-SW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-SW 1/256 S8. |
| 29.00 | Spring creek, course NE. |
| 29.55 | Top of bluff, bears NE. and SW; descend 30 ft. over NW. slope through timber. |
| 30.045 | Point for the C-N-SW 1/64 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SW 1/64 S8. |
| 31.00 | Base of slope; thence over rolling land. |
| 35.052 | Point for the C-N-N-SW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N-SW 1/256 S8. |
| 40.060 | The C-W 1/16 sec. cor. of Sec. 8. |
| | From the C-S 1/16 sec. cor. of Sec. 8. |
| | N. 89° 52' W., on the E-W center line of SW¼ Sec. 8. |
| | Over muskeg land. |
| 9.995 | Point for the C-E-SW 1/64 sec. cor. of sec. 8. |

AR002376



101.                          T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SW 1/64 S8. |
| 14.993 | Point for the C-W-E-SW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-SW 1/256 S8. |
| 17.50 | Over rolling land through timber. |
| 19.990 | The SW 1/16 sec. cor. of Sec. 8. |
| 24.988 | Point for the C-E-W-SW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-SW 1/256 S8. |
| 29.985 | Point for the C-W-SW 1/64 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SW 1/64 S8. |
| 34.983 | Point for the C-W-W-SW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-SW 1/256 S8. |
| 39.980 | The S 1/16 sec. cor. of Secs. 7 and 8. |

### SUBDIVISION OF NE¼ SW¼ OF SEC. 8

From the C-E-SW 1/64 sec. cor. of Sec. 8.

N. 0° 06' W., on the N-S center line of the NE¼ SW¼ Sec. 8.

Over rolling land through timber.

| 5.013 | Point for the C-S-NE-SW 1/256 sec. cor. of Sec. 8. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NE-SW 1/256 S8. |
| 10.025 | Point for the NE-SW 1/64 sec. cor. of Sec. 8 at intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NE-SW 1/64 S8. |
| 15.038 | Point for the C-N-NE-SW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NE-SW 1/256 S8. |
| 20.050 | The C-E-W 1/64 sec. cor. of Sec. 8. |

From the C-N-S 1/64 sec. cor. of Sec. 8.

N. 89° 57' W., on the E-W center line of the NE¼ SW¼ Sec. 8.

Over level land through timber.

| 4.999 | Point for the C-E-NE-SW 1/256 sec. cor. of Sec. 8. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NE-SW 1/256 S8. |
| 9.998 | The NE-SW 1/64 sec. cor. of Sec. 8. |

AR002377



162

T. 15 N., R. 1 W., S.M.

| Chains | |
|--------|--|
| 14.997 | Point for the C-W-NE-SW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NE-SW 1/256 S8. |
| 18.20 | Descend 15 ft. over NW. slope. |
| 19.50 | Spring creek, course N. |
| 19.995 | The C-N-SW 1/64 sec. cor. of Sec. 8. |

### SUBDIVISION OF SW¼ SW¼ SEC. 8

From the W-W 1/64 sec. cor. of Sec. 8 and 17.

N. 0° 08' W., on the N-S center line of the SW¼ SW¼ Sec. 8.

Over rolling land through scattered timber.

| 5.002 | Point for the C-S-SW-SW 1/256 sec. cor. of Sec. 8. |
|-------|--|
| | Set a wood post, 2x 3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SW-SW 1/256 S8. |
| 10.005 | Point for the SW-SW 1/64 sec. cor. of Sec. 8 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SW-SW 1/64 S8. |
| 15.007 | Point for the C-N-SW-SW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SW-SW 1/256 S8. |
| 20.010 | The C-W-SW 1/64 sec. cor. of Sec. 8. |

From the C-S-SW sec. cor. of sec. 8.

N. 89° 50' W., on the E-W center line of the SW¼ SW¼ Sec. 8.

Over rolling land through timber.

| 4.997 | Point for the C-S-SW-SW 1/256 sec. cor. of Sec. 8. |
|-------|--|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SW-SW S8. |
| 9.993 | The SW-SW 1/64 sec. cor. of Sec. 8. |
| 14.989 | Point for the C-W-SW-SW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SW-SW 1/256 S8. |
| 19.985 | The S-S 1/64 sec. cor. of Secs. 7 and 8. |

### SUBDIVISION OF NW¼ SW¼ OF SEC. 8

From the C-W-SW 1/64 sec. cor. of Sec. 8.

N. 0° 08' W., on the N-S center line of the NW¼ SW¼, Sec. 8.

Descend over rolling land through timber.

| 4.00 | Top of bluff, bears E. and W.; descend 15 ft. over N. slope. |
|------|--|

AR002378



163                                         T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 5.005 | Point for the C-S-NW-SW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NW-SW 1/256 S8. |
| | Descend 50 ft. |
| 9.00 | Thence over level marshy land. |
| 10.010 | Point for the NW-SW 1/64 sec. cor. of Sec. 8 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NW-SW 1/64 S8. |
| 10.75 | Ascend 70 ft. over S. slope of ridge. |
| 15.015 | Point for the C-N-NW-SW 1/256 sec. cor. of Sec. 8 at top of ridge; bears E. and W. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NW-SW 1/256 S8. |
| | Descend 50 ft. over N. slope. |
| 17.20 | Thence over gently rolling land through timber. |
| 20.020 | The C-W-W 1/64 sec. cor. of Sec. 8. |

From the C-N-SW 1/64 sec. cor. of Sec. 8.

N. 89° 57' W., on the E-W center line of the NW¼ SW¼ Sec. 8.

Descend 60 ft. over NW. slope and through timber.

| 3.00 | Base of slope, bears NE. and SW.; thence over level marshy land. |
| 4.999 | Point for the C-E-NW-SW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NW-SW 1/256 S8. |
| 9.998 | The NW-SW 1/64 sec. cor. of Sec. 8. |
| 14.997 | Point for the C-W-NW-SW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NW-SW 1/256 S8. |
| 19.995 | The N-S 1/64 sec. cor. of Secs. 7 and 8. |

### SUBDIVISION OF NW¼ OF SEC. 8

From the C-W 1/16 sec. cor. of Sec. 8.

N. 0° 14' W., on the N-S center line of NW¼, Sec. 8.

Over rolling land through timber.

| 4.979 | Point for the C-S-S-NW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-NW 1/256 S8. |
| 9.958 | Point for the C-S-NW 1/64 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NW/1/64 S8. |

AR002379



164

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 14.937 | Point for the C-N-S-NW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-NW 1/256 S8. |
| 19.915 | Point for the NW 1/16 sec. cor. of Sec. 8 at the intersection with the E-W center line. |
| | Set an iron post, 28 ins. long, $2\frac{1}{2}$ ins. diam., 26 ins. in the ground, with the brass cap mkd. |

<div align="center">

S 8

NW 1/16

1952

</div>

dig pits, 18x18x12 ins., E. and W. of post, 3 ft. dist.

| 39.830 | The W 1/16 sec. cor. of Sec. 5 and 8. |
|---|---|

From the C-N 1/16 sec. cor. of Sec. 8.

S. 89° 44' W., on the E-W center line of NW¼, Sec. 8.

Over nearly level land through timber.

| 5.014 | Point for the C-E-E-NW 1/256 sec. cor. of Sec. 8. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-NW 1/256 S8. |
| 10.028 | Point for the C-E-NW 1/64 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NW 1/64 S8. |
| 15.042 | Point for the C-W-E-NW 1/256 sec. cor. of sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-NW 1/256 S8. |
| 20.055 | The NW 1/16 sec. cor. of Sec. 8. |
| 25.070 | Point for the C-E-W-NW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-NW 1/256 S8. |
| 30.085 | Point for the C-W-NW 1/64 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NW 1/64 S8. |
| 31.10 | Graded road, follows power line. |
| 31.21 | Power line, bears N. 17° 07' E., and S. 17° 07' W. |
| 35.100 | Point for the C-W-W-NW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-NW 1/256 S8. |
| 38.75 | Leave timber, bears NE. and SW.; thence over clearing. |
| 40.115 | The N/16 sec. cor. of Secs. 7 and 8. |

AR002380



165

| Chains | |
|---|---|

### SUBDIVISION OF SE¼ NW¼ OF SEC. 8

From the C-E-W 1/64 sec. cor. of Sec. 8.

N. 0° 10' W., on the N-S center line of the SE¼ NW¼ Sec. 8.

Over rolling land through timber.

**4.990**  Point for the C-S-SE-NW 1/256 sec. cor. of Sec. 8.

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SE-NW 1/256 S8.

**9.980**  Point for the SE-NW 1/64 sec. cor. of Sec. 8 at the intersection with the E-W center line.

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SE-NW 1/64 S8.

**14.970**  Point for the C-N-SE-NW 1/256 sec. cor. of Sec. 8.

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SE-NW 1/256 S8.

**19.960**  The C-E-NW 1/64 sec. cor. of Sec. 8.

_____

From the C-S-N 1/64 sec. cor. of Sec. 8.

S. 89° 52' W., on the E-W center line of the SE¼ NW¼ Sec. 8.

Over rolling land through timber.

**5.008**  Point for the C-E-SE-NW 1/256 sec. cor. of Sec. 8.

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SE-NW 1/256 S8.

**10.015**  The SE-NW 1/64 sec. cor. of Sec. 8.

**15.023**  Point for the C-W-SE-NW 1/256 sec. cor. of Sec. 8.

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SE-NW 1/256 S8.

**20.030**  The C-S-NW 1/64 sec. cor. of Sec. 8.

_____

### SUBDIVISION OF SW¼ NW¼ OF SEC. 8

From the C-W-W 1/64 sec. cor. of Sec. 8.

N. 0° 19' W., on the N-S center line of the SW¼ NW¼ Sec. 8.

Descend 50 ft. over NW. slope through timber.

**4.80**  Base of slope, bears NE. and SW; thence over gently rolling land throught timber.

**4.968**  Point for the C-S-SW-NW 1/256 sec. cor. of Sec. 8.

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SW-NW 1/256 S8.

**9.935**  Point for the SW-NW 1/64 sec. cor. of Sec. 8 at the intersection with the E-W center line.

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SW-NW 1/64 S8.

AR002381



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 14.903 | Point for the C-N-SW-NW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SW-NW 1/256 S8. |
| 19.870 | The C-W-NW 1/64 sec. cor. of Sec. 8. |
| | From the C-S-NW 1/64 sec. cor. of Sec. 8. |
| | S. 89° 52' W., on the E-W center line of the SW¼ NW½ Sec. 8. |
| | Over nearly level land through timber. |
| 5.008 | Point for the C-E-SW-NW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SW-NW 1/256 S8. |
| 10.015 | The SW-NW 1/64 sec. cor. of Sec. 8. |
| 14.00 | Graded road, follows power line. |
| 14.255 | Power line, bears N. 17° 07' E., and S. 17° 07' W. |
| 15.023 | Point for the C-W-SW-NW 1/256 sec. cor. of Sec. 8. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SW-NW 1/256 S8. |
| 20.030 | The S-N 1/64 sec. cor. of Secs. 7 and 8. |

SUBDIVISION OF SECTION 9

From the 1/4 sec. cor. of secs. 9 and 16.

N. 0° 05' W., on the N-S center line of Sec. 9.

Descend over gradual slope through large timber and dense undergrowth.

| 4.997 | Point for the C-S-S-S 1/256 sec. cor. of sec. 9. |
|---|---|
| | Set a wood post, 2x 3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-S 1/256 S9. |
| 9.995 | Point for the C-S-S 1/64 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-1/64 S9. |
| 14.992 | Point for the C-N-S-S 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-S 1/256 S9. |
| 19.990 | Point for the C-S 1/16 sec. cor. of Sec. 9. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., flush with surface, with brass cap mkd. |

<div align="center">

S 9

C — S

+

1/16

1953

</div>

From which

AR002382


107

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | A birch, 10 ins. diam., bears S. 43° E., 94 lks. dist., mkd.<br>C-S 1/16 S9 BT. |
| | A birch, 8 ins. diam., bears S. 86° W., 83 lks. dist., mkd.<br>C-S 1/16 S9 BT. |
| 24.987 | Point for the C-S-N-S 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground,<br>mkd. C-S-N-S 1/256 S9. |
| 29.985 | Point for the C-N-S 1/64 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground,<br>mkd. C-N-S 1/64 S9. |
| | Thence over rolling land through timber. |
| 34.982 | Point for the C-N-N-S 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground,<br>mkd. C-N-N-S 1/256 S9. |
| 35.80 | New power line, bears NW. and SE. |
| 39.40 | Graded road, bears NW. and E.  Descend 15 ft. over NE. slope. |
| 39.980 | Point for the center ¼ sec. cor. of sec. 9 at the intersection with<br>the E-W center line. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground,<br>with brass cap mkd. |
| | S 9<br>C⁺ 1/4<br>1953 |
| | from which |
| | A birch, 6 ins. diam., bears N. 53° E., 14 lks. dist., mkd.<br>C¼ S9 BT. |
| | A birch, 6 ins. diam., bears S. 78° E., 101 lks. dist., mkd.<br>C¼ S9 BT. |
| | Descend 55 ft. over NE. slope through dense small timber. |
| 41.50 | Base of slope, bears NW. and SE.<br>Thence over nearly level graveled land through timber and undergrowth. |
| 44.977 | Point for the C-S-S-N 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground,<br>mkd. C-S-S-N 1/256 S9. |
| 49.20 | Peter's Creek, 1 ch. wide, 4 ft. deep, course NW. |
| 49.975 | Point for the C-S-N 1/64 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground,<br>mkd. C-S-N 1/64 S9. |
| 54.972 | Point for the C-N-S-N 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground,<br>mkd. C-N-S-N 1/256 S9. |
| 59.970 | Point for the C-N 1/16 sec. cor. of sec. 9. |

AR002383

4—678b



163

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | Set an iron post, 28 ins. long, 2½ ins. diam., flush with the surface, with brass cap mkd. |

<div style="text-align:center">

S 9

C – N

+

1/16

1953

</div>

from which

A birch, 6 ins. diam., bears S. 83° E., 90 lks. dist., mkd. C-N-1/16 S9 BT.

An alder, 6 ins. diam., bears S. 42° W., 44 lks. dist., mkd. C-N 1/16 S9 BT.

| Chains | |
|---|---|
| 60.60 | Ascend 120 ft. over S. slope of point extending SW. |
| 64.967 | Point for the C-S-N-N 1/256 sec. cor. of sec. 9 on top of point, bears N. and NE.  Thence over rolling land along W. edge of slope. |
| 69.00 | Slope bears S. and NW.  Thence over nearly level cleared land. |
| 69.965 | Point for the C-N-N 1/64 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N 1/64 S9. |
| 70.75 | Main power line, bears N. 31½° E., and S. 31½° W.  Graded road, bears SE. and N.  Thence along winding road. |
| 74.962 | Point for the C-N-N-N 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N-N 1/256 S9. |
| 79.960 | The 1/4 sec. cor. of secs. 4 and 9. |

From the 1/4 sec. cor. of secs. 8 and 9.

N. 89° 58' E., on the E-W center line of Sec. 9.

Over rolling land through timber along 80 lks. S. of new power line.

| Chains | |
|---|---|
| 5.005 | Point for the C-W-W-W 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-W 1/256 S9. |
| 10.010 | Point for the C-W-W 1/64 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W 1/64 S9. |
| 15.015 | Point for the C-E-W-W 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-W 1/256 S9. |
| 20.020 | Point for the C-W 1/16 sec. cor. of sec. 9. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div style="text-align:center">

S 9

C – W

+

1/16

1953

</div>

AR002384

160                                  T. 15 N., R. 1 W.; S.M

| Chains | from which, |
|--------|-------------|
|        | A birch, 8 ins. diam., bears S. 49½° W., 171 lks. dist., mkd. C-W 1/16 S9 BT. |
|        | A spruce, 8 ins. diam., bears N. 85½° W., 138 lks. dist., mkd. C-W 1/16 S9 BT. |
| 21.00  | Main power line, bears N. 31½° E., and S. 31½° W. |
| 25.025 | Point for the C-W-E-W 1/256 sec. cor. of sec. 9. |
|        | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-W 1/256 S9. |
|        | Thence ascend 10 ft. bank, bears NE. and SW. |
| 25.60  | Top of bank; continue over rolling land through timber along 80 lks. S. of new power line. |
| 30.030 | Point for the C-E-W 1/64 sec. cor. of sec. 9. |
|        | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W 1/64 S9. |
| 35.035 | Point for the C-E-E-W 1/256 sec. cor. of sec. 9. |
|        | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-W 1/256 S9. |
| 35.95  | New power line, bears NW. and SE.  Thence over rolling land through timber. |
| 39.40  | Graded road, bears NW. and SE.  Descend 15 ft. over NE. slope. |
| 40.040 | The center 1/4 sec. cor. of sec. 9.  Descend 55 ft. over NE. slope through dense small timber. |
| 42.60  | Base of slope, bears NW. and SE.  Thence over gently rolling graveled land through timber and undergrowth. |
| 45.042 | Point for the C-W-W-E 1/256 sec. cor. of sec. 9. |
|        | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-E 1/256 S9. |
| 46.40  | Dry creek bed, 40 lks. wide, bears NW. and SE. |
| 50.045 | Point for the C-W-E 1/64 sec. cor. of sec. 9. |
|        | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E 1/64 S9. |
| 55.047 | Point for the C-E-W-E 1/256 sec. cor. of sec. 9. |
|        | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-E 1/256 S9. |
| 58.40  | Peters Creek, 70 lks. wide, 4 ft. deep, course NW. |
| 60.050 | Point for the C-E 1/16 sec. cor. of sec. 9. |
|        | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div style="text-align:center">

S 9

C $-$ E

1/16

1953

</div>

AR002385



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | from which |
| | A birch, 6 ins. diam., bears N. 39° E., 61 lks. dist., mkd. C-E 1/16 S9 BT. |
| | A birch, 6 ins. diam., bears N. 38° W., 54 lks. dist., mkd. C-E 1/16 S9 BT. |
| 61.35 | Telephone line, follows the highway. |
| 63.40 | Approximate center of Glenn Highway, bears N. 28° 40' E., and S. 28° 40' W. Thence ascend 60 ft. over SW. slope through dense small timber. |
| 69.30 | Top of slope, bears SE. and NW. |
| 71.40 | Graded road, bears SE. and NW. |
| 71.70 | Power line, bears NE. and SW. |
| 80.060 | The 1/4 sec. cor. of secs. 9 and 10. |

### SUBDIVISION OF NE¼, SEC. 9

From the C-E 1/16 sec. cor. of sec. 9.

N. 0° 05' W., on the N-S center line of NE¼ Sec. 9.

Over level land through timber.

| 4.998 | Point for the C-S-S-NE 1/256 sec. cor. of sec. 9. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-NE 1/256 S9. |
| 5.70 | Ascend 50 ft. over S. slope through small timber. |
| 7.80 | Top of slope, bears E. and W. Thence over nearly level land through small timber. |
| 9.997 | Point for the C-S-NE 1/64 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NE 1/64 S9. |
| 14.996 | Point for the C-N-S-NE 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-NE 1/256 S9. |
| | Thence ascend 35 ft. over S. slope through small timber. |
| 16.40 | Top of slope, bears E. and W. Thence over gently rolling land. Graded road bears SE. and N. along E. side of line. |
| 19.20 | Graded road, bears NW. and SE. to join with graded road bearing N. and S. along E. side of line. |
| 19.995 | Point for the NE. 1/16 sec. cor. of sec. 9 at the intersection with the E-W center line. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

S 9
NE 1/16

1953

from which

AR002386

U S. GOVERNMENT PRINTING OFFICE   16—28520-1

 

171

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | A birch, 8 ins. diam., bears N. 47° E., 147 lks. dist., mkd. NE 1/16 S9 BT. |
| | A birch, 6 ins. diam., bears S. 62° E., 151 lks. dist., mkd. NE 1/16 S9 BT. |
| 30.00 | Power line and graded road, bears E. and W. |
| 31.40 | Log house, 24x24 ft., bears E., 130 lks. dist.; end of graded road and power line to the S. |
| 39.990 | The E 1/16 sec. cor. of secs. 4 and 9. |
| | From the N 1/16 sec. cor. of secs. 9 and 10. |
| | S. 89° 57' W., on the E-W center line of NE¼ sec. 9. |
| | Over level land through small timber. |
| 0.093 | Intersect center line of Glenn Highway, bears N. 47° 21' E., and S. 47° 21' W. |
| 2.00 | Telephone line, follows the highway. |
| 5.002 | Point for the C-E-E-NE 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-NE 1/256 S9. |
| 6.60 | Cement block house, 24x24 ft., bears N. 125 lks. dist. |
| 10.005 | Point for the C-E-NE 1/64 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NE 1/64 S9. |
| 15.007 | Point for the C-W-E-NE 1/256 sec. cor. of sec. 9. Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-NE 1/256 S9. |
| 19.50 | Graded road, bears N. and S. |
| 20.010 | The NE 1/16 sec. cor. of sec. 9. |
| 24.40 | Graded road, bears N. 60° W., and S. 80° E. |
| 25.012 | Point for the C-E-W-NE 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-NE 1/256 S9. |
| 30.015 | Point for the C-W-NE 1/64 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NE-1/64 S9. |
| | Descend 45 ft. over SW. slope through small timber. |
| 35.017 | Point for the C-W-W-NE 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-NE 1/256 S9. |
| | Descend 70 ft. over SW. slope, bearing NW. and SE. |
| 39.00 | Base of slope, thence over level land. |
| 40.020 | The C-N 1/16 sec. cor. of sec. 9. |

AR002387



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | **SUBDIVISION OF SW¼ NE¼, SEC. 9.** |
| | From the C-W-E 1/64 sec. cor. of sec. 9. |
| | N. 0° 05' W., on the N-S center line of SW¼ NE¼ sec. 9. |
| | Over level land through timber and undergrowth. |
| 3.50 | Peters Creek, 1 ch. wide, 3 ft. deep, course NW. |
| 4.998 | Point for the C-S-SW-NE 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SW-NE 1/256 S9. |
| 9.996 | Point for the SW-NE 1/64 sec. cor. of sec. 9 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SW-NE 1/64 S9. |
| 14.994 | Point for the C-N-SW-NE 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SW-NE 1/256 S9. |
| | Ascend 50 ft. over SW. slope through small timber. |
| 16.90 | Top of slope, bears NW. and SE.  Thence over level land. |
| 18.00 | Ascend 50 ft. over SW. slope through small timber. |
| 19.992 | The C-W-NE 1/64 sec. cor. of sec. 9 on top of slope. |
| | From the C-S-NE 1/64 sec. cor. of sec. 9. |
| | S. 89° 57' W., on the E-W center line of SW¼ NE¼ Sec. 9. |
| | Descend 100 ft. over SW. slope through undergrowth and small timber. |
| 5.002 | Point for the C-E-SW-NE 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SW-NE 1/256 S9. |
| | Thence over nearly level land through timber. |
| 10.005 | The SW-NE 1/64 sec. cor. of Sec. 9. |
| 15.007 | Point for the C-W-SW-NE 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SW-NE 1/256 S9. |
| 20.010 | The C-S-N 1/64 sec. cor. of sec. 9. |
| | **SUBDIVISION OF SW¼, SEC. 9** |
| | From the W 1/16 sec. cor. of secs. 9 and 16. |
| | N. 0° 07' W., on the N-S center line of SW¼ Sec. 9. |
| | Over nearly level land through timber. |
| 5.000 | Point for the C-S-S-SW 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-SW 1/256 S9. |

AR002388



173

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 10.000 | Point for the C-S-SW 1/64 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SW 1/64 S9. |
| 15.000 | Point for the C-N-S-SW 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-SW 1/256 S9. |
| 20.000 | Point for the SW 1/16 sec. cor. of sec. 9 at the intersection with the E-W center line. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., flush with the surface, with brass cap mkd. |

<div align="center">

S 9

SW 1/16

953

</div>

from which

     A spruce, 18 ins. diam., bears S. 23½° E., 52 lks. dist., mkd. SW 1/16 S9 BT.

     A spruce, 12 ins. diam., bears N. 41° W., 68 lks. dist., mkd. SW 1/16 S9 BT.

| | |
|---|---|
| 25.000 | Point for the C-S-N-SW 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-SW 1/256 S9. |
| 30.000 | Point for the C-N-SW 1/64 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SW 1/64 S9. |
| 35.000 | Point for the C-N-N-SW 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N-SW 1/256 S9. |
| 38.30 | Main power line, bears N. 31½° E., and S. 31½° W. |
| 40.000 | The C-W 1/16 sec. cor. of Sec. 9. |

From the C-S 1/16 sec. cor. of sec. 9.

S. 89° 57' W., on the E-W center line of SW¼ Sec. 9.

Over gently rolling land through timber.

| | |
|---|---|
| 5.003 | Point for the C-E-E-SW 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-SW 1/256 S9. |
| 10.007 | Point for the C-E-SW 1/64 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SW 1/64 S9. |
| 15.011 | Point for the C-W-E-SW 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-SW 1/256 S9. |

AR002389



T. 15 N., R. 1 W., S.M.

174

| Chains | |
|---|---|
| 20.015 | The SW 1/16 sec. cor. of sec. 9. |
| 25.018 | Point for the C-E-W-SW 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-SW 1/256 S9. |
| 30.022 | Point for the C-W-SW 1/64 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SW 1/64 S9. |
| 31.35 | Main power line, bears N. 31½° E., and S. 31½° W. |
| 35.026 | Point for the C-W-W-SW 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-SW 1/256 S9. |
| 40.030 | The S 1/16 sec. cor. of secs. 8 and 9. |

### SUBDIVISION OF SE¼ SW¼, SEC. 9

From the E-W 1/64 sec. cor. of secs. 9 and 16.

N. 0° 06' W., on the N-S center line of SE¼ SW¼ Sec. 9.

Over gently rolling land through timber.

| | |
|---|---|
| 4.998 | Point for the C-S-SE-SW 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SE-SW-1/256 S9. |
| 9.997 | Point for the SE-SW 1/64 sec. cor. of sec. 9 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SE-SW 1/64 S9. |
| 14.996 | Point for the C-N-SE-SW 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SE-SW 1/256 S9. |
| 19.995 | The C-E-SW 1/64 sec. cor. of sec. 9. |

From the C-S-S 1/64 sec. cor. of sec. 9.

S. 89°56' W., on the E-W center line of SE¼ SW¼ sec. 9.

Over gently rolling land through timber.

| | |
|---|---|
| 5.002 | Point for the C-E-SE-SW 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SE-SW 1/256 S9. |
| 10.005 | The SE-SW 1/64 sec. cor. of Sec. 9. |
| 15.007 | Point for the C-W-SE-SW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SE-SW 1/256 S9. |
| 20.010 | The C-S-SW 1/64 sec. cor. of Sec. 9. |

AR002390



175

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | **SUBDIVISION OF NE¼ SW¼, SEC. 9** |
| | From the C-E-SW 1/64 sec. cor. of Sec. 9. |
| | N. 0° 06' W., on the N-S center line of NE¼ SW¼ Sec. 9. |
| | Over gently rolling land through timber. |
| 4.998 | Point for the C-S-NE-SW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NE-SW 1/256 S9. |
| 9.997 | Point for the NE-SW 1/64 sec. cor. of sec. 9 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NE-SW 1/64 S9. |
| 14.996 | Point for the C-N-NE-SW 1/256 sec. cor. of sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NE-SW 1/256 S9. |
| 19.995 | The C-E-W 1/64 sec. cor. of Sec. 9. |
| | From the C-N-S 1/64 sec. cor. of Sec. 9. |
| | S. 89° 57' W., on the E-W center line of NE¼ SW¼ Sec. 9. |
| | Over gently rolling land through timber. |
| 5.004 | Point for the C-E-NE-SW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NE-SW 1/256 S9. |
| 10.008 | The NE-SW 1/64 sec. cor. of Sec. 9. |
| 15.012 | Point for the C-W-NE-SW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NE-SW 1/256 S9. |
| 20.017 | The C-N-SW 1/64 sec. cor. of Sec. 9. |
| | **SUBDIVISION OF SW¼ SW¼, SEC. 9** |
| | From the point for W-W 1/64 sec. cor. of sec. 9 and 16. |
| | N. 0° 07' W., on the N-S center line of SW¼ SW¼ Sec. 9. |
| | Over gently rolling land through timber. |
| 5.001 | Point for the C-S-SW-SW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SW-SW 1/256 S9. |
| 10.002 | Point for the SW-SW 1/64 sec. cor. of Sec. 9 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SW-SW 1/64 S9. |
| 15.003 | Point for the C-N-SW-SW 1/256 sec. cor. of Sec. 9. |

AR002391



176

·T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SW-SW 1/256 S9. |
| 20.005 | The C-W-SW 1/64 sec. cor. of Sec. 9. |
| | From the C-S-SW 1/64 sec. cor. of Sec. 9. |
| | S. 89° 56' W., on the E-W center line of SW¼ SW¼ Sec. 9. |
| | Over gently rolling land through timber. |
| 5.002 | Point for the C-E-SW-SW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SW-SW 1/256 S9. |
| 10.005 | The SW-SW 1/64 sec. cor. of Sec. 9. |
| 15.007 | Point for the C-W-SW-SW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SW-SW 1/256 S9. |
| 17.41 | Main power line, bears N. 31½° E., and S. 31½° W. |
| 20.010 | The S-S 1/64 sec. cor. of Secs. 8 and 9. |

SUBDIVISION OF NW¼ SW¼ SEC. 9

| | |
|---|---|
| | From the C-W-SW 1/64 sec. cor. of Sec. 9. |
| | N. 0° 07' W., on the N-S center line of NW¼ SW¼ Sec. 9. |
| | Over gently rolling land through timber. |
| 2.16 | Main power line, bears N. 31½° E., and S. 31½° W. |
| 5.001 | Point for the C-S-NW-SW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NW-SW 1/256 S9. |
| 10.002 | Point for the NW-SW 1/64 sec. cor. of Sec. 9 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NW-SW 1/64 S9. |
| 15.003 | Point for the C-N-NW-SW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NW-SW 1/256 S9. |
| 20.005 | The C-W-W 1/64 sec. cor. of Sec. 9. |
| | From the C-N-SW 1/64 sec. cor. of Sec. 9. |
| | S. 89° 57' W., on the E-W center line of NW¼ SW¼ Sec. 9. |
| | Over rolling land through timber. |
| 5.004 | Point for the C-E-NW-SW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NW-SW 1/256 S9. |
| 5.15 | Main power line, bears N. 31½° E., and S. 31½° W. |

AR002392




174

.T. 15 N., R. 1 W., S.M.

| Chains | |
|--------|--|
| 10.009 | The NW-SW 1/64 sec. cor. of Sec. 9. |
| 15.013 | Point for the C-W-NW-SW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NW-SW 1/256 S9. |
| 20.018 | The N-S 1/64 sec. cor. of Secs. 8 and 9. |

### SUBDIVISION OF NW¼.SEC. 9

From the C-W 1/16 sec. cor. of Sec. 9.

N. 0° 03' W., on the N-S center line of NW¼, Sec. 9.

Over rolling land through small timber.

| | |
|--------|--|
| 0.80 | Power line, bears E. and W. |
| 5.000 | Point for the C-S-S-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-NW 1/256 S9. |
| 10.000 | Point for the C-S-NW 1/64 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NW-1/64 S9. |
| 15.000 | Point for the C-N-S-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-NW 1/256 S9. |
| 15.30 | Graded road, bears E. and W. |
| 15.65 | Descend 50 ft. over N. slope of banks, bears E. and W. |
| 16.80 | Thence over level land through timber and undergrowth. |
| 20.000 | Point for the NW 1/16 sec. cor. of Sec. 9 at the intersection with the E-W center line. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

$$
\begin{array}{c}
S\ 9 \\
NW\ 1/16 \\
1953
\end{array}
$$

from which

A birch, 6 ins., diam., bears N. 44½° E., 38 lks. dist., mkd. NW 1/16 S9 BT.

A birch, 6 ins. diam., bears N. 62° W., 31 lks. dist., mkd. NW 1/16 S9 BT.

| | |
|--------|--|
| 25.000 | Point for the C-S-N-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-NW 1/256 S9. |
| 30.000 | Point for the C-N-NW 1/64 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NW 1/64 S9. |

AR002393



175

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 35.000 | Point for the C-N-N-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N-NW 1/256 S9. |
| 40.000 | The W 1/16 sec. cor. of Secs. 4 and 9. |
| | From the C-N 1/16 sec. cor. of Sec. 9. |
| | WEST, on the E-W center line of NW¼ Sec. 9. |
| | Over nearly level land through dense small timber. |
| 5.002 | Point for the C-E-E-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-NW 1/256 S9. |
| 6.70 | Main power line, bears N. $31\frac{1}{2}°$ E., and S. $31\frac{1}{2}°$ W. |
| 10.005 | Point for the C-E-NW 1/64 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NW 1/64 S9. |
| 11.60 | Peters Creek, 80 lks. wide, 4 ft. deep, course NW. |
| 15.007 | Point for the C-W-E-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-NW 1/256 S9. |
| 20.010 | The NW 1/16 sec. cor. of Sec. 9. |
| 25.012 | Point for the C-E-W-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-NW 1/256 S9. |
| 29.20 | Ascend 15 ft. NE. slope of bank, bears NW. and SE. |
| 30.015 | Point for the C-W-NW 1/64 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NW 1/64 S9. |
| | Thence over level land through small timber. |
| 35.017 | Point for the C-W-W-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-NW 1/256 S9. |
| 40.020 | The N 1/16 sec. cor. of Secs. 8 and 9. |

### SUBDIVISION OF SE¼ NW¼, SEC. 9

| | |
|---|---|
| | From the C-E-W 1/64 sec. cor. of Sec. 9. |
| | N. 0° 04' W., on the N-S center line of SE¼ NW¼ Sec. 9. |
| | Over gently rolling land through small timber. |
| 0.80 | Power line, bears E. and W. |
| 4.998 | Point for the C-S-SE-NW 1/256 sec. cor. of Sec. 9. |

AR002394



173

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SE-NW 1/256 S9. |
| 9.997 | True point for the SE-NW 1/64 sec. cor. of Sec. 9 at the intersection with the E-W center line, which falls in a graded road, bearing NW. a and SE. |
| 10.224 | Selected point for the witness SE-NW 1/64 sec. cor. of Sec. 9 on the NE. edge of graded road. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. WC SE-NW 1/64 15 FT N S9. |
| | Descend 60 ft. over NE. slope through undergrowth. |
| 14.65 | Main power line, bears N. 31½° E , and S. 31½° W. |
| | Over gently rolling land through timber and undergrowth. |
| 14.996 | Point for the C-N-SE-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SE-NW 1/256 S9. |
| 18.40 | Peters Creek, 80 lks. wide, 4 ft. deep, course NW. |
| 19.995 | The C-E-NW 1/64 sec. cor. of Sec. 9. |
| | From the C-S-N 1/64 sec. cor. of Sec. 9. |
| | S. 89° 59' W., on the E-W center line of SE¼ NW¼ Sec. 9. |
| | Over rolling land through timber and undergrowth. |
| 0.80 | Peters Creek, 1 ch. wide, 4 ft. deep, course NW. |
| 5.003 | Point for the C-E-SE-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SE-NW 1/256 S9. |
| | Ascend 60 ft. over NE. slope through undergrowth. |
| 10.007 | True point for the SE-NW 1/64 sec. cor. of Sec. 9, which falls in a graded road, bearing NW. and SE. |
| | Thence over gently rolling land through dense small timber. |
| 12.85 | Main power line, bears N. 31½° E., and S. 31½° W. |
| 15.011 | Point for the C-W-SE-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SE-NW 1/256 S9. |
| 20.015 | The C-S-NW 1/64 sec. cor. of Sec. 9. |
| | SUBDIVISION OF NE¼ NW¼, SEC. 9 |
| | From the C-E-NW 1/64 sec. cor. of Sec. 9. |
| | N. 0° 04' W., on the N-S center line of NE¼ NW¼ Sec. 9. |
| | Over rolling land through timber and undergrowth. |
| 4.998 | Point for the C-S-NE-NW 1/256 sec. cor. of Sec. 9. |

T. 15 N., R. 1 W., S.M.

| Chains | |
|--------|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NE-NW 1/256 S9. |
| 9.997 | Point for the NE-NW 1/64 sec. cor. of Sec. 9 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NE-NW 1/64 S9. |
| 14.996 | Point for the C-N-NE-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NE-NW 1/256 S9. |
| 17.000 | Ascend 65 ft. over SW. slope through small timber. |
| 19.995 | The E-W 1/64 sec. cor. of secs. 4 and 9. |

From the C-N-N 1/64 sec. cor. of Sec. 9.

N. 89° 59' W., on the E-W center line of NE¼ NW¼ Sec. 9.

Descend 65 ft. over SW. slope through small timber and undergrowth.

| 0.45 | Main power line, bears N. 31½° E., and S. 31½° W. |
| 5.001 | Point for the C-E-NE-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NE-NW 1/256 S9. |
| | Thence over rolling land through timber and undergrowth. |
| 10.002 | The NE-NW 1/64 sec. cor. of Sec. 9. |
| 13.00 | Peters Creek, 80 lks. wide, 4 ft. deep, course NW. |
| 15.003 | Point for the C-W-NE-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NE-NW 1/256 S9. |
| 20.005 | The C-N-NW 1/64 sec. cor. of Sec. 9. |

## SUBDIVISION OF SW¼ NW¼, SEC. 9

From the C-W-W 1/64 sec. cor. of Sec. 9.

N. 0° 02' W., on the N-S center line of SW¼ NW¼ Sec. 9.

Over rolling land through dense small timber.

| 0.80 | Power line, bears E. and W. |
| 5.001 | Point for the C-S-SW-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SW-NW 1/256 S9. |
| 10.002 | Point for the SW-NW 1/64 sec. cor. of Sec. 9 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SW-NW 1/64 S9. |
| 15.003 | Point for the C-N-SW-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SW-NW 1/256 S9. |

AR002396



T. 15 N., R. 1 W., S.M.

| | |
|---|---|
| 16.00 | Graded road, bears E. and W. |
| 20.005 | The C-W-NW 1/64 sec. cor. of Sec. 9. |
| | From the C-S-NW 1/64 sec. cor. of Sec. 9. |
| | S. 89° 59' W., on the E-W center line of SW$\frac{1}{4}$ NW$\frac{1}{4}$ Sec. 9. |
| | Over rolling land through dense small timber. |
| 5.003 | Point for the C-E-SW-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SW-NW 1/256 S9. |
| 10.007 | The SW-NW 1/64 sec. cor. of Sec. 9. |
| 15.011 | Point for the C-W-SW-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SW-NW 1/256 S9. |
| 20.015 | The S-N 1/64 sec. cor. of secs. 8 and 9. |

### SUBDIVISION OF NW$\frac{1}{4}$ NW$\frac{1}{4}$, SEC. 9

| | |
|---|---|
| | From the C-W-NW 1/64 sec. cor. of Sec. 9. |
| | N. 0° 02' W., on the N-S center line of NW$\frac{1}{4}$ NW$\frac{1}{4}$ Sec. 9. |
| | Over rolling land through timber and undergrowth. |
| 0.80 | Descend 15 ft. NE. slope of bank, bears NW. and SE., thence over rolling land. |
| 5.001 | Point for the C-S-NW-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NW-NW 1/256 S9. |
| 10.002 | Point for the NW-NW 1/64 sec. cor. of Sec. 9 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NW-NW 1/64 S9. |
| 15.003 | Point for the C-N-NW-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NW-NW 1/256 S9. |
| 20.005 | The W-W 1/64 sec. cor. of Secs. 4 and 9. |
| | From the C-N-NW 1/64 sec. cor. of Sec. 9. |
| | N. 89° 59' W., on the E-W center line of NW$\frac{1}{4}$ NW$\frac{1}{4}$ Sec. 9. |
| | Over rolling land through timber and undergrowth. |
| 5.001 | Point for the C-E-NW-NW 1/256 sec. cor. of Sec. 9. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NW-NW 1/256 S9. |
| 10.002 | The NW-NW 1/64 sec. cor. of Sec. 9. |
| 15.003 | Point for the C-W-NW-NW 1/256 sec. cor. of Sec. 9. |

AR002397



. . T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NW-NW 1/256 S9. |
| 20.005 | The N-N 1/64 sec. cor. of Secs. 8 and 9. |

### SUBDIVISION OF SECTION 18

From the ¼ sec. cor. of Secs. 18 and 19.

N. 0° 03' W., on the N-S center line of Sec. 18.

Descend 15 ft. over N. slope through timber.

| 2.499 | Point for the 1/1024 sec. cor. of Sec. 18. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S18. |
| | Descend 25 ft. over N. slope. |
| 4.998 | Point for the C-S-S-S 1/256 sec. cor. of sec. 18. |
| | Thence over level marshy land through spruce timber. |
| 9.997 | Point for the C-S-S 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S 1/64 S18. |
| 11.20 | Mink Creek, 5 lks. wide, 12 ins. deep, course W. |
| 12.496 | Point for the 1/1024 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S18. |
| | Thence over rolling land through small timber. |
| 14.995 | Point for the C-N-S-S 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-S 1/256 S18. |
| 17.494 | Point for the 1/1024 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S18. |
| 19.993 | Point for the C-S 1/16 sec. cor. of Sec. 18. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div align="center">

S 18
C - S
+
1/16

1952

</div>

from which

    A spruce, 5 ins. diam., bears N. 62° E., 97 lks. dist., mkd. C-S 1/16 S18 BT.

    A spruce, 6 ins. diam., bears S. 22 3/4° E., 48½ lks. dist., mkd. C-S 1/16 S18 BT.

| 21.216 | Power line and graded road, bears N. 38° 46' E., and S. 38° 46' W. |

AR002398




T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 24.991 | Point for the C-S-N-S 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-S 1/256 S18. |
| 29.989 | Point for the C-N-S 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S 1/64 S18. |
| 34.987 | Point for the C-N-N-S 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N-S 1/256 S18. |
| 39.985 | Point for the center 1/4 sec. cor. of Sec. 18 at the intersection with the E-W center line. |

Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd.

<div align="center">

S 18

C ¼

1952

</div>

from which

 A birch, 5 ins. diam., bears S. 26° W., 40 lks. dist., mkd. C¼ S18 BT,

 A birch, 5 ins. diam., bears N. 78 3/4° W., 54 lks. dist., mkd. C¼ S18 BT.

| 44.985 | Point for the C-S-S-N 1/256 sec. cor. of Sec. 18. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-N 1/256 S18. |
| 49.985 | Point for the C-S-N 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N 1/64 S18. |
| 54.985 | Point for the C-N-S-N 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-N 1/256 S18. |
| 57.835 | Center line Alaska Railroad, bears N. 25° 20' E., and S. 25° 20' W. |
| 59.20 | Telephone line, same bearing as railroad. |
| 59.985 | Point for the C-N 1/16 sec. cor. of Sec. 18. |

Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd.

<div align="center">

S 18

C - N

+

1/16

1952

</div>

from which

 A spruce, 18 ins. diam., bears S. 41½° W., 110 lks. dist., mkd. C-N 1/16 S18 BT.

AR002399

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | A spruce, 10 ins. diam., bears N. 32° W., 100½ lks. dist., mkd. C-N 1/16 S18 BT. |
| 64.985 | Point for the C-S-N-N 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-N 1/256 S18. |
| 69.985 | Point for the C-N-N 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N 1/64 S18. |
| 74.25 | Fire Creek, 20 lks. wide, 3 ft. deep, course NE. |
| 74.985 | Point for the C-N-N-N 1/256 sec. cor. of Sec. 18. |
| 79.985 | The ¼ sec. cor. of Secs. 7 and 18. |

From the ¼ sec. cor. of Secs. 17 and 18.

WEST, on the E-W center line of Sec. 18.

Over muskeg land.

| 1.50 | Ascend 4 ft. embankment, bearing NE. and SW.; thence over rolling land through small timber. |
| 5.000 | Point for the C-E-E-E 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-E 1/256 S18. |
| 10.000 | Point for the C-E-E 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E 1/64 S18. |
| 15.000 | Point for the C-W-E-E 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-E 1/256 S18. |
| 20.000 | Point for the C-E 1/16 sec. cor. of Sec. 18. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 24 ins. in the ground, with brass cap mkd. |

<div align="center">

S 18

C - E

1/16

1952

</div>

from which

A spruce, 8 ins. diam., bears N. 19 3/4° E., 87 lks. dist., mkd. C-E 1/16 S18 BT.

A spruce, 6 ins. diam., bears N. 18¼° W., 115 lks. dist., mkd. C-E 1/16 S18 BT.

| 24.902 | Power line and graded road, bears N. 38° 46' E., and S. 38° 46' W. |
| 25.000 | Point for the C-E-W-E 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-E 1/256 S18. |

AR002400



165

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 30.00 | Point for the C-W-E 1/64 sec. cor. of sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E 1/64 S18. |
| 35.000 | Point for the C-W-W-E 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-E 1/256 S18. |
| 40.000 | The center ¼ sec. cor. of Sec. 18. |
| 44.982 | Point for the C-E-E-W 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-W 1/256 S18. |
| 46.50 | Ridge, bears NE. and SW. Descend 50 ft. over NW. slope. |
| 49.00 | Base of slope, thence over muskeg land. |
| 49.965 | Point for the C-E-W 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W 1/64 S18. |
| 53.00 | Center line of the Alaska Railroad, bears N. 45° 50' E., and S.37°50'W., on curve. |
| 53.75 | Telephone line, same bearing as the railroad. |
| 54.947 | Point for the C-W-E-W 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-W 1/256 S18. |
| 59.930 | Point for the C-W 1/16 sec. cor. of sec. 18. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 24 ins. in the ground, with brass cap mkd. |

<p style="text-align:center">
S 18<br>
C-W<br>
+<br>
1/16<br>
1952
</p>

From which

    A spruce, 6 ins. diam., bears N. 35½° E., 42½ lks. dist., mkd. C-W 1/16 S18 BT.

    A spruce, 7 ins. diam., bears S. 68° W., 90½ lks. dist., mkd. C-W 1/16 S18 BT.

| 64.912 | Point for the C-E-W-W 1/256 sec. cor. of Sec. 18. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-W 1/256 S18. |
| 69.895 | Point for the C-W-W 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W 1/64 S18. |
| 73.00 | Mink Creek, 3 lks. wide, 12 ins. deep, course N. |
| 76.465 | The ¼ sec. cor. of Secs. 13 and 18. |

AR002401

4—678 b



– 99 –

T. 15 N., R. 1 W., S.M.

| Chains | SUBDIVISION OF SE¼ OF SEC. 18 |
|---|---|
| | From the E 1/16 sec. cor. of secs. 18 and 19. |
| | N. 0° 03' W., on the N-S center line of the SE¼ Sec. 18. |
| | Descend 65 ft. over N. slope through timber. |
| 5.000 | Point for the C-S-S-SE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-SE 1/256 S18. |
| 9.999 | Point for the C-S-SE 1/64 sec. cor. of sec. 18 at foot of slope. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SE 1/64 S18. |
| 10.60 | Creek, 5 lks. wide, 12 ins. deep, course SW. |
| 12.20 | Mink Creek, 8 lks. wide, 12 ins. deep, course SW. |
| 14.999 | Point for the C-N-S-SE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-SE 1/256 S18. |
| 19.998 | Point for the SE 1/16 sec. cor. of sec. 18 at the intersection with the E-W center line. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 24 ins. in the ground, with brass cap mkd. |
| | S 18 |
| | SE 1/16 |
| | 1952 |
| | from which |
| | A spruce, 5 ins. diam., bears S. 45 3/4° W., 137 lks. dist., mkd. SE 1/16 S18 BT. |
| | A spruce, 8 ins. diam., bears N. 81¼° W., 197 lks. dist., mkd. SE 1/16 S18 BT. |
| 24.998 | Point for the C-S-N-SE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-SE 1/256 S18. |
| 29.997 | Point for the C-N-SE 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SE 1/64 S18. |
| 34.996 | Point for the C-N-N-SE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N-SE 1/256 S18. |
| 37.495 | Point for the 1/1024 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S18. |
| 39.995 | The C-E 1/16 sec. cor. of Sec. 18. |

AR002402



187                              T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | From the S 1/16 sec. cor. of Secs. 17 and 18. |
| | WEST, on the E-W center line of SE¼ Sec. 18. |
| | Descend over gradual NW. slope to creek. |
| 7.70 | Mink Creek, 6 lks. wide, 12 ins. deep, course SW.; thence over muskeg land. |
| 20.000 | The SE 1/16 sec. cor. of Sec. 18. |
| 25.000 | Point for the C-E-W-SE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-SE 1/256 S18. |
| 28.000 | Leave muskeg land, thence over rolling land through small timber. |
| 30.000 | Point for the C-W-SE 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SE 1/64 S18. |
| 35.000 | Point for the C-W-W-SE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-SE 1/256 S18. |
| 40.000 | The C-S 1/16 sec. cor. of Sec. 18. |

### SUBDIVISION OF NW¼ SE¼ OF SEC. 18

| | |
|---|---|
| | From the C-W-SE 1/64 sec. cor. of Sec. 18. |
| | N. 0° 03' W., on the N-S center line of NW¼ SE¼ Sec. 18. |
| | Over rolling land through small timber. |
| 4.999 | Point for the C-S-NW-SE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NW-SE 1/256 S18. |
| 9.998 | Point for the NW-SE 1/64 sec. cor. of Sec. 18 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NW-SE 1/64 S18. |
| 12.497 | Point for the 1/1024 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S18. |
| 13.655 | Power line and graded road, bears N. 38° 46' E., and S. 38° 46' W. |
| 14.996 | Point for the C-N-NW-SE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NW-SE 1/256 S18. |
| 19.995 | The C-W-E 1/64 sec. cor. of Sec. 18. |

From the  C-N-SE 1/64 sec. cor. of Sec. 18.

WEST, on the E-W center line of NW¼ SE¼ Sec. 18.

Over rolling land through small timber.

AR002403



- 101 -

. T. 15 N., R. 1 W., S.M.

188

| Chains | |
|--------|---|
| 5.000 | Point for the C-E-NW-SE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NW-SE 1/256 S18. |
| 10.000 | The NW-SE 1/64 sec. cor. of Sec. 18. |
| 12.94 | Power line and graded road, bears N. 38° 46' E., and S. 38° 46' W. |
| 15.000 | Point for the C-W-NW-SE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NW-SE 1/256 S18. |
| 20.000 | The C-N-S 1/64 sec. cor. of Sec. 18. |

## SUBDIVISION OF NE¼ OF SECTION 18

From the C-E 1/16 sec. cor. of Sec. 18.

N. 0° 05' W., on the N-S center line of NE¼ Sec. 18.

Over rolling land through timber.

| | |
|--------|---|
| 2.500 | Point for the 1/1024 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S18. |
| 5.000 | Point for the C-S-S-NE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-NE 1/256 S18. |
| 6.94 | Power line and graded road, bears N. 17° 07' E., and S. 17° 07' W. The power line bears S. 38°46' W., at a point 1.44 chs. S. 17° 07' W. of the point of intersection. |
| 7.500 | Point for the 1/1024 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S18. |
| 10.000 | Point for the C-S-NE 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NE 1/64 S18. |
| 15.000 | Point for the C-N-S-NE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-NE 1/256 S18. |
| 17.500 | Point for the 1/1024 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S18. |
| 20.000 | Point for the NE 1/16 sec. cor. of Sec. 18 at the intersection with the E-W center line. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div align="center">

S 18

NE 1/16

1952

</div>

AR002404



– 102 –

189

.T. 15 N., R. 1 W., S.M.

| Chains | dig pits, 18x18x12 ins., N. and S. of post, 3 ft. dist. |
|---|---|
| | dig pits, 18x18x12 ins., N. and S. of post, 3 ft. dist. |
| 22.500 | Point for the 1/1024 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S18. |
| 25.000 | Point for the C-S-N-NE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-NE 1/256 S18. |
| 27.500 | Point for the 1/1024 sec. cor. of sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S18. |
| 28.30 | Bulldozed road, bears E. and W. |
| 30.000 | Point for the C-N-NE 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NE 1/64 S18. |
| 35.000 | Point for the C-N-N-NE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N-NE 1/256 S18. |
| | Descend 25 ft. over NW. slope. |
| 40.000 | The E 1/16 sec. cor. of Secs. 7 and 18. |
| | From the N 1/16 sec. cor. of Secs. 17 and 18. |
| | WEST, on the E-W center line of NE¼ Sec. 18. |
| | Over rolling land through small timber. |
| 4.997 | Point for the C-E-E-NE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-NE 1/256 S18. |
| 9.995 | Point for the C-E-NE 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NE 1/64 S18. |
| 15.95 | Power line and graded road, bears N. 17° 07' E., and S. 17° 07' W. |
| 19.990 | The NE 1/16 sec. cor. of Sec. 18. |
| 24.987 | Point for the C-E-W-NE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-NE 1/256 S18. |
| 29.985 | Point for the C-W-NE 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground mkd. C-W-NE 1/64 S18. |
| | Descend 50 ft. over NW. slope through timber. |
| 34.982 | Point for the C-W-W-NE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-NE 1/256 S18. |

AR002405

U. S. GOVERNMENT PRINTING OFFICE      16—28520-1



4—878 b

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | Descend 40 ft. to the railroad. |
| 38.96 | Center line Alaska Railroad, bears N. 25° 20' E., and S. 25° 20' W. |
| 39.45 | Telephone line, same bearing as the railroad. |
| 39.980 | The C-N 1/16 sec. cor. of Sec. 18. |

### SUBDIVISION OF THE SE¼ NE¼ OF SEC. 18

From the C-E-E 1/64 sec. cor. of Sec. 18.

N. 0° 06' W., on the N-S center line of SE¼ NE¼ Sec. 18.

Over rolling land through timber.

| 5.000 | Point for the C-S-SE-NE 1/256 sec. cor. of Sec. 18. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SE-NE 1/256 S18. |
| 10.000 | Point for the SE-NE 1/64 sec. cor. of Sec. 18 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SE-NE 1/64 S18. |
| 12.500 | Point for the 1/1024 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S18. |
| 15.000 | Point for the C-N-SE-NE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., 18 ins. in the ground, mkd. C-N-SE-NE 1/256 S18. |
| 17.500 | Point for the 1/1024 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S18. |
| 20.000 | The C-E-NE 1/64 sec. cor. of Sec. 18. |

From the S-N 1/64 sec. cor. of Secs. 17 and 18.

WEST, on the E-W center line of SE¼ NE¼ Sec. 18.

Over rolling land through timber.

| 4.998 | Point for the C-E-SE-NE 1/256 sec. cor. of Sec. 18. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SE-NE 1/256 S18. |
| 9.997 | The SE-NE 1/64 sec. cor. of Sec. 18. |
| 14.996 | Point for the C-W-SE-NE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SE-NE 1/256 S18. |
| 19.05 | Power line and graded road, bears N. 17°07' E., and S. 17° 07' W. |
| 19.995 | The C-S-NE 1/64 sec. cor. of Sec. 18. |

U. S. GOVERNMENT PRINTING OFFICE    16—28520-1

— — 104—

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | **SUBDIVISION OF NE¼ NE¼ OF SEC. 18** |
| | From the C-E-NE 1/64 sec. cor. of Sec. 18. |
| | N. 0° 06' W., on the N-S center line of NE¼ NE¼ Sec. 18. |
| | Over rolling land through timber. |
| 5.000 | Point for the C-S-NE-NE 1/256 sec. cor. of Sec. 18. No corner monument set. |
| 10.000 | Point for the NE-NE 1/64 sec. cor. of Sec. 18 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NE-NE 1/64 S18. |
| 15.000 | Point for the C-N-NE-NE 1/256 sec. cor. of Sec.18; no corner monument set. |
| 19.246 | Power line and graded road, bears N. 17° 07' E., and S. 17° 07' W. |
| 20.000 | The E-E 1/64 sec. cor. of Secs. 7 and 18. |
| | From the N-N 1/64 sec. cor. of secs. 17 and 18. |
| | WEST, on the E-W center line of NE¼ NE¼ Sec.18. |
| | Over rolling land through timber. |
| 4.995 | Point for the C-E-NE-NE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NE-NE 1/256 S18. |
| 9.991 | The NE-NE 1/64 sec. cor. of Sec. 18. |
| 12.852 | Power line and graded road, bears N. 17° 07' E., and S. 17° 07' W. |
| 19.983 | The C-N-NE 1/64 sec. cor. of Sec. 18. |
| | **SUBDIVISION OF SE¼ NE¼ NE¼ OF SEC. 18** |
| | From the C-E-E-NE 1/256 sec. cor. of Sec. 18. |
| | N. 0° 06' W., on the N-S center line of SE¼ NE¼ NE¼ Sec. 18. |
| | Over rolling land through timber. |
| 5.000 | Point for the SE-NE-NE 1/256 sec. cor. of Sec. 18 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SE-NE-NE 1/256 S18. |
| 7.500 | Point for the 1/1024 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S18. |
| 10.000 | The C-E-NE-NE 1/256 sec. cor. of Sec. 18. |
| | From the S-N-N 1/256 sec. cor. of Secs. 17 and 18. |
| | WEST, on the E-W center line of SE½ NE¼ NE¼. |
| | Over rolling land through timber. |

AR002407



T. 15 N., R. 1 W., S.M.                     132

| Chains | |
|--------|---|
| 4.996 | The SE-NE-NE 1/256 sec. cor. of Sec. 18. |
| 9.992 | The point for the C-S-NE-NE 1/256 sec. cor. of Sec. 18. |

### SUBDIVISION OF NE¼ NE¼ NE¼ OF SEC. 18

From the C-E-NE-NE 1/256 sec. cor. of Sec. 18.

N. 0° 06' W., on the N-S center line of NE¼ NE¼ NE¼ Sec. 18.

Over rolling land through timber.

| | |
|--------|---|
| 2.500 | Point for the 1/1024 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S18. |
| 5.000 | Point for the NE-NE-NE 1/256 sec. cor. of Sec. 18, at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NE-NE-NE 1/256 S18. |
| 10.000 | The E-E-E 1/256 sec. cor. of Secs. 7 and 18. |

From the N-N-N 1/256 sec. cor. of Secs. 17 and 18.

WEST, on the E-W center line of NE¼ NE¼ NE¼ Sec. 18.

Over rolling land through timber.

| | |
|--------|---|
| 4.995 | The NE-NE-NE 1/256 sec. cor. of Sec. 18. |
| 9.990 | The point for the C-N-NE-NE 1/256 sec. cor. of Sec. 18. |

### SUBDIVISION OF SW¼ NE¼ OF SEC. 18

From the C-W-E 1/64 sec. cor. of Sec. 18.

N. 0° 04' W., on the N-S center line of SW¼ NE¼ Sec. 18.

Over rolling land through timber.

| | |
|--------|---|
| 10.000 | Point for the SW-NE 1/64 sec. cor. of Sec. 18, at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in ground, mkd. SW-NE 1/64 S18. |
| 20.000 | The C-W-NE 1/64 sec. cor. of Sec. 18. |

From the C-S-NE 1/64 sec. cor. of Sec. 18.

WEST, on the E-W center line of SW¼ NE¼ Sec. 18.

Over rolling land through timber.

| | |
|--------|---|
| 4.998 | Point for the C-E-SW-NE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SW-NE 1/256 S18. |
| 9.997 | The SW-NE 1/64 sec. cor. of Sec. 18. |
| 14.996 | Point for the C-W-SW-NE 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SW-NE 1/256 S18. |

AR002408



193

- 106 -

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | Descend 50 ft. over NW. slope through timber and undergrowth. |
| 19.995 | The C-S-N 1/64 sec. cor. of Sec. 18. |

### SUBDIVISION OF THE NW¼ NE¼ OF SEC. 18

From the C-W-NE 1/64 sec. cor. of Sec. 18.

N. 0° 04' W., on the N-S center line of NW¼ NE¼ Sec. 18.

Descend 50 ft. over NW. slope through timber.

| 10.000 | Point for the NW-NE 1/64 sec. cor. of Sec. 18, at the intersection with the E-W center line. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NW-NE 1/64 S18. |
| | Descend 30 ft. over NW. slope through timber. |
| 16.885 | Center line Alaska Railroad, bears N. 37° 35' E., and S. 37° 35' W. |
| 18.40 | Telephone line, same bearing as the railroad. |
| 20.000 | The W-E 1/64 sec. cor. of Secs. 7 and 18. |

From the C-N-NE 1/64 sec. cor. of Sec. 18.

WEST, on the E-W center line of NW¼ NE¼ Sec. 18.

Descend over NW. slope through timber.

| 4.995 | Point for the C-E-NW-NE 1/256 sec. cor. of Sec. 18. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NW-NE 1/256 S18. |
| 5.600 | Descend 90 ft. to railroad. |
| 9.991 | The NW-NE 1/64 sec. cor. of Sec. 18. |
| 14.192 | Center line Alaska Railroad, bears N. 25° 20' E., and S. 25° 20' W. |
| 14.800 | Telephone line, same bearing as the railroad, thence descend 70 ft. |
| 19.982 | The C-N-N 1/64 sec. cor. of Sec. 18. |

### SUBDIVISION OF SW¼ OF SEC. 18

From the W 1/16 sec. cor. of Secs. 18 and 19.

N. 0° 03' W., on the N-S center line of the SW¼ Sec. 18.

Over rolling land through timber.

| 4.998 | Point for the C-S-S-SW 1/256 sec. cor. of Sec. 18. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-SW 1/256 S18. |
| 9.997 | Point for the C-S-SW 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SW 1/64 S18. |
| 14.996 | Point for the C-N-S-SW 1/256 sec. cor. of Sec. 18. |

AR002409

4—673 b



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-SW 1/256 S18. |
| 18.60 | Top of left bank of Mink Creek, bears NW. and SE.  Thence descend 45 ft. to creek. |
| 19.60 | Mink Creek, 15 lks. wide, 12 ins. deep, course NW. |
| 19.995 | Point for the SW 1/16 sec. cor. of Sec. 18 at the intersection with the E-W center line. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd. |

<div align="center">

S 18

SW 1/16

1952

</div>

| | from which |
|---|---|
| | A birch, 6 ins. diam., bears S. 40° E., 74 lks. dist., mkd. SW 1/16 S18 BT. |
| | A spruce, 6 ins. diam., bears N. 53½° W., 52 lks. dist., mkd. SW 1/16 S18 BT. |
| | Ascend 40 ft. over SW. slope of right bank of creek. |
| 21.30 | Top of bank, thence over rolling land through small timber. |
| 24.993 | Point for the C-S-N-SW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-SW 1/256 S18. |
| 29.389 | Center line of Alaska Railroad, bears N. 43° 40' E., and S. 49° 05' W., on curve. |
| 29.992 | Point for the C-N-SW 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SW 1/64 S18. |
| 30.90 | Telephone line, same bearing as the railroad. |
| 34.991 | Point for the C-N-N-SW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C- N-N-SW 1/256 S18. |
| 39.990 | The C-W 1/16 sec. cor. of Sec. 18. |
| | From the C-S 1/16 sec. cor. of Sec. 18. |
| | WEST, on the E-W center line of the SW¼ Sec. 18. |
| | Over rolling land through small timber. |
| 0.983 | Power line and graded road, bears N. 38° 46' E., and S. 38° 46' W. |
| 4.982 | Point for the C-E-E-SW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-SW 1/256 S18. |
| 9.965 | Point for the C-E-SW 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, |

AR002410



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | mkd. C-E-SW 1/64 S18. |
| 14.947 | Point for the C-W-E-SW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-SW 1/256 S18. |
| 17.10 | Top of right bank of Mink Creek, bears NW. and SE.   Thence descend 50 ft. |
| 19.930 | The SW 1/16 sec. cor. of Sec. 18. |
| 20.65 | Mink Creek, 15 lks. wide, 12 ins. deep; course NW.   Thence ascend 50 ft. over NE. slope. |
| 24.10 | Top of bank; thence over rolling land through timber. |
| 24.913 | Point for the C-E-W-SW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-SW 1/256 S18. |
| 29.895 | Point for the C-W-SW 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SW 1/64 S18. |
| 30.300 | Center line of Alaska Railroad, bears N. $39^{\circ}$ 40' E., and S. $33^{\circ}$10' W., on curve. |
| 30.85 | Telephone line, same bearing as the railroad, thence descend 45 ft. over NW. slope. |
| 32.40 | Thence over muskeg land. |
| 36.520 | The S 1/16 sec. cor. of secs. 13 and 18. |

### SUBDIVISION OF SE$\frac{1}{4}$ SW$\frac{1}{4}$ OF SEC. 18

| | |
|---|---|
| | From the E-W 1/64 sec. cor. of Secs. 18 and 19. |
| | N. $0^{\circ}$ 03' W., on the N-S center line of SE$\frac{1}{4}$ SW$\frac{1}{4}$ Sec. 18. |
| | Over muskeg land. |
| 8.84 | Power line, bears N. $38^{\circ}$ 46' E., and S. $38^{\circ}$ 46' W. |
| 9.50 | A beaver dam lake on Mink Creek, bears E. and W. |
| 9.997 | True point for the SE-SW 1/64 sec. cor. which falls in the lake at the intersection with the E-W center line. |
| 10.30 | Ascend 10 ft. bank, thence over rolling land. |
| 13.00 | Graded road, bears NE. and SW., thence through timber. |
| 19.995 | The C-E-SW 1/64 sec. cor. of Sec. 18. |
| | From the C-S-S 1/64 sec. cor. of Sec. 18. |
| | WEST, on the E-W center line of SE$\frac{1}{4}$ SW$\frac{1}{4}$ sec. 18. |
| | Over muskeg land. |
| 6.00 | Mink Creek, 15 lks. wide, 12 ins. deep, course SW. |
| 9.035 | Point selected for the witness SE-SW 1/64 sec. cor. of Sec. 18 at the intersection with the power line, bears N. $38^{\circ}$ 46' E. and S. $38^{\circ}$ 46' W. |

AR002411



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. WC SE-SW 1/64 61.4' E. S18. |
| | Descend 10 ft. bank, thence over a beaver dam lake. |
| 9.965 | True point for the SE-SW 1/64 sec. cor. of Sec. 18. |
| 10.65 | Temporary wood bridge, over Mink Creek. Thence ascend 45 ft. over NE. slope through timber and undergrowth. |
| 14.30 | Top of bank, thence over rolling land through timber. |
| 14.947 | Point for the C-W-SE-SW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SE-SW 1/256 S18. |
| 19.930 | The C-S-SW 1/64 sec. cor. of sec. 18. |

## SUBDIVISION OF NE¼ SW¼ SEC. 18

From the C-E-SW 1/16 sec. cor. of Sec. 18.

N. 0° 03' W., on the N-S center line of NE¼ SW¼ Sec. 18.

Over rolling land through timber.

| 9.997 | Point for the NE-SW 1/64 sec. cor. of Sec. 18 at the intersection with the E-W center line. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NE-SW 1/64 S18. |
| 19.995 | The C-E-W 1/64 sec. cor. of Sec. 18. |

From the C-N-S 1/64 sec. cor. of Sec. 18.

WEST, on the E-W center line of NE¼ SW¼ Sec. 18.

Over rolling land through timber.

| 4.982 | Point for the C-E-NE-SW 1/256 sec. cor. of Sec. 18. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NE-SW 1/256 S18. |
| 9.965 | The NE-SW 1/64 sec. cor. of Sec. 18. |
| 14.947 | Point for the C-W-NE-SW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x 3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NE-SW 1/256 S18. |
| 17.70 | Descend 40 ft. over NW. slope. |
| 19.354 | Center line Alaska Railroad, bears N. 43° 40' E., and S. 43° 40' W. |
| 19.930 | The C-N-SW 1/64 sec. cor. of Sec. 18. |

## SUBDIVISION OF SW¼ SW¼ OF SEC. 18

From the W-W 1/164 sec. cor. of Secs. 18 and 19.

N. 0° 03' W., on the N-S center line of SW¼ SW¼ Sec. 18.

Over rolling land through timber.

AR002412



137

– 110 –

. T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 4.997 | Point for the C-S-SW-SW 1/256 sed. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SW-SW 1/256 S18. |
| 9.995 | Point for the SW-SW 1/64 sec. cor. of Sec. 18 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SW-SW 1/64 S18. |
| 14.992 | Point for the C-N-SW-SW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SW-SW 1/256 S18. |
| 18.50 | Descend 40 ft. over NW. slope. |
| 19.990 | The C-W-SW 1/64 sec. cor. of Sec. 18. |

From the C-S-SW 1/64 sec. cor. of Sec. 18.

WEST, on the E-W center line of SW¼ SW¼ Sec. 18.

Over rolling land through timber.

| 4.983 | Point for C-E-SW-SW 1/256 sec. cor. of Sec. 18. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SW-SW 1/256 S18. |
| 9.965 | The SW-SW 1/64 sec. cor. of Sec. 18. |
| 14.45 | Center line Alaska Railroad, bears N. 9° 45' E., and S. 6° 15' W., on curve. |
| 15.00 | Telephone line, follows the railroad. |
| 16.615 | The S-S 1/64 sec. cor. of secs. 13 and 18. |

### SUBDIVISION OF NW¼ SW¼ OF SEC. 18

From the C-W-SW 1/64 sec. cor. of Sec. 18.

N. 0° 03' W., on the N-S center line of NW¼ SW¼ Sec. 18.

Over rolling land through timber.

| 0.49 | Center line Alaska Railroad, bears N. 39° 40' E., and S. 39° 40' W. |
|---|---|
| 1.20 | Telephone line, follows the railroad. Descend 45 ft. over NW. slope. |
| 4.997 | Point for the C-S-NW-SW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NW-SW 1/256 S18. |
| 9.995 | Point for the NW-SW 1/64 sec. cor. of Sec. 18, at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NW-SW 1/64 S18. |
| 11.20 | Mink Creek, 15 lks. wide, 12 ins. deep, course NW. |

AR002413



- 111 -

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 14.992 | Point for the C-N-NW-SW 1/256 sec. cor. Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NW-SW 1/256 S18. |
| 19.990 | The C-W-W 1/64 sec. cor. of Sec. 18. |
| | From the C-N-SW 1/64 sec. cor. of Sec. 18. |
| | WEST, on the E-W center line of NW¼ SW¼ Sec. 18. |
| | Over rolling land through small timber. |
| 4.983 | Point for the C-E-NW-SW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NW-SW 1/256 S18. |
| 9.40 | Mink Creek, 15 lks. wide, 12 ins. deep, course N. from SE. |
| 9.965 | The NW-SW 1/64 sec. cor. of Sec. 18. |
| 15.59 | Fire Creek, course NW. |
| 16.565 | The N-S 1/64 sec. cor. of Secs. 13 and 18. |

SUBDIVISION OF NW¼ OF SEC. 18

From the C-W 1/16 sec. cor. of Sec. 18.

N. 0° 07' W., on the N-S center line of NW¼ Sec. 18.

Over rolling land through timber.

| 5.003 | Point for the C-S-S-NW 1/256 sec. cor. of Sec. 18. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-S-NW 1/256 S18. |
| 10.007 | Point for the C-S-NW 1/64 sec. cor. of Sec. 18, in draw, 20 lks. wide, 3 ft. banks.  Creek, 2 lks. wide, 6 ins. deep, course NW. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NW 1/64 S18. |
| 15.011 | Point for the  C-N-S-NW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-S-NW 1/256 S18. |
| 17.20 | Fire Creek, 20 lks. wide, 3 ft. deep, course NE. |
| 26.015 | Point for the NW 1/16 sec. cor. of Sec. 18 at the intersection with the E-W center line. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 24 ins. in the ground, with brass cap mkd. |

S 18

NW 1/16

1952

from which

A spruce, 8 ins. diam., bears N 36 3/4° E., 49½ lks. dist., mkd. NW 1/16. S18 BT.

AR002414



199

.T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | A spruce, 6 ins. diam., bears N. 49 3/4° W., 29 lks. dist., mkd. NW 1/16 S18 BT. |
| 25.018 | Point for the C-S-N-NW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-NW 1/256 S18. |
| 30.022 | Point for the C-N-NW 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NW 1/64 S18. |
| 35.026 | Point for the C-N-N-NW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N-NW 1/256 S18. |
| 40.030 | The W 1/16 sec. cor. of Sec. 7 and 18. |
| | From the C-N 1/16 sec. cor. of Sec. 18. |
| | N. 89° 58' W., on the E-W center line of NW¼ Sec. 18. |
| | Descend 55 ft. over NW. slope through timber. |
| 4.990 | Point for the C-E-E-NW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-NW 1/256 S18. |
| 8.10 | Base of slope; thence over rolling land. |
| 9.980 | Point for the C-E-NW 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NW 1/64 S18. |
| 11.30 | Fire Creek, 20 lks. wide, 3 ft. deep, course NE.; thence ascend gradual SE. slope. |
| 14.970 | Point for the C-W-E-NW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-NW 1/256 S18. |
| 19.960 | The NW 1/16 sec. cor. of Sec. 18. |
| 24.950 | Point for the C-E-W-NW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-NW 1/256 S18. |
| 29.940 | Point for the C-W-NW 1/64 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NW 1/64 S18. |
| 36.455 | The N 1/16 sec. cor. of Secs. 13 and 18. |

### SUBDIVISION OF SE¼ NW¼ OF SEC. 18.

From the C-E-W 1/64 sec. cor. of Sec. 18.

N. 0° 05' W., on the N-S center line of SE¼ NW¼ Sec. 18.

Over rolling land through small timber.

AR002415

4—673 b



– 113 –

· T. 15 N., R. 1 W., S.M.

| Chains | |
|--------|--|
| 2.85 | Center line Alaska Railroad, bears N. 47° 45' E., and S. 47° 45' W. |
| 5.002 | Point for the C-S-SE-NW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SE-NW 1/256 S18. |
| 10.004 | Point for the SE-NW 1/64 sec. cor. of Sec. 18 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SE-NW 1/64 S18. |
| 15.006 | Point for the C-N-SE-NW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SE-NW 1/256 S18. |
| 20.008 | The C-E-NW 1/64 sec. cor. of Sec. 18. |
| | From the C-S-N 1/64 sec. cor. of Sec. 18. |
| | N. 89° 59' W., on the E-W center line of SE¼ NW¼ Sec. 18 |
| | Over rolling land through small timber. |
| 3.90 | Center line Alaska Railroad, bears N. 30° 35' E., and S. 30° 35' W. |
| 4.986 | Point for the C-E-SE-NW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SE-NW 1/256 S18. |
| 9.972 | The SE-NW 1/64 sec. cor. of Sec. 18. |
| 14.958 | Point for the C-W-SE-NW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-SE-NW 1/256 S18. |
| 19.944 | The C-S-NW 1/64 sec. cor. of Sec. 18. |

### SUBDIVISION OF NE¼ NW¼ OF SEC. 18

From the C-W-NW 1/64 sec. cor. of Sec. 18.

N. 0° 05' W., on the N-S center line of NE¼ NW¼ Sec. 18.

Over rolling land through small timber.

| 1.30 | Fire Creek, 20 lks. wide, 3 ft. deep, course NE. |
| 5.002 | Point for the C-S-NE-NW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NE-NW 1/256 S18. |
| 10.004 | Point for the NE-NW 1/64 sec. cor. of Sec. 18 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NE-NW 1/64 S18. |
| 15.006 | Point for the C-N-NE-NW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NE-NW 1/256 S18. |

AR002416



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 20.008 | The E-W 1/64 sec. cor. of Secs. 7 and 18. |
| | From the C-N-N 1/64 sec. cor. of Sec. 18. |
| | N. 89° 57' W., on the E-W center line of NE¼ NW¼ Sec. 18. |
| | Over rolling land through small timber. |
| 2.50 | Fire Creek, 20 lks. wide, 3 ft. deep, course NE. |
| 4.992 | Point for the C-E-NE-NW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NE-NW 1/256 S18. |
| 9.984 | The NE-NW 1/64 sec. cor. of Sec. 18. |
| 14.976 | Point for the C-W-NE-NW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NE-NW 1/256 S18. |
| 19.968 | The C-N-NW 1/64 sec. cor. of Sec. 18. |

## SUBDIVISION OF SW¼ NW¼ OF SEC. 18

| | |
|---|---|
| | From the C-W-W 1/64 sec. cor. of Sec. 18. |
| | N. 0°09' W., on the N-S center line of SW¼ NW¼ Sec. 18. |
| | Over rolling land through small timber. |
| 5.005 | Point for the C-S-SW-NW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-SW-NW 1/256 S18. |
| 9.10 | Fire Creek, 20 lks. wide, 3 ft. deep, course NE. |
| 10.010 | Point for the SW-NW 1/64 sec. cor. of Sec. 18 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. SW-NW 1/64 S18. |
| 15.015 | Point for the C-N-SW-NW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-SW-NW 1/256 S18. |
| 20.020 | The C-W-NW 1/64 sec. cor. of Sec. 18. |
| | From the C-S-NW 1/64 sec. cor. of Sec. 18. |
| | N. 89°59' W., on the E-W center line of SW¼ NW¼ Sec. 18. |
| | Over rolling land through timber. |
| 4.986 | Point for the C-E-SW-NW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-SW-NW 1/256 S18. |
| 8.10 | Fire Creek, 20 lks. wide, 3 ft. deep, course NE. |
| 9.972 | The SW-NW 1/64 sec. cor. of Sec. 18. |

AR002417



## T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 16.515 | The S-N 1/64 sec. cor. of Secs. 13 and 18. |

### SUBDIVISION OF NW¼ NW¼ OF SEC. 18

From the C-W-NW 1/64 sec. cor. of Sec. 18.

N. 0° 09' W., on the N-S center line of NW¼ NW¼ Sec. 18.

Over rolling land through timber.

| 5.005 | Point for the C-S-NW-NW 1/256 sec. cor. of Sec. 18. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NW-NW 1/256 S18. |
| 10.010 | Point for the NW-NW 1/64 sec. cor. of Sec. 18 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NW-NW 1/64 S18. |
| 15.015 | Point for the C-N-NW-NW 1/256 sec. cor. of Sec. 18. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NW-NW 1/256 S18. |
| 20.020 | The W-W 1/64 sec. cor. of Secs. 7 and 18. |

From the C-N-NW 1/64 sec. cor. of Sec. 18.

N. 89° 57' W., on the E-W center line of NW¼ NW¼ Sec. 18.

Over rolling land through timber.

| 4.993 | Point for the C-E-NW-NW 1/256 sec. cor. of Sec. 18. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NW-NW 1/256 S18. |
| 9.986 | The NW-NW 1/64 sec. cor. of Sec. 18. |
| 16.480 | The N-N 1/64 sec. cor. of Secs. 13 and 18. |

### SUBDIVISION OF SEC. 19, T. 15 N., R. 1 W.

From the ¼ sec. cor. of Secs. 19 and 30, which is monumented with an iron post, 1 in. diam., firmly set, mkd. and witnessed as described in the official record of the subdivisional survey of Sec. 30 in 1950.

N. 0° 20' W., on the N-S center line of Sec. 19.

Over rolling land through timber and undergrowth.

| 7.55 | Power line, under construction, bears approximately N. 38° E., and S. 38° W. |
|---|---|
| 11.70 | Creek, 3 lks. wide, 12 ins. deep, course W. |
| 39.835 | Point for the center ¼ sec. cor. of Sec. 19 at the intersection with the E-W center line. |
| | Set an iron post, 28 ins. long, 2½ ins. diam., 24 ins. in the ground, with brass cap mkd. |

<div align="center">

S 19
C ¼
1952

</div>

from which

A spruce, 10 ins. diam., bears N. 32 3/4° E., 20 lks. dist., mkd. C¼ S19 BT.

AR002418




T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | A birch, 6 ins. diam., bears S. 62 3/4° W., 32½ lks. dist., mkd. C¼ S19 BT. |
| 40.00 | Bart Creek, 10 lks. wide, 18 ins. deep, course W. from NE.  Thence ascend 40 ft. over S. slope. |
| 45.60 | Ridge, bears SE. and SW.  Thence descend 60 ft. over N. slope. |
| 49.50 | Thence over rolling land through timber. |
| 59.765 | Point for the C-N-1/16 sec. cor. of Sec. 19. |

Set an iron post, 28 ins. long, 2½ ins. diam., 24 ins. in the ground, with brass cap mkd.

$$
\begin{array}{c}
\text{S 19}\\
\text{C - N}\\
+\\
1/16\\
1952
\end{array}
$$

from which

A birch, 6 ins. diam., bears N. 42° E., 55½ lks. dist., mkd. C-N 1/16 S19 BT.

A spruce, 6 ins. diam., bears N. 56° W., 19½ lks. dist., mkd. C-N 1/16 S19 BT.

| | |
|---|---|
| 62.257 | Point for the 1/1024 sec. cor. of Sec. 19. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S19.

| | |
|---|---|
| 63.15 | Ridge, bears E. and W. |
| 64.748 | Point for the C-S-N-N 1/256 sec. cor. of Sec. 19. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-N 1/256 S19.

Thence over muskeg land.

| | |
|---|---|
| 67.239 | Point for the 1/1024 sec. cor. of Sec. 19. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S19.

Thence ascend 25 ft. bank, bears E. and W.

| | |
|---|---|
| 68.00 | Top of bank, thence over rolling land through timber. |
| 69.730 | Point for the C-N-N 1/64 sec. cor. of Sec. 19. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N 1/64 S19.

| | |
|---|---|
| 72.222 | Point for the 1/1024 sec. cor. of Sec. 19. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S19.

| | |
|---|---|
| 74.713 | Point for the C-N-N-N 1/256 sec. cor. of Sec. 19. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N-N 1/256 S19.

| | |
|---|---|
| 77.204 | Point for the 1/1024 sec. cor. of Sec. 19. |

Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. 1/1024 S19.

| | |
|---|---|
| 79.695 | The ¼ sec. cor. of Secs. 18 and 19. |

From the ¼ sec. cor. of Secs. 19 and 20.

N. 89° 47' W., on the E-W center line of Sec. 19.

Over rolling land through timber and undergrowth.

AR002419



204

T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 13.75 | Power line, under construction, bears approximately N. 38° E., and S. 38° W. |
| 15.90 | Bulldozed road, bears N. and S. |
| 19.962 | Point for the C-E 1/16 sec. cor. of sec. 19. |

Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground with brass cap mkd.

<div align="center">
S 19<br>
C - E<br>
+<br>
1/16<br>
1952
</div>

from which

 A birch, 6 ins. diam., bears N. 22° E., 45½ lks. dist., mkd. C-E 1/16 S19 BT.

 A birch, 8 ins. diam., bears N. 60½° W., 40 lks. dist., mkd. C-E 1/16 S19 BT.

| 31.60 | Bart Creek, 10 lks. wide, 12 ins. deep, course N. |
|---|---|
| 39.925 | The center 1/4 sec. cor. of sec. 19. |
| 40.10 | Bart Creek, 10 lks. wide, 18 ins. deep, course W. from NE. |
| 43.25 | Same creek, course NW. |
| 59.975 | Point for the C-W 1/16 sec. cor. of sec. 19. |

Set an iron post, 28 ins. long, 2½ ins. diam., 26 ins. in the ground, with brass cap mkd.

<div align="center">
S 19<br>
C-W<br>
+<br>
1/16<br>
1952
</div>

from which

 A birch, 6 ins. diam., bears S. 77 3/4° E., 36 lks. dist., mkd. C-W 1/16 S19 BT.

 A birch, 6 ins., diam., bears S. 72° W., 59 lks. dist., mkd. C-W 1/16 S19 BT.

| 69.30 | Bank, 10 ft. high, slopes E., bears N. and S. |
|---|---|
| 76.650 | The 1/4 sec. cor. of secs. 19 and 24. |

## SUBDIVISION OF NE¼ OF SEC. 19

From the C-E 1/16 sec. cor. of sec. 19.

N. 0° 17' W., on the N-S center line of NE¼ sec. 19.

Over rolling land through small timber.

| 17.70 | Ridge, bears E. and W. |
|---|---|
| 19.965 | Point for the NE 1/16 sec. cor. of sec. 19 at the intersection with the E-W center line. |

AR002420



205

T. 15 N., R. 2 W., S.M.

| Chains | |
|---|---|
| | Set an iron post, 28 ins. long, 2½ ins. diam., 24 ins. in the ground, with brass cap mkd. |
| | S 19 |
| | NE 1/16 |
| | 1952 |
| | from which |
| | A birch, 6 ins. diam., bears N. 66½° E., 51 lks. dist., mkd. NE 1/16 S19 BT. |
| | A birch, 6 ins. diam., bears S. 54 3/4° E., 41 lks. dist., mkd. NE 1/16 S19 BT. |
| 24.956 | Point for the C-S-N-NE 1/256 sec. cor. of sec. 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-NE 1/256 S19. |
| 29.947 | Point for the C-N-NE 1/64 sec. cor. of sec. 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NE 1/64 S19. |
| 34.938 | Point for the C-N-N-NE 1/256 sec. cor. of sec. 19 |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N-NE 1/256 S19. |
| 39.930 | The E 1/16 sec. cor. of Secs. 18 and 19. |
| | From the N 1/16 sec. cor. of Secs 19 and 20. |
| | N. 89° 54' W., on the E-W center line of NE¼ Sec. 19. |
| | Over rolling land through small timber. |
| 7.30 | Creek, 6 lks. wide, 18 ins. deep, course W. from NE. |
| 13.00 | Same creek, course N. |
| 19.980 | The NE 1/16 sec. cor. of Sec. 19. |
| 24.975 | Point for the C-E-W-NE 1/256 sec. cor. of Sec. 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-W-NE 1/256 S19. |
| 29.970 | Point for the C-W-NE 1/64 sec. cor. of Sec.19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NE 1/64 S19. |
| 34.965 | Point for the C-W-W-NE 1/256 sec. cor. of Sec. 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-W-NE 1/256 S19. |
| 39.960 | The C-N 1/16 sec. cor. of Sec. 19. |

### SUBDIVISION OF NW¼ NE¼ OF SECTION 19

From the C-W-NE 1/64 sec. cor. of Sec. 19.

N. 0° 18' W,, on the N-S center line of NW¼ NE¼ Sec. 19.

AR002421



. . T. 15 N., R. 1 W., S.M.                           20̄6

| Chains | |
|---|---|
| | Descend NW. slope through timber. |
| 4.987 | Point for the C-S-NW-NE 1/256 sec. cor. of Sec. 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NW-NE 1/256 S19. |
| | Thence over muskeg land. |
| 8.50 | Ascend bank 25 ft. high, bears NE. and SW. |
| 9.00 | Thence over level land through timber. |
| 9.975 | Pointtfor the NW-NE 1/64 sec. cor. of Sec. 19, at intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NW-NE 1/64 S19. |
| 14.962 | Point for the C-N-NW-NE 1/256 sec. cor. of Sec. 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NW-NE 1/256 S19. |
| 19.950 | The W-E 1/64 sec. cor of Secs. 18 and 19. |

From the C-N-NE 1/64 sec. cor. of Sec. 19.

N. 89° 57' W., on the E-W center line of NW$\frac{1}{4}$ NE$\frac{1}{4}$ Sec. 19.

Over rolling land through small timber.

| 4.997 | Point for the C-E-NW-NE 1/256 sec. cor. of Sec. 19. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NW-NE 1/256 S19. |
| 9.995 | The NW-NE 1/64 sec. cor. of Sec. 19. |
| 14.992 | Point for the C-W-NW-NE 1/256 sec. cor. of Sec. 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-NW-NE 1/256 S19. |
| 19.990 | The C-N-N 1/64 sec. cor. of Sec. 19. |

## SUBDIVISION OF NW$\frac{1}{4}$ OF SEC. 19

From the C-W 1/16 sec. cor. of Sec. 19.

N. 0° 10' W., on the N-S center line of NW$\frac{1}{4}$ Sec. 19.

Over rolling land through small timber.

| 18.20 | Bart Creek, 10 lks. wide, 18 ins. deep, course SW. |
|---|---|
| 19.898 | Point for the NW 1/16 sec. cor. of Sec. 19 at the intersection with the E-W center line. |
| | Set an iron post, 28 ins. long, 2$\frac{1}{2}$ ins. diam., 24 ins. in the ground, with brass cap mkd. |

<div align="center">

S 19

NW 1/16

1952

</div>

from which

U S. GOVERNMENT PRINTING OFFICE      16—28520-1



201

. . T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | A birch, 6 ins. diam:, bears S. 40½° W., 30½ lks. dist., mkd. NW 1/16 S19 BT. |
| | A birch, 6 ins. diam., bears N. 30° W., 19½ lks. dist., mkd. NW 1/16 S19 BT. |
| 24.872 | Point for the C-S-N-NW 1/256 sec. cor. of Sec. 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-N-NW 1/256 S19. |
| 29.846 | Point for the C-N-NW 1/64 sec. cor. of Sec. 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NW 1/64 S19. |
| 34.820 | Point for the C-N-N-NW 1/256 sec. cor. of Sec. 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-N-NW 1/256 S19. |
| 36.203 | Power line and graded road, bears N. 38° 46' E., and S. 38° 46' W. |
| 39.795 | The W 1/16 sec. cor. of secs. 18 and 19. |
| | From the C-N 1/16 sec. cor. of Sec. 19. |
| | N. 89° 54' W., on the E-W center line of NW¼ Sec. 19. |
| | Over rolling land through small timber. |
| 4.997 | Point for the C-E-E-NW 1/256 sec. cor. of Sec. 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-E-NW 1/256 S19. |
| 9.995 | Point for the C-E-NW 1/64 sec. cor. of Sec. 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NW 1/64 S19. |
| 14.992 | Point for the C-W-E-NW 1/256 sec. cor. of Sec. 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-W-E-NW 1/256 S19. |
| 19.990 | The NW 1/16 sec. cor. of Sec. 19. |
| 31.10 | Bart Creek, 10 lks. wide, 18 ins. deep, course NW. from S. |
| 33.125 | Power line, bears N. 38° 46' E., and S. 38° 46' W. |
| 36.650 | The N 1/16 sec. cor. of Secs. 19 and 24. |

### SUBDIVISION OF NE¼ NW¼ OF SEC. 19

| | |
|---|---|
| | From the C-E-NW 1/64 sec. cor. of Sec. 19. |
| | N. 0° 15' W., on the N-S center line of NE¼ NW¼ Sec. 19. |
| | Over rolling land through timber. |
| 4.977 | Point for the C-S-NE-NW 1/256 sec. cor. of Sec. 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-S-NE-NW 1/256 S19. |

AR002423



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| 9.955 | Point for the NE-NW 1/64 sec. cor. of Sec. 19 at the intersection with the E-W center line. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. NE-NW 1/64 S19. |
| 14.932 | Point for the C-N-NE-NW 1/256 sec. cor. of Sec. 19. |
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-N-NE-NW 1/256 S19. |
| 19.910 | The E-W 1/64 sec. cor. of Secs. 18 and 19. |

From the C-N-N 1/64 sec. cor. of Sec. 19.

N. 89° 57' W , on the E-W center line of NE¼ NW¼ Sec. 19.

Over rolling land through timber.

| 4.990 | Point for the C-E-NE-NW 1/256 sec. cor. of Sec. 19. |
|---|---|
| | Set a wood post, 2x3x36 ins., painted white, 18 ins. in the ground, mkd. C-E-NE-NW 1/256 S19. |
| 9.980 | The NE-NW 1/64 sec. cor. of Sec. 19. |
| 14.970 | Point for the C-W-NE-NW 1/256 sec. cor. of Sec. 19. |
| | Set a wood post, 2x3x36 ins,, painted white, 18 ins. in the ground, mkd. C-W-NE-NW 1/256 S19. |
| 19.960 | The C-N-NW 1/64 sec. cor. of Sec. 19. |

### TRAVERSE OF ALASKA RAILROAD

Beginning at a point on the center line of the Alaska Railroad at the intersection of the township line between sections 19 and 24, of T. 15 N., Ranges 1 and 2 W., S.M., Alaska.

From this point the corner of sections 13, 18, 19 and 24 on the west boundary of the township bears N. 0° 07' W., 7.565 chs. dist.

Along traverse of the railroad grade through Sec. 19, T. 15 N., R. 1 W.

Over rolling timbered land.

N. 41° 00' E.,   1.310 chs.

N. 34° 50' E.,   0.635 chs.

N. 29° 25' E.,   0.890 chs.

N. 22° 58' E.,   1.210 chs.

N. 13° 48' E.,   1.530 chs.    At 70 lks., Bart Creek, course NW.

N. 2° 41' E.,   1.825 chs.

N. 3° 21' W.,   0.855 chs.    Intersect sec. line between Secs. 18 and 19, from which the cor. of secs. 13, 18, 19 and 24, bears N. 89° 59' W., 2.535 chs. dist.

In Sec. 18

N. 3° 21'' W.,   0.800 chs.    Approximate end of curve.



T. 15 N., R. 1 W., S.M.

| Chains | | | |
|---|---|---|---|
| | N. 6° 14' W., | 3.235 chs. | Approximate beginning of curve to the right. |
| | N. 5° 05' W., | 1.365 chs. | |
| | N. 2° 45' W., | 1.365 chs. | |
| | N. 2° 20' E., | 1.490 chs. | |
| | N. 6° 15' E., | 1.780 chs. | Intersect E-W centerline of the SW¼ SW¼ from which the S-S 1/64 sec. cor. of Sec. 18 bears WEST, 2.165 chs. dist. |
| | N. 9° 45' E., | 1.670 chs. | |
| | N. 14° 20' E., | 1.415 chs. | |
| | N. 19° 40' E., | 2.315 chs. | |
| | N. 26° 05' E., | 3.050 chs. | |
| | N. 33° 10' E., | 2.460 chs. | Intersect E-W centerline of SW¼, from which the C-W-SW 1/64 sec. cor. of Sec. 18 bears EAST 0.405 chs. dist. |
| | N. 39° 40' E., | 1.765 chs. | |
| | N. 44° 15' E., | 2.560 chs. | |
| | N. 49° 15' E., | 1.485 chs. | Approximate end of curve. |
| | N. 50° 46' E., | 6.305 chs. | At 1.55 chs., Mink Creek, course NW. Approximate beginning of curve to the left. |
| | N. 49° 05' E., | 1.910 chs. | Intersect N-S center line of SW¼ from which the C-N-SW 1/64 sec. cor. of Sec 18 bears N. 0° 03' W., 0.603 chs. dist |
| | N. 43° 40' E., | 1.085 chs. | |
| | N. 37° 10' E., | 1.185 chs. | |
| | N. 29° 55' E., | 1.920 chs. | Approximate end of curve. |
| | N. 29° 05' E., | 3.830 chs. | Approximate beginning of curve to the right. |
| | N. 30° 50' E., | 2.430 chs. | |
| | N. 37° 50' E., | 2.250 chs. | Intersect the E-W center line of the section, from which the C-W 1/16 sec. cor. of Sec. 18 bears WEST, 6.93 chs. dist. |
| | N. 45° 50' E., | 2.095 chs. | Approximate end of curve. |
| | N. 47° 45' E., | 5.015 chs. | Approximate beginning of curve to the left. |
| | | | At 2.066 chs., intersect the N-S center line of the SE¼ NW¼ of the section, from which the C-E-W 1/64 sec. cor. of sec. 18 bears S. 0° 05' E., 2.85 chs. dist. |
| | N. 43° 00' E., | 3.320 chs. | At 3.00 chs., culvert. |
| | N. 30° 35' E., | 4.950 chs. | At 3.197 chs., intersect the E-W center line of the SE¼ NW¼ of the section, from which the C-S-N 1/64 sec. cor. of Sec. 18 bears S. 89° 59' E., 3.90 chs. dist. |
| | | | At end of course, approximate end of curve. |

AR002425



. . T. 15 N., R. 1 W., S.M.

| Chains | | |
|---|---|---|
| | N. 25° 20' E.,   20.995 chs. | At 0.87 chs., culvert. |
| | | At 4.35 chs., culvert. |
| | | At 7.005 chs., intersect the N-S center line of the section , from which the C-N 1/16 sec. cor. of Sec. 18 bears N. 0°03' W., 2.15 chs. dist. |
| | | At 9.358 chs., intersect the E-W center line of the NE¼ of the section, from which the C-N 1/16 sec. cor. of sec. 18 bears WEST, 1.02 chs. dist. |
| | | At 20.455 chs., intersect the E-W center line of the NW¼ NE¼ of the section, from which the C-N-N 1/64 sec. cor. of Sec. 18 bears WEST, 5.79 chs. dist. |
| | | At end of course, approximate beginning of curve to the right. |
| | N. 27° 00' E.,   4.140 chs. | |
| | N. 37° 35' E.,   5.585 chs. | At 3.697 chs., intersect the N-S center line of the NW¼ NE¼ of the section, from which the W-E 1/64 sec. cor. of Secs. 7 and 18, bears N. 0° 04' W., 3.115 chs. dist. |
| | N. 44° 15' E.,   1.960 chs. | At 1.960 chs., intersect sec. line between Secs. 7 and 18, from which the ¼ sec. cor. of Secs. 7 and 18 bears WEST, 12.678 chs. dist. |
| | In Sec. 7 | |
| | N. 44° 15' E.,   3.950 chs. | At end of course, approximate beginning of curve to the left. |
| | N. 41° 15' E.,   3.115 chs. | At 2.45 chs., culvert. |
| | N. 28° 25' E.,   3.985 chs. | Approximate end of curve. |
| | N. 23° 50' E.,   39.040 chs. | At 1.410 chs., intersect the N-S center line of the SE¼ of the sec., from which the C-S-SE 1/64 sec. cor. of Sec. 7 bears N. 0°08' W., 0.038 chs. dist. |
| | | At 1.452 chs. intersect the E-W center line of the SE¼ SE¼ of the section, from which the C-S-SE 1/64 sec. cor. of Sec. 7 bears N. 89° 59' W., 0.017 chs. dist. |
| | | At 12.390 chs., intersect the E-W center line of the SE¼ of the sec., from which the SE 1/16 sec. cor. of Sec. 7, bears N. 89°59' W., 4.46 chs. dist. |
| | | At 23.330 chs., intersect the E-W center line of the NE¼ SE¼ of the sec., from which the NE-SE 1/64 sec. cor. of Sec. 7 bears S.89° 58' E., 1.09 chs. dist. |



211

| Chains | | |
|---|---|---|
| | | At 25.93 chs., culvert. |
| | | At 26.005 chs., intersect the N-S center line of the NE¼ SE¼ of the section, from which the NE-SE 1/64 sec. cor. of Sec. 7, bears S.0°08' E., 2.445 chs. dist. |
| | | At 34.270 chs., intersect the E-W center line of the section, from which the ¼ sec. cor. of Secs. 7 and 8, bears S. 89° 57' E., 6.63 chs. dist. |
| | | At 39.040 chs., end of course and approximate beginning of curve to the left. |
| N. 22° 00' E., | 2.675 chs. | |
| N. 14° 35' E., | 3.215 chs. | |
| N. 7° 10' E., | 2.315 chs. | |
| N. 0° 55' E., | 3.050 chs. | At end of course, approximate end of curve. |
| N. 2° 09' W., | 13.270 chs. | At 12.lks., toe of frog for siding to the NE. At end of course, approximate beginning of curve to the right. |
| NORTH | 3.100 chs. | |
| N. 6° 45' E., | 2.960 chs. | |
| N. 15° 00' E., | 2.905 chs. | |
| N. 22° 55' E., | 2.425 chs. | Intersect the sec. line bet. Secs. 6 and 7, from which the cor. of Secs. 5, 6, 7 and 8 bears S.89° 25' E., 0.725 chs. dist. |
| In Sec. 6 | | |
| N. 26° 11' E., | 1.650 chs. | Intersect the line bet. Secs. 5 and 6, from which the cor. of Secs. 5, 6, 7 and 8, bears S. 0°10' W., 1.49 chs. dist. Approximate end of curve. |
| In Sec. 5 | | |
| N. 29° 51' E., | 18.285 chs. | Approximate beginning of curve to the right. |
| N. 35° 34' E., | 5.670 chs. | |
| N. 46° 59' E., | 5.940 chs. | |
| N. 56° 58' E., | 4.050 chs. | |
| N. 64° 45' E., | 4.035 chs. | Approximate end of curve. |
| N. 68° 26' E., | 33.825 chs. | At 16.20 chs., toe of frog for siding to the SW. |

AR002427



| Chains | | |
|---|---|---|
| | | At 17.30 chs., graded road, bears N. and S. |
| | | At 17.605 chs., intersect the N-S center line of Sec. 5, from which the center 1/4 sec. of Sec. 5 bears N. 0°05' W., 3.93 chs. dist. |
| | | At 23.60 chs., toe of frog to NW. Birchwood Railroad Station and adjoining buildings bear along the south side of the railroad 1 ch. dist. |
| | | At 24.85 chs., switch for tracks to the NW. |
| | | At 28.27 chs., intersect the E-W center line of Sec. 5, from which the center 1/4 sec. cor. of Sec. 5 bears WEST 9.925 chs. dist. |
| | | At 28.351 chs., intersect the N-S center line of the SW1/4 NE1/4 of the section, from which the true point for the C-W-E 1/64 sec. cor. of sec. 5 bears S. 0°06' E., 0.03 chs. dist. |
| | | At 28.62 chs., approximate center of steel bridge, 60x18 ft., over Peter's Creek. |
| | | At 33.825 chs., end of course and approximate beginning of curve to the left. |
| | N. 61° 43' E., 5.565 chs. | Intersect N-S center line of NE1/4 Sec. 5, from which C-E 1/16 sec. cor. of Sec. 5 bears S. 0°06' E., 4.685 chs. |
| | N. 44° 33' E., 5.020 chs. | |
| | N. 28° 27' E., 4.720 chs. | At 2.68 chs., intersect the E-W center line of the SE1/4 NE1/4 of the section, from which the C-W-SE-NE 1/256 sec. cor. bears EAST 0.515 chs. dist. |
| | N. 14° 20' E., 4.145 chs. | Approximate end of curve. |
| | N. 9° 25' E., 6.230 chs. | At 3.670 chs., intersect E-W center line of NE1/4 Sec. 5, from which NE 1/16 sec. cor. of Sec. 5 bears WEST, 7.42 chs. dist. |
| | | At 6.23 chs., end of course, approximate beginning of curve to the right. |
| | N. 15° 02' E., 4.665 chs. | |
| | N. 29° 35' E., 5.650 chs. | At 1.904 chs., intersect the N-S center line of the NE1/4 NE1/4 of the section from which the NE-NE 1/64 sec. cor. bears N. 0°06' W., 1.345 chs. dist. |

AR002428



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | At 3.454 chs., intersect the E-W center line of the NE¼ NE¼ of the section from which the NE-NE 1/64 sec. cor. bears WEST 0.765 chs. dist. |
| N. 35° 36' E.,    9.970 chs. | Intersect the line bet. Secs. 5 and 32, on the N. bdy. of T. 15 N., R. 1 W., from which the cor. of secs. 4, 5, 32 and 33 bears EAST, 2.32 chs. dist. |

## TRAVERSE OF POWER TRANSMISSION LINE

In Sec. 18

Beginning at a point on the line bet. secs. 18 and 19, T. 15 N., R. 1 W., from which the W 1/16 sec. cor. of secs. 18 and 19 bears N. 89° 59' W., 2.875 chs. dist.

| | |
|---|---|
| N. 38° 46' E.,    58.423 chs. | At 11.34 chs., intersect the N-S center line of the SE¼ SW¼ of the section at a point from which the SE-SW 1/64 sec. cor. bears N.0°03'W., 1.157 chs. dist. |
| | At 12.824 chs., intersect the E-W center line of the SE¼ SW¼ of the section at a point from which the SE-SW 1/64 sec. cor. bears WEST, 0.93 chs. dist. |
| | At 25.644 chs., intersect the E-W center line of the SW¼ of the sec., at a point from which the C-S 1/16 sec. cor. bears EAST 0.983 chs. dist. |
| | At 27.213 chs., intersect the N-S center line of the section, at a point from which the C-S 1/16 sec. cor. bears S. 0° 03' E., 1.223 chs. dist. |
| | At 38.465 chs., intersect the E-W center line of the NW¼ SE¼ of the section at a point from which the NW-SE 1/64 sec. cor. bears EAST 2.94 chs. dist. |
| | At 43.155 chs., intersect the N-S center line of the NW¼ SE¼ of the section, at a point from which the NW-SE 1/64 sec. cor. bears S. 0°03' E., 3.657 chs. dist. |
| | At 51.288 chs., intersect the E-W center line of the section at a point from which the C-E 1/16 sec. cor. bears EAST 4.902 chs. dist. |
| | At 58.423 chs., end of course. |
| N. 17° 07' E.,    36.031 chs. | At 1.44 chs., intersect the N-S center line of the NE¼ of the section, at a point from which the C-E 1/16 sec. cor. bears S. 0° 05' E., 6.94 chs. dist. |
| | At 4.642 chs., intersect the E-W center line of the SE¼ NE¼ of the section at a point from which the C-S-NE 1/64 sec. cor. bears WEST, 0.945 chs. dist. |

AR002429



T. 15 N., R. 1 W., S.M.

| Chains | |
|---|---|
| | At 15.105 chs., intersect the E-W center line of the NE¼ of the section at a point from which the NE 1/16 sec. cor. bears WEST 4.04 chs. dist. |

At 25.568 chs., intersect the E-W center line of the NE¼ NE¼ of the section, at a point from which the NE-NE 1/64 sec. cor. bears EAST 2.861 chs. dist.

At 35.243 chs., intersect the N-S center line of the NE¼ NE¼ of the section at a point from which the E-E 1/64 sec. cor. of Secs. 7 and 18 bears N. 0°06'W., 0.754 chs. dist.

At 36.031 chs., intersect the line bet. secs. 7 and 18 at a point from which the E-E 1/64 sec. cor. bears WEST 0.234 chs. dist.

---

In Sec. 7

N. 17° 07' E.,    32.907 chs.    At 10.463 chs., intersect the E-W center line of the SE¼ SE¼ of the sec. at a point from which the SE-SE 1/64 sec. cor. bears N. 89° 59' W., 3.36 chs. dist.

At 20.926 chs., intersect the E-W center line of the SE¼ of the sec. at a point from which the S 1/16 sec. cor. of Secs. 7 and 8, bears S. 89°59' E., 3.55 chs. dist.

At 31.389 chs., intersect E-W center line of the NE¼ SE¼ of the sec., at a point from which the N-S 1/64 sec. cor. of secs. 7 and 8 bears S. 89° 58' E., 0.448 chs. dist.

At 32.907 chs., intersect the line bet. secs. 7 and 8 at a point from which the ¼ sec. cor. of Secs. 7 and 8, bears N. 0° 08' W., 8.55 chs. dist.

---

### GENERAL DESCRIPTION

The Birchwood area in the northwestern portion of Township 15 North, Range 1 West, lies about 18 miles northeasterly of Anchorage, Alaska, near Mile Post 22 on the Glenn Highway. This area was sub-divided for the purpose of disposing of most of the public domain land as homesites.

The terrain in this portion of the township is mostly flat to hilly with the drainage northwesterly into the Knik River. The land is densely covered with small size spruce and birch trees with large spruce, birch and cottonwood timber along Peters Creek. The under-growth is mostly alder, willow, berry bushes and small timber. The soil is mostly sandy loam and covered with moss. Fire Creek, a small clear water stream, runs northerly through sections 7 and 18. Peters Creek, a swift glacier fed stream, flows northwesterly through sections 4, 5 and 9.

Birchwood, Alaska, a railroad section station, is located near the center of section 5, with the railroad sidings and storage area extending through the SW¼ of section 5. The Birchwood Airport,

AR002430



235

T. 15 N., R. 1 W., S.M.

| Chains |
|---|

consisting of a main gravel runway and two small runways or parking areas, lies in the W½ of section 5 and SE¼ of section 6. The Alaska Railroad, a telephone line, several power lines and a graded road, extend northerly and northeasterly through the northwestern portion of the Township.

Graded roads and power lines were built in 1953 along some of the subdivisional and section lines in section 18 and the west half of section 8, destroying some of the lot corners and corner accessories. Several homes were built on lots in these sections during that period with bulldozed roads and trails extending from the main graded roads to the homesite lots.

AR002431

Lado A. Kozely
Projects Development Officer
Field Office
Bureau of Indian Affairs
528½ Fifth Avenue
Anchorage, Alaska

July 24, 1963

## E K L U T N A

### Location

The Native village of Eklutna is located on a level plateau of
Knik Arm, northern embayment of Cook Inlet, some 28 miles by railroad or
highway northeast of the City of Anchorage, in approximate latitude 61° 30' 37"N
and longitude 149° 21' 53" West.

### Area Description

Eklutna Flats, as the area between the Knik Arm, Knik River, and
Eklutna Mountain is called, is, according to Miner Bruce ("Alaska", 1899; p.23)

> " * * * the pleasantest portion of Alaska in the summer
> season. Its skies are nearly always bright, as stretching
> far inland in a north-easterly direction it is out of
> the region of fogs. Its shores are pleasant, being well
> wooded and watered."

The soil is largely glacial till composed of a mixture of clay, silt,
sand and gravel. The surface is covered with a prolific vegetation. Tall birches,
cottonwood trees and white spruce, with stretches of scrub plants and grasses,
hide the village from the eye of the traveler passing through the area on the
Glenn Highway, from Anchorage to Palmer. Only a modest sign on the entrance
of a dirt road branching west from the highway, some 80 chains north of the
Eklutna River bridge, calling the passerby's attention to the Eklutna Russian
Orthodox church, indicates the vicinity of this Native village.

Once you leave the highway, the road will take you through a heavily
timbered patch of land, which changes color with various flower seasons -
purple with iris, blue with lupine, magenta with the shooting star and chocolate
lily. Then, suddenly, on your left, a green clearance appears, with a white
church building in the middle and brightly painted boxes above the tombs.
Across the church ground, on your right, is the house occupied by Mike Alex
who is the church's guardian and lay preacher, and was for many years the
village's chief. These two buildings, and the community hall, built recently,
are the only standard looking housing in the village.

AR002438

- 2 -

## Climatic conditions

Eklutna has an even climate, its mean temperature for January being 10.1 degrees; for July, 56.8° F. The latest date on which frost has ever occurred in the spring was in the eraly days of June, and the earliest in the fall was towards the end of August. The moderating influence of large bodies of water in its vicinity protects the valley from extremes of temperatures, and gives it an average frost-free growing season of over 100 days. In general, the climate of Eklutna Flats is agreable, and favorable to agriculture.

| Temperature | | | | | Record | | Precipitation | |
|------|------|------------|------|-------------|------|------|-------|----------|
| Max. | Min. | Average | | Annual Mean | Low | High | Annual | Snowfall |
| | | January Max. Mean | July Min. Mean | | | | | |
| 86 | -38 | 20.4  5.5 | 65.4  49.1 | 35.3 | 38 | 86 | 14.29 | 60.7 |

## Historical background

The group of people who constitute the present population of the Native Village of Eklutna belong to the Tnaina tribe of the Athapascans' stock. Frederick Schwatka, in his book "A Summer in Alaska" (1894), calls them Thltc-heesh Indians or Sticks, but this name does not appear in the House Report No. 2503, which lists the Natives inhabiting the Upper Inlet area simply as the Tanaina.

Most of the present villagers of Eklutna are descendants of the Tanaina Indians who earlier lived in the now abandoned native villages of Knik, near the mouth of the Knik River, Nitsk, and Zdluiat, on the Knik Arm. It is not known when exactly did they settle in Eklutna.

The present village probably is'nt older than some 40 years. Namely, in 1923, only, the Russian Orthodox church was moved to its present location from Knik, and two years later,-as the villagers told me,- the first school was built in Eklutna.

On December 5, 1927, by Executive Order No. 4778, a tract of land surrounding the said church and school, containing 1,365.15 acres, located in what is now known as Township 16 N.R., was "reserved for the use of the Bureau of Education for educational purposes". Had the Bureau of Indian Affairs exercised its jurisdiction in Alaska, at that time, the Executive Order #4778 would have probably redd, instead, "reserved for the use of the U.S. Bureau of Indian Affairs for its general purposes", for, as William Hamilton wrote, the U. S. Bureau of Education performed the functions, for the Alascan Natives, which are are at the present time performed by the Bureau of Indian Affairs:

> "For the native Alaskans the U. S. Bureau of Education provides teachers, physicians, and nurse...

AR002439

- 3 -

schools, hospitals and orphanages, relieves destitution,
<u>fosters trade, organizes cooperative business enterprises</u> * * *."
(Cfr.: "Uncle Sam's Attic")

On October 30, 1936, a Native vocational school was established in
Eklutna. On the same date, 329,000.00 acres (see House Report No. 2503, p. 1554)
were withdrawn from the public domain "with the view of having them later
reserved and declared an Indian reservation".

By Secretarial Order of December 18, 1942, the above acreage was reduced
to 7,527.26 acres.

However, through purchases, the original reserve of 1,365.15 was
increased, by 165.49 acres on January 22, 1941, and by 143.10 acres on July 28,
1936 (House Report No. 2503, p. 1389).

A certain modification of the text of Executive Order No. 4778 was
effected by Executive Order No. 8734 of June 8, 1938.

By Public Land Order No. 2427, of July 3, 1961, all above listed laws
were revoked. In other words, the lands withdrawn from the public domain, in
Eklutna Flats, by Executive Order No. 4778 of 1927 (as modified by E.O. No.8734
of 1938) and by the Interior Department's Secretarial Orders of October 30, 1936
(as modified by the Order of December 18, 1942), were restored to the public
domain.

However, by the same Order:

" Subject to valid existing rights,
the following-described lands, which are portion of the lands
released from withdrawal by this order, are hereby withdrawn
from all forms of appropriation under the public land laws,
including the mining and mineral leasing laws, and
<u>reserved under jurisdiction of the Bureau of Indian Affairs
for use in connection with administration of Native affairs
in the vicinity of Eklutna</u> * * *
containing approximately 1,819 acres."

As the latter order reads, the Eklutna reserve is cut into two parts,
because the Order failed to make any disposition of that portion of the NW quarter
of the Section 25 which had not been reserved by Public Land Order No. 2250 of
February 3, 1961, for use by the Alaska Railroad; the portion reserved for the A.R.
lies in the triangle delimited by the western boundary of the Section 25, on the
westerly side; by the left bank of Eklutna River, on the NE side; and by the
railroad line, on the SE side.

It would be of great significance for the Natives of Eklutna to correct
this error, by including the remaining portion of the NW quarter of Section 25
into the reserve, <u>because it lies on the two banks of the Eklutna river which</u>
<u>offer themselves as an ideal site for tourist cabins and camping site.</u>

AR002440

- 4 -

Population

Exact population trends of the Eklutna group of Tanaina Indians cannot be
determined from the population count reports available at this office.

There are, of course, the reports of the U. S. Censuses of Population. But,
according to the rules, under which the inhabitants of a place are counted by
the enumerators of the U. S. Bureau of the Census, "each person was counted as
an inhabitant of his usual place of residence or usual place of abode, which is
generally construed to mean the place where he lives and sleeps most of the time"
(see U.S. Census of Population 1960, Alaska, p. V). Consequently, students were
considered residents of the communities in which they were residing while attend-
ing college or other boarding school.

Thus, the U.S. Census of Population 1939 shows 159 inhabitants of Eklutna.
This figure can be explained by the fact that, in 1939, the Eklutna Vocational
School of the Alaska Native Service still operated there (it was to be moved to
Seward sometime after 1946). The exact number of the permanent residents of the
village, in 1939, could be determined only if we had at our disposal the enrol-
ment data of the said school (including the instructors).

On the other hand, an Indian tribe or, in Alaska, a Native Village, will
rightfully show the number of the persons on its membership rolls as its popu-
lation. "Federal Indian Law", a publication of the Office of the Solicitor (1958),
contains several quotations which corroborate this statement:

> "The courts have recognized generally that in the absence
> of express legislation by Congress to the contrary,
> an Indian tribe has authority to determine for tribal
> purposes questions of its own membership." (p.414)

> "The Interior Department expressed its view in these terms:
> * * * The original power to determine membership,
> including the regulation of membership by adoption,
> nevertheless remains with the tribe." (p. 420)

Pending the formal organization of the Eklutna group of the Tanaina Indians
and adoption of a written constitution, the Native Village of Eklutna abides by
its unwritten constitution, according to which are deemed as being members of
the Village all descendants of the original Indian residents upon the Eklutna
Reserve on the date when the latter was created (in 1927), regardless whether
they presently live upon the reservation, provided that they have not abandoned
the intention to return to their residence on the reservation. In addition,
are considered as Eklutna group members all those persons whom the group,
speaking through the general council of all of its adult members, admitted as
members by permitting them to reside on the reservation at any time following
the creation of the same. The written constitution of the Village which is being
drafted at the present will not recognize as members those who no longer take
active part in the Village's affairs, unless they are exempt from such obligation
by a unanimous resolution of the adult membership of the group (the party con-
cerned being restricted from voting on the issue).

AR002441

- 5 -

Rather than tracing the population of Eklutna back to 1939, we shall consider the following figures as representing the accurate movement of population:

```
1944  ...  44 (see House Report No. 2503, p. 1389)
1950  ...  53 ( U. S. Census of Population 1950 )
1960  ...  50 ( U. S. Census of Population 1960 )
```

No reliable figure of the present population is available. On the day when the undersigned visited the Village, on July 23, 1963, most of the villagers were away, in their fishing camps. Earlier, Mr. Mike Alex gave me an estimated figure of 49; this figure will be checked when a meeting will be held, this coming Fall, to consider the adoption of a Village Constitution and By-Laws.

### General characteristics of the people of Eklutna

Those with whom the undersigned had the opportunity to talk, on two occasions, made the appearance of youthfulness, seriousness of purpose, and soberty. However, some weight may be given to the observations made by other more knowledgeable visitors to this Village.

U. S. Senator Gruening, in addressing the Alaska Native Brotherhood at its 31st annual convention, had this to say:

> " A large part of the revenue received from fishing and labor in the canneries is dissipated in excessive consumption of liquor. * * * Why is it that so many native communities are poorly housed, and that their inhabitants are often poorly clothed and poorly nourished?" * * There can be no real progress of the native people unless they grapple squarely with this problem."
> B. W. Denison, "Alaska Today", 1949, p. 260.

Miner Bruce, in his book "Alaska, its History and Resources" (1899), already pointed to the problem of excessive liquor consumption by the Natives:

> " From the earliest settlement of Russian America down through the years since the purchase by the United States, the liquor question has overshadowed every other, and the sturdy miners and those following other pursuits, and especially the missionary people, have been in constant anxiety as to the effect unexecuted liquor laws would have upon the native population."

> " The aborigines of any country are quick to adopt the vices of the white man, but much slower in assuming his virtues. This is not to be wondered at, as usually the whites with whom they first come in contact are not of a class whose virtues are conspicuous, and the unsuspecting native has the smooth paths of vice pointed out more often than the steep and rugged road of virtue. The aborigines' love of intoxicants is great, and he will do almost anything to procure them." (p.109)

AR002442

- 6 -

## Local government

The Natives of Eklutna have no formal organization, no written consti-
tution, no formal government.

For many years, Mr. Mike Alex, guardian of the Russian Orthodox church
in Eklutna was their recognized leader. But, as the village had no written
rules by which to abide, and it failed to take the opportunity of organizing
itself under the Alaska Act of May, 1, 1936, the village chief lacked the
authority in imposing upon the villagers the decisions which he deemed to be made
for their well-being.

On May 20, 1962, upon the initiative of a young high-school graduate,
Mr. Peter Ezi, whose grand-parents moved to Eklutna from Knik, in the early 1920's,
a Village Committee was appointed by a group of some 20 adults residing in the
village, assembled in a general meeting. This Committee was charged with the
drafting of a Constitution and of the By-Laws, in preparation of the organization
of the Native group of Eklutna as a Federal corporation, under the Alaska Act
(that is, the Indian Reorganization Act, as amended).

The said committee is constituted as follows:

> Peter Ezi, Jr., president       Other members:
> Oscar Munson, vice-president       Leo Stephan
> Alberta Stephan, secretary       George Ondola
> Roy Alex, treasurer       Mike Theodore
> Benjamin Ezi, marshall       Tom Nikoli

The absence from this committee of the previous village chief, Mike Alex,
is conspicuous. Mr. Mike Alex is still regarded by many as the local leader;
efforts are being made to unite the whole community behind the plan which will
provide the group with a formal organization and a recognized local government.

## Local resources and plans for their utilization

An inventory of the locally available resources, and a plan for their
efficient and profitable utilization can be made only once that all adult
members of the village community return to Eklutna, sometime in the Fall. They
are at the present time scattered all over the country, mostly in the pursuit
of their main occupation, fishing.

However, through my conversations with Mike Alex and Peter Ezi, Jr.,
the following facts seem to be close to reality:

(1) Although the maps of the Eklutna Reserve describe the Eklutna Flats as a
"non-agricultural land", one could hardly believe that a land could rightly be
so designated, when we bear in mind the fine results obtained by the Eklutna
Vocational School. If it is correct what I was told by Mr. Howard Burkher,
acting Area Field Representative in Anchorage, -that the school moved to Seward
solely because the school buildings became too obsolete and were in bad need of
repair and improvement,- it was surely not the lack of good soil that dictated
such move.

AR002443

- 7 -

In view of the distances from Mount Edgecumbe to places in the Bethel area and the Aleutian chain, and if a geographical decentralization of the present educational institution at Mt. Edgecumbe were contemplated, Eklutna might be reconsidered as a possible site for an industrial or vocational school.

The following factors would seem to favor this location:
a/ favorable climate (the fact that the actual growing season in Eklutna Flats is about 112 days);
b/ relatively good soils ( though, for continuous cultivation, application of fertilizers would be required; however, this circumstance might lead, some day, to establishing a fertilizing plant here, using the fish waste as raw material);
c/ vicinity of the City of Anchorage and its training and educational facilities;
d/ better air communication and transportation;
e/ favorable road connections with the Fairbanks, Copper Valley, and Kenai areas;
f/ closeness of commercial fishing grounds;
g/ easier access to on-the-job training centers and employment opportunities, especially during the Summer vacations; and
h/ the fact that an 1,819 acres reserve is already set aside for use by the BIA.

But, in case that the idea of creating a fullfledged industrial school in Eklutna lost its support altogether, Eklutna might still be considered as a site for either a fisheries research institute, or an agricultural school, or both. Native students from the villages on both coasts of the Alaska peninsula could be trained here in commercial utilization of shrimp, crab, scallops, sea ursins, and other sea animals.

Although Alaska may never admit of any broad experiments in agriculture, careful analysis of the observations made after almost 20 years of record, in the nearby Matanuska Valley, gives some hopeful basis for the thought that many native communities could improve their economic condition by engaging in large-scale gardening. The City of Anchorage alone could absorb all production of a gardening institution in Eklutna.

Past experiments have indicated that potatoes, early and late cabbage, cauliflower, parsnips, celery, rutabagas, turnips, carrots, beets, chard, peas, radishes, leaf and lead lettuce, string beans, rhubarb, onions, kohlrabi, and spinach could be produced successfully. Experiments in raising various kinds of berries and mushrooms could be added to the past record.

But, most important, the students could learn the conservation, canning, and packaging of the vegetables and berries, as well as making of juices from berries which abound in the area.

Last, if the above idea finds no response, efforts will be made to induce the Natives of Eklutna to produce, and sell on open stands in the City of Anchorage, those kinds of vegetables which could be produced without too much effort and investment and yet be offered for sale at competitive prices (on the "Direct from the farm to consumers" basis).

(2) A woodworking shop, for production of doors, window frames, and home finishing items.

AR002444

- 8 -

(3) Tannery establishment might be another possibility for Eklutna. Such a business is definitely needed in Anchorage, and the 24 miles distance from Eklutna to the city limits of Anchorage would represent no obstacles. On the contrary, Eklutna would be closer to the raw materials as it is situated on the main artery leading from Anchorage toward Fairbanks and the Copper River Valley.

(4) Outdoor amusement park, or kind of a "story land", stressing the particular traditions and culture of Athabascans, might prove an attractive spot for the residents of Anchorage and the tourists from "outside" places.

(5) Cabin sites and camping grounds, within the easy reach of those city residents who cannot afford to go to distant places, on weekends, to enjoy the pleasures of sport fishing and life in the nature, might find customers especially among the government employees' families of Anchorage. Such sites exist all along the banks of the Eklutna River which empties into the Knik Arm not far from the village.

　　　　As we found at the conclusion of this report, a correction was made, on October 13, 1961, of the Public Land Order mentioned on page 3 of this report, to the effect of including explicitly in the Eklutna Reserve the two banks of the Eklutna River NW from the Glenn Highway, up to the point where the Alaska Railroad's reserve reaches the river from the southwest.

　　　　It is believed that Eklutna Native Village will awake from its present lethargy once that its organization as a Federal corporation, under the Alaska Act of 1936, is completed, and a formal government is constituted. If it takes advantage of its land reserve, of its resources, and of its extremely favorable geographical location, many of its members who previously left the village may return to live therein permanently and also attract newcomers looking for better opportunities offered by the vicinity of a big city.

Lado A. Kozely

(Lado A. Kozely)

AR002445

copy



IN REPLY REFER TO:



# UNITED STATES
# DEPARTMENT OF THE INTERIOR
### BUREAU OF INDIAN AFFAIRS
Juneau Area Office
Box 3-8000
Juneau, Alaska 99801

May 7, 1971

Memorandum

To:       Commissioner, Bureau of Indian Affairs
          Attn:  Tribal Operations

From:     Area Director, Juneau Area Office

Subject:  Eklutna Reservation Establishment

Our Anchorage Agency supplies the following information as a justifi-
cation for the establishment of a Native reservation at Eklutna. The
establishment of a reservation would change the land status of this
area. This area has a great potential for development that would be
tourist oriented along the main and only north bound highway out of
Anchorage to the remainder of the State.

The acreage along the Alaska Railroad has many advantages for commercial
developments that cannot be located in Anchorage because of space limi-
tations. With the development possibilities available, and with a
reservation income from them, the Native people as a whole would derive
benefits which are definitely needed. Individual incomes could also be
generated from employment furnished by these enterprises. The combination
of these moneys would help to furnish a self-sufficiency that does not now
exist for the people of Eklutna.

We further believe that the establishment of a reservation for these
people would create a much greater cohesiveness in their tribe. The
Village of Eklutna has several tourist attractions in existence now,
such as the community hall, cemetery, etc. There are known business
enterprises that would move to this location if the land status was
changed to benefit the people of Eklutna. The general economic develop-
ment picture in the Anchorage Area is to get further out which is a
healthy condition for the Eklutna Area. Light industry has jumped over
the Eklutna Area and established in Palmer. Some of this could have been
located at Eklutna had their land status been favorable to the village.

  cc:  Delores Rollier
       Realty Specialist

AR002446

The land embraced in the reservation proposal consists of the following:

T. 16 N. R. 1 E., Sec. 19, Lots 5 & 6, E½SW¼, W½SE¼NW¼, W½NW¼SE¼, S½SE¼, Sec. 30, Lots 1, 2 and 3, E½NW¼, E½SW¼, and E½. T. 16 N., R. 1 W., Sec. 23, Lots 1 and 2, that portion of the SW¼SE¼ lying northwesterly of the Eklutna River, and that portion of the E½SE¼ lying northeasterly of the Eklutna River; Sec. 24, lots 3, 4 and 7, SW¼NE¼, W½SE¼NW¼, E½NE¼SE¼NW¼, W½SW¼. NW¼NE¼SW¼, S½SE¼; and that portion of the NW¼SE¼ lying southeast of the Alaska Railroad Row; Sec. 25, E½ and all of the NW¼ except that portion lying northwesterly of the Alaska Railroad and southwesterly of the Eklutna River, containing approximately 1,967.88 acres

Twp. 16 N., R. 1 E., Seward Meridian, Lot 2 of Sec. 18, containing approximately 9.00 acres.

N½NE¼NE¼NW¼ and W½NE¼NW¼ of Section 19, containing 25 acres.

Lots 1 and 2 of Sec. 19, less the South 990 feet of both lots, containing 5.49 acres.

Twp. 16, N., R. 1 W., Seward Meridian, Lot 6 of Sec. 24, containing 18.13 acres.

W½NE¼SE¼NW¼, SE¼SE¼NW¼ and NE¼NE¼SW¼ of Section 24, containing 25.00 acres.

That portion of N½NW¼SE¼ of Sec. 24 lying southeasterly of the Alaska Railroad right-of-way, containing 5.00 acres.

Lot 1 of Section 24, less the South half of Lot 1 (S½NW¼NE¼), containing 19.97 acres.


Area Director



**MEMORANDUM**

TO:      George T. Skibine, Acting Chairman

THROUGH:      Penny Coleman, Acting General Counsel
Michael Gross, Associate General Counsel for General Law

CC:      Elaine Trimble-Saiz, Director, Contracts Division

FROM:      Jeffrey Nelson, Senior Attorney

DATE:      January 7, 2010

RE:      Indian Lands -- Iowa Tribe of Oklahoma; Whitecloud Allotment

---

This Indian lands opinion is prepared in response to the submission of a proposed management contract to the National Indian Gaming Commission ("NIGC") by the Iowa Tribe of Oklahoma ("the Tribe"). Pursuant to the Indian Gaming Regulatory Act ("IGRA"), the NIGC's regulations, and agency policy, the NIGC Chairman will not entertain approval of a proposed management contract unless the Tribe establishes that the gaming activities will be conducted on Indian lands eligible for gaming under IGRA. As further set forth in this document, the Tribe's proposed gaming site constitutes Indian lands upon which the Tribe may conduct gaming under IGRA.

## I. Background

The Tribe's proposed casino complex—including a hotel, administration building, special event center, and several parking lots—is planned for construction on approximately 170 acres of fee and trust land in Lincoln County, Oklahoma, less than 30 miles northwest of Oklahoma City and approximately five miles west of Chandler at U.S. Interstate 44 and State Highway 66. Currently, the Tribe plans to build the casino on 65 acres of trust land known as Parcel 58-B of the Julia Whitecloud Allotment. There were once plans to use both Parcels 58-B and the adjacent Parcel 58-A (15 acres) for the casino development, but the Tribe has not yet been able to obtain Bureau of Indian Affairs ("BIA") approval of a necessary transaction pertaining to Parcel 58-A. Therefore, the Tribe has revised the proposed scope of work in order to move forward with a casino to be constructed entirely within the 65-acre Parcel 58-B.

Although the current gaming plans are limited to Parcel 58-B, this memorandum will analyze the lands status of both Whitecloud Allotment parcels in anticipation that the Tribe may wish to expand its gaming activities onto both parcels if the BIA approves the necessary transaction for development of Parcel 58-A.

The legal land descriptions of the two trust parcels are:

**Parcel 58-A:**
W/2 E/2 W/2 NE/4 NW/4 and W/2 W/2 NE/4 NW/4 of Sec 15-14N-3EIM, Lincoln County, Oklahoma, consisting of 15 acres more or less.

**Parcel 58-B:**
E/2 E/2 W/2 NE/4 NW/4 and E/2 NE/4 NW/4 and SE/4 NW/4 of Sec 15-14N-3EIM, Lincoln County, Oklahoma, consisting of 65 acres more or less.

## II. History of the Site

On August 15, 1883, President Chester A. Arthur created a reservation for the Iowa Tribe in the Indian Territory (now Oklahoma). The full text of the executive order reads:

It is hereby ordered that the following-described tract of country in the Indian Territory, viz: Commencing at the point where the Deep Fork of the Canadian River intersects the west boundary of the Sac and Fox Reservation; thence north along said west boundary to the south bank of the Cimarron River; thence up said Cimarron River to the Indian meridian; thence south along said Indian meridian to the Deep Fork of the Canadian River; thence down said Deep Fork to the place of beginning, be, and the same hereby is, set apart for the permanent use and occupation of the Iowa and such other Indians as the Secretary of the Interior may see fit to locate thereon.

CHESTER A. ARTHUR.

*Reprinted in* 1 Indian Affairs: Laws and Treaties 843-44 (2d ed. Charles J. Kappler ed., Gov't Printing Office 1904).

This now-former reservation is depicted on a Department of the Interior map titled "Indian Territory of Oklahoma," Bureau of Land Management (2d Rev. June 15, 2005).

On February 13, 1891, Congress enacted a statute, 26 Stat. 749, to ratify an 1890 agreement by which the Iowa Tribe agreed to "relinquish to the United States all their right, title, claim and interest in and to and over" the Iowa Reservation, provided that

2

AR002455

"[e]ach and every member of said Iowa Tribe of Indians shall be entitled to select and locate upon said Reservation or tract of Country eighty acres of land which shall be allotted to such Indian in severalty." *Id.* at 754. The statute further stated:

> Upon the approval of the allotments provided for herein by the Secretary of the Interior, he shall cause patents to issue therefore in the name of the allottees, which patents shall be of the legal effect and declare that the United States does and will hold the land thus allotted for the period of twenty-five years in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or in case of his or her decease, of his or her heirs or devisees according to the laws of the state or territory where such land is located, and that at the expiration of said period, the United States will convey the same by patent to said Indian or his heirs or devisees as aforesaid in fee, discharged of said trust and free of all incumbrance whatsoever.

*Id.* at 755.

In September 1891, Julia Whitecloud, a member of the Iowa Tribe, was granted Allotment 58, comprising 80 acres. The NIGC has not been provided with a copy of the 1891 patent, but this information is recorded in a BIA allotment record on file with the NIGC. Furthermore, the BIA has confirmed that the Whitecloud Allotment is within the former historic reservation boundaries of the Iowa Tribe of Oklahoma. *See* Letter from Dan Deerinwater, BIA Southern Plains Regional Director, to Penny Coleman, NIGC Acting General Counsel (June 22, 2009).

Notwithstanding the fact that Congress originally designated a 25-year trust period for Iowa Reservation allotments, the Whitecloud Allotment was subject to a number of trust period extensions and never lost its trust status. *See* Extension of the Trust or Restricted Status of Certain Indian Lands, 25 C.F.R. ch. I App. (2007); E.O. 2432 (Aug. 1, 1916), *reprinted in* 4 Indian Affairs: Laws and Treaties 1041 (Charles J. Kappler ed., Gov't Printing Office 1929) (10-year extension to 1926; E.O. 4435 (Apr. 29, 1926), *cited in* 25 C.F.R. ch. I App. (2007) (10-year extension to 1936); E.O. 7206 (Oct. 14, 1935), *reprinted in* 5 Indian Affairs: Laws and Treaties 678 (Charles J. Kappler ed., Gov't Printing Office 1941) (10-year extension to 1946); E.O. 9659 (Nov. 21, 1945), *reprinted in* 7 Indian Affairs: Laws and Treaties 1458 (Charles J. Kappler ed., Gov't Printing Office) (25-year extension to 1971); 33 Fed. Reg. 15,067 (Oct. 9, 1968) (5-year extension to 1976); 38 Fed. Reg. 34,463 (Dec. 14, 1973) (5-year extension to 1981); 43 Fed. Reg. 58,369 (Dec. 14, 1978) (5-year extension to 1986); 48 Fed. Reg. 34,026 (July 27, 1983) (5-year extension to 1991); 101 Pub. L. 301 § 3(a) (May 24, 1990) *codified at* 25 U.S.C. § 478-1 (applying the indefinite trust period extension in the Indian Reorganization Act (25 U.S.C. § 462) to all trust parcels).

Julia Whitecloud died in 1942 (Probate #45143-42). Her interest in Allotment 58 was divided between five children and three grandchildren. On February 6, 1963, the

3

AR002456

Department of the Interior approved two trust deeds (on file with NIGC) that partitioned Allotment 58 into Parcels 58-A and 58-B.

### A. Subsequent History of Parcel 58-A

By means of the 1963 partition, the beneficial interest in Parcel 58-A was consolidated and transferred to Louis Kihega, one of Julia Whitecloud's sons. The trust deed for Parcel 58-A (copy on file) identifies the grantors and the grantee as "Indians of the Iowa Reservation." A BIA tract history report for Parcel 58-A identifies Louis Kihega and nine of the eleven grantors as members of the Iowa Tribe. This report identifies the other two grantors as members of the Otoe-Missouria Tribe.

According to notations on the BIA tract history report, Louis Kihega married Eunice Whitehorn, a member of the Otoe-Missouria Tribe. In 1974, the interest in Parcel 58-A conveyed equally to Louis's wife and two daughters, all three of whom were members of the Otoe-Missouria Tribe. In 1981, the 1/3 interest held by Louis' wife conveyed to their two daughters, who already held 1/3 interests, giving a 1/2 interest to their daughter Lois Kihega Moon and a 1/2 interest to their daughter Leora Marlene Kihega Echohawk. In 2003, the 1/2 interest held by Lois Kihega Moon conveyed to her son, James Moon Jr., a member of the Iowa Tribe.

The beneficial interest in Parcel 58-A currently is held in equal parts by Leora Marlene Kihega Echohawk, a member of the Otoe-Missouria Tribe, and James Moon Jr., a member of the Iowa Tribe. The Iowa Tribe plans to buy the undivided 1/2 interest currently held by James Moon through trust-to-trust transfer, but it is this transaction that the BIA has yet to approve. The current status is that on June 8, 2007, James Moon executed a trust deed (copy on file) to convey his interest in Parcel 58-A to the United States in trust for the Iowa Tribe. That trust deed has been submitted to the BIA, but the BIA has not yet taken final agency action to accept it into trust. If the BIA accepts the 1/2 interest into trust, the two land owners would be the Iowa Tribe and Ms. Echohawk. If that happens, the Iowa Tribe and Echohawk plan to enter a 25-year (renewable for another 25-year term) business lease with an enterprise arm of the Tribe (unexecuted draft on file). The parties are aware that the business lease also would have to be approved by the BIA before the Tribe's enterprise body could take possession of the land and expand the gaming facility thereon.

### B. Subsequent History of Parcel 58-B

When Allotment 58 was partitioned in 1963, Louis Kihega and his wife transferred their inherited interests in Parcel 58-B to seven individuals, all of whom are identified as "Indians of the Iowa Reservation" on the trust deed (copy on file). A BIA tract history report for Parcel 58-B identifies Louis Kihega and six of the seven grantees as members of the Iowa Tribe. The other grantee, Frances Little Crow, is identified as a member of the Otoe-Missouria Tribe. Since 1963, the interests in Parcel 58-B continued to fractionate, until more than 100 individuals owned undivided shares of the trust estate. These individuals were members of eleven different tribes, which included the Iowa

4

AR002457

Tribe, but also included the Otoe-Missouria Tribe, the Ponca Tribe, the Osage Tribe, the Kiowa Tribe, the Pawnee Nation, the Citizen Potawatomi Nation, the Chickasaw Nation, the Choctaw Nation, the Creek Nation, and the Sac & Fox Nation of Missouri.

In order to advance its goals for this site, the Iowa Tribe offered to buy the fractionated interests of the landowners, and from 2006 to 2008, the Department of the Interior approved 65 deeds to restricted Indian land whereby the individual owners of Parcel 58-B conveyed their trust interests to the United States in trust for the Iowa Tribe, giving the Iowa Tribe more than an 80% ownership interest. The tribal memberships of the 65 grantors are as follows: 26 grantors are members of the Otoe-Missouria Tribe; 23 grantors are members of the Iowa Tribe; 10 grantors are members of the Pawnee Tribe; three grantors are members of the Kiowa Tribe; two grantors are members of the Osage Nation; and one grantor is a member of the Muscogee (Creek) Nation.

The Iowa Tribe has entered a 25-year business lease with its casino enterprise body, renewable for another 25-year term (copy on file). Although there are other landowners, the Tribe is the sole lessor. This is allowed by 25 U.S.C. § 2218(b), which establishes the applicable percentage of owners who must consent to an allotment lease, depending on how many owners there are. The BIA's records indicate that there are still more than 20 owners of the allotment parcel, which means that only the owner(s) of a majority of the interests must consent. 25 U.S.C. § 2218(b)(1)(D). Because the Tribe owns more than 80% of the interests, its consent is the only consent required. Accordingly, the BIA approved the lease in December 2008.

## III.  Applicable Law

IGRA states that an Indian tribe may engage in gaming under IGRA only on "Indian lands" that are "within such tribe's jurisdiction." 25 U.S.C. § 2710(b)(1), (d)(1). Further, if the land upon which gaming is contemplated is not within the limits of a current Indian reservation, a tribe may conduct gaming only if it exercises "governmental power" over those lands. 25 U.S.C. § 2703(4)(B); 25 C.F.R. § 502.12(b). IGRA defines *Indian lands* as:

(A) all lands within the limits of any Indian reservation; and
(B) any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power.

25 U.S.C. § 2703(4). The NIGC's regulations further clarify the definition by providing that:

*Indian lands* means:
(a) Land within the limits of an Indian reservation; or
(b) Land over which an Indian tribe exercises governmental power and that is either—

5

AR002458

> (1) Held in trust by the United States for the benefit of any Indian tribe or individual; or
>
> (2) Held by an Indian tribe or individual subject to restriction by the United States against alienation.

25 C.F.R. § 502.12.

Finally, IGRA prohibits gaming on Indian lands accepted by the Secretary of the Interior into trust for the benefit of an Indian tribe after October 17, 1988, unless the lands fall within certain statutory exceptions. *See* 25 U.S.C. § 2719.

## IV. Analysis

As discussed below, both parcels qualify as Indian lands upon which the Iowa Tribe may conduct gaming because they are held in trust for individual Indians and the Iowa Tribe; the Iowa Tribe has had long-standing legal jurisdiction over these parcels; the Iowa Tribe exercises present governmental power over these parcels; and to the extent that Section 2719 applies to the recent trust-to-trust conveyances, the parcels qualify for the Oklahoma former reservation exception.

### A. Trust Status

The proposed gaming sites are "lands title to which is . . . held in trust by the United States for the benefit of any Indian tribe or individual . . . ." 25 U.S.C. § 2703(4)(B). As detailed in Section II above, title to this allotment was held in trust by the United States for the benefit of Julia Whitecloud and her heirs from 1891 until 2006-2008, when a majority of the undivided shares in Parcel 58-B were conveyed to the United States in trust for the Iowa Tribe. The remainder of interests (< 20%), continues to be held in trust for individual Whitecloud heirs. Currently, Parcel 58-A continues to be held in trust for two Whitecloud heirs, but the Iowa Tribe has requested the BIA to approve a trust conveyance whereby the United States would hold 50% of the undivided shares in trust for the Iowa Tribe. Because the definition of *Indian lands* includes lands that are held in trust both for tribes and individuals, the parcels currently qualify under this part of the analysis and will continue to qualify should the BIA approve the Parcel 58-A trust conveyance to the Tribe.

### B. Legal Jurisdiction and Exercise of Governmental Power

For a tribe to be able to conduct gaming, the land on which it proposes to game must be land over which the tribe possesses jurisdiction and exercises governmental power. 25 U.S.C. §§ 2703(4)(B), 2710(b)(1), (d)(1).

#### 1. Jurisdiction

Tribal jurisdiction is a threshold requirement to the exercise of governmental power. *See e.g., Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 701-703 (1st

6

AR002459

Cir. 1994), *cert. denied*, 513 U.S. 919 (1994), *superseded by statute as stated in Narragansett Indian Tribe v. National Indian Gaming Commission*, 158 F.3d 1335 (D.C. Cir. 1998) ("In addition to having jurisdiction, a tribe must exercise governmental power in order to trigger [IGRA]"); *Miami Tribe of Oklahoma v. United States*, 5 F. Supp. 2d 1213, 1217-18 (D. Kan. 1998) (*Miami II*) (a tribe must have jurisdiction in order to be able to exercise governmental power); *Miami Tribe of Oklahoma v. United States*, 927 F. Supp. 1419, 1423 (D. Kan. 1996) (*Miami I*) ("the NIGC implicitly decided that in order to exercise governmental power for purposes of 25 U.S.C. § 2703(4), a tribe must first have jurisdiction over the land"); *State ex. rel. Graves v. United States*, 86 F. Supp. 2d 1094 (D. Kan. 2000), *aff'd and remanded sub nom.*, *Kansas v. United States*, 249 F.3d 1213 (10th Cir. 2001). This interpretation is consistent with IGRA's language limiting the applicability of its key provisions to "[a]ny Indian tribe having jurisdiction over Indian lands," or to "Indian lands within such tribe's jurisdiction." 25 U.S.C. §§ 2710(d)(3)(A), 2710(b)(1)); *see also Narragansett Indian Tribe*, 19 F.3d at 701-703. Therefore, whether the Tribe possesses jurisdiction over the trust parcels is a threshold question.

Generally speaking, an Indian tribe possess jurisdiction over land that the tribe inhabits if the land qualifies as "Indian country." *See Alaska v. Native Village of Venetie Tribal Gov't,* 522 U.S. 520, 527 n.1 (1998); *United Keetoowah Band of Cherokee Indians of Oklahoma v. United States Dept. of Housing and Urban Development*, No. 08-7025, slip op. at 11 n.5 (10th Cir. June 5, 2009) ("[A]s a general matter, Indian tribes exercise court jurisdiction over Indian country—reservations, dependent Indian communities, and Indian allotments."). Congress defined the term *Indian country* as: "(a) all land within the limits of any Indian reservation . . . , (b) all dependent Indian communities . . . , and (c) all Indian allotments, the Indian titles to which have not been extinguished . . . ." 18 U.S.C. § 1151. Although this definition applies directly only to federal criminal jurisdiction, the courts have also generally applied this definition to questions of civil jurisdiction. *Venetie,* 522 U.S. at 527.

The subject parcels are Indian country, because they are "Indian allotments, the Indian titles to which have not been extinguished." 18 U.S.C. § 1151(c). Still, the question remains whether the Iowa Tribe, in particular, is the tribe that "inhabits" this Indian country and thereby has jurisdiction over it. As detailed above in Section II, not every Whitecloud heir who owns an undivided share of the trust parcels is a member of the Iowa Tribe. In fact, 50% of the undivided interests in Parcel 58-A currently is held by a member of the Otoe-Missouria Tribe, and the parties have no plans to change that aspect of the ownership status—rather, the Tribe is planning to enter a lease with her. With regard to Parcel 58-B, the Iowa Tribe itself now holds more than 80% of the undivided interests in the land, but the minority interests are held by members of multiple tribes.

We are not aware of any federal case law that establishes whether a tribe maintains exclusive tribal jurisdiction over a former-reservation allotment granted to a member of that tribe when ownership of the allotment is later inherited in part by members of other tribes. After consulting with the DOI, the opinion of this office is that a tribe that had a reservation subject to allotment maintains exclusive tribal jurisdiction

AR002460

over trust or restricted fee allotments granted to its members within its reservation unless the United States transfers jurisdiction over the land to another tribe through legislation or by trust deed. An inquiry into a tribe's jurisdiction focuses principally on congressional intent and purpose. *Kansas v. United States*, 249 F.3d 1213, 1229 (10th Cir. 2001). Congress has the power to create or eliminate tribal rights, and in the absence of congressional action, "[a]n Indian tribe retains only those aspects of sovereignty not withdrawn by treaty or statute." *Id.* It would be difficult to square this legal underpinning with a decision that an Indian tribe automatically gains jurisdiction over new lands when one of its members inherits an ownership interest in an existing trust parcel under another tribe's jurisdiction, or that by the same operation the tribe of the original allottee could lose exclusive jurisdiction over an allotment taken from its own reservation. Moreover, such a system would exacerbate the jurisdictional morass of checkerboarding that currently exists because of the federal government's allotment policies and would greatly hinder a tribe's ability to do any long-term planning and governance concerning the allotted lands within its jurisdiction.

The opinion that the Iowa Tribe maintains its original tribal jurisdiction over the fractionated Whitecloud Allotment is supported—albeit indirectly—by several cases.  In *DeCoteau v. Dist. County Court for the Tenth Judicial Dist.*, 420 U.S. 425 (1975), the U.S. Supreme Court determined that the Lake Traverse Indian Reservation in South Dakota was disestablished by act of Congress. *Id.* at 445. Although the opinion concerned Indian conduct on the ceded, non-Indian lands within the former reservation, the Court noted in dicta that: "It is common ground here that Indian conduct occurring on the trust allotments [within the former reservation] is beyond the State's jurisdiction, being instead the proper concern of tribal or federal authorities." *Id.* at 428. Consistent with that language, the Court later stated: "[T]he tribe and the [U.S.] Government were satisfied that retention of allotments would provide an adequate fulcrum for tribal affairs. In such a situation, exclusive tribal and federal jurisdiction is limited to the retained allotments." *Id.* at 446 (citing 18 U.S.C. § 1151(c); *United States v. Pelican*, 232 U.S. 442 (1914)). It went unstated in the opinion, but from context it seems clear that the Court was referring to exclusive tribal jurisdiction of the Sisseton-Wahpeton Tribe for which the Lake Traverse Indian Reservation was created and whose members received the allotments, without regard to the possibility that through inheritance, the allotments could eventually be owned in whole or in part by members of other tribes.

Similarly, in *Mustang Production Co. v. Harrison*, 94 F.3d 1382 (10th Cir. 1996), the Tenth Circuit held that even after Congress disestablished the Cheyenne-Arapaho Tribes' reservation in Oklahoma, "the allotted lands were set aside for the use of the Indians, remaining part of Indian country . . . over which the Tribes have civil jurisdiction." *Id.* at 1386. As in *DeCoteau*, the court in *Mustang* did not address whether the Cheyenne and Arapaho Tribes for which the reservation was created would lose or share jurisdiction with another tribe if an allotted parcel came to be held by a member or members of different tribes.

The Tenth Circuit's opinion in *Pittsburg & Midway Coal Mining Co. v. Watchman*, 52 F.3d 1531 (10th Cir. 1995) contains a pronouncement that is in line with

AR002461

its subsequent holding in *Mustang*: "[W]e believe the Navajo Nation has the authority to apply its Business Activities tax to the source gains from the 47% portion of the South McKinley Mine that lies within the [off-reservation] individual Navajo trust allotments." *Id.* at 1542 n.11. This language demonstrates the court's view that the Navajo Nation holds civil jurisdiction over trust allotments held by members of the Navajo Nation; but like the other cases, it does not address what the outcome would be if the trust allotments came to be held by members of different tribes.

The position that the Iowa Tribe maintains exclusive jurisdiction over the now-fractionated Whitecloud Allotment is not undermined by the Maria Christiana line of agency opinions and cases holding that the Miami Tribe of Oklahoma does not have jurisdiction over the Maria Christiana Allotment. The facts behind the Maria Christiana Allotment have at least three significant differences. First, the Maria Christiana Allotment was granted by Congress to an individual of Indian descent, but not a member of any tribe. *Miami Tribe v. United States*, 927 F. Supp. 1419, 1427 (D. Kan. 1996). Second, the Miami Tribe objected to the grant of allotments to non-members and eventually received cash payments (plus interest) for the divestitures. *Id.* at 1426. Therefore, the district court stated: "This court has no difficulty concluding from this series of events that plaintiff [Miami Tribe] unmistakably relinquished its jurisdiction over Reserve No. 35 [the Maria Christiana Allotment]." *Id.* (footnote omitted). And third, the applicable treaties and legislation regarding the Miami Tribe clearly contemplated that the Miami Tribe would move from its reservation in Kansas (location of the Maria Christiana Allotment) to Oklahoma, which it did. *Id.* In contrast to those facts, the allotment in this inquiry was granted to a member of the tribe seeking to exercise jurisdiction; the Iowa Tribe has always treated the parcel as being under its jurisdiction; the legislation that allotted lands within the Iowa Tribe's reservation did not contemplate that the Iowa Tribe would move away; and indeed the Iowa Tribe did not move from its Oklahoma land base when its reservation was allotted. For these reasons, the present issue is distinguishable from the line of cases concerning the Maria Christiana Allotment.

Therefore, it is this office's opinion that the Iowa Tribe maintains exclusive tribal jurisdiction over the Whitecloud Allotment.

## 2. Governmental Power

The next question is whether the Tribe exercises governmental power over the Whitecloud Allotment. *See* 25 U.S.C. § 2703(4)(B); *see also Rhode Island v. Narragansett Indian Tribe,* 19 F.3d 685, 703 (1st Cir. 1994).

IGRA is silent as to how NIGC is to decide whether a tribe exercises governmental power over lands at issue. Furthermore, the manifestation of governmental power can differ dramatically depending upon the circumstances. For this reason, the NIGC has not formulated a uniform definition of *exercise of governmental power*, but rather decides that question in each case based upon all the circumstances. *See* National Indian Gaming Commission: Definitions Under the Indian Gaming Regulatory Act, 57 Fed. Reg. 12382, 12388 (1992).

AR002462

Caselaw provides some guidance. The First Circuit in *Narragansett Indian Tribe* found that satisfying this requirement depends "upon the presence of concrete manifestations of [governmental] authority."19 F.3d at 703. Such examples include the establishment of a housing authority, administration of health care programs, job training, public safety, conservation, and other governmental programs. *Id.*

In *Cheyenne River Sioux Tribe v. State of South Dakota*, 830 F. Supp. 523, 528 (D.S.D. 1993), *aff'd,* 3 F.3d 273 (8th Cir. 1993), the court stated that several factors might be relevant to a determination of whether a tribe exercises governmental power over subject lands for purposes of IGRA. The factors were:

(1)  Whether the areas are developed;

(2)  Whether the tribal members reside in those areas;

(3)  Whether any governmental services are provided and by whom;

(4)  Whether law enforcement on the lands in question is provided by the Tribe; and

(5)  Other indicia as to who exercises governmental power over those areas.

*Id.* at 528.

In this matter, the Tribe has identified several actions that demonstrate its present exercise of governmental power over the planned casino site, which is currently used for residential purposes. Specifically, the following actions are significant:

(1)  The Iowa Tribe provides (apparently rather extensive) law enforcement services on the site through the Iowa Tribal Police Department, as evidenced by a sample of tribal police reports and affiliated tribal police documents provided to the NIGC by the Tribe;

(2)  The Tribe exercises criminal jurisdiction over the site, as evidenced by an Iowa Tribal Court pleading (criminal complaint) involving incidents on Parcel 58-A provided to the NIGC by the Tribe; and

(3)  State law enforcement officials and prosecuting attorneys from surrounding jurisdictions recognize the Iowa Tribe's jurisdiction and lawful exercise of governmental power, as evidenced by a sample of police reports provided to the NIGC by the Tribe.

These actions constitute "concrete manifestations of governmental authority" over the Whitecloud Allotment. Therefore, the Tribe exercises governmental power over the site, and the site is Indian lands as defined by IGRA.

10

## C. After-Acquired Lands Prohibition

IGRA's general prohibition against gaming on after-acquired lands states: "Except as provided in subsection (b) of this section, gaming regulated by this chapter shall not be conducted on lands acquired by the Secretary in trust for the benefit of an Indian tribe after October 17, 1988, unless . . . [providing exceptions]." 25 U.S.C. § 2719. In this case, the Iowa Tribe obtained its trust interest in Parcel 58-B in 2006-2008, and the Tribe is still petitioning the BIA to approve its trust interest in Parcel 58-A. Therefore, there is an argument that the lands were or will be "acquired by the Secretary in trust for the benefit of an Indian tribe after October 17, 1988." However, the after-acquired lands provision of IGRA is open to interpretation. In an earlier memorandum, the NIGC's Office of General Counsel considered a situation where the trust interest in an allotment was transferred on May 10, 2000, from a member of the Kiowa Tribe to the Kiowa Tribe itself. In that memorandum, we stated: "Because the property at issue has remained in trust, on behalf of a Kiowa tribal members [sic] and then on behalf of the Kiowa Tribe, the prohibition against Indian gaming on parcels acquired in trust after October 17, 1988 and the exceptions thereto set forth in 25 U.S.C. § 2719 do not apply." Memorandum from Jo-Ann M. Shyloski, Senior Attorney, to Philip N. Hogen, Chairman, re: Kiowa Indian Tribe of Oklahoma – Gaming Site at n.1 (Nov. 15, 2005).

It may be that the after-acquired lands prohibition should not apply where the trust acquisition does not transfer jurisdiction from one tribe to another. In this case, the Iowa Tribe has maintained jurisdiction over the proposed gaming site since well before IGRA's enactment in 1988. Recently, the Tribe has obtained trust-to-trust transfers that give the Tribe itself a significant trust interest in the land. Not all of these trust-to-trust transfers occurred between the Tribe and its members—in fact, a majority occurred between the Tribe and members of other tribes. But because the Iowa Tribe maintained jurisdiction over this land despite partial ownership by members of other tribes, these trust-to-trust transfers made no changes to tribal jurisdiction over the land. Therefore, there would be no congressional or public policy purpose served by applying the after-acquired lands prohibition.

In any case, even if the conveyances from members of other tribes to the Iowa Tribe trigger the general prohibition in Section 2719, then the Tribe still would not be prohibited from gaming on the site, because the Iowa Tribe qualifies for a Section 2719 exception. IGRA creates an exception to the after-acquired lands prohibition for an "Indian tribe [that] has no reservation on October 17, 1988, and—(A) such lands are located in Oklahoma and—(i) are within the boundaries of the Indian tribe's former reservation, as defined by the Secretary[.]" 25 U.S.C. § 2719(a)(2)(A)(i). The Iowa Tribe had no reservation on October 17, 1988; the subject lands are located in Oklahoma; and the BIA has confirmed that the site is within the boundaries of the Indian tribe's former reservation. *See* Letter from Dan Deerinwater, BIA Southern Plains Regional Director, to Penny Coleman, NIGC Acting General Counsel (June 22, 2009). Therefore, whether we consider Section 2719 to be triggered or not, the Iowa Tribe may lawfully conduct gaming activities on the Whitecloud Allotment.

11

AR002464

## V. Conclusion

The proposed casino site is located on Indian lands upon which the Iowa Tribe may conduct gaming under IGRA. Therefore, the Chairman of the NIGC may approve the proposed management contract, assuming all other requirements are met.

The Department of the Interior, Office of the Solicitor, concurs in this opinion. *See* Letter from Edith R. Blackwell, DOI Associate Solicitor – Division of Indian Affairs, to Penny Coleman, NIGC Acting General Counsel (Dec. 18, 2009).

AR002465



<u>Memorandum</u>

To:        Philip N. Hogen, Chairman

Through:    Penny J. Coleman, Acting General Counsel   P J C

From:      John R. Hay, Staff Attorney   JRH

Date:      September 6, 2006

Re:        Gaming By the Big Sandy Rancheria on the McCabe Allotment

---

On December 22, 2004, the Big Sandy Band of Western Mono Indians ("Tribe") submitted to the NIGC a Request for Approval of Management Agreement between Big Sandy Entertainment Authority and QBS, LLC, regarding a proposed casino near Fresno, California. On April 19, 2005, the Tribe submitted documentation to support its assertion that the proposed casino site constituted "Indian lands" as defined by the Indian Gaming Regulatory Act ("IGRA").[1]  In conjunction with the submission of a Management Agreement, the Tribe has requested that the NIGC provide an advisory legal opinion on whether the proposed casino location qualifies as Indian lands under IGRA.

---

[1] The Tribe's submission included the following attachments:  A Plan For The Distribution Of The Assets Of The Big Sandy (Auberry) Rancheria (Effective Date, March 5, 1965); Stipulation for Entry of Judgment, San Joaquin or Big Sandy Band of Indians, et al. v. James Watt, et al. (March 25, 1983); BIA, Title Status Report (November 12, 2003); BIA, Tract History Report (February 10, 2004); Trust Patent from the United States of America to Mary McCabe (March 29, 1920); BIA, 1933 California Roll Book (excerpt)(November, 1986); Letter from Sacramento Indian Agency (April 24, 1935); Tribal Resolution No. 84-1 (March 19, 1984); Declaration of Dan Lewis (March 28, 2005); Deed to Restricted Indian Land Special Form (February 2, 1979); Lester McCabe, BIA Index and Heirship Card; Opinion of the Solicitor, Sampson Johns Allotment (September 26, 1996); Declaration of Sherril McCabe (April 7, 2005); Declaration of Tribal Council Member, Phyllis Lewis (March 31, 2005); Declaration of Tribal Administrator, Ric Contreras (March 31, 2005); Tribal Council Resolution No. 0604-03, Affirming Tribal Government Jurisdiction Over Indian Lands Of The Tribe (June 12, 2004); Permit to Enter Trust Lands of the Tribe; Tribal Jurisdiction and Government Services Ordinance, Ordinance No. 1204-01 (December 30, 2004); Map of McCabe Allotment; and Fresno County Assessor's Map, Book 138, Page 06 (June 25, 2003).

By letter dated September 9, 2005, the California Governor's Office of Legal Affairs submitted its views on the Indian lands determination. The Tribe responded to the State's arguments by letter dated October 7, 2005.

By letter dated February 1, 2006, the Table Mountain Rancheria submitted its views on the Indian lands determination. The Tribe has not responded to that submission.

The Office of General Counsel has evaluated all of the information submitted and determined that the McCabe Allotment would qualify as Indian lands under IGRA and, therefore, the Tribe may lawfully conduct gaming on this parcel.

**Background**

The Tribe is a federally recognized Indian tribe occupying the Big Sandy Rancheria near Auberry, California, approximately 35 miles northeast of Fresno. Pursuant to a tribal-state gaming compact with the State of California, the Tribe conducts class II and class III gaming in its reservation's Mono Winds Casino. The tribe is now developing a new gaming facility outside the boundaries of the reservation.

The parcel of land the Tribe proposes to conduct gaming on is an Indian allotment (hereinafter, the "McCabe Allotment") that has been continuously held in trust since 1920 for McCabe family members.[2] The current allottee, tribal member Sherrill McCabe-Esteves, has been the sole beneficial owner of the McCabe allotment since 1979. The Allotment is located 12 miles outside the Rancheria, in an unincorporated part of Fresno County. The allottee is leasing the parcel to the Tribe.[3] The lease has been submitted to the Bureau of Indian Affairs for review.

The McCabe Allotment is a 40.82[4] acre Indian allotment held in trust by the United States for the benefit of Big Sandy Rancheria tribal member Sherrill Anne McCabe (aka McCabe-Esteves). The McCabe Allotment was originally allotted out of the public domain to Mary McCabe, a member of the Tribe, in 1920 and immediately placed in trust.

**Applicable Law**

The IGRA explicitly defines "Indian lands" as follows:

(A) all lands within the limits of any Indian reservation; and

---

[2] The parcel at issue is described as: The north half of Lot two of the northwest quarter of Section eighteen in Township eleven south of Range twenty-two east of the Mount Diablo Meridian, California, containing forty and eighty-two-hundredths acres.

[3] The lease was submitted to the Pacific Regional Office of the Bureau of Indian Affairs on December 20, 2004.

[4] The BIA trust status report indicates that this is a 40.82 acre parcel. However, a survey done by the Big Sandy Rancheria has found that this parcel is 48.20 acres. In all likelyhood this is simply a scriveners error, however, our opinion is limited to the legal description of the trust document.

AR002467

(B) any lands title to which is either held in trust by the United States for the
benefit of any Indian tribe or individual or held by any Indian tribe or
individual subject to restriction by the United States against alienation and
over which an Indian tribe exercises governmental power.

25 U.S.C. § 2703 (4).

NIGC regulations have further clarified the Indian lands definition, providing that:

Indian lands means:
(a) Land within the limits of an Indian reservation; or
(b) Land over which an Indian tribe exercises governmental power and
that is either --
(1) Held in trust by the United States for the benefit of any Indian tribe or
individual; or
(2) Held by an Indian tribe or individual subject to restriction by the
United States against alienation.

25 C.F.R. § 502.12.  Generally, lands that do not qualify as Indian lands under IGRA are
subject to state gambling laws.  *See National Indian Gaming Commission: Definitions
Under the Indian Gaming Regulatory Act*, 57 Fed. Reg. 12382, 12388 (1992).

Further, IGRA gives tribes the exclusive right to regulate gaming on Indian lands,
specifically providing that:

Indian tribes have the exclusive right to regulate gaming activity on Indian lands
if the gaming activity is not specifically prohibited by Federal law and is
conducted within a State which does not, as a matter of criminal law and public
policy, prohibit such gaming activity.

25 U.S.C. § 2701 (5).  IGRA further clarifies the jurisdiction of Tribes as to the different
classes of gaming stating that:

(1) Class I gaming on Indian lands is within the exclusive jurisdiction of the
Indian tribes and shall not be subject to the provisions of this chapter.
(2) Any class II gaming on Indian lands shall continue to be within the
jurisdiction of the Indian tribes, but shall be subject to the provisions of this
chapter.

25 U.S.C. § 2710(a)(1)(2).  The requirements for Class III gaming likewise state:

(1) Class III gaming activities shall be lawful on Indian lands only if such
activities are--
(A) authorized by an ordinance or resolution that
(i) is adopted by the governing body of the Indian tribe having
jurisdiction over such lands …

3

AR002468

(C) conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State under paragraph (3) that is in effect.

25 U.S.C. § 2710(d)(1)(A)(C).

**Analysis**

The McCabe Allotment is not within the Big Sandy Rancheria; it is held in trust for the benefit of tribal member Sherrill McCabe. Therefore, the McCabe Allotment constitutes Indian lands if the Tribe possesses jurisdiction and exercises governmental authority over it.

*Jurisdiction*

As a general matter, tribes are presumed to possess tribal jurisdiction within "Indian country." *See South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329 (1998). The Supreme Court has stated that Indian tribes are "invested with the right of self-government and jurisdiction over the persons and property within the limits of the territory they occupy, except so far as that jurisdiction has been restrained and abridged by treaty or act of Congress." *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 140 (1982).

Historically, the term "Indian country" has been used to identify land that is subject to the "primary jurisdiction . . . [of] the Federal Government and the Indian tribe inhabiting it." *Alaska v. Native Village of Venetie Tribal Gov't*, 522 U.S. 520, 527 n.1 (1998). The U.S. Code defines "Indian country" as:

> (a) all land within the limits of any Indian reservation...,
> (b) all dependent Indian communities..., and
> (c) all Indian allotments, the Indian titles to which have not been extinguished....

18 U.S.C. § 1151. *See, e.g., United States v. Pelican*, 232 U.S. 442, 449 (1914) (Indian country includes individual Indian allotments held in trust by the United States because they "remain Indian lands set apart for Indians under governmental care").

This situation is similar to the Sampson Johns Allotment over which the Quinault Tribe possesses jurisdiction. In 1996, the Department of the Interior, Office of the Solicitor concluded that an Indian allotment, located off-reservation and created from the public domain, constituted Indian lands for the purposes of IGRA. *See Opinion of the Solicitor, Sampson Johns Allotment* (September 26, 1996). In that case, the allotment was owned by a member of the Quinault tribe and was located 12 miles from the Quinault reservation. The opinion concluded that the Quinault Tribe possessed jurisdiction over the lands. The opinion noted that a tribe would possess jurisdiction over lands within Indian country unless the "land in question is not owned or occupied by tribal members and is far removed from the tribal community." *Id.*

4

AR002469

Similar to the Sampson Johns Allotment, the McCabe Allotment is owned by a tribal member who is a descendent of the original allottee's family and the allotment has been held in trust continuously since 1920 and is located within 12 miles of the Tribe's Rancheria.  Therefore, we can conclude that the Tribe has jurisdiction over the land.

*Exercise of Governmental Authority*

In order for the land to fit the definition of "Indian lands," we must decide whether the Tribe exercises governmental power over the parcel.  *See* 25 U.S.C. § 2703(4)(B); *see also Narragansett Indian Tribe*, 19 F.3d at 703.

IGRA is silent as to how NIGC is to decide whether a tribe exercises governmental power.  Furthermore, the manifestation of governmental power can differ dramatically depending upon the circumstances. For this reason NIGC has not formulated a uniform definition of "exercise of governmental power," but rather decides that question in each case based upon all the circumstances.  *See National Indian Gaming Commission: Definitions Under the Indian Gaming Regulatory Act*, 57 Fed. Reg. 12382, 12388 (1992).

Case law and NIGC opinions provide some guidance.  The First Circuit in *Narragansett Indian Tribe* found that satisfying this requirement depends "upon the presence of concrete manifestations of [governmental] authority." *Narragansett Indian Tribe*, 19 F.3d at 703.  Such examples include the establishment of a housing authority, administration of health care programs, job training, public safety, conservation, and other governmental programs.  *Id.*

In *Cheyenne River Sioux Tribe v. State of South Dakota*, 830 F. Supp. 523 (D.S.D. 1993), *aff'd* 3 F.3d 273 (8th Cir. 1993), the court stated that several factors might be relevant to a determination of whether off-reservation trust lands constitute Indian lands.  The factors were:

(1)   Whether the areas are developed;
(2)   Whether the tribal members reside in those areas;
(3)   Whether any governmental services are provided and by whom;
(4)   Whether law enforcement on the lands in question is provided by the Tribe; and
(5)   Other indicia as to who exercises governmental power over those areas.

*Id.* at 528.  The Court did not opine regarding the weight given any factor or whether the absence or presence of one factor was determinative.

In this case, the Tribe's Constitution provides that the Tribe has jurisdiction over any allotment of a tribal member.   The Tribe provides governmental services to off-reservation Indian allotments owned or occupied by tribal members including the McCabe allotment and other allotments in the surrounding area.  According to the Tribe, such services have included, for example, tribally and HUD funded housing services,

AR002470

housing and facility maintenance, social, welfare and property maintenance services (including food and meal delivery, home repair, refuse removal, etc.).

The McCabe Allotment is largely vacant and undeveloped. However, the Tribe provides some governmental services to the allotment, including site inspection by tribal police officers, fence repair, maintenance, inspections for unauthorized grazing, and general supervision. The Tribe provided a sworn statement from Ric Contreras, Big Sandy Tribal Administrator, recounting a recent situation where a tribal employee noticed signs that cattle had been illegally grazing on the land. The Tribe took action to seal-off possible entries that cattle may have used to gain access to the property.

The Tribe has submitted a sworn statement from Sherrill McCabe, the allottee, stating that the "Tribe provides governmental services and benefits to the McCabe Allotment, including inspection by Big Sandy tribal patrol officers, fence repair, maintenance, monitoring for un-permitted grazing, and general supervision."

The Tribe submitted a sworn statement from Dan Lewis, a tribal security officer, stating that he "made regular visits to and inspections of the McCabe Allotment" for the purpose of looking out for "trespassers, squatters and any damage to or removal of objects from the land."

The Tribe has submitted copies of resolutions to show that it exercises jurisdiction over off-reservation Indian allotments. Tribal Council Resolution #0604-03, adopted June 12, 2004, requires that all off-reservation trust allotments display a sign stating: "NO TRESPASSING: PROPERTY UNDER JURISDICTION OF BIG SANDY RANCHERIA TRIBAL GOVERNMENT. ENTRANCE ONLY BY PERMISSION OF TRIBAL GOVERNMENT." (emphasis in original). According to the Tribe, these warning signs have been placed on the McCabe allotment.

According to the Tribe, in December of 2004, it began requiring non-Tribal visitors, such as contractors, surveyors, and others, to obtain a permit before entering off-reservation Indian allotments to conduct work on behalf of the Tribe or a tribal member allottee.

These actions identified above are concrete manifestations of the Tribe's exercise of governmental authority over the allotment.[5]

**Conclusion**

In our opinion, the McCabe trust allotment constitutes Indian lands under the Indian Gaming Regulatory Act. Therefore, the Big Sandy Rancheria may conduct Class II and III gaming activities on the land. It is important to note that this is an advisory opinion

---

[5] The State of California argues that the Tribe must exercise historical and exclusive jurisdiction to qualify as Indian lands under IGRA. This is an incorrect statement of law. At least since prior to the enactment of IGRA, the Tribe had the authority to exercise jurisdiction. In the specific circumstances described here, nothing more is required. Additionally, there is no requirement that the Tribe exercise governmental power over a historically significant period of time.

6

AR002471

issued by the Office of General Counsel and not a final agency action.  The Department of the Interior, Office of the Solicitor concurs with this opinion.

AR002472



**MEMORANDUM**

TO:     Tracie Stevens, Chairwoman

FROM:  Lawrence S. Roberts, General Counsel
         Jo-Ann M. Shyloski, Associate General Counsel
         Dawn Sturdevant Baum, Staff Attorney

DATE:  May 24, 2012

RE:     Kialegee Tribal Town: Proposed Gaming Site in Broken Arrow, Oklahoma

---

      This memorandum concludes a legal review of whether a gaming facility proposed by the Kialegee Tribal Town (Kialegee or Tribe) is on Indian lands eligible for gaming as defined by the Indian Gaming Regulatory Act (IGRA) and applicable regulations. As further explained below, it is our opinion that the proposed new facility in Broken Arrow, Oklahoma (Proposed Site) does not qualify as Kialegee's Indian lands eligible for gaming because Kialegee has not established that it has legal jurisdiction over the Proposed Site for purposes of IGRA. The Department of the Interior (DOI), Office of the Solicitor, concurs with this opinion.

**I. Background**

      The Kialegee Tribal Town is a federally recognized tribe with headquarters in Wetumka, Oklahoma. On April 29, 2011, Kialegee sent the NIGC notice of the Tribe's intent to license a new facility on the Proposed Site.[1] The Proposed Site is currently held in restricted status by two citizens of the Muscogee (Creek) Nation, Marcella Burgess Giles and Wynema Burgess Capps, each having right to an undivided one-half interest in the property. The Office of the Field Solicitor in Tulsa has determined that each of the

---

[1] The Proposed Site is located on South 129th East Avenue between the Creek Turnpike and East 111th Street South. A legal description of the property is attached to the memorandum.

AR002480

two landowners holds their undivided half interest in the Proposed Site half in restricted fee and half in fee simple.[2]

The Tribe initially requested NIGC Office of General Counsel review of various ground leases and related subleases of the Proposed Site between the owners, the Tribe, and a developer.[3]  The Tribe sought an opinion on whether the leases constituted a management contract that required the NIGC Chair's review and approval.  During the review, Kialegee submitted a memorandum setting forth its basis for legal jurisdiction over the Proposed Site.

Kialegee subsequently withdrew its request to the Office of General Counsel, and the owners of the Proposed Site filed a petition on January 27, 2011, for approval of the Prime Ground Lease in Oklahoma State Court under the Stigler Act, 61 Stat. 731 (1947).  On August 17, 2011, the Court issued an order withholding approval of the lease.  The Court declined "to determine "whether the Kialegee Tribal Town . . . exercises jurisdiction over a Creek allotment."  The Court further opined that "an individual citizen cannot transfer government jurisdiction over his or her property by the terms of a lease."  Ultimately, the Court withheld approval of the lease "without prejudice to Petitioner's ability to present the said Lease to the Secretary of the Interior for approval."  The landowners have not submitted any of their leases to the Department of Interior for approval.[4]

NIGC has repeatedly requested that the Tribe submit any additional materials to support its basis for legal jurisdiction over the Proposed Site.  On March 7, 2012, the Tribe provided a Joint Venture Agreement between the Tribe, the landowners, and developers with a cover letter and attachments.  On May 4, 2012, the Tribe indicated its intention to withdraw its ownership interest from that Joint Venture and to license and regulate the

---

[2]  May 18, 2011 Memo from Field Solicitor, Tulsa, to Acting Regional Director, Eastern Oklahoma Region, BIA, attached to May 25, 2011 Letter from Acting Regional Director, Eastern Oklahoma Region to NIGC Staff Attorney, concluding the parcel is one-half restricted and one-half unrestricted fee land and located within the boundaries of the former reservation of the Muscogee (Creek) Nation as defined by the Treaty of 1833, 7 Stat. 417, and the Treaty of 1866, 14 Stat. 785.

[3] Throughout the course of dealings on this matter, the Tribe, the landowners, the developers, and the attorneys for each of those parties have submitted documents and made statements in concert with one another and with implied, if not explicit, consent to speak on behalf of one another.  Each party is aware of this practice and has made no objection to it.  Because of such consent, this opinion will treat documents submitted by any one of the aforementioned parties as being submitted on behalf of the group or on behalf of any one of the parties.

[4] On March 7, 2012, the Tribe submitted copies of a Joint Venture Operating Agreement (Agreement) dated April 5, 2011, along with a cover letter asserting that the Agreement does not encumber any land and therefore does not need approval by the Secretary of the Interior.  After reviewing the Joint Venture Operating Agreement, the NIGC Chief of Staff issued a letter to the Tribe on April 26, 2012, expressing concern that the Agreement violates IGRA.  The letter informed the Tribe that if it proceeded with gaming under the Agreement, that the Chief of Staff would recommend an enforcement action to the Chairwoman.  On March 7, 2012, NIGC provided copies of the Agreement and related materials to the Solicitor's Office.  The Solicitor's Office has concluded that the Agreement and related materials do not constitute a lease requiring approval of the Bureau of Indian Affairs because the Agreement does not encumber the property.

AR002481

Joint Venture to conduct gaming as an individually owned gaming operation under IGRA, 25 U.S.C. § 2710(b)(4)(A).

### A. Legal History of the Creek Nation.

An overview of the legal history of the Creek Nation is necessary to understand legal jurisdiction over the Proposed Site and the relationship of the Muscogee (Creek) Nation to Kialegee. "The Creek Nation has always been a confederacy of tribal towns." *Harjo v. Kleppe*, 420 F.Supp. 1110, 1118 (D.D.C. 1976). "Prior to 1707, the Creek Nation occupied a large territory in what is now the States of Georgia, Alabama, and Florida. Between 1707 and 1773, tracts of this territory were ceded to Great Britain and the American colonies. Treaty cessions to the newly independent United States began in 1790. The United States entered into thirteen treaties with the Creek Nation before 1833. Under the Creek Removal Treaty of March 24, 1832, 7 Stat. 366, [a] portion of the Creek Nation . . . was removed to an area in the present State of Oklahoma." *Muscogee (Creek) Nation v. BIA*, 13 IBIA 211 at 2-3 (1985). The historic Creek Nation that signed treaties prior to 1833 now exists as the Poarch Band of Creek Indians in Alabama, the Muscogee (Creek) Nation in Oklahoma, and recognized tribal towns. *See* May 19, 2008 Letter from NIGC Chairman to Poarch Band of Creek Indians Chairman, p. 12.

The Tenth Circuit analyzed the legal history of the Muscogee (Creek) Nation, explaining that in 1832 "the Creeks ceded their eastern homelands to the United States, in exchange for lands west of the Mississippi River." *Indian Country, U.S.A. v. Oklahoma*, 829 F.2d 967, 971 (10th Cir. 1987). In subsequent years, federal treaties and federal legislation pertaining to the Creek Reservation in Oklahoma were exclusively with the Muscogee (Creek) Nation, not the tribal towns. "In a subsequent treaty regarding these lands, the United States agreed to grant 'a patent, in fee simple, to the Creek nation.'" *Id.* at 971. In 1866, the Creek Nation entered into another treaty with the United States, which "provided that the 'reduced . . . reservation' retained by the Creeks was 'forever set apart as a home for the Creek Nation.'" *Id.* at 974. The Tenth Circuit held that "original treaty lands still held by the Creek Nation" were "the purest form of Indian Country[.]" *Id.* at 976. Thus, the Tenth Circuit was clear that the Oklahoma lands held in fee by the Muscogee (Creek) Nation had been held by the Muscogee (Creek) Nation since its removal to Oklahoma.

*Harjo v. Kleppe*, 420 F.Supp. 1110 (D.D.C. 1976), also provides a comprehensive legal history of the Muscogee (Creek) Nation.[5] Many of the court's findings, included below, are relevant to the jurisdiction question here.

> On October 12, 1867, the Creeks adopted a constitution and a code of laws for the 'Muskogee Nation.' The constitution was modeled on American federalism, with executive, legislative, and judicial branches. Legislative power was lodged in a National Council, a bi-cameral body in which each

---

[5] The D.C. Circuit affirmed, noting that "the district court undertook an extended, studious, and excellent analysis of the effect of federal treaties and statutes on the government of the Creek Nation." *Harjo v. Andrus*, 581 F.2d 949, 951 (D.C. Cir. 1978).

AR002482

> tribal town or "Talwa" was entitled to one delegate in the House of Kings
> and one in the House of Warriors, plus an additional delegate in the House
> of Warriors for every two hundred people.

*Id.* at 1120. The 1867 Constitution of the Muskogee Nation divided the Nation's territory into six districts. The National Council chose a judge for each district and the Principal Chief appointed, with the consent of the National Council, a prosecuting attorney for each district. Article IV of 1867 Muskogee Constitution. Pursuant to the Muskogee Constitution, the National Council established a comprehensive framework of civil and criminal laws. Under the laws of the Muskogee Nation, gambling was a misdemeanor. *See Constitution and Laws of the Muskogee Nation* § 159, as compiled and codified by A.P. McKellop, Muskogee, Indian Territory (1893).

Over the following decades, non-Indian settlement within the Oklahoma territory grew. As the court explained,

> By 1890, when the Oklahoma Territory adjacent to the Indian Territory
> was opened and a territorial government created, the clamor for allotment
> had reached a new peak. . . . [O]n March 3, 1893, . . . Congress created a
> commission to negotiate with the Five [Civilized] Tribes [of Oklahoma]
> for the extinction of their communal titles and the eventual creation of a
> state. . . . During the next several years the Commission attempted to
> negotiate the dissolution of the tribes, but had minimal success . . .. [O]n
> June 28, 1898 Congress enacted the Curtis Act, which provided for forced
> allotments and the eventual termination of the tribal tenure without the
> Indians' consent. The Act incorporated the provisions of the tentative
> agreements with each of the . . . tribes, providing that if the agreement
> with any tribe was ratified by the tribe the provisions of the agreement
> would substitute for the more drastic allotment provisions of the Act. The
> Creeks did in fact reject their agreement, and the Curtis Act went into
> effect in their territory.

*Harjo v. Kleppe*, 420 F.Supp. at 1122. Section 30 of the Act provided for the allotment of "lands owned by the Muscogee or Creek Indians in the Indian Territory to each citizen of said nation[.]" Act of June 28, 1898, 30 Stat. 495. The Act provided for the "principal chief of the Muscogee or Creek Nation . . . to deliver . . . a patent, conveying . . . all the right, title, and interest of the said nation in and to the land[.]" *Id.*

> The provisions of the Curtis Act were so drastic from the Creek point of
> view that they soon consented to a new agreement to supersede the one
> contained in section 30 of [the Curtis] Act[.] The new agreement was
> ratified by the tribe, and by the Congress in the Act of March 1, 1901, 31
> Stat. 861. .

*Harjo v. Kleppe,* 420 F.Supp. at 1124.

4

AR002483

The Act of March 1, 1901, as amended, provided for allotment of "all lands *belonging to the Creek tribe of Indians* in Indian Territory, except town sites . . ." 32 Stat. 500 (emphasis added). The Act further recognized "that until such time as the Creek national government was in fact dissolved, it would continue to function under the 1867 Constitution, as modified by this act and prior agreements." *Id.* at 1124. As the court explained,

> [T]he act's allotment scheme provided for commissions to carry out the appraisal and allotment of land, and that sale of town lots. The Principal Chief was to appoint certain members of the commissions or committees . . . [and] the deeds conveying the individual allotments to members of the tribe were to be signed and delivered by the Principal Chief on forms provided by the Secretary. . . . In sum, then, under the agreement the Creek government through its National Council retained its general authority for dealing with tribal affairs[.]

*Id.* at 1126.

The district court further analyzed the federal legislation after the Act of 1901 through the present, finding that Congress "has explicitly recognized and preserved the authority of the national legislature and the basic form of government established by the 1867 constitution." *Id.* at 1143. The D.C. Circuit affirmed the district court's conclusion that "although a great deal of legislation had been passed involving the tribe and its government, 'the basic legal framework governing the management of Creek tribal affairs, financial and otherwise, is the Creek Constitution of 1867.'" *Harjo v. Andrus,* 581 F.2d 949, 951 (D.C. Cir. 1978). The D.C. Circuit affirmed the district court's order providing for a "referendum among all Creek adults on certain issues raised by a recently drafted proposed constitution for the tribe" and that the results be incorporated into a new constitution for the Creek Nation.

In 1979, the Muscogee (Creek) Nation adopted a Constitution which was approved by the Department of the Interior in accordance with the Oklahoma Indian Welfare Act, Act of June 26, 1936, 49 Stat. 1967, 25 U.S.C. 501 *et seq.* Section 2 of the Nation's approved Constitution provides in relevant part that the "political jurisdiction of The Muscogee (Creek) Nation shall be as it geographically appeared in 1900 which is based upon those Treaties entered into by the Muscogee (Creek) Nation and the United States of America[.]"

**B. Legal History of the Kialegee Tribal Town.**

The D.C. Circuit also explained that "[t]he Creek Nation, historically and traditionally, is actually a confederacy of autonomous tribal towns, or Talwa, each with their own political organization and leadership. . . . Originally, there were four 'mother' towns, but the number was expanded by a transfer of town fires until, by the time of the adoption of the 1867 Constitution, there were approximately forty-four Talwa in existence. Tribal towns can also merge or dissolve, and there is at present some doubt as

5

AR002484

to the exact number of towns that are politically and socially active." *Harjo v Andrus*, 581 F.2d at 951 n.7.  Under the 1867 Muskogee Nation's Constitution, each tribal town was entitled to delegates in the National Council.  1867 Muskogee Nation Constitution, Art. I, § 2-3, *see also Harjo v. Kleppe*, 420 F.Supp. at 1120.

In 1936, Congress passed the Oklahoma Indian Welfare Act (OIWA), 49 Stat. 1967.  Section three of OIWA allowed "any recognized tribe or band of Indians residing in Oklahoma . . . to organize for its common welfare and to adopt a constitution and bylaws, under such rules and regulations as the Secretary of the Interior may prescribe." In 1937, the Acting Solicitor for Interior concluded that the Creek Tribal Towns could organize as bands within the meaning of Section 3 of OIWA, separate and distinct from the Muscogee (Creek) Nation.  The Acting Solicitor stated that "the Creek towns can lay a substantial claim to the right to be considered as recognized bands" within the meaning of OIWA, explaining:

> That the Indians themselves recognized the existence of the Creek tribal towns i[s] clear from an examination of the constitution and laws of the Muscogee Nation.  While providing that representation in the National Council shall be by towns, nowhere does it define the towns.  In fact the Compiled Statutes of the Muscogee Nation nowhere provide for defining the boundaries of the towns.  In other words, the towns are recognized as having an existence not derived from the constitution of the Muskogee Nation but in fact antedating and continuing alongside the constitution. Further evidence of this is provided . . . by other statutes ratifying agreements of consolidation between towns and ratifying adoptions into town membership.

*Memorandum to the Commissioner of Indian Affairs from Acting Solicitor Frederic L. Kirgis*, p. 4 (July 15, 1937) (internal citations omitted).  The Acting Solicitor opined that "it [was] possible to conclude that the towns are actually bands with a recognized existence." *Id.*, p. 5 (July 15, 1937).

Three of the Creek Tribal Towns reorganized under OIWA, including Kialegee, which did so by ratifying a constitution in 1941.  *Kialegee Constitution*, 1941.  Unlike the Muscogee (Creek) Nation Constitution, the Kialegee's Constitution does not contain any provision setting forth the geographical jurisdiction of the Kialegee Tribal Town. *See id.*[6]

---

[6] Prior to their organization under the Oklahoma Indian Welfare Act, the tribal towns were described by the Tenth Circuit as political subdivisions of the Creek Nation.  *United States v. Mid-Continent Petroleum Corp*, 67 F.2d 37, 48 (10th Cir. 1933).

6

AR002485

## II. Discussion

IGRA provides that an Indian tribe may engage in gaming under IGRA only on "Indian lands" that are "within such tribe's jurisdiction." 25 U.S.C. § 2710(b)(1), (d)(1). IGRA defines *Indian lands* as:

(A) all lands within the limits of any Indian reservation; and

(B) any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power.

25 U.S.C. § 2703(4). The NIGC's regulations further clarify the definition by providing that:

*Indian lands* means:

(a) Land within the limits of an Indian reservation; or

(b) Land over which an Indian tribe exercises governmental power and that is either—

(1) Held in trust by the United States for the benefit of any Indian tribe or individual; or

(2) Held by an Indian tribe or individual subject to restriction by the United States against alienation.

25 C.F.R. § 502.12.

### A. Indian Reservation

The Kialegee Tribe does not claim to have an existing reservation. Rather, it asserts that the Proposed Site "is located within the former reservation of the Creek Nation Confederacy as the boundaries existed prior to allotment." *See Jurisdiction Brief* at 8. The Department of the Interior states that the Proposed Site is located within the former reservation of the Muscogee (Creek) Nation. *See* May 18, 2011 Memorandum from Field Solicitor, Tulsa, to Acting Regional Director, Eastern Oklahoma Region, BIA, pp. 2 and 7; May 25, 2011 Letter from Acting Regional Director, Eastern Oklahoma Region to NIGC Staff Attorney ("[A] tract of land located in the NE1/4 of the NE1/4 of Section 32, Township 18 North, Range 14 East of the Indian Meridian, Tulsa County, Oklahoma" is "located within that area of land constituting the former, historic reservation of the Muscogee (Creek) Nation."). Further, former NIGC Acting General Counsel Penny Coleman opined that certain Muscogee (Creek) Nation trust lands were eligible for gaming because they were located "within the Nation's former reservation boundaries[.]" *See* January 6, 2009 Letters from Acting General Counsel Penny Coleman

7

to Principal Chief A.D. Ellis regarding Twin Hills and Kellyville sites.  Accordingly, the proposed site does not constitute "Indian lands" pursuant to 25 U.S.C. § 2703(4)(A).[7]

## B. Restricted Fee Land

"Indian lands" includes lands "held by any . . . individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power."  25 U.S.C. § 2703(4)(B); 25 C.F.R. § 502.12(b).  Kialegee suggests that the Proposed Site is fully restricted fee land and therefore qualifies as Indian lands pursuant to 25 U.S.C. § 2703(4)(B).  *Jurisdiction Brief* at 1 and 9.  The Office of the Solicitor states that "an undivided one-half (½) interest in the [Proposed Site] is restricted in accordance with the Act of August 4, 1947, 61 Stat. 731, in the hands of the current owners: Marcella Burgess Giles, 5/8 Creek . . . and Wynema Burgess Capps, 5/8 Creek[.]  The remaining undivided one-half (½) interest is held by Ms. Giles and Ms. Capps in unrestricted fee simple."  May 18, 2011 Memo from Field Solicitor, Tulsa, to Acting Regional Director, Eastern Oklahoma Region, BIA, page 2 (attached to May 25, 2011 Letter from Acting Regional Director, Eastern Oklahoma Region to NIGC Staff Attorney).  Ms. Giles and Ms. Capps are enrolled citizens of the Muscogee (Creek) Nation.  *Jurisdiction Brief* at 1.

Whether the parcel is fully restricted or an undivided one-half (½) interest of the parcel is restricted, the Proposed Site satisfies the first requirement of 25 U.S.C. § 2703(4)(B) because the parcel (both surface and subsurface) is held by individual Indians subject to a restriction against alienation.  The Proposed Site falls within IGRA's plain language, which defines "Indian lands" to include any lands "subject to restriction by the United States against alienation."  There is no indication in IGRA or its legislative history that Congress intended to limit "Indian lands" to only fully restricted parcels.[8]

---

[7] Notwithstanding these references to the Creek Nation's territory as a 'former reservation' for purposes of IGRA, this memorandum expresses no opinion on whether the  Muscogee (Creek) Nation still holds certain lands that are considered to be an informal reservation under other statutes.  We note that the Tenth Circuit in *Indian Country, U.S.A. v. Oklahoma*, expressly declined to decide whether the exterior boundaries of the 1866 Creek Nation treaty territory have been disestablished.  829 F.2d 967 (10th Cir. 1987).  In that case, the court examined whether the parcel at issue constituted "Indian Country" and determined that the land was "part of the original treaty lands still held by the Creek Nation, with title dating back to treaties concluded in the 1830s and patents issued in the 1850s. These lands historically were considered Indian country and still retain their reservation status within the meaning of 18 U.S.C. § 1151(a)."  *Id.* at 976.

[8] Congress was certainly aware that parcels subject to a restriction against alienation may include undivided interests held in fee.  *La Motte v. United States*, 254 U.S. 570, 580-81 (1921) (affirming injunction of unapproved leases for allotments wherein undivided interests held in fee and restricted status).  When Congress intends to limit the scope of "Indian lands" it does so expressly.  *See* 16 U.S.C. § 470bb ("'Indian lands' means lands of . . . Indian individuals . . . subject to a restriction against alienation . . . except for any subsurface interests in lands not owned or controlled by an Indian tribe or an Indian individual.").  Further, to the extent that the phrase "subject to restriction by the United States against alienation" is ambiguous, it should be liberally construed with "doubtful expressions being resolved in favor of the Indians."  *Bryan v. Itasca County*, 426 U.S. 373, 392 (1976); *City of Roseville v. Norton*, 348 F.3d 1020, 1032 (D.C. Cir. 2003); *Cobell v. Norton*, 240 F.3d 1081, 1101, 1103 (D.C. Cir. 2001).  IGRA was enacted "as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments."  25 U.S.C. § 2702(1).

AR002487

We note that *Murphy v. State*, 124 P.3d 1198 (Okla. Crim. App. 2005), *cert. denied*, 123 S. Ct. 1795 (2003), held that an allotment was not "Indian country" under 18 U.S.C. § 1151(c) because the surface estate was wholly unrestricted and only $1/12^{th}$ of the mineral interest remained restricted. A federal court reviewed the state court's ruling and found that it was not contrary to Federal law. *Murphy v. Sirmons*, 497 F. Supp. 2d 1257 (E.D. Okla. 2007). The court reasoned that the particular parcel did not constitute Indian country because the Major Crimes Act concerned crimes that would occur on the surface of the land, not on the mineral interest of an Indian allotment and that the Indian country "characteristics [were] extinguished through conveyances to non-Indians[.]" *Id*. at 1292.

The Proposed Site is demonstrably different from the allotment at issue in *Murphy*. Here, an undivided one-half (½) surface and subsurface interest of the Proposed Site is subject to federal restriction. Further, no interest in the Proposed Site has ever been conveyed to non-Indians since allotment. As explained by the Department of the Interior, the Proposed Site has continuously been held by Creek citizens from the time of allotment to the present.[9] *See* May 18, 2011 Memorandum from Field Solicitor, Tulsa, to Acting Regional Director, Eastern Oklahoma Region, BIA, pp. 2-6 (attached to May 25, 2011 Letter from Acting Regional Director, Eastern Oklahoma Region to NIGC Staff Attorney). In this respect, the Proposed Site is somewhat similar to fractionated trust allotments on which the Quinault Tribe and Iowa Tribe of Oklahoma have been authorized to conduct gaming. The trust allotment on which the Quinault Tribe conducts gaming was continuously held by Indians with all but one of the eleven heirs holding interests in the parcel being enrolled Quinault tribal members. *See* September 25, 1996 Memorandum from Robert T. Anderson, Associate Solicitor, Division of Indian Affairs to Director, Indian Gaming Management Staff Regarding Sampson Johns Allotment as "Indian Land" under IGRA. The allotments on which the Iowa Tribe of Oklahoma is authorized to conduct gaming were originally allotted to Iowa tribal members with members of other tribes inheriting interests in the allotments. *See* January 7, 2010 Memorandum from Jeffrey Nelson, Senior Attorney, NIGC Office of General Counsel to George T. Skibine, Acting Chairman, National Indian Gaming Commission. While the trust parcels are not held in trust for a single tribe or tribal member, the parcels nonetheless qualify as "Indian lands" under IGRA.

Finally, the Department of the Interior treats the Proposed Site as restricted land for purposes of its federal supervision. For example, the BIA includes this parcel in its inventory of lands under its federal supervision and tracks its ownership status. Generally, the BIA regulates surface permitting, surface leasing, timber sales, and encumbrances on inherited restricted fee allotments of the Five Civilized Tribes, which include allotments of Muscogee Creek Nation citizens such as the parcel at issue. 25

---

[9] A ½ undivided interest in the Proposed Site became unrestricted through a conveyance from a Creek citizen to his brother. *See* May 18, 2011 Memorandum from Field Solicitor, Tulsa, to Acting Regional Director, Eastern Oklahoma Region, BIA, pp. 3-5, (attached to May 25, 2011 Letter from Acting Regional Director, Eastern Oklahoma Region to NIGC Staff Attorney).

9

AR002488

U.S.C. §§ 323, 324, 393a, 394, 395, 406, 415, 466, and 483a; 25 C.F.R. Parts 162, 163, 166, and 169; and 25 C.F.R. § 152.34.  The Office of the Special Trustee supervises funds derived from the sale or lease of such lands.  25 C.F.R. § 115.702.  Finally, the Tulsa Field Solicitor is charged with, and has exercised, certain statutory responsibilities in connection with conveyances of such lands under the Stigler Act, 61 Stat. 731.  *In the Matter of the Approval of the Prime Ground Lease Agreement of Marcella s. Giles and Wynema L. Capps, Lessors,* No. FB-2011-1 (Dist. Ct. Tulsa County, Okla. Aug. 17, 2011); *see also Walker v. United States*, 663 F. Supp. 258, 267 (N. D. Okla. 1987).

### C.  The Indian Tribe Must Have Legal Jurisdiction and Exercise Governmental Power Over the Land.

In order for a restricted allotment to constitute "Indian lands," the second requirement of 25 U.S.C. § 2703(4)(B) must be satisfied -- the Tribe must exercise governmental power over the restricted allotment. 25 U.S.C. § 2703(4)(B); 25 C.F.R. § 502.12(b).  Importantly, the Tenth Circuit requires that "before a sovereign may exercise governmental power over land, the sovereign, in its sovereign capacity, must have jurisdiction over that land." *Kansas v. United States*, 249 F.3d 1213, 1229 (10th Cir. 2001).  The Tenth Circuit's approach is consistent with IGRA's other sections providing that "an Indian tribe may engage in, or license and regulate class II [and III] gaming on Indian lands *within such tribe's jurisdiction*" if it satisfies other requirements of IGRA. 25 U.S.C. §§ 2710(d)(3)(A), 2710(b)(1) (emphasis added).  The courts have uniformly held that tribal jurisdiction is a threshold requirement to the exercise of governmental power as required by IGRA's definition of Indian lands.  *See e.g., Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 701-703 (1st Cir. 1994), *cert. denied*, 513 U.S. 919 (1994), *superseded by statute as stated in Narragansett Indian Tribe v. National Indian Gaming Commission*, 158 F.3d 1335 (D.C. Cir. 1998) ("In addition to having jurisdiction, a tribe must exercise governmental power in order to trigger [IGRA]"); *Miami Tribe of Oklahoma v. United States*, 5 F. Supp. 2d 1213, 1217-18 (D. Kan. 1998) (*Miami II*) (a tribe must have jurisdiction in order to exercise governmental power); *Miami Tribe of Oklahoma v. United States*, 927 F. Supp. 1419, 1423 (D. Kan. 1996) (*Miami I*) ("the NIGC implicitly decided that in order to exercise governmental power for purposes of 25 U.S.C. § 2703(4), a tribe must first have jurisdiction over the land").  Therefore, whether Kialegee possesses legal jurisdiction over the Proposed Site is a threshold question prior to considering whether Kialegee exercises government power over the Proposed Site.

Generally speaking, an Indian tribe possesses legal jurisdiction "over both their members and their territory." *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 207 (1987); *United States v. Mazurie*, 419 U.S. 544, 557 (1975) ("Indian tribes within 'Indian country' are a good deal more than 'private, voluntary organizations'").  It is well settled that a tribe retains primary jurisdiction over its "Indian country." *Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 458 (1995) (Tribe and its members not subject to state tax within Indian country); *Indian Country, U.S.A. v. Oklahoma*, 829 F.2d 967, 973 (10th Cir. 1987) ("Numerous cases confirm the principle

AR002489

that the Indian country classification is the benchmark for approaching the allocation of federal, tribal, and state authority with respect to Indians and Indian lands.").

Congress defined the term *Indian country* as: "(a) all land within the limits of any Indian reservation . . . , (b) all dependent Indian communities . . . , and (c) all Indian allotments, the Indian titles to which have not been extinguished . . . ." 18 U.S.C. § 1151. "This definition applies to questions of both criminal and civil jurisdiction." *Cabazon*, 480 U.S. at 253 n.5. The Office of General Counsel has opined that "[t]he context of IGRA's prescriptions as to jurisdiction—that land be within 'such tribe's jurisdiction' and ordinances adopted by 'the Indian tribe having jurisdiction over such lands'— indicates that Congress intended that gaming on any specific parcel of Indian lands not be conducted by any Indian tribe, but only by the specific tribe or tribes with jurisdiction over that land." *See* March 14, 2005 Memorandum from NIGC Attorney to NIGC Acting General Counsel re: White Earth Band of Chippewa Indians, p. 10; June 30, 2005 Letter from Acting General Counsel to Judith Kammins Albietz, Attorney for Buena Vista Rancheria of Me-Wuk Indians, p. 12; September 27, 2005 Letter from Acting General Counsel to Pyramid Lake Paiute Tribe Chairwoman, p. 5. Thus, the question is whether the Proposed Site is "Indian country" within the jurisdiction of the Kialegee Tribal Town.

Kialegee argues that it shares jurisdiction over the Proposed Site with Muscogee (Creek) Nation and other Creek Tribal Towns because it is a successor-in-interest to the Historic Creek Nation. *Jurisdiction Brief* at 8-12. Kialegee asserts that 25 U.S.C. § 476(f) "mandates that all federally recognized political successors to the Creek Nation Confederacy be treated equally." *Jurisdiction Brief* at 12.

The legal history of the Muscogee (Creek) Nation and the Creek tribal towns demonstrates that as a matter of federal law and pursuant to their respective constitutions, the Muscogee (Creek) Nation has legal jurisdiction over the Proposed Site. Prior to allotment, federal treaties vested title in the land to the Muscogee (Creek) Nation. Treaty of 1833, 7 Stat. 417, Art. II-IV ("The United States will grant a patent in fee simple to the Creek nation of Indians for the land assigned said nation by this treaty or convention . . . and the right thus guaranteed by the United States shall be continued to said tribe of Indians, so long as they shall exist as a nation, and continue to occupy the country hereby assigned them. . . . It is hereby mutually understood and agreed between the parties to this treaty, that the land assigned to the Muskogee Indians by the second article thereof, shall be taken and considered the property of the whole Muskogee or Creek nation…"); Treaty of 1856, 11 Stat. 699, Art. II, IV, XV; Treaty of 1866, 14 Stat. 785, Art. XII and XIV (reaffirming prior treaty provisions not inconsistent with the 1866 Treaty). The courts have affirmed that title to these lands vested in the Muscogee (Creek) Nation. *Indian Country, U.S.A. v. Oklahoma*, 829 F.2d 967, 971, 974 (10th Cir. 1987).

Consistent with this recognized title, a subsequent federal treaty conveyed title to part of the reservation from the Muskogee (Creek) Nation to the United States. Treaty of 1866, 14 Stat. 785, Art. III ("In compliance with the desire of the United States to locate other Indians and freedmen thereon, the Creeks hereby cede and convey to the United States, to be sold to and used as homes for such other civilized Indians as the United

11

States may choose to settle thereon, the west half of their entire domain, to be divided by a line running north and south; the eastern half of said Creek lands, being retained by them, shall, except as herein otherwise stipulated, be forever set apart as a home for said Creek Nation.") Later, federal law provided for allotments within the Creek Reservation to be made by the Principal Chief of the Muskogee (Creek) Nation. Act of March 1, 1901, 31 Stat. 861, §§ 3, 23 ("All lands of said tribe . . . shall be allotted among the citizens of the tribe by said commission . . .. Immediately after the ratification of this agreement by Congress and the tribe, the Secretary of the Interior shall furnish the principal chief with blank deeds necessary for all conveyances herein provided for, and the principal chief shall thereupon proceed to execute in due form and deliver to each citizen who has selected or may hereafter select his allotment, which is not contested, a deed conveying to him all right, title, and interest of the Creek Nation and of all other citizens in and to the lands embraced in his allotment certificate, and such other lands as may have been selected by him for equalization of his allotment."); *see also Harjo v. Kleppe*, 420 F. Supp. 1110, 1125 (D.D.C. 1976). The Muskogee (Creek) Nation continued to be the subject of federal legislation. Act of 1970, 84 Stat. 1091.

As shown above, every federal treaty or law relating to the Proposed Site recognizes the Muscogee (Creek) Nation's authority. This is not to say that the Muscogee (Creek) Nation has exclusive jurisdiction over all Indian lands within the former reservation. The Thlopthlocco Creek Tribal Town holds 19 parcels of trust land within the former Creek Reservation.[10]  Likewise, if land were taken into trust for the Kialegee Tribal Town within the former Creek Reservation, the Kialegee Tribal Town would have exclusive jurisdiction over such land.

---

[10] It appears that the Department of the Interior had originally contemplated that the reorganized Tribal Towns would be assigned separate parcels under the OIWA. *Alabama-Quassarte Tribal Town v. United States*, 2010 U.S. Dist. LEXIS 100450 at *7 (E.D. Okla., September 21, 2010)(finding correspondence from Interior reflects an intent by DOI to purchase land for use of the Alabama-Quassarte Tribal Town and that the DOI's Land Field Agent's recommendation was "to provide these lands to 'the landless Indians of the Alabama-Quassarte Tribal Town.'"); *Muscogee (Creek) Nation v. Muskogee Area Director*, 35 IBIA 27 (2000) (finding that "[t]he materials before the Board indicate that the lands in the Hanna Project were initially intended to benefit the Kialegee Tribal Town, and that the lands in the Wetumka Project were initially intended to benefit the Alabama-Quassarte Tribal Town," but that title to all of the lands at issue was taken in trust for the Creek Nation until Interior assigned the land to a tribe or band under OIWA). One Tribal Town, the Thlopthlocco Tribal Town, has trust land within the boundaries of the former Creek reservation. *Crowe & Dunlevy, P.C., v. Stidham*, 640 F.3d 1140, 1143 (10th Cir. 2011). As to those trust lands, it is clear that the United States has set them aside for that specific tribe, confirming jurisdiction in that tribe suitable for purposes of gaming regulation as contemplated by the Secretary. *See* June 24, 2009 Decision of the Assistant Secretary—Indian Affairs in United Keetoowah Band of Cherokee Indians v. Director, Eastern Oklahoma Region at 6; September 10, 2010 Decision of the Assistant Secretary—Indian Affairs in United Keetoowah Band of Cherokee Indians v. Director, Eastern Oklahoma Region at 3 n.1.

AR002491

The title history of the Proposed Site further demonstrates Muscogee (Creek) Nation jurisdiction and an absence of Kialegee jurisdiction. The Proposed Site is part of a larger Indian allotment that was allotted in 1903 pursuant to federal law from the Creek Nation to Tyler Burgess, a member of the Lockapoka Tribal Town[11] and also a citizen of the Muscogee (Creek) Nation. *See Allotment Deed* (August 6, 1903) and *Creek Nation Census Card No. 1320*.

The Proposed Site is within the territory described in federal treaties with the Muscogee (Creek) Nation and in both the 1867 Muskogee Nation Constitution and laws and the present Constitution of the Muscogee (Creek) Nation approved by the Department of the Interior. *See* 1867 Constitution, Art. IV, § 1 ("The Muskogee Nation shall be divided into six (6) districts, and each district shall be furnished with a judge, a prosecuting attorney and a company of light horsemen."); 1979 Constitution, Art I, § 2 ("The political jurisdiction of The Muscogee (Creek) Nation shall be as it geographically appeared in 1900 which is based upon those Treaties entered into by the Muscogee (Creek) Nation and the United States of America[.]). Both Constitutions, including the 1979 Secretarial approved Constitution, encompass the Proposed Site within its territory. Finally, the Proposed Site is currently held by Muscogee (Creek) Nation members, subject to restrictions against alienation. The Kialegee Tribe has not submitted any evidence that the land was ever owned by a member of the Kialegee Tribal Town or that federal or Muscogee (Creek) law establishes Kialegee jurisdiction over the Proposed Site.

Kialegee asserts that 25 U.S.C. § 476(f) mandates a finding that the "Kialegee has jurisdiction over its predecessor's reservation, including the [Proposed Site]." *Jurisdiction Brief* at 12. The Assistant Secretary - Indian Affairs recently explained that 25 U.S.C. § 476(f) prohibits agencies of the United States from finding that a tribe "lacks territorial jurisdiction while other tribes have territorial jurisdiction." *See* June 24, 2009 Decision of the Assistant Secretary - Indian Affairs in United Keetoowah Band of Cherokee Indians v. Director, Eastern Oklahoma Region at 6. As discussed above, the specific treaties, federal legislation, approved tribal constitutions and federal court decisions establish and define the rights of both the Kialegee Tribe and the Muscogee (Creek) Nation. This legal analysis does not conclude that Kialegee Tribe lacks the authority to exercise territorial jurisdiction over its tribal lands that every other tribe possesses as a matter of federal law. Rather, consistent with the Assistant Secretary's 2009 decision, the Kialegee Tribe would have "exclusive jurisdiction over land that the United States holds in trust" for the Kialegee Tribe. *Id.* at 7.

---

[11] Lockapoka Tribal Town is related to the Tulsa Tribal Town near what is now Tulsa, Oklahoma. Oppler 1937, p. 38. Creek Nation Indian Roll, Card No. 1320, Tyler Burgess (recording Mr. Burgess' enrollment as "Lockapoka" and cross-referencing Lockapoka Pay Roll of 1895). Tyler Burgess's Enrollment Card identified him in Broken Arrow, Oklahoma, to the Southeast of Tulsa, in December 1899. Creek Nation Indian Roll, Card No. 1320, Tyler Burgess.

AR002492

## III. Conclusion

For all of the above reasons, it is our opinion that the Proposed Site is Indian land, but that the Proposed Site is not within the Kialegee Tribal Town's jurisdiction because the Kialegee Tribe has not demonstrated that it has legal jurisdiction. Because it has not demonstrated legal jurisdiction, we need not reach the issue of whether Kialegee exercises government control over the Proposed Site. The DOI, Office of the Solicitor, concurs with this opinion.

AR002493

# Attachment

AR002494



Kialegee Tribal Town
P.O. Box 332
Wetumka, Oklahoma 74883
Tiger Hobia, Town King
Thomas Givens, 1st Warrior

April 11, 2011

Honorable Tracy Stevens
Chair National Indian Gaming Commission
1441 L Street, N.W., Suite 9100
Washington, D.C. 20005

### RE: One Hundred Twenty (120) Day Notice Letter of Intent to Issue a New Facility License

Dear Madam Chair:

I serve as Mekko of the Kialegee Tribal Town (Tribe) and this correspondence is written in that capacity.

The Tribe has determined that it is in the best interest of the Kialegee Tribal Town to pursue a certain economic development venture which will specifically include gaming pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. § 2701, et seq. (IGRA). In that vein, this letter will serve as the Tribe's formal notification to you, pursuant to 25 U.S.C. § 559.2, that the Kialegee Tribal Town intends to license a new gaming facility on restricted land located within the former reservation of the Creek Nation and currently under the governmental control and jurisdiction of the Kialegee Tribal Town.

The Land is a portion of the original allotment of Tyler Burgess, full-blood Creek allottee, Roll #4226 which was allotted to him as restricted fee land on August 6, 1903, pursuant to the Act of Congress of March 1, 1901, "Original Creek Agreement" (31 Stat. 861). The land remains in restricted fee status.

The physical address and legal description of the property are set forth below.

<u>Physical Address</u>: bounded in part by Florence Street (South 111th Street East), Olive Avenue (South 129th East Avenue) and Creek Turnpike, Broken Arrow, Oklahoma

## Legal Description

A TRACT OF LAND THAT IS IN THE NORTHEAST QUARTER OF THE NORTHEAST QUARTER (NE/4 NE/4) OF SECTION 32, TOWNSHIP 18 NORTH, RANGE 14 EAST OF THE INDIAN BASE AND MERIDIAN, CITY OF BROKEN

AR002495

ARROW, TULSA COUNTY, STATE OF OKLAHOMA, MORE PARTICULARLY
DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEAST CORNER OF THE NORTHEAST QUARTER
OF SAID SECTION 32; THENCE S 89° 54' 24" W, ALONG THE NORTH LINE OF
THE NORTHEAST QUARTER (NE/4) OF SAID SECTION 32, A DISTANCE OF
675.00 FEET; THENCE S 00° 05' 36" E A DISTANCE OF 565.00 FEET; THENCE S
20° 12' 34" W A DISTANCE OF 559.06 FEET, TO THE NORTH LINE OF A TRACT
OF LAND DESCRIBED AS THE THIRD PART OF PARCEL NO. CR336, IN THE
DISTRICT COURT FINAL ORDER RECORDED IN BOOK 6269 AT PAGE 228 IN
THE OFFICE OF THE TULSA COUNTY CLERK; THENCE S 59° 01' 29" E, ALONG
THE NORTH LINE OF SAID PARCEL, A DISTANCE OF 215.55 FEET; THENCE S
79° 35'22" E, CONTINUING ALONG THE NORTH LINE OF SAID PARCEL, A
DISTANCE OF 245.38 FEET, TO THE EAST CORNER OF SAID PARCEL; THENCE
N 89° 54' 24" E A DISTANCE OF 375.04 FEET, TO THE SOUTHWEST CORNER OF
A TRACT OF LAND DESCRIBED AS THE FIRST PART OF PARCEL NO. CR336,
IN THE DISTRICT COURT FINAL ORDER RECORDED IN BOOK 6269 AT PAGE
228 IN THE OFFICE OF THE TULSA COUNTY CLERK; THENCE N 03° 54' 11" E,
ALONG THE WEST LINE OF SAID PARCEL, A DISTANCE OF 520.42 FEET, TO
THE NORTHWEST CORNER OF SAID PARCEL; THENCE S 89° 57' 12" E, ALONG
THE NORTH LINE OF SAID PARCEL, A DISTANCE OF 30.00 FEET, TO THE
NORTHEAST CORNER OF SAID PARCEL, SAID CORNER BEING A POINT ON
THE EAST LINE OF THE NORTHEAST QUARTER (NE/4)OF SAID SECTION 32;
THENCE N 00° 02' 48" E, ALONG THE EAST LINE OF THE NORTHEAST
QUARTER (NE/4) OF SAID SECTION 32, A DISTANCE OF 726.22 FEET, TO THE
NORTHEAST CORNER OF THE NORTHEAST QUARTER (NE/4) OF SAID
SECTION 32 AND THE POINT OF BEGINNING.

SAID TRACT CONTAINS 871,207.043 SQUARE FEET / 20.000 ACRES MORE OR LESS. THE
BASIS OF BEARINGS FOR THIS LEGAL DESCRIPTION IS THE NORTH LINE OF THE
NORTHEAST QUARTER OF SAID SECTION 32, THAT BEING S 89° 54' 24" W.

The allotment owners are Marcela Giles and Wynema Capps who are sisters and direct descendants of
Tyler Burgess.  The property has been continuously owned by a member of the Burgess family and
remains in restricted fee status.  A copy of the Deed is attached as Exhibit "A".

Very Truly Yours,

Tiger Hobia, Mekko
Kialegee Tribal Town

attachment

AR002496

NATIONAL
INDIAN
GAMING
COMMISSION

FEB - 1 1996

Hans Walker, Jr.
1819 H. Street, N.W.
Suite 800
Washington, D.C.   20006

Dear Mr. Walker:

This responds to the November 6, 1995, appeal of the decision of the Chairman of the National Indian Gaming Commission (NIGC) disapproving the Native Village of Barrow's tribal gaming ordinance 95-01.   We have concluded that the Native Village of Barrow (Village) does not have Indian lands on which it can conduct tribal gaming.   Therefore, the Village's appeal is denied.

### BACKGROUND

On January 11, 1995, the Native Village of Barrow submitted for approval a tribal gaming ordinance.   The Village's submission included a 12 month lease, from January 1, 1995, to January 1, 1996, between the Native Village of Barrow and Arnold Brower, Sr. The lease was not signed by the Village.   It was not approved by the Bureau of Indian Affairs (BIA).   Nothing in the record indicates any kind of tribal approval of the lease.  A second lease between Joshua Nashaknik and the Village is signed by Nashaknik and Arnold Brower.   The lease recites that it is for 12 months but the dates are listed as November 11, 1994, through November 11, 1999. It was also not approved by the BIA and there is no indication of tribal approval of the lease.

The third enclosure to the January 11 submission was the Constitution and By-Laws of the Native Village of Barrow.   Article 3, Section 1 provides:

> Choice of Governing Body-At a general meeting following the acceptance of this Constitution, the Village membership shall decide what kind of governing body it wishes to set up to speak and act for the Village and to use the powers of the Village.   If there is a governing body already set up in the Village, at the time this Constitution is accepted, the membership may decide to keep that governing body, or it may choose a new form of government.

AR002500

Section 4 of Article 3 provides:

Record and Report of Village Decisions-A record shall be made and kept of all the rules made under sections 1, 2, and 3 of this Article, which record shall be called the Record of Organization of the Native Village of Barrow. Copies of this record shall be given to the teacher or other representative of the Office of Indian Affairs serving the Village.  There shall be put in the record the names of all persons chosen to be officers of the Village.

No copy of a Record of Organization was provided.

The powers of the Village are described in Article 4, Section 1, of the Constitution as follows:

To do all things for the common good which it has done or has had the right to do in the past and which are not against Federal law and such Territorial law as may apply.
To deal with the Federal and Territorial Governments on matters which interest the Village, to stop any giving or taking away of Village lands or other property without its consent, and to get legal aid, as set forth in the act of June 18, 1934.
To control the use by members or nonmembers of any reserve set aside by the Federal Government for the Village and to keep order in the reserve.
To guard and to foster native life, arts and possessions and native customs not against law.

In an April 10, 1995, memorandum, the Acting Associate Solicitor, Division of Indian Affairs, Department of the Interior, stated that:

whether Barrow exercises governmental power over the townsite allotment is unclear.  An assertion of tribal jurisdiction over individual restricted lots would be doubtful if there were no clear tribal nexus to the individual restricted lands.  The village has the burden of establishing that it satisfies the statutory requirements, including the fact that it exercises governmental authority over the lot.  The exercise of governmental authority can not be inferred merely from the fact that the lot is within the village.

The Acting Associate Solicitor also contacted the Office of the Regional Solicitor in Alaska and the BIA.  Neither office could provide further information showing that the Village exercises governmental power over the land in question.  The Regional Solicitor's Office further stated that the Village does not own any trust or restricted land.  As a result, the Acting Associate

Solicitor concluded that the land in question is held by an
individual and subject to restriction by the United States against
alienation but that he could not conclude, based on the information
before him, that the Village exercises governmental power over the
land.

Based on the Associate Solicitor's determination that the Village
did not establish that it held Indian lands on which it could
conduct gaming and two other technical requirements, the Chairman
of the National Indian Gaming Commission disapproved the Village's
gaming ordinance on April 11, 1995.

On July 7, 1995, the Village submitted an amended gaming ordinance
which cured the two technical problems mentioned above.   The
Village also submitted evidence which the Village alleged
establishes it exercises governmental authorities over the two
leased lots which appear to be a townsite lot and a Native
allotment.   The evidence included 1) a Memorandum of Agreement
Between the Ukpeagvik Inupiat Corporation and Native Village of
Barrow dated June 23, 1994; 2) Graphs establishing annual
expenditures on subsistence activities and household consumption of
subsistence foods; 3) a May 30, 1995, letter to Hans Walker from
Price Leavitt, Grants Administrator listing services which are
provided including Real Estate and Wildlife Management; 4) Native
Village of Barrow IRA Tribal Government Resolution 95-23, Dog
Control Law; 5) Native Village of Barrow IRA Tribal Government
Resolution 95-24, All Terrain Vehicle and Snowmobile Law; 6) Public
Land Order 324; and  7) Chronological Outline of Events Relating to
the Proposed Reservation for the Native Village of Barrow Alaska.

On October 5, 1995, the NIGC Chairman disapproved the Village's
ordinance, once again relying on the Associate Solicitor's April 10
memorandum.     There was no reference to the seven documents
submitted by the Village or to the Village's accompanying
memorandum.

On November 6, 1995, the Village appealed the Chairman's
disapproval of the Village's gaming ordinance.  The Village alleges
that the NIGC failed to consider the new evidence it provided with
its July 7, 1995, submission of a new gaming ordinance.  The appeal
contained two additional documents, a Barrow Community Profile and
an October 30, 1995, Affidavit of Charles Hopson with two deeds
attached (These deeds are not for the lands which were leased).
The Barrow Community Profile indicates that the City of Barrow is
incorporated under state law as a first class city and that it has
a municipal government consisting of a city council and mayor,
Donald Long, as well as other city offices.

The Associate Solicitor, Division of Indian Affairs, was once again
contacted for an opinion on whether the Village had established
that there are Indian lands on which the Village could game.
Because the Department of the Interior has the special expertise

3

and information necessary to make such decisions, the NIGC traditionally defers to the Department on the question of the existence of Indian lands. However, we were informally advised that the Department would not provide the NIGC with any further assistance on the question of Indian lands held by the Village.

ANALYSIS

The Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 (1988) (IGRA) requires that Indian gaming be conducted on "Indian lands." IGRA defines "Indian lands" as:

> (A) all lands within the limits of any Indian reservation; and

> (B) any land title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation <u>and over which an Indian tribe exercises governmental power</u>.

25 U.S.C. § 2703 (4) (1994 Supp.) (emphasis added).

The NIGC traditionally defers to the expertise of the Department of the Interior on the existence of Indian lands. Thus, we are guided by the Acting Associate's April 10, 1995, legal opinion and the opinion of the Solicitor of the Department of the Interior, M-36975, which discusses the extent of tribal jurisdiction over Alaska Native allotments and individual Native townsite lots. (The Department of the Interior is bound by the published opinion of the Solicitor unless overturned by the Solicitor, Deputy Secretary, or the Secretary. 209 DM 3.2A(11).)

The Solicitor, in his opinion, concludes that the Native Villages in Alaska will not be able to establish that they exercise jurisdiction over Alaska Native allotments and individual townsite lots. He states that:

> Most allotments in Alaska have been issued pursuant to the Alaska Native Allotment Act of 1906, although there are a few allotments issued under the General Allotment Act. Although Alaska Native allotments are held in fee by the allottee subject to restrictions against alienation, we have already noted that the distinction between restricted fee and trust allotments is not significant for our purposes.

> A number of facts, however, do distinguish Alaska Native allotments from most allotments in the contiguous 48. First, the statute does not make tribal membership a criteria for receiving an allotment, probably because in

4

AR002503

1906, Congress was not considering the Alaska Native allotments in a tribal context. This makes Alaska Native allotments more like Indian homestead allotments, rather than those issued pursuant to the General Allotment Act or other tribe-specific allotment acts. Second, Alaska Native allotments were not carved out of any reservation. While we consider this factor insignificant for <u>federal</u> jurisdictional purposes, we believe it has at least some significance in determining questions of <u>tribal</u> authority. Third, the statute specifically provides that the allotment "shall be deemed the homestead of the allottee and his heirs." Again, while not a controlling factor as such, the language makes the Alaska Native Allotment Act appear more similar to a general Indian homestead act rather than a tribal or reservation related allotment act.

We wish to make clear that Alaska Native allotments, like other Indian allotments, remain under federal superintendency and subject to federal protection while in restricted status. Thus, we conclude that Congress has not divested the Federal government of its jurisdictional authority over such lands, and they are Indian country.

However, after examining the statute and circumstances related to Alaska allotments, we are not convinced that any specific villages or groups can claim jurisdictional authority over allotment parcels. As we noted above, particularly in the absence of a tribal territorial base (e.g., a reservation), there is little or no basis for an Alaska village claiming territorial jurisdiction over an Alaska Native allotment.

One other category of individual Native landholdings in restricted status is that of Native restricted fee townsite lots. It is our understanding that there are over 3,800 of these lots. To a limited extent, deeds to individual townsite lots are still being issued to Natives subject to statutory restrictions on alienation, pursuant to the former 43 U.S.C. § 733. <u>In People of South Naknek v. Bristol Bay Borough</u>, 466 F. Supp. 870 (D. Alaska 1979), the court held that for purposes of federal court jurisdiction, the restricted Native townsite lots have the same status as allotments.

Our analysis and conclusions concerning potential tribal jurisdiction over these lots are the same as those set forth above with respect to Native allotments, with one possible exception. If individual restricted townsite lots properly are treated as allotments for purposes of section 1151, they would be Indian country. Those

5

AR002504

restricted lots located in one of the 27 Native villages receiving fee title to unoccupied townsite lots could conceivably be affected if the village qualifies as a tribe and if the area qualifies as a dependent Indian community.  Even so, an assertion of tribal jurisdiction over individual restricted lots would be doubtful if there were no clear tribal nexus to the individual restricted lands.

Governmental Jurisdiction of Alaska Native Villages Over Lands and Members, M-36975, Sol. Op. 110, pp. 128-130 (January 11, 1993).

Based on the Solicitor's opinion, the Acting Associate Solicitor concluded that the land in question was not Indian land because the Village does not have jurisdiction over the land.  We defer to that conclusion.

Furthermore, to the extent that the Village claims that it is in fact exercising present day governmental powers over such land, we conclude that the Village has not provided sufficient evidence to establish its exercise of governmental powers.   The Village provided additional documentation with its July 7, 1995, submission and its November 6, 1995, appeal.  This documentation essentially purports to establish what authorities are presently exercised over the lands.   It completely fails to establish any ongoing power which was exercised over time.  It also fails to establish any clear present day exercise of authority over the land.

The Community Profile establishes that Barrow is a municipality incorporated under the auspices of the State of Alaska with its own city government.   Such city governments are typically not related in any way to tribal governments and nothing in the documentation indicates otherwise.  The offices of the mayor and city council are entities separate from the Village government.   The municipality apparently provides the police and fire services to the lands within the city limits, and the Planning and Zoning Commission operates under the North Slope Borough.

The May 30, 1995, letter, which references real estate and wildlife management services, provides no description of such services and fails to establish that any such services are related to the restricted lots in question.   The only reference to any direct dealings with lands is the Affidavit of Charles Hopson which indicates that he keeps the land records.  This function, however, is a Federal Government function which was contracted to the Village presumably to keep track of land records over which the Federal Government exercises authority.  It fails to establish that the Village exercises independent authority.

A June 23, 1995, Memorandum of Agreement (MOA) between the Ukpeagvik Inupiat Corporation and the Village similarly fails to establish any independent tribal authority over lands.   The MOA

6

AR002505

specifically limits any kind of tribal authority to limited hunting, fishing and trapping jurisdiction over village corporate lands for one year. This agreement has expired, and the village corporate lands are not the same lands as the restricted lots.

The Village also passed two resolutions, Resolution 95-23: Dog Control Law, and Resolution 95-24: All Terrain Vehicle and Snowmobile Law. While providing some limited evidence of asserted jurisdiction over the lands, the resolution numbers indicate that they were only just passed in 1995 which weighs against their probative value as evidence of the Village's exercise of governmental power.

The two leases provide no evidence supporting a determination that the Village exercises governmental powers. They were not properly entered into. One was not signed by any tribal representative. Neither are supported by tribal resolutions or some other indication that they were approved by the Village's governing body. One has expired while the other may have expired depending on whether you rely on the lease language indicating that the term of the lease is for 12 months or until 1999. Neither was approved by the BIA.

Finally, the Village's constitutional authority over lands appears limited. There are two references to the Village's land based authority. Article 4, Section 1, authorizes the Village to stop giving and taking away of Village lands or other property without its consent, a power which does not appear relevant here. It further authorizes the tribal government to control the use of any reserve set aside by the Federal government and to keep order over the reserve. No reserve was ever set aside for the Village. Therefore, this authority was never implemented. Consequently, the people of the Village, through their constitutional delegation of authority, did not grant expansive tribal authority over their individual lands.

For all of the forgoing reasons, the Village's appeal is denied.


_____
Harold A. Monteau, Chairman


_____
Tom Foley, Commissioner


_____
Philip N. Hogen, Commissioner


7



# United States Department of the Interior

OFFICE OF THE SOLICITOR

SEP 2 5 1996     In reply, please address to:
Main Interior, Room 6456

Memorandum

To:          Director, Indian Gaming Management Staff

From:        Robert T. Anderson
             Associate Solicitor, Division of Indian Affairs

Subject:     Sampson Johns Allotment as "Indian Land" under IGRA.

Your office has requested an opinion as to whether the Quinault Indian Nation may conduct Class III gaming pursuant to the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701-21 (1988), on a parcel of land known as the Sampson Johns allotment. The Tribe has submitted a Class III gaming compact between the Tribe and the State of Washington which contemplates gaming upon the Tribe's reservation and upon a specific parcel of trust land known as the Sampson Johns allotment.

Pursuant to IGRA, the Secretary must approve a Tribal-State compact in order for the Tribe to legally conduct Class III gaming. As part of the Quinault Indian Nation-Washington State gaming compact, the Tribe and the State assert that publication in the Federal Register of the Secretary's approval of their compact constitutes a finding by the Department of the Interior that the Sampson Johns allotment is "Indian lands" which may be used for tribal gaming under IGRA. Prior to approving the compact, therefore, the Department of the Interior must determine whether the allotment is "Indian land[]" under IGRA.

Based on a review of the relevant evidence and applicable law, we conclude that the Quinault Indian Nation may conduct gaming on the Sampson Johns property because the land is "Indian land[]" as defined by IGRA, *i.e.* the land is trust land owned by Quinault tribal members and the Quinault Indian Nation exercises governmental power over the property. Therefore the Tribal-State gaming compact, including its provision regarding the Department of the Interior's finding that the intended gaming site is "Indian land[]" under IGRA, may be legally approved.

## Background

The Quinault Indian Nation (hereinafter Quinault or Tribe) intends to locate their proposed gaming enterprise on an Indian allotment that the Tribe believes is within its jurisdictional area

1

TPMS-WSC
RECEIVE
9-27-96

AR002507

and over which the Quinault Indian Nation exercises governmental authority. The Shoalwater Bay Tribe of Indians opposes the Quinault Tribe's proposed gaming site because the Shoalwater Bay Tribe recently purchased a neighboring parcel of land in fee simple, which it intends to use for gaming.[1] Shoalwater Bay has submitted a request to the Secretary to investigate Quinault's claim that it exercises governmental power over the allotment. See Material dated July 11, 1996 from the Shoalwater Bay Indian Tribe to Secretary Babbitt (On File with Our Office).

The proposed gaming site is part of lands allotted to Sampson Johns, an enrolled Quinault Indian, on September 7, 1900 out of the public domain.[2] See Trust Patent of February 5, 1916 (on file with our office). The land has been continuously held in trust since 1916 for the beneficial owners of the land and is currently held in trust by the United States for a number of Quinault tribal members, heirs and successors of Sampson Johns.[3] The specific parcel of land intended for gaming is recorded with the Bureau of Indian Affairs as allotment 130-1755-D. The parcel is owned by Emily J. Sherwood, an enrolled Quinault Indian.

The Quinault Tribe has submitted evidence to support its assertion that it exercises governmental power over the parcel in question. According to documents submitted by the Tribe, the land is located approximately twelve miles from the southern border of the Quinault Indian Reservation and is near or within the usual and accustomed hunting, fishing, and gathering territories of the Quinault Tribe. See Treaty with the Quinaielt, Etc., 1855, 12 Stat. 971 (1855).

The Tribe has also submitted sworn statements from Douglas Washburn and Ray Knutzen, Quinault Indian Nation Police officers, stating that tribal police have policed the Sampson Johns

---

[1] On August 14, 1992 the Sampson Johns allotment was subdivided into four separate tracts. See Letter of December 16, 1992 from the Acting Assistant Area Director, Portland Area Office, Bureau of Indian Affairs to the Superintendent, Olympic Peninsula Agency, Bureau of Indian Affairs (on file in our office). On January 17, 1996 the Bureau of Indian Affairs approved the sale of one of the four parcels consisting of 56.240 acres to the Shoalwater Bay Indian Tribe. Title to this parcel thus reverted to fee simple. See Deed of January 11th, 1996, Recorded on February 2, 1996 under No. 96 04172 (Shoalwater Bay Tribe Submission Appendix G).

[2] The United States mistakenly patented the allotment to Mr. Johns in fee simple, but on February 5, 1916 corrected the mistake by issuing a trust patent to Mr. Johns which replaced (cancelled) the fee simple patent. Trust Patent of February 5, 1916.

[3] Of the eleven heirs of Sampson Johns who owned an undivided interest in the Sampson Johns allotment, ten are enrolled Quinault tribal members. See Certification of Degree of Indian Blood for Verdi Charlene Smith Mcloud, Geneva L. Smith Underwood, Hazel Strom Smith, Donald Eugene Strom, Leon C. Strom, Theodore Strom II, Theodore Lester Strom, Emily Johns Sherwood, Vance Johns, Jr., Jason Strom (On File with Our Office).

2

allotment and have periodically responded to requests for police assistance on the land. Declaration of Douglas Washburn, Quinault Indian Nation Police Officer (January 3, 1995); Declaration of Ray Knutzen, Quinault Indian Nation Police Chief (January 2, 1995) (On File with Our Office).

The City of Ocean Shores, Washington, has written a letter indicating that among the local residents of the city, the Sampson Johns allotment is held to be Quinault land subject to the Nation's jurisdiction.  The City indicates that primary jurisdiction on these lands is the responsibility of the Quinault Indian Nation.  The City expects that the Tribe will have regulatory and enforcement responsibility over a tribal casino located on the trust land.  Letter of August 20, 1996 to the Department of the Interior, from Michael L. Pence, City Manager (On File with Our Office).  Additionally, the County of Grays Harbor has written a letter indicating that the land is considered territory that has been historically occupied by the Quinault Tribe and held in trust for the benefit of Quinault members for many years.  The County states that the property is not taxed by Grays Harbor County and the Tribe has primary jurisdiction. See Letter of August 23, 1996 from Grays Harbor County Board of Commissioners (On file with Our Office).

The Constitution of the Quinault Indian Nation, adopted March 22, 1975, extends the jurisdiction and governmental power of the Tribe to:

> (a) all lands, resources, and waters reserved to the Quinault Nation pursuant to the Treaty of Olympia, 12 Stat. 971, established by Executive Order dated November 4, 1873 (I Kapp. 923) and to all persons acting within the boundaries of those reserved lands or waters; (b) all usual and accustomed fishing grounds, open and unclaimed lands reserved for hunting and gatherings and other lands necessary for the appropriate use of fishing and hunting grounds . . . (c) all lands or waters held by the United States in trust or reserved by the Quinault Nation for the use and benefit of any member of the Quinault Tribe when such lands or waters are not within the boundaries of an established Indian Reservation.

See Article I, Constitution of the Quinault Indian Nation.

The Tribe has submitted a lease document between the manager of a "flea market" on the property and a flea-market vendor.  The lease agreement provides that enforcement of the lease provisions will be handled by the Quinault tribal authorities.  See Lease between Charing Enterprise and David B. Velasquez-Manager at 3, 6, (October 30, 1995)(On File with Our Office). This document indicates that the occupants of the land who are parties to the lease have consented to Quinault tribal jurisdiction for enforcement of the Lease.

## Legal Analysis

Indian gaming activities are regulated pursuant to the Indian Gaming Regulatory Act.  IGRA allows Class II and III gaming on Indian lands which it defines as:

AR002509

(A)     all lands within the limits of any Indian reservation; and

(B)     any lands title to which is either held in trust by the United States for the
benefit of any Indian tribe or individual or held by any Indian tribe or
individual subject to restriction by the United States against alienation and
over which an Indian tribe exercises governmental power.

25 U.S.C. § 2703(4).[4]   While the Sampson Johns allotment is not within the Quinault
reservation, it is held in trust by the United States for Quinault tribal members.  Thus, the land
is "Indian lands" if the Quinault Tribe exercises governmental authority over it.  IGRA does not
define the circumstances under which a tribe will be considered to exercise governmental power
over trust land.  The legislative history of the Act likewise provides no guidance on this issue.

Tribal jurisdiction is generally limited to Indian country.  In 1948, Congress defined "Indian
country" as:

> (a) all land within the limits of any Indian reservation under the jurisdiction of the
> United States Government, notwithstanding the issuance of any patent, and,
> including rights-of-way running through the reservation, (b) all dependent Indian
> communities within the borders of the United States whether within the original
> or subsequently acquired territory thereof, and whether within or without the
> limits of a state, and (c) all Indian allotments, the Indian titles to which have not
> been extinguished, including rights-of-way running through the same.

18 U.S.C. § 1151 (emphasis added).  Congress has employed the definition of Indian country
in numerous statutes.  See e.g. 16 U.S.C. §§ 3371(c) (Indian country as defined in 18 U.S.C.
1151); 3377(c)(preserving tribal jurisdiction on Indian reservations); 25 U.S.C. § 450h (a)(3)
(Secretary may acquire land in trust within a tribe's reservation); 25 U.S.C. § 1322 (a) (State
may assume jurisdiction in Indian country with a Tribe's consent); 25 U.S.C. § 1903 (10)
(Reservation in Indian Child Welfare Act means Indian country as defined in 18 U.S.C. 1151
and lands which are held in trust by the United States for a Tribe or individual Indian); 25
U.S.C. § 3202 (8)(Indian country has the meaning given to the term by 18 U.S.C. 1151).
However, IGRA's use of the phrase "Indian lands" rather than "Indian country" indicates that
IGRA's jurisdictional reach is not precisely equivalent to statutes which refer to "Indian
Country."

Indian tribes possess sovereignty over "their members and their territory."  Montana v. United
States, 450 U.S. 544 (1981).  There is a presumption in favor of tribal jurisdiction over all land

---

[4] Section 20 of IGRA imposes restrictions on the ability of Indian tribes to conduct gaming
on property acquired after October 17, 1988.  See 25 U.S.C. § 2719(b).  However, this
provision is inapplicable to this case because the Sampson Johns trust status predates IGRA.

AR002510

within tribal reservations, over dependent Indian communities and lands held in trust for a tribe or its members. See Indian Country, U.S.A., Inc. v. Oklahoma 829 F.2d 967 (10th Cir. 1987), cert. denied, sub nom., Oklahoma Tax Com. v. Muscogee (Creek) Nation, 487 U.S. 1218 (1988); see also DeCoteau v. District County Court for Tenth Judicial Dist., 420 U.S. 425 (1975); see generally F. Cohen, HANDBOOK OF FEDERAL INDIAN LAW at 229-59 (1982 ed.). Under certain narrow circumstances, however, there may be Indian country over which no tribe exercises governmental power. In those circumstances, the area would not be considered "Indian lands" as defined in the IGRA.

Tribal jurisdiction may be lacking when the land in question is not owned or occupied by tribal members and is far removed from the tribal community. See F. Cohen, HANDBOOK OF FEDERAL INDIAN LAW at 346-48 (1982 ed.)(basis for tribal jurisdiction over allotments outside of reservations is tribal membership, or that allotments are clustered and thus part of a dependent Indian community); Cf., e.g., Oklahoma Tax Comm'n v. Citizen Band of Potawatomi Indians, 498 U.S. 505, 511 (1991)(usual tax immunities apply to tribal trust land within original reservation boundaries); Oklahoma Tax Com'n v. Sac and Fox Nation, 113 S. Ct. 1985, 1991 (1993). Assertion of tribal jurisdiction over individual trust parcels, however, has been recognized when there is a tribal nexus to the lands or a political relationship with the owners of the lands. Mustang Production Co. v. Harrison, et al., 1996 WL 477560 (10th Cir. 1996); see also, Wilkinson, AMERICAN INDIANS, TIME, AND THE LAW at 87-93 (1987).[5]

The Sampson Johns allotment identified in the Quinault compact is not located within the exterior boundaries of the Tribe's reservation, but was held in trust prior to the enactment of IGRA on October 17, 1988. In order for the Tribe to conduct gaming on the lands, the Tribe must show that it falls within IGRA's definition of Indian lands, i.e., land that is held in trust by the United States for a tribe or individual and the Tribe exercises governmental power over the land. 25 U.S.C. § 2703(4)(B).

### Exercise of Tribal Jurisdiction

In Cheyenne River Sioux Tribe v. South Dakota, 830 F.Supp. 523 (1993), aff'd, 3 F.3d 273

---

[5] The Shoalwater Bay Indian Tribe notes that in Miami Tribe v. United States, 927 F. Supp. 1419 (1996), the Miami Tribe was unable to establish jurisdiction over restricted Indian land because, among other reasons, the record was devoid of evidence that the owners of the land had consented to jurisdiction. Id. at 1428, citing Duro v. Reina, 495 U.S. 676 (1990)("A tribe's ... authority comes from the consent of its members."). However, Miami can be distinguished from the present inquiry because in Miami the beneficial owners of the restricted Indian allotment were not members of the Miami Tribe while the beneficial owners in this instance are members of the Quinault Indian Nation and subject to the tribe's jurisdiction as evidenced by the Tribal Constitution. In addition, the land at issue in Miami was located in an area from which the Tribe had been removed and disclaimed jurisdiction.

5

AR002511

(8th Cir. 1993), the district court indicated that the determination regarding tribal jurisdiction would require evidence regarding:

> (1) whether the areas are developed; (2) whether tribal members reside in those areas; (3) whether any governmental services are provided and by whom; (4) whether law enforcement on the lands in question is provided by the Tribe or the **State**; and (5) other indicia as to who exercises governmental power over those areas.

Id. It is important to note, however, that we do not view as necessary a showing that a tribe has in fact actually exercised governmental power over a tract of Indian country. Rather, it is only necessary that the Indian country be so situated as to allow the exercise of governmental power if a tribe chooses to do so. Of course, the fact that a given tribe has actually exercised such power and that neighboring governments recognize the legitimacy of such authority weighs in favor of a finding that the lands are "Indian lands" under the IGRA.

In the instant case, the Sampson Johns allotment was assigned to Sampson Johns, an enrolled Quinault Indian, on September 7, 1900 and he and his descendants continued to reside on the land for a time. See United States v. Washington, 294 F.2d 830 at 831 (9th Cir. 1961). Additionally, the land is located twelve miles from the southern border of the Quinault Indian **Reservation**, falls within the Tribe's constitutionally-defined area of tribal jurisdiction and is near or within the usual and accustomed hunting, fishing, and gathering territories of the Quinault Tribe. See 50 C.F.R. § 663.24; 50 Fed. R. 28786, 28795 (June 6, 1996). The Tribe regulates hunting and fishing over its members in this area, provides tribal police services and other services to the area, and is recognized by the City of Ocean Shores and the County of Grays Harbor as exercising regulatory and enforcement jurisdiction over the land. Users of the property have expressed their consent to Quinault tribal jurisdiction for enforcement of provisions of a lease. Therefore, we conclude that the Quinault Indian Tribe exercises tribal **jurisdiction** over the Sampson Johns allotment.

## Conclusion

In our opinion, **the Sampson Johns trust allotment** constitutes **"Indian lands"** pursuant to the **Indian Gaming Regulatory Act and the Quinault Indian Nation may conduct Class II and Class III gaming activities on the land.** If you have any further questions in this regard, please contact Troy Woodward of my staff at (202) 208-6526.

6

AR002512



**N**ATIONAL
**I**NDIAN
**G**AMING
**C**OMMISSION

September 29, 2000

The Honorable Jim Henson
Chief, United Keetoowah Band of
Cherokee Indians of Oklahoma
P.O. Box 746
Tahlequah, OK 74465

Dear Chief Henson:

As you know, a question has arisen as to whether the land on which the United Keetoowah Band of Cherokee Indians ("UKB") is conducting gaming is Indian lands as defined by the Indian Gaming Regulatory Act ("IGRA") and National Indian Gaming Commission ("NIGC") regulations. Absent such a determination, there is a serious question as to whether the IGRA or state gambling laws apply to the gaming activities conducted on such land. We conclude that the lands on which the UKB is conducting gaming are not Indian lands over which the UKB has jurisdiction. Accordingly, the UKB's gaming activity is not subject to IGRA.

<u>Background</u>

In reaching our conclusion, we reviewed the following circumstances. On March 22, 1995, Chairman Harold Monteau drafted a letter to the tribe in which he approved the UKB's gaming ordinance. In that letter, he indicated the NIGC's understanding that the UKB lacks lands that meet the definition of "Indian lands" under IGRA. A copy of the letter is enclosed.

In our effort to obtain further clarification of the status of UKB's gaming site, the NIGC asked the tribe, on May 25, 2000, to provide a legal basis and explanation regarding whether the land upon which the tribe conducts gaming is "Indian lands" as that phrase is defined in IGRA, 25 U.S.C. § 2703(4), and NIGC regulations, 25 C.F.R. § 502.12.

On June 14, 2000, the tribe responded with a letter including a license for gaming issued by the UKB gaming board and a list of tribes with NIGC-approved gaming ordinances that includes the UKB. In the letter the tribe indicated that a legal opinion regarding the UKB's status as a "dependent Indian community" would be forthcoming.

On July 27, 2000, we received a letter and affidavit of an attorney named Nathan H. Young. In the affidavit, Mr. Young indicated that as First Assistant District Attorney for District 27 of the State of Oklahoma, he issued a legal opinion concluding that the UKB Headquarters and Bingo Hall was Indian country as defined under federal and state law.

AR002513

On August 21, 2000, we received a copy of a letter addressed to Assistant Secretary Kevin Gover in which the UKB requests that 2.6 acres currently used as tribal headquarters, membership office, tag office, bingo hall, and administrative programs, along with a small contiguous strip of less than once acre, be placed into trust. The letter included a copy of the UKB's trust land application.

<u>Overview of Applicable Provisions of the Indian Gaming Regulatory Act</u>

An Indian tribe may engage in gaming under IGRA only on "Indian lands within such tribe's jurisdiction," 25 U.S.C. § 2710(b). Moreover, if the proposed lands are trust or restricted lands, rather than land with the limits of an Indian reservation, the tribe may conduct gaming on such lands only if it exercises "governmental power" over those lands. 25 U.S.C. § 2703(4)(B); 25 C.F.R. § 502.12(b). IGRA explicitly defines "Indian lands" as follows:

    (A) all lands within the limits of any Indian reservation; and

    (B) any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power.

25 U.S.C. § 2703(4).

NIGC regulations have further clarified the Indian lands definition, providing that:

    Indian lands means:
    (a) Land within the limits of an Indian reservation; or
    (b) Land over which an Indian tribe exercises governmental power and that is either --
    (1) Held in trust by the United States for the benefit of any Indian tribe or individual; or
    (2) Held by an Indian tribe or individual subject to restriction by the United States against alienation.

25 C.F.R. § 502.12. Generally, lands that do not qualify as Indian lands under IGRA are subject to state gambling laws. *See National Indian Gaming Commission: Definitions Under the Indian Gaming Regulatory Act*, 57 Fed. Reg. 12382, 12388 (1992).

The dual questions under IGRA of whether a tribe "has jurisdiction" and "exercises governmental power" over land on which the tribe proposes to conduct gaming can arise under a variety of circumstances. *See, e.g., Rhode Island v. Narragansett Indian Tribe,* 19 F.3d 685, 701-703 (1st Cir. 1994); *Miami Tribe of Oklahoma v. United States,* 5 F. Supp.2d 1213, 1217-18 (D.Kan. 1998)(*Miami II*) (a tribe must have jurisdiction to exercise governmental power); *State ex rel. Graves v. United States,* 86 F. Supp.2d 1094, 1099 (D.Kan. 2000); *Miami Tribe of Oklahoma v. United States,* 927 F. Supp. 1419, 1423 (D.Kan.

AR002514

1996)(*Miami I*).  In this context, the NIGC is charged with the task of ensuring that 1) the tribe has jurisdiction, and 2) if the proposed lands are trust or restricted lands outside the limits of an Indian reservation, that the tribe exercises governmental power over the proposed gaming lands. It is against this analytical framework that we must consider the Tribe's gaming site.

<u>Reservation, Trust and Restricted Lands</u>

Because no statute, executive order, or Secretarial declaration establishes the land on which UKB is gaming as an Indian reservation, we lack any basis for such a finding.  Indeed, the Tenth Circuit has already ruled that the same tract of land does not qualify as Indian country.[1]  *See Buzzard v. Oklahoma Tax Comm'n*, 992 F.2d 1073, 1076-77 (1993), *cert. denied sub nom., United Keetoowah Band of Cherokee Indians v. Oklahoma Tax Comm'n*, 510 U.S. 994 (1993)(holding state tobacco taxes enforceable on tribally-operated smokeshop located on tribal land with restriction against alienation).[2]  The Tenth Circuit's determination that the land is not Indian country under 18 U.S.C. § 1151 necessarily includes a determination that the lands do not constitute an Indian reservation.  Accordingly we must proceed to the next step, that is, to determine whether the lands are either trust lands or restricted lands, and whether the tribe exercises the requisite "governmental power" over those lands.

The Muskogee Area BIA Realty office provided NIGC a copy of the attached warranty deed.  The deed indicates that the Tribe holds these lands in fee simple status.  While we understand that the UKB seeks to have these lands placed into trust, these lands are not presently held in trust by the United States for the benefit of the UKB.  Therefore, the lands do not meet the test provided in the first part of section 2703(4)(B).  In short, these are not trust lands.  Accordingly, we must consider whether the lands are subject to restriction by the United States against alienation, and if so, they are lands over which an Indian tribe exercises governmental power.

In *Buzzard*, the Tenth Circuit unequivocally indicated that the lands are subject to a restraint against alienation under both 25 U.S.C § 177 and a Secretarially-approved tribal charter.  Accordingly, at first blush, the lands appear to meet the plain language of IGRA in that they are lands that are subject to restriction by the United States against alienation.  The question of whether the general restriction on alienation contained in section 177 alone is sufficient to create Indian lands, however, is much more difficult than it appears.  It raises the question of whether a restriction is actually "by the United States" if a sovereign Indian tribe has unilaterally taken action to purchase lands.  Several courts have expressed discomfort with the notion that an Indian tribe could unilaterally purchase land that effectuates the removal of land from state jurisdiction and places it into federal jurisdiction with no action by either of these sovereigns.  In addition, a determination that such lands are "Indian lands" under IGRA might be difficult to reconcile with other provisions of IGRA, namely 25 U.S.C. § 2719.

---

[1] Indian country consists of "all land within the limits of any Indian reservation," 18 U.S.C. § 1151(a); "all dependent Indian communities," 18 U.S.C. § 1151(b); and "all Indian allotments, the Indian titles to which have not been extinguished," 18 U.S.C. § 1151(c).

[2] In a conversation with Staff Attorney Danna Jackson on September 18, 2000, William Rice, Assistant Chief of the UKB, confirmed that the land subject to the discussion in the *Buzzard* case is the same land upon which UKB's gaming operation is currently located.

AR002515

In short, the question of whether the lands constitute lands that are subject to a restriction by the United States against alienation is an exceedingly difficult question. Because the Tenth Circuit squarely addressed the next prong of this decision in *Buzzard*, we need not reach this difficult question. Accordingly, we now consider whether the tribe has jurisdiction and exercises governmental power over the lands.

As noted above, the Tribe must establish that it exercises "governmental power" over the parcel it intends to use for gaming purposes. *See* 25 C.F.R. § 502.12(b). Existing "tribal jurisdiction," however, is a threshold requirement to exercising governmental power. *See, e.g., Narragansett Indian Tribe,* 19 F.3d at 701-703 ("In addition to having jurisdiction a tribe must exercise governmental power in order to trigger [IGRA]"); *Miami II,* 5 F. Supp.2d at 1217-18 (A tribe must have jurisdiction in order to be able to exercise governmental power); *State ex rel. Graves v. United States,* 86 F. Supp.2d at 1099; *Miami I,* 927 F. Supp. at 1423 ("the NIGC implicitly decided that in order to exercise governmental power for purposes of 25 U.S.C. § 2703(4), a tribe must first have jurisdiction over the land."). This interpretation is consistent with IGRA's language limiting the applicability of its key provisions to "[a]ny Indian tribe having jurisdiction over Indian lands," or to "Indian lands within such tribe's jurisdiction." 25 U.S.C. §§ 2710(d)(3)(A), 2710(b)(1)); *see also Narragansett Indian Tribe,* 19 F.3d at 701-703. As a threshold matter, we must therefore analyze whether the Tribe possesses jurisdiction over the identified parcel.

As a general matter, tribes are presumed to possess jurisdiction within "Indian country." *See South Dakota v. Yankton Sioux Tribe,* 522 U.S. 329 (1998). Indian tribes are "invested with the right of self-government and jurisdiction over the persons and property within the limits of the territory they occupy, except so far as that jurisdiction has been restrained and abridged by treaty or act of Congress." *Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 140 (1982).

Historically, the term "Indian country" has been used to identify land that, "[g]enerally speaking," is subject to the "primary jurisdiction . . . [of] the Federal Government and the Indian tribe inhabiting it." *Alaska v. Native Village of Venetie Tribal Gov't,* 522 U.S. 520, 527 n.1 (1998). As mentioned above, Indian country consists of "all land within the limits of any Indian reservation," 18 U.S.C. § 1151(a); "all dependent Indian communities," 18 U.S.C. § 1151(b); and "all Indian allotments, the Indian titles to which have not been extinguished," 18 U.S.C. § 1151(c). Section 1151 reflects the two criteria the Supreme Court "previously . . . had held necessary for a finding of 'Indian country' . . . first, [the lands] must have been set aside by the Federal Government for the use of the Indians as Indian land; second, they must be under federal superintendence." *Venetie,* 522 U.S. at 527. Prior to the enactment of section 1151 in 1948, the Court had already found that reservation lands and allotments satisfied those requirements. *See, e.g., United States v. Pelican,* 232 U.S. 442, 449 (1914) (Indian country includes individual Indian allotments held in trust by the United States because they "remain[] Indian lands set apart for Indians under governmental care"); *Donnelly v. United States,* 228 U.S. 243, 269 (1913) (Indian country includes lands within formal reservations). Congress used the term "dependent Indian communities" in Section 1151(b) to codify this Court's understanding, as expressed in *United States v. McGowan,* 302 U.S. 535 (1938), and *United States v. Sandoval,* 231 U.S. 28

The Honorable Jim Henson
September 29, 2000
Page 5

(1913), that other lands, although not formally designated as a reservation, may also possess the attributes of "federal set-aside" and "federal superintendence" characteristic of Indian country. *Venetie*, 522 U.S. at 530; *see, e.g., McGowan*, 302 U.S. at 538-539 (Reno Indian Colony land held in trust by the United States is Indian country); *Sandoval*, 231 U.S. at 45-49 (Pueblo Indian lands).

According to the opinion in *Buzzard*, UKB's gaming site does not qualify as "Indian country," within the meaning of section 1151. *Id.* at 1076-77. In analyzing the "federally set-aside" requirement, the Tenth Circuit held that "[a] restriction against alienation requiring government approval may show a desire to protect the UKB from unfair dispositions of its land, . . . but it does not of itself indicate that the federal government intended the land to be set aside for the UKB's use." *Id.* at 1076 (citation omitted). Moreover, as it relates to the "federal superintendence" requirement, the court ruled:

> The federal government has not retained title to this land or indicated that it is prepared to exert jurisdiction over the land. At most it has agreed to approve transactions disposing the land. But the ability to veto a sale does not require the sort of active involvement that can be described as superintendence of the land.

*Id.* Based on the rationale in *Buzzard*, we conclude that UKB's gaming site does not qualify as "Indian country," as the parcel does not possess the two characteristics of Indian country reflected in section 1151.[3] Having concluded that the UKB's lands are not Indian country, we conclude that the United States does not recognize tribal jurisdiction over these lands.

## Conclusion

IGRA permits tribes to conduct gaming on Indian lands only if they have jurisdiction over those lands, and only if they can and do use that jurisdiction to exercise governmental power which will enable the tribe, through appropriate ordinances, to satisfy the statute's substantial and detailed requirements for the regulation of gaming. 25 U.S.C. § 2710(b); *see Narragansett Indian Tribe*, 19 F.3d 685; *Miami I*, 927 F. Supp. at 1423 ("Absent jurisdiction, the exercise of governmental power is, at best, ineffective, and at worst, invasion"). Because we have determined that the UKB does not have jurisdiction over the gaming site, we must conclude that the UKB does not have the requisite authority to ensure the appropriate control and management of its gaming operation.[4] After careful review and consideration, I conclude that the lands on

---

[3] This case is readily distinguishable from *United States v. Roberts*, where the Tenth Circuit held that a tribal complex owned by the United States in trust for the Choctaw Nation pursuant to the Indian Reorganization Act was "Indian Country" for purposes of the Major Crimes Act. 185 F.3d 1125 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 1960 (2000). The *Roberts* Court concluded that the land at issue, which the United States acquired and holds in trust for the Choctaw Nation, qualifies as Indian country as the parcel possesses the two characteristics of Indian country reflected in section 1151. On the other hand, the land at issue here and considered by the Tenth Circuit in *Buzzard*, is restricted land that does not possess the two characteristics of Indian country reflected in section 1151 and discussed in the Supreme Court's decision in *Venetie*. *See Buzzard*, 992 F.2d at 1076-77, *cert. denied sub nom.*, *United Keetoowah Band of Cherokee Indians v. Oklahoma Tax Comm'n*, 510 U.S. 994 (1993).

[4] Moreover, there is no need to analyze whether UKB exercises governmental power over the proposed gaming lands, as a tribe must have jurisdiction to exercise governmental power. *See Miami II*, 5 F. Supp.2d at 1217-18.

which the UKB is gaming are not Indian lands over which the UKB has jurisdiction. Thus, such activity is not subject to IGRA. I leave the question of whether the land is subject to state gambling laws to the appropriate state officials.

If you should have questions regarding this matter, please contact Staff Attorney Danna Jackson at (202) 632-7003.

Sincerely yours,

Kevin K. Washburn
General Counsel

Enclosures

cc:   Tim Vollman
      Acting Associate Solicitor – Division of Indian Affairs
      1849 C Street, N.W., Mail Stop 6456
      Washington, DC 20240-0001

      Robert McCarthy
      Field Solicitor
      United States Department of the Interior
      7906 East 33rd Street, Suite 100
      Tulsa, OK 74145

      Honorable Drew Edmondson, Attorney General
      State of Oklahoma
      2300 North Lincoln Boulevard, Suite 112
      Oklahoma City, OK 73105-4894

AR002518



# United States Department of the Interior

OFFICE OF THE SOLICITOR
Washington, D.C. 20240

IN REPLY REFER TO:

OCT 3 1 2002

Penny J. Coleman, Esq.
Acting General Counsel
National Indian Gaming Commission
1441 L Street, NW (Suite 9100)
Washington, DC 20005

Re: Whether the Maria Christiana Reserve No. 35 is "Indian lands"
for Purposes of Gaming under the Indian Gaming Regulatory Act?

Dear Ms. Coleman:

I am writing to you regarding whether the Maria Christiana Reserve No. 35 (Reserve), a restricted Indian allotment located in the State of Kansas (State), constitutes "Indian lands" under the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701-2721. As you know, this issue has been litigated several times with three district court decisions and a court of appeals decision.

In the last round of litigation over our opinion issued on November 10, 1998, (1998 Opinion) to the National Indian Gaming Commission (NIGC), the Department of Interior (DOI) acknowledged that it did not completely address whether the jurisdiction of the Miami Tribe of Oklahoma (Tribe) existed, thereby enabling the Tribe to exercise governmental authority over the Reserve. The 1998 Opinion set forth in part our analysis of whether the Reserve constituted "Indian lands" as defined by the IGRA as "any lands title to which is . . . held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power." 25 U.S.C. § 2703(4).

While the DOI agreed to address this issue in its briefings before the courts, given the strong language in the opinion of the Court of Appeals for the Tenth Circuit that Congress abrogated the Tribe's jurisdiction long ago, we believe this remaining issue has been decided. We nevertheless issue this opinion to assist in the NIGC's review of the management contract submitted for re-approval by the Tribe and the Butler National Service Corporation (Butler) and to ensure a complete record of this decision. Thus, for the following reasons, we find that the Tribe does not possess jurisdiction over the Reserve and, therefore, the Reserve is not "Indian lands" for purposes of gaming under the IGRA.

## I. PROCEDURAL BACKGROUND

In Miami Tribe of Oklahoma v. United States, 927 F. Supp 1419 (D. Kan. 1996) (**Miami I**), the Tribe sought judicial review of the NIGC's disapproval in 1993 of a

1

AR002519

management contract between the Tribe and Butler.  The Tribe appealed the initial disapproval of the contract and the NIGC affirmed the disapproval on April 4, 1995.  On June 9, 1995, the NIGC supplemented its decision with the May 23, 1995, opinion of the Associate Solicitor, Division of Indian Affairs (1995 Opinion).

In his 1995 opinion, the Associate Solicitor concluded that the Tribe did not exercise the requisite governmental powers over the Reserve; thus it was not "Indian lands" as defined by the IGRA.  The **Miami I** court thoroughly reviewed the history of the Reserve and determined that Congress had expressly abrogated the Tribe's jurisdiction over the Reserve.  Id. at 1426.  The court further noted that, after the NIGC's decision in the case, the Tribe amended its constitution, enabling it to approve membership of the current Reserve owners.  The court left the door open for the Tribe to resubmit its management contract to the NIGC with evidence of the constitutional amendment and the current owners' consent to Tribal jurisdiction.[1]  The court did not opine, however, on whether the NIGC would approve the management contract with this new information.  Id. at 1429 n.8.

The Tribe did not appeal this decision.  Instead, the Tribe resubmitted the management contract and the NIGC again sought an opinion from our office.  In a second opinion dated May 12, 1997, the Acting Solicitor found that the changes made by the Tribe did not provide enough evidence of tribal jurisdiction to bring the Reserve within the definition of "Indian lands" for the purposes of the IGRA.  The NIGC adopted this opinion and disapproved the management contract.  The Tribe again sought judicial review of the NIGC Chairman's disapproval, given the circumstances of the constitutional amendment and the new membership status of the owners of the Reserve.

In Miami Tribe of Oklahoma v. United States, 5 F. Supp. 2d 1213 (D. Kan. 1998) **(Miami II)**, the Court was faced with the Tribe's "facially sound" contention that it had established jurisdiction by the actions it had taken.  Id. at 1218.  The court made clear the following:

> If jurisdiction were established, based on these subsequent events, the court would find that the history of the parcel, at least that part dealing with the cession of the land and the Tribe's receipt of compensation is irrelevant; the only inquiry under the statutory definition of "Indian Lands" would be whether the tribe exercises--in the present-- governmental power over the land.

Id.  The court reversed the Chairman's disapproval of the management contract and remanded the case to the NIGC to provide a better record, particularly with regard to factors that would illuminate the issue of whether or not the Tribe is "actually and concretely" exercising governmental power over the Reserve.  Id. at 1219.

---

[1]  In leasing the Reserve to the Tribe, the owners/new members specifically consented to Tribal jurisdiction.

AR002520

As a result of this remand, the DOI conducted an inquiry into the issue of the Tribe's exercise of governmental power. The Associate Solicitor determined, as a matter of fact and law, that the Tribe's exercise of governmental power was enough to satisfy the requirement in 25 U.S.C. § 2703(4) and that the Reserve was "Indian lands" of the Tribe.

Consistent with the NIGC's policy in 1998,[2] the NIGC adopted the Associate Solicitor's opinion. Based upon this advice, the Tribe and NIGC settled **Miami II** with a "Stipulation and Agreement" filed on January 15, 1999, that the NIGC Chairman would treat the Reserve as "Indian lands" for the purpose of his review and approval or disapproval of the gaming management contract between the Tribe and Butler. In exchange, the Tribe agreed to dismissal with prejudice of its claim.

Pursuant to this stipulation, the Chairman of the NIGC began another review of the proposed management contract between the Tribe and Butler and the necessary background investigations were conducted. Based upon such review and investigation, the NIGC Chairman determined that the contract met the requirements for approval under 25 U.S.C. § 2711 and that the persons with a financial interest in, or management responsibility for, the contract were suitable. Treating the Reserve as "Indian lands" pursuant to the **Miami II** stipulation, the Chairman approved the management contract on January 7, 2000.

Meanwhile, the State filed suit under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701, et seq. against the United States, various agencies and officials challenging the 1998 Opinion that the Reserve constituted "Indian lands" and seeking a preliminary and permanent injunction against facilitating any gaming on the Reserve. Kansas v. United States, 86 F. Supp. 2d 1094 (D. Kan. 2000), aff'd 249 F.3d 1213 (10th Cir. 2001) (**Miami III**). The United States moved to dismiss the case and objected to the State's Motion for a Temporary Restraining Order (TRO). The **Miami III** district court concluded that the NIGC's "Indian land determination was undertaken in an arbitrary and frivolous manner," 86 F. Supp. 2d at 1099, and that the NIGC did not address the threshold issue of whether the Tribe had jurisdiction over the Reserve. Id. at 1098.

The district court denied the United States' Motion to Dismiss and granted the preliminary injunction[3] from which the United States sought interlocutory appeal to the Court of Appeals for the Tenth Circuit. The Court of Appeals for the Tenth Circuit subsequently characterized the NIGC's conduct in determining whether the Tribe

---

[2]     In February 2000, the NIGC and the DOI executed a Memorandum of Understanding (MOU) that provided for a collaborative process in the development of legal opinions relating to "Indian lands." The MOU alters the prior NIGC practice of requesting DOI to determine "Indian land" matters under the IGRA and deferring to such determinations.

[3]     The State filed a Motion for TRO and withdrew it. The State later renewed its Motion for TRO. At the hearing on the TRO, the district court decided to treat the TRO as a request for a Preliminary Injunction.

AR002521

exercises governmental power over the Reserve, without first determining the jurisdictional basis for that power, as putting "the cart before the horse." 249 F.3d at 1229.

> The Court of Appeals for the Tenth Circuit discussed the actions undertaken by the Tribe to demonstrate the existence of jurisdiction and the exercise of governmental power over the Reserve.

> > None of these recent events, however, alters the conclusion that Congress abrogated the Tribe's jurisdiction over the tract long ago, and has done nothing since to change the status of the tract. An Indian tribe's jurisdiction derives from the will of Congress, not from the consent of the fee owners pursuant to a lease under which the lessee acts.

Id. at 1230-31. The Court of Appeals for the Tenth Circuit remanded for further proceedings consistent with its opinion.[4] The Federal Defendants moved the district court to vacate the NIGC's approval of the management contract and remand the matter to the agencies. On June 24, 2002, the district court remanded the matter for "further proceedings not inconsistent with the [district court's] opinion and Tenth Circuit's decision." 2002 U.S. Dist. LEXIS 12392. After evaluating this matter on remand, as more fully discussed herein, I find that the courts have decided this matter and left no room for a contrary conclusion.

## II.    FACTUAL BACKGROUND

### A.    Statutory History

> Most of the history of the Reserve is reviewed in detail in **Miami I** and need not be repeated here in its entirety. For purposes of this analysis, the first key event was the Treaty of June 5, 1854, 10 Stat. 1093, which identified two groups of Miami Indians: the Western Miamis who had emigrated to Kansas[5] and those who remained in Indiana (Indiana Miamis). Article 2 of the 1854 Treaty implicitly reserved jurisdiction to the Tribe with respect to certain civil issues.

> > When selections are so made, or attempted to be made, as to produce injury to, or controversies between, individuals, which cannot be settled by the parties, the matters of difficulty shall be investigated and decided

---

[4]    It should be noted that neither the district court nor the Court of Appeals for the Tenth Circuit addressed whether the State had standing to seek review of a gaming management contract, nor did the Courts discuss the basis for the NIGC to revisit the issue of the Reserve's status in the context of a management contract review, in light of the stipulation and agreement that was signed in the settlement of **Miami II**.

[5]    As discussed infra, the present-day Miami Tribe of Oklahoma consists of Western Miamis who moved to Oklahoma under the terms of a subsequent treaty.

AR002522

> on equitable terms, by the chiefs of the Tribe, subject to appeal to the
> agent, whose decision shall be final.

10 Stat. at 1094. Article 2 also provided that the lands not ceded to the United States
were reserved for use by the Tribe and that members could make selections of two
hundred acres each. The patents that would issue for these selected lands would be

> subject to such restrictions respecting leases and alienation as the President or
> Congress of the United States may impose; and the lands so patented shall not be
> liable to levy, sale, execution, or forfeiture: *Provided*, That the legislature of a
> State within which the ceded country may be hereafter embraced, may, with the
> assent of Congress, remove these restrictions.[6]

Under the 1854 Treaty, the Indiana Miamis were not to receive any compensation
for lands in Kansas ceded by the Western Miamis, although payments required by the
Treaty of November 28, 1840, 7 Stat. 582, would go to the Indiana Miamis who were
identified on a list of 302 names. This list did not include the DeRome family; however,
the 1854 Treaty allowed the Indiana Miamis to add to the list. The Senate ratified the
1854 Treaty on August 4, 1854, with an amendment which limited the annuity roll of the
Indiana Miamis to only those individuals that were on the list of 302 names, "the increase
of the families of the persons" on that list, and those persons "added to said list by the
consent of the said Miami Indians of Indiana, obtained in council, according to the
custom of the Miami tribe of Indians." 12 Op. Att'y Gen. 236, 242 (1867).

In the Act of June 12, 1858, 11 Stat. 329, Congress directed that 68 (later 73)
names be added to the list of 302 names; members of the DeRome family, including
Maria Christiana, were added at this time. The leaders of the Indiana Miamis opposed
the inclusion of these individuals. See H.R. Rep. No. 3852, 51st Cong., 2d Sess. (1891);
H.R. Exec. Doc. No. 23, 49th Cong., 1st Sess. at 14 (1886). The 1858 Act also directed
the Secretary to pay these individuals annuities for past years and to allot to each of them
200 acres to be taken from lands within the remaining Miami reservation. The Act of
March 3, 1859, 11 Stat. 430, authorized the Secretary to issue restricted patents for these
lands pursuant to the 1854 Treaty. The land, known as the Reserve, allotted by restricted

---

[6]      On February 1, 1865, the Kansas Legislature enacted the following legislation:
"[A]ll members of Indian tribes to whom lands have been granted by the United States, in
this State, and who have received patents therefore, are hereby authorized to sell or
convey the same by deed in fee simple, or to mortgage the same, with the like effect and
under the same restrictions and limitations as are provided by law for conveyances in
other cases. Kansas Laws 164-65 (1865). The Court of Appeals for the Tenth Circuit in
**Miami III** noted that in a March 1, 1872, Kansas Joint Resolution, Kansas removed
restrictions on the alienability of the Kansas Reserves (available through the Kansas State
Historical Society, 6425 SW 6th Avenue, Topeka, KS 66615). **Miami III**, 249 F.3d
at1230. By Act of January 23, 1873, 17 Stat. 417, Congress subsequently assented to the
Kansas legislature's authorization of removal of restrictions against alienation on fee-
patented land, "in all cases in which the title has legally passed to citizens of the United
States other than Indians."

AR002523

fee patent dated, December 15, 1859, to Maria Christiana DeRome was indisputably inside the Tribe's Kansas reservation.

These individuals drew annuities at the designated places in Indiana from 1859 until 1867. The Appropriations Act of March 2, 1867, 14 Stat. 492, 502, 515, authorized appropriations for the Indiana Miamis "as may be, upon the opinion of the Attorney General, legally entitled to the same, under the provisions of the treaty with said Indians of June 5, 1854 and Senate amendments thereto, regardless of any subsequent legislation."

In 1867, the United States Attorney General issued an opinion stating that the names of the 73 individuals had been improperly added to the annuity roll, as the names had been added without the consent of the Indiana Miamis. 12 Op. Att'y Gen. 236 (1867); S. Misc. Doc. No. 131, 53rd Cong., 3d Sess. (1895). The Attorney General reasoned that the 1867 Appropriations Act directed him to disregard "subsequent legislation," that is, any legislation enacted after the 1854 Treaty and its Senate amendment dated August 4, 1854. This "subsequent legislation" included the Act of June 12, 1858, which added the DeRome family to its list of 302 names.

Thus, any future annuity roll would include, and subsequent annuities would be designated for, only those Indiana Miamis who were either on the list of 302 names, part of "the increase of the families of persons" on the list of 302 names, or added with the consent of the Indiana Miamis, notwithstanding the Act of June 12, 1858. As noted earlier, the Indiana Miamis had already objected to the inclusion of these individuals, so the DeRome family would no longer be included on the annuity rolls.

After these individuals were dropped from the annuity roll of the Indiana Miamis, Congress instructed the Secretary of the Interior to include these individuals on the rolls of the Miami Indians in Kansas if he found them entitled to be included. See Act of March 3, 1873, 17 Stat. 631. However, the Secretary of the Interior found that the 73 individuals were not eligible to be included on the roll of the Western Miamis because they remained in Indiana instead of emigrating. See H.R. Rep. No. 3852, 51st Cong., 2d Sess. (1891).[7]

The United States and the Miami Tribe entered the Treaty of February 23, 1867, 15 Stat. 513, in which the Miamis would move from Kansas to Oklahoma. Those Miamis who remained in Kansas could become United States citizens and surrender tribal membership after fulfilling certain conditions. Act of March 3, 1873, 17 Stat. 631.

---

[7]   The Tribe disputes whether the DeRome family failed to emigrate from Indiana to Kansas. The Tribe has alleged that the DeRomes were in Kansas at the time of the allotment, but may have returned to Indiana, then returned again to Kansas. The Tribe has also alleged that the burial sites of Maria Christiana's brothers and sisters are located in the vicinity of the Reserve, although the burial site of Maria Christiana DeRome is unknown.

6

AR002524

The Western Miamis ceded their remaining land in Kansas and Congress directed the Secretary of the Interior to determine which individuals were entitled to share in the resulting funds, including "those persons of Miami blood or descent for whom provision was made by the third section of the act of [June 12, 1858], if in the opinion of the Secretary of the Interior the said Indians are entitled to be so included under treaty stipulations." 17 Stat. 631, 632.

By letter dated February 11, 1873, the Secretary of the Interior forwarded to Congress a report from the Superintendent of Indian Affairs that determined that none of the individuals who had received an allotment pursuant to the 1858 Act were entitled to share in the proceeds from the sale of the Tribe's land in Kansas. The Commissioner opined that these individuals had not been "recognized as Miamis, either by the tribe in Kansas or by those residing in Indiana, who . . . have never joined the tribe in Kansas, and until now have claimed no benefits from their annuities." See J.R. Exec. Doc. No. 199, 42nd Cong., 3d Sess. (1873). Maria Christiana DeRome had been included in this group and had received her allotment despite the lack of tribal membership in either group.

In 1882, the Attorney General opined that only those Miamis who moved to Kansas were entitled to receive allotments or proceeds from the sale of the allotments, 17 Op. Att'y Gen. 410, 412 (1882), and that the 1858 Act [adding the DeRome family to the list of persons receiving allotments] was "virtually repealed." Id. at 415. The Western Miamis petitioned Congress in 1884, asking that the Western Miamis be reimbursed for the money and lands taken from them and given to the 73 individuals on the 1858 list. H.R. Rep. No. 3852, 51st Cong., 2d Sess. at 2 (1891). Following referral from Congress, the Court of Claims concluded that the Western Miamis were entitled to recover the amount of money erroneously paid as back annuities for the 73 individuals, as well as the value of the land allotted to those individuals. See The Western Miami Indians v. United States, Ct. Cl. No. 1349, Jan. 9, 1891, in H.R. Misc. Doc. No. 83, 51st Cong., 2d Sess. (1891). In 1892, the United States compensated the Western Miami, 281 F.2d at 212 (citing 26 Stat. 1000), and provided additional compensation in 1960 when the Western Miami sought payment of interest on the compensation. Id.

B.    Subsequent History

1. **Tribal actions**

More recently, the Tribe engaged in several activities intended to demonstrate that it uses its alleged jurisdiction to exert governmental powers over the Reserve. Tribal Resolution 93-12 (Jan. 5, 1993) expressly reaffirmed the Tribe's governmental jurisdiction over the Reserve. In Tribal Resolution 94-48 (August 3, 1994), the Tribe requested assistance from the Bureau of Indian Affairs (BIA) concerning the escheat to the Tribe of interests in the Reserve. Tribal Resolution 95-13 (December 6, 1994) enacted a code governing the descent and distribution of trust or restricted lands over which the Tribe has jurisdiction and specifically included the Reserve. Tribal Resolution 95-48 (May 9, 1995) set out the terms by which the Tribe purportedly agreed to accept a

7

one percent undivided interest in the Reserve from heir-owner Earline Smith Downs, although this transaction was never completed.

The Tribe has assumed the physical maintenance of the property and has taken steps to discourage trespass on the Reserve. Activities observed during a site visit in 1998 by DOI personnel included the operation of an "outreach center" in a mobile home building on the property and the presence of a construction trailer. The Tribe has issued a license to a Tribal member to operate a smoke shop on the Reserve. Water, telephone, and electricity services are available on the Reserve. Tribal Police regularly travel to Kansas to conduct surveillance of the Reserve.

Although neither Maria Christiana DeRome nor her heirs elected to move with the Tribe to Oklahoma, the Tribe proposed to amend its constitution in 1996 to authorize membership specifically for the heirs of Maria Christiana DeRome:

> (f) Any person of Miami Indian blood and/or blood descendent thereof, who relocated to Kansas, who has been issued restricted land patents to land within the Miami Reservation in Kansas territory as stipulated under the second Article of the treaty with the Miami, dated June 5[th], 1854, and approved by the third section of an Act of Congress dated June 12[th], 1858, or any persons listed in the La Cygne Journal, in 1871, whose names appear as an Indian headright, who makes application, may be admitted to membership in the Miami Tribe of Oklahoma.

The constitutional amendment was approved by Tribal election and submitted to DOI. The Secretary of the Interior approved the amended constitution on January 18, 1996. Numerous heirs of Maria Christiana DeRome were later granted tribal membership when the Tribe passed an ordinance approving their membership. In addition, the heirs specifically consented to tribal jurisdiction in leasing the Reserve to the Tribe.

## 2. **Bureau of Indian Affairs actions**

The BIA has issued letters regarding the status of the Reserve. In 1974, the BIA Acting Director, Office of Trust Responsibilities, notified the Anadarko Area Director by letter of his conclusion that the Reserve remained in restricted fee status and under the jurisdiction of the BIA. The Realty Specialist, BIA Miami Agency, informed the Tribal chief in a 1993 letter that the Reserve was held in restricted status, would be subject to the escheat provisions of the Indian Land Consolidation Act of 1983, and other tribes had not challenged the jurisdiction of the Tribe. In a 1994 letter, the Superintendent, BIA Miami Agency, noted that the Reserve was held in trust/restricted title by the United States. The BIA has also continued to administer probates of the Reserve. See Brief of Amici, Bureau of Indian Affairs, U.S. Department of Interior, filed in The Matter of Estate of James Dallas McHenry, Deceased Miami of Oklahoma, IP OK 274 P 93.

AR002526

III.   APPLICABLE LAW

A.  The Indian Gaming Regulatory Act (IGRA)

In the IGRA, Congress designed a comprehensive statutory scheme for the conduct of gaming activities on Indian lands.  Congressional findings indicate the following:

> [T]he establishment of independent Federal regulatory authority for gaming on Indian lands, the establishment of Federal standards for gaming on Indian lands, and the establishment of a National Indian Gaming Commission are necessary to meet congressional concerns regarding gaming and to protect such gaming as a means of generating tribal revenue.

25 U.S.C. § 2702(3).  On the basis of these findings and to fulfill several statutory responsibilities, Congress established the NIGC and gave it jurisdiction to regulate several aspects of Indian gaming.  25 U.S.C. § 2704(a).  That authority includes the review of management contracts that are defined as "any contract ... between an Indian tribe and a contractor ... if such contract or agreement provides for the management of all or part of a gaming operation."  25 C.F.R. § 502.15.

For tribes to conduct gaming under the IGRA, such gaming must be conducted on "Indian lands" over which the Tribe has jurisdiction, as defined by the IGRA.  The IGRA defines "Indian lands" as follows:

> (A) all lands within the limits of any Indian reservation;  and (B) any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power.

25 U.S.C.A. § 2703(4).

B.  Statutory Interpretation

1. **Deference to agency construction**

The legal analysis of the IGRA must occur within the framework of principles of statutory interpretation.  An agency must give effect to the unambiguous intent of Congress, although it must take a different approach in circumstances where the statute is susceptible to more than one meaning.  See Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 843-45 (1984).  Under such circumstances, the agency must utilize its specialized expertise and attempt to apply the statute in a rational manner.

9

AR002527

2. **The Indian canon of interpretation**

If it is determined that the language of a statutory provision is ambiguous,[8] federal courts have an obligation to construe statutes enacted for the benefit of Indians "liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." Montana v. Blackfeet Tribe of Indians, 471 U.S. 759, 766 (1985); United States v. 162 MegaMania Gambling Devices, 231 F.3d 713, 718 (10th Cir. 2000); NLRB v. Pueblo of San Juan, 276 F.3d 1186, 1194-5 (10th Cir. 2002). Indeed, as the Court of Appeals for the District of Columbia has ruled, "if [an ambiguous law] can reasonably be construed as the Tribe would have it construed, it *must* be construed that way." Muscogee (Creek) Nation v. Hodel, 851 F.2d 1439, 1445 (D.C. Cir. 1988) (emphasis in original).

But the courts are not entirely in agreement as to the effect of this rule of construction on interpretations by a federal agency like the DOI or by the NIGC. Compare Ramah Chapter of the Navajo Nation v. Lujan, 112 F.3d 1455 (10th Cir. 1997) (canon of construction of liberal interpretation trumps agency interpretations) with Chugach Alaska Corp. v. Lujan, 915 F.2d 454 (9th Cir. 1990) (deference due expert agencies makes application of canons of construction inappropriate). Very limited authority exists in the legislative history of the IGRA for applying this canon of construction. See 134 Cong. Rec. H8153 (daily ed. Sept. 26, 1988) (Rep. Udall, IGRA's primary House sponsor, calling on courts to apply "the Supreme Court's time-honoring rule of construction that any ambiguities in legislation enacted for the benefit of Indians will be construed in their favor.")

IV.     METHOD OF ANALYSIS

This discussion will focus solely on the question of the Tribe's jurisdiction over the Reserve. The Court of Appeals for the Tenth Circuit instructed that the inquiry focus on the intent and purpose of Congress concerning the present-day status of the Reserve. In examining this question, the DOI had the benefit of reviewing the pleadings and opinions in the litigation over this Reserve and each of the parties had ample opportunity to develop and refine its legal and factual positions. Thus, the DOI was able to review information or submissions from the United States Department of Justice, the State of Kansas, and the Tribe. The DOI also reviewed expert reports and other documents and materials recently submitted by the State of Kansas and attorneys for the Tribe.

---

[8]     Provisions of the IGRA have been found ambiguous by the Court of Appeals for the Tenth Circuit in this case. Kansas v. United States, 249 F.3d 1213, 1228 (10th Cir. 2001) (noting that the "IGRA sheds little light on the question of whether under the [circumstances of the case] the tract constitutes "Indian lands"), and in Sac and Fox Nation of Missouri v. Norton, 240 F.3d 1250 (10th Cir. 2001) (noting that the IGRA does not define the term, "reservation;" therefore, Chevron deference would apply to any Commission construction of that term).

10

AR002528

V.    LEGAL ANALYSIS

Analysis of the "Indian lands" definition is not necessary if the Tribe does not possess the requisite jurisdiction over the Reserve. "Tribal jurisdiction" is a threshold requirement to the exercise of governmental power. See, e.g., Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 701-703 (1st Cir. 1994), cert. denied, 513 U.S. 919 (1994), superseded by statute as stated in Narragansett Indian Tribe v. National Indian Gaming Comm'n, 158 F.3d 1335 (D.C. Cir. 1998); Miami II, 5 F. Supp. 2d 1213, 1217-18 (D. Kan. 1998); (A tribe must have jurisdiction in order to be able to exercise governmental power); Miami I, 927 F. Supp. 1419, 1423 (D. Kan. 1996) (NIGC implicitly decided that in order to exercise governmental power for purposes of 25 U.S.C. § 2703(4), a tribe must first have jurisdiction over the land.) This interpretation is consistent with IGRA's language limiting the applicability of its key provisions to lands over which a tribe has jurisdiction. 25 U.S.C. §§ 2703(7)(D); 2710(a)(1), (a)(2), (b)(1), (b)(4)(A), & (d)(1)(A)(i); and 2713(d); see also Narragansett Indian Tribe, 19 F.3d at 701-703.

A.    The principle of res judicata requires a finding of no Tribal jurisdiction over the Reserve.

A review of the opinions in this matter demonstrates that the courts have left no room for a finding that the Tribe possesses jurisdiction over the Reserve. The Court of Appeals for the Tenth Circuit affirmed the **Miami I** district court's opinion that the Tribe did not have the requisite jurisdiction:

> The difficulty with the Government's position is that the district court in Miami Tribe I thoroughly analyzed the question of the Tribe's jurisdiction over the tract based upon the United States' treatment of the tract. The court concluded that no lawful basis existed to suggest the Tribe presently had jurisdiction over the tract. Miami Tribe I, 927 F. Supp. at 1424-27 . . . Rather, Congress years ago "unambiguously intended to abrogate the Tribe's authority of its lands in Kansas and move the Tribe to new lands in Oklahoma."

249 F.3d at 1230-31.  In addition, the Court of Appeals for the Tenth Circuit included a summary of the findings and conclusions of the **Miami I** district court opinion:

> The Reserve is located inside the original boundaries of the Tribe's reservation in Kansas.  In 1873, the Tribe agreed to sell its unallotted lands in Kansas; Congress legislated the purchases of the lands in 1882. In 1884, the Tribe sought reimbursement for the land allotted to, among others, Maria Christiana DeRome.  In essence, the Tribe claimed that the Maria Christiana allotment should be treated as unallotted land and sold to the United States.  The Court of Claims agreed and compensated the Tribe for the land in 1891.  The Court of Claims concluded that . . . 1858 legislation had unlawfully taken funds and land designated for the Tribe

11

> [including Reserve No. 35], and awarded interest on the 1891 payments. The court in [Miami Tribe I] concluded from this series of events that the Tribe has unmistakably relinquished its jurisdiction over the Reserve. Moreover, in 1873, Congress expressly abrogated the Tribe's jurisdiction [over its former lands in Kansas], which was effective no later than 1924 when any members of the Tribe remaining in Kansas – and their heirs – became naturalized citizens.

249 F.3d at 1230-31, citing Kansas v. U.S., 86 F. Supp. at 1095-96.

The Court of Appeals for the Tenth Circuit affirmed these conclusions and went on further to hold:

> Because the Tribe did not appeal Miami Tribe I, the district court's findings and conclusions regarding the status of the tract, including its construction of the relevant legislation and treaties, are now res judicata and we need not revisit them here. . . . Notably, none of the Defendants have ever challenged Miami Tribe I's findings and conclusions regarding the status of the tract. Rather, they rely solely on the Tribe's activities subsequent to Miami Tribe I to claim tribal jurisdiction over the tract – namely (1) the Tribe's adoption of the tract's twenty-plus owners into the Tribe, (2) those owners' consent to tribal jurisdiction pursuant to a lease with the Tribe, and (3) the Tribe's recent development of the tract. None of these recent events, however, alters the conclusion that Congress abrogated the Tribe's jurisdiction over the tract long ago, and has done nothing since to change the status of the tract. An Indian tribe's jurisdiction derives from the will of Congress, not from the consent of fee owners pursuant to a lease under which the lessee acts. We conclude that the State of Kansas has a substantial likelihood of success on the merits of this cause.

249 F.3d at 1230-31.

The Court of Appeals for the Tenth Circuit affirmed the preliminary injunction issued by the district court and remanded the matter for further proceedings. This decision was not appealed.

In this circuit, the doctrines of res judicata and collateral estoppel bar litigation on issues that could have been, but were not raised previously in state court litigation. Reed v. McKune, 298 F.3d 946 (10th Cir., 2002). In this case, the Court of Appeals for the Tenth Circuit looked to Kansas law and observed that an issue is res judicata when there is "concurrence" of four conditions: (1) identity in the things sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of the persons for or against whom the claim is made. Id. at 950 (citations omitted). The Court of Appeals for the Tenth Circuit found all of these conditions to be present in the instant case.

AR002530

The doctrine of collateral estoppel prevents a second litigation of the same issues between the same parties or those in privity with the parties. Under Kansas law, the conditions require the following: (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties must be the same or in privity; (3) the issue litigated must have been determined and necessary to support the judgment. Id. (citation omitted). These conditions also appear to be present in this matter.

The related doctrine of the "law of the case" also has applicability here. This doctrine provides that where the judgment from which relief is sought was the subject of appellate review, the lower court is bound, under the law of the case, by the court of appeals' prior ruling and may not deviate from the appellate decision. Corex Corp. v. United States, 638 F.2d 119, 122 (9th Cir. 1981) ("When a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court."), citing Firth v. United States, 554 F.2d 990, 993 (9th Cir. 1977).

The Corex court of appeals reversed a trial court's grant of a new trial under Rule 60(b) of the Federal Rules of Civil Procedure based upon the ground that new evidence had been discovered. However, since the "new" evidence concerned events that had occurred after the end of the trial, the Corex court held that it was not new evidence for the purposes of Rule 60(b). The Court of Appeals for the Federal Circuit noted that courts uniformly adhere to this view. Halas v. Quigg, 914 F.2d 270 (Fed. Cir. 1990).

Although the district court in this case is free to consider "intervening circumstances" not previously known to the court and can reopen to modify the judgment, it may do so only in a manner that is consistent with the original ruling or that does not change the opinion in any material respect. See nn. 22-23 Wright, Miller & Kane, Federal Practice and Procedure § 2873. In its decision to remand, the district court instructed that further proceedings were not to be inconsistent with its previous opinions or those of the Court of Appeals for the Tenth Circuit. A DOI opinion concluding that the Tribe possesses jurisdiction over the Reserve would contradict the opinion of the Court of Appeals for the Tenth Circuit in **Miami III**. By suggesting that the district court should reverse its previous finding of no jurisdiction, such an opinion would require the district court to change in a very material aspect the decision of the Court of Appeals for the Tenth Circuit. The district court does not have this authority, much less the DOI. See Corex, 638 F.2d 119; Firth, 554 F.2d 990.

The situation in Firth is closely analogous to the one which was before the district court. In that personal injury case, the district court on remand applied the mandate of the court of appeals as to certain facts at issue, even though it disagreed with the court of appeals. The defendant-government appealed, contending that the district court improperly construed the mandate. The court of appeals disagreed:

> Our prior decision and mandate in this case, whether correct or in error, was based on a thorough review of all of the evidence and consideration

AR002531

of the same arguments pressed here, and we concluded that the evidence
did not support a finding of contributory negligence.  Contrary to the
government's assertion, this court had before it and considered on the first
appeal all of the evidence on the issue of contributory negligence, and the
resulting mandate did not leave the matter open for reappraisal or
clarification by the district court.  Thus, the lower court correctly refused
to reevaluate the issue on remand.

554 F.2d at 994.  The same is true here:  the Court of Appeals for the Tenth Circuit had
before it all of the available evidence considered by the district court supporting the
Tribe's claim to jurisdiction over the Reserve and issued a ruling on those facts in a
manner that was not open to revision, much less reversal.  Were the district court to
reverse itself and disagree with the ruling of the Court of Appeals for the Tenth Circuit, it
may not reevaluate the issue on remand.[9]

B.      Recent Tribal membership cannot overcome Congress' abrogation of Tribal
        jurisdiction over the Reserve.

        The courts in **Miami I** and **Miami II** did not address the question of whether
Tribal jurisdiction over the Reserve might arise from the actions taken by the Tribe to
extend membership to the present-day owners of the Reserve.  The **Miami I** court left the
door open for the Tribe to resubmit its management contract to the NIGC with evidence
of the constitutional amendment and the current owners' consent to Tribal jurisdiction.
In his 1997 Opinion, the Acting Solicitor found that these events did not provide enough
evidence of tribal jurisdiction to bring the Reserve within the definition of "Indian lands"
for the purposes of the IGRA.  The **Miami II** court found "facially sound" the Tribe's
contention that the subsequent actions established jurisdiction and required the federal
agencies to provide a better record on the jurisdiction issue.

        1.      The Tribe can determine its own membership.

        An attribute of the sovereignty of an Indian tribe is its right to determine its own
membership.  Montana v. U.S., 450 U.S. 544, 564 (1981) ("Indian tribes retain their
inherent power to determine tribal membership"); Santa Clara Pueblo v. Martinez, 436
U.S. 49, 72 n.32 (1978) (Indian tribe has "complete authority to determine tribal
membership except in specific instances."); Martinez v. Southern Ute Tribe, 249 F.2d
915, 920 (10th Cir. 1957) ("a tribe has complete authority to determine all questions of its
own membership"); Smith v. Babbitt, 100 F.3d 556 (8th Cir. 1996), cert. denied sub nom.,
Feezor v. Babbitt, 522 U.S. 807 (1997) (Tribes' retained sovereignty includes authority to
determine tribal membership).  Further, tribal membership is a bilateral political

---

[9]     The Acting Solicitor, in the 1997 Opinion, observed the following:  "The Miami
Tribe of Oklahoma did not exercise governmental powers over the land in 1995 and, in
our opinion, the admission of the owners of the land into the Tribe is alone not sufficient
evidence of tribal authority to bring the land within the definition of "Indian lands" under
IGRA."  1997 Opinion at 2.

AR002532

relationship, <u>Masayesva v. Zah</u>, 792 F. Supp. 1178, 1181 (D. Ariz. 1992), and a tribe exercises retained sovereignty over Indians who consent to be tribal members.  <u>Duro v. Reina</u>, 495 U.S. 676 (1990).

As we noted in Section II.B.1 of this Opinion, the Tribe amended its Constitution in 1996 to authorize membership specifically for the heirs of Maria Christiana DeRome. That amendment was approved by Tribal election and by the Secretary of the Interior on January 18, 1996.[10]  The heirs of Maria Christiana DeRome, after becoming tribal members, specifically consented to tribal jurisdiction in their lease with the Tribe for the Reserve dated September 30, 1998:

> "The undersigned Indians being members of the Miami Tribe of Oklahoma consent to the Jurisdiction and governing powers of the Miami Tribe of Oklahoma over all real property held in Indian Country by the undersigned Indians including undersigned Indians' interests in Maria Christiana Miami Reserve No. 35."

Thus, the Tribe exercised its inherent power to determine its own membership when it extended tribal membership to the Reserve owners; the Reserve owners specifically submitted to Tribal jurisdiction in the lease agreement.  However, tribal jurisdiction cannot extend to the Reserve, but only to Tribal owners/members of the Reserve, because Congress abrogated Tribal jurisdiction over the Reserve.  The Tribe asserts that it has jurisdiction over Indian Country which includes restricted Indian allotments.  Because the Reserve owners are now members and this Reserve is a restricted Indian allotment, the Tribe believes it now has jurisdiction.  This argument does appear "facially sound" as the **Miami II** court noted.  But we cannot infer solely on the basis of the restricted status of a parcel that jurisdiction necessarily inures particularly in light of a Congressional abrogation.[11]  The Tribe cannot by its unilateral actions override the intent of Congress as expressed in numerous Acts.

---

[10]    Pursuant to the Oklahoma Indian Welfare Act (OIWA) of 1936, 25 U.S.C. §§ 501-510, the Tribe adopted its Constitution and By-laws that were ratified by the Secretary of the Interior on January 6, 1938.  The Constitution enabled the Tribal governing body to enact measures necessary to exercise jurisdiction over territory and members.  In the OIWA, Congress intended to reestablish the Oklahoma tribes and provide for the establishment of tribal governments.

[11]    The Court in <u>Mustang Production Co. v. Harrison</u>, 94 F.3d 1382 (10th Cir. 1996), upon which the Tribes relies for its conclusion, noted that Congress had not divested the Cheyenne-Arapaho Tribe of jurisdiction over the tribal member trust allotment.  Thus, <u>Mustang Production</u> is distinguishable and does not support the Tribe's conclusion.

AR002533

2.      Congress exercised its plenary power over Indian matters when it
abrogated Tribal jurisdiction over the Reserve and has taken no
subsequent action to reinstate that jurisdiction.

The Supreme Court has held that Congress may impose limits on tribal
sovereignty.  Santa Clara Pueblo v. Martinez, 436 U.S. 49, 56 (1978); Talton v. Mayes,
163 U.S. 376, 384 (1896).  However, such limits cannot be imposed unless Congress
makes its intent to limit sovereignty clear.  See, e.g., Fletcher v. United States, 116 F.3d
1315, 1327 (10th Cir. 1997).  In this case, through treaties, statutes and compensation paid
to the Western Miamis for annuities paid and the value of lands allotted to Maria
Christiana DeRome, Congress clearly abrogated the Tribe's jurisdiction over the Reserve.

The **Miami I** court also concluded that:

even if Maria Christiana DeRome was a member of the tribe by fiat of
Congress, that membership (as well as the membership of her heirs) ended in
1867.  Any jurisdiction stemming from Maria Christiana DeRome's abbreviated
membership ended in either 1884, when it was unmistakably relinquished or in
1924, when Congress' abrogation became indisputably effective.

927 F. Supp. at 1427.

As we have noted previously, the Court of Appeals for the Tenth Circuit
concluded that the history points to the unmistakable conclusion that the Tribe's
jurisdiction has been abrogated.  But what is most problematic for the Tribe is that the
Court of Appeals for the Tenth Circuit emphatically stated that Congress has done
nothing subsequently to reinstate the Tribe's jurisdiction over the Reserve.  The Tribe has
not provided any relevant arguments to counter the prior abrogation.

The Tribe has alleged that Pub.L. 97-344, 96 Stat. 1645 (Oct. 15, 1982), as
amended by Pub.L. 97-428, 96 Stat. 2268 (Jan. 8, 1983), would support restoration of the
Tribe's jurisdiction.  This legislation was enacted to partition the Reserve because the
tangled restricted and non-restricted fractional interests in the Reserve made it
unmarketable and the Secretary could only partition "trust", not restricted, lands.  See
S.R. 97-107, 97th Cong., 1st Sess. 4-5 (1981).  The relevant section of Pub.L. 97-344
provides:

[A]ny owner of an interest in the following lands ... (3) the east half, southwest
quarter, section 13, township 19 south, range 24 east, sixth principal meridian,
Kansas, containing 80 acres and known as the Maria Christiana Miami Allotment,
lands derived from a patent under Act of March 3, 1859 (11 Stat. 430) may
commence an action in the United States District Court for Kansas to partition
the same in kind or for the sale of such land in accordance with the laws of the
State of Kansas ....  For the purposes of such action, the Indian owners shall be
regarded as vested with an unrestricted fee simple title to their interests in the

16

> land and the United States shall be a necessary party to the proceedings.  Any
> conveyance ordered by the court in such proceedings will be made in unrestricted
> fee simple to non-Indian grantees and in a restricted fee to Indian grantees.

96 Stat. 1645.

This legislation does not address the Miami Tribe's authority over the Reserve or subject the partitioning or distribution actions to the Miami tribal courts.  The legislation does not repeal the prior 1873 Act, or any prior Act, even though it references the statute under which Maria Christiana DeRome received her allotment.  We find that in enacting this special legislation Congress did not restore the Tribe's jurisdiction.  And this legislation was enacted eight years prior to the holding of the Court of Appeals for the Tenth Circuit that Congress had "done nothing" to reverse its abrogation of tribal jurisdiction.

As discussed above, the **Miami I** district court and the Court of Appeals for the Tenth Circuit concluded that Congress specifically abrogated the Tribe's jurisdiction over the Reserve.  Having so acted, Congress would have to take a subsequent action to reinstate Tribal jurisdiction.  The Tribe cannot, through its unilateral actions, override congressional intent and disturb that which Congress has made clear.

VI.    CONCLUSION

The Court of Appeals for the Tenth Circuit in **Miami III** affirmed the **Miami I** district court's opinion that Congress abrogated the Tribe's jurisdiction over the Reserve and noted that Congress has not acted since **Miami I** to overturn that decision.  I conclude that the Reserve does not constitute "Indian lands" within the jurisdiction of the Tribe for purposes of the IGRA.

Sincerely,

William G. Myers III
Solicitor

cc     Melanie D. Caro, Esq.
       Assistant United States Attorney, District of Kansas
       500 State Avenue, Suite 360
       Kansas City, KS 66101

       Brian R. Johnson. Esq.
       Assistant Attorney General
       Office of the Attorney General, State of Kansas
       120 S.W. 10th Avenue, 2nd Floor
       Topeka, KS 66612-1597

17

AR002535

Floyd E. Leonard, Chief
Miami Tribe of Oklahoma
202 South Eight Tribes Trail
P.O. Box 1326
Miami, OK 74355

Kip Kubin, Esq.
Bottaro, McCormick, Morefield & Kubin, L.C.
4700 Belleview, Suite 404
Kansas City, MO 64112
Counsel for Miami Tribe

Christopher J. Reedy, Esq.
Wehrman & Colantuono, LLC
4601 College Boulevard, Suite 280
Leawood, KS 66211
Counsel for Butler National Corp. and Clark D. Stewart

AR002536

Reference No. **371**

EXECUTIVE ORDER No. 4778
Date Signed:  12/05/27

# Executive Order

⬦

It is hereby ordered that the following described surveyed land and the tract of unsurveyed land lying within the hereinafter described boundaries at Eklutna and Cordova, Alaska, respectively, be and the same are hereby reserved for use of the United States Bureau of Education for educational purposes, subject to any existing rights of prior inception:

In T. 16 N., R. 1 E., S. M., SW¼, W½ NW¼ SE¼, S½ SE¼ Sec. 19, and N½ Sec. 30;

In T. 16 N., R. 1 W., S. M., Lot 1, E½ SE¼ Sec. 23, Lots 3, 4, SW¼ NW¼, S½ SE¼ NW¼, SW¼, S½ N½ NW¼ SE¼, S½ NW¼ SE¼ and S½ SE¼ Sec. 24, and N½ Sec. 25, containing 1368.59 acres;

Beginning at Corner No. 2 of the Russian Greek Church Mission reserve, Survey No. 656; thence due east to the west shore of Eyak Lake; thence in a northeasterly direction along the shore of said lake to Corner No. 1 of the U. S. Forest Service boathouse site; thence north 1° east 1.52 chains to Corner No. 2 of said site, thence continuing north 1° east to the Cordova-Eyak Lake road; thence westerly along said road to its intersection with the east boundary of the Russian Greek Church Mission reserve extended; thence south 27° 45′ east to Corner No. 3 thereof; thence along the east boundary of said reserve to Corner No. 2 thereof, the place of beginning, containing approximately 10 acres.

**CALVIN COOLIDGE**

THE WHITE HOUSE,
*December 5, 1927.*

[No. 4778]

AR002556

Reference No. 447 D

EXECUTIVE ORDER No. 6734
Date Signed:  6/08/34

# Executive Order

## MODIFICATION OF EXECUTIVE ORDER NO. 4778, OF DECEMBER 5, 1927, RESERVING PUBLIC LANDS FOR EDUCATIONAL PURPOSES

### ALASKA

By virtue of and pursuant to the authority vested in me by the act of June 25, 1910 (ch. 421, 36 Stat. 847), as amended by the act of August 24, 1912 (ch. 369, 37 Stat. 497), it is ordered that Executive Order No. 4778, dated December 5, 1927, reserving certain lands therein described for use of the United States Bureau of Education for educational purposes at Eklutna and Cordova, Alaska, be, and it is hereby, modified so as to eliminate from such reservation the SE¼SE¼NW¼, NE¼NE¼SW¼, S¼N½NW¼SE¼ sec. 24, T. 16 N., R. 1 W. of Seward meridian, and to include in such reservation lot 7 and NW¼SE¼NW¼ sec. 24, T. 16 N., R. 1 W. of Seward meridian.

FRANKLIN D. ROOSEVELT.

THE WHITE HOUSE,
*June 8, 1934.*

[No. 6734]

AR002557

2. The lands are situated on the Alaska Peninsula, approximately 60 miles east of Port Moller, and within the special national defense withdrawal area delineated in section 10(b) of the Alaska Statehood Act of July 7, 1958 (72 Stat. 339).

3. Until 10:00 a.m. on July 3, 1962, the State of Alaska shall have a preferred right to select the lands in accordance with and subject to the limitations and requirements of the act of July 28, 1956 (70 Stat. 709; 48 U.S.C. 46–3b), subsections (b) and (g) of section 6 of the said Alaska Statehood Act of July 7, 1958,· and ·the regulations in 43 CFR 76.1–76.18.

4. Beginning at 10:00 a.m. on July 3, 1962, the lands will be subject to operation of the public land laws generally, including the mining and mineral leasing laws, subject to valid existing rights and equitable claims, the provisions of existing withdrawals, and the requirements of applicable law, rules, and regulations.

Inquiries concerning the lands should be addressed to the Manager, Land Office, Bureau of Land Management, Anchorage, Alaska.

JOHN A. CARVER, JR.,
*Assistant Secretary of the Interior.*

JULY 3, 1961.

[F.R. Doc. 61–6509; Filed, July 11, 1961; 8:49 a.m.]

[Public Land Order 2427]

[1279115]

[Anchorage 050035]

### ALASKA

### Partly Revoking Executive Order No. 4778 of December 5, 1927, and Departmental Order of October 30, 1936; Withdrawing Portions of the Released Lands in Aid of Federal Programs

By virtue of the authority vested in the President, by section 1 of the Act of June 25, 1910 (36 Stat. 847; 43 U.S.C. 141), and otherwise, and pursuant to Executive Order No. 10355 of May 26, 1952, and by virtue of the authority contained in section 2 of the Act of May 1, 1936 (49 Stat. 1250; 48 U.S.C. 358a), it is ordered as follows:

1. Executive Order No. 4778 of December 5, 1927, as modified by Executive Order No. 6734 of June 8, 1938, which reserved lands in Alaska for use of the United States Bureau of Education for educational purposes, and the Departmental order of October 30, 1936, as modified by Departmental order of December 18, 1942, which withdrew lands with the view of having them later reserved and declared an Indian reservation, are hereby revoked so far as they affect the following-described lands:

SEWARD MERIDIAN

EKLUTNA AREA

T. 16 N., R. 1 E.,
Secs. 15 to 22, incl.;
Sec. 30.

No. 132——8

T. 16 N., R. 1 E.,
Sec. 13, lot 2;
Sec. 22, lot 1;
Sec. 23, lots 1, 2, 3, 4, and that portion of the SW¼SE¼ and E½SE¼ lying northwesterly of the Eklutna River.
Sec. 24;
Sec. 25, excepting that portion lying southwesterly of the Eklutna River and northwesterly of the Alaska Railroad ROW.
Sec. 26, excepting that portion of the NE¼ lying north of the Alaska Railroad ROW and southwesterly of the Eklutna River,
Sec. 27;
Sec. 28;
Sec. 32, lots 1, 2, 3, 5;
Secs. 33 to 36, incl.

Containing approximately 9,221.17 acres.·

This action constitutes a. complete revocation except as to 10 acres withdrawn by Executive Order No.·4778 at Cordova.

2. Subject to valid existing rights the following-described lands, which are portions of the lands released from withdrawal by this order, are hereby withdrawn from all forms of appropriation under the public land laws, including the mining and mineral leasing laws and reserved under jurisdiction of the Bureau of Indian Affairs for use in connection with administration of Native affairs in the vicinity of Eklutna.

SEWARD MERIDIAN

T. 16 N., R. 1 E.,
Sec. 19, lots 5 and 6, E½SW¼, W½SE¼ NW¼, W½NW¼SE¼, S½SE¼;
Sec. 30, lots 1, 2, and 3, E½NW¼, E½SW¼, and E½.
T. 16 N., R. 1 W.,
Sec. 23, lots 1 and 2, that portion of the SWSE¼ lying northwesterly of the Eklutna River, and that portion of the E½SE¼ lying northeasterly · of the Eklutna River.
Sec. 24, lots 3, 4, and 7, SW¼NW¼, W½ SE¼NW¼,   E½NE¼SE¼NW¼,   W½ SW¼,   NW¼NE¼SW¼,   S½SE¼, and that portion of the NW¼SE¼ lying southeast of the Alaska Railroad ROW.
Sec. 25, E½, and that portion of the NW¼ lying southwest of the Eklutna River and northwest of the Alaska Railroad.
Sec. 26, that portion of the NE¼ lying northeasterly of the Eklutna River.

Containing approximately 1,819 acres.

3. With exception of the following-described lands, the remainder of the lands released from withdrawal by this order are either patented, withdrawn for power purposes, or have been transferred to the State of Alaska:

SEWARD MERIDIAN

T. 16 N., R. 1 E.,
Secs. 15 to 17, incl.;
Sec. 20, lots 1, 2, NE¼NE¼, SE¼NW¼, and S½NE¼S½;
Secs. 21 and 22.
T. 16 N., R. 1 W.,
Sec. 22, lot 1;
Sec. 23, lots 3 and 4;
Sec. 26, NW¼, and that portion of the NE¼ lying southeasterly of the Alaska Railroad's right-of-way.
Sec. 27, lots ·1 to 4, incl., S½SW¼, NE¼ SW¼, and SE¼NE¼.
Sec. 28;
Sec. 32, lots 1, 2, 3, and 5;
Sec. 33, N½;
Sec. 34, S½;
Sec. 35;
Sec. 36.

Containing approximately 5,317.46 acres.

4. The lands described in paragraph 3 are situated approximately 25 miles northeast of Anchorage, Alaska, bounded by Knik Arm to the north and the Chugach Mountains to the south. Topography is relatively flat, with a vegetative cover of cottonwood, spruce and birch.

5. Until 10:00 a.m. on January 3, 1962, the State of Alaska shall have a preferred right to select the lands listed in Paragraph 3, above, in accordance with and subject to the limitations and requirements of the Act of July 28, 1956 (70 Stat. 709; 48 U.S.C. 46–3b) and section 6g of the Alaska Statehood Act of July 7, 1958 (72 Stat. 339) and the regulations in 43 CFR 76.1–76.18. Thereafter the lands will not be subject to disposition under the public land laws unless and until it is so provided by an order of an authorized officer of the Bureau of Land Management.

JOHN A. CARVER, JR.,
*Acting Secretary of the Interior.*

JULY 5, 1961.

[F.R. Doc. 61–6510; Filed, July 11, 1961; 8:49 a.m.]

# Title 47—TELECOMMUNICATION

## Chapter I—Federal Communications Commission

[Docket No. 13912; FCC 61–840]

### PART 2—FREQUENCY ALLOCATIONS AND RADIO TREATY MATTERS; GENERAL RULES AND REGULATIONS

### Clarification of Emission Limitation in the Band 10,500–10,550 Mc

1. On January 11, 1961, the Commission adopted a notice of proposed rule making in the above-entitled matter, FCC 61-52, which was published in the FEDERAL REGISTER January 18, 1961 (26 F.R. 373). This Notice proposed to delete the entry "(CW emission only)" from Column 9 of the Part 2 table of frequency allocations in the band 10,500-10,550 Mc, which is used almost exclusively by the Police and Railroad Radio Services for speed measuring devices.

2. The periods for filing comments and replies thereto with respect to this matter expired on February 24, 1961, and March 8, 1961, respectively. Timely comments were received from the Association of American Railroads (AAR), General Railroad Signal Company and Westinghouse Air Brake Company. The latter two companies are the principal manufacturers of speed measuring devices used in railroad classification yards to control the speed of cars moving down the "humps" prior to being switched to appropriate tracts in making up freight trains.

3. Each of the above-mentioned respondents objected to the subject proposal on the grounds that it would permit

modified to the extent necessary, applicable to such national forest exchanges as are under the jurisdiction of the Department of the Interior pursuant to existing law.

Interested persons were given 30 days within which to submit written comments, suggestions, or objections with respect to the proposed revision. Comments received were carefully studied and have been found to contain no suggestion which would justify modification of the proposed regulations and the proposed regulations shall become effective at the beginning of the 30th calendar day following the date of this publication in the FEDERAL REGISTER.

STEWART L. UDALL,
*Secretary of the Interior.*

OCTOBER 12, 1961.

Part 148 is revised in its entirety to read as follows:

Sec.
148.1  Statutory authority.
148.2  Applications for exchange.
148.3  Applicable regulations.

AUTHORITY: §§ 148.1 to 148.3 issued under R.S. 2478; 43 U.S.C. 1201.

CROSS REFERENCES: For exchanges of privately owned land under the Taylor Grazing Act, see Part 146 of this chapter. For exchanges by States under the Taylor Grazing Act, lands within or without grazing districts, see Part 147 of this chapter.

§ 148.1  Statutory authority.

The act of March 20, 1922 (42 Stat. 465; 16 U.S.C. 485), as amended, and others authorize the United States to convey Federal lands or timber and in exchange therefor to accept title to nonfederal lands which would thereby become a part of the national forest system administered by the Secretary of Agriculture.

§ 148.2  Applications for exchange.

All applications for exchange for the consolidation or extension of national forests must be filed with the appropriate officer of the Forest Service, U.S. Department of Agriculture. When the application involves the selection of public lands outside of national forests and under the administrative jurisdiction of the Bureau of Land Management, the applicant must also file a copy of his application in the proper land office in the State or, for lands in which there is no land office, with the Bureau of Land Management, Washington 25, D.C., except that applications for lands in North Dakota or South Dakota must be filed in the land office at Billings, Montana, applications for lands in Kansas or Nebraska in the land office at Cheyenne, Wyoming, and for lands in Oklahoma in the land office at Santa Fe, New Mexico.

§ 148.3  Applicable regulations.

All applicants for exchange for the consolidation and extension of national forests must comply with the requirements of the Secretary of Agriculture. When the application involves the selection of public lands outside of national forests and under the administrative jurisdiction of the Bureau of Land Management, the applicant, if a State, must also comply with the regulations in Part 147 of this chapter and, if not a State, with the regulations in Part 146 of this chapter, modified to meet the limitations, conditions, and provisions of the law under which the exchange is proposed and of the regulations in this part. Applications filed with the Bureau of Land Management pursuant to the regulations in this part must be accompanied by a service fee, which will not be returned, amounting to $1 for each 160 acres, or fraction thereof, of the land selected if the applicant is a State, or amounting to $2 for each 160 acres or fraction thereof, or $10, whichever is greater, if the applicant is not a State.

[F.R. Doc. 61–9970; Filed, Oct. 18, 1961; 8:46 a.m.]

APPENDIX—PUBLIC LAND ORDERS

[Public Land Order 2516]

[Anchorage 050035]

## ALASKA

## Correcting Public Land Order No. 2427

Public Land Order No. 2427 of July 5, 1961, appearing in the FEDERAL REGISTER of July 12, 1961, at page 6243, is hereby corrected in the following particulars:

a. The withdrawal for the Bureau of Indian Affairs made by paragraph 2 of the order, so far as it affects lands in sec. 25, T. 16 N., R. 1 W., should read "E½, and all of the NW¼ except that portion lying northwesterly of the Alaska Railroad and southwesterly of the Eklutna River," and the acreage total for lands in paragraph 2 is adjusted to read "approximately 1,967.88 acres."

b. In paragraph 3, the lands described as S½NE¼S½ in sec. 20, T. 16 N., R. 1 E., should read "S½NE¼ and S½."

c. Paragraph 3 of the order is amended to include the following public lands:

SEWARD MERIDIAN

T. 16 N., R. 1 W.,
  Sec. 25, SW¼;
  Sec. 26, S½;
  Sec. 27, SE¼;
  Sec. 33, lots 2, 3, 4, SE¼SW¼, and SE¼;
  Sec. 34, N½.

d. Paragraph 5 is amended to the extent necessary to grant the State of Alaska a preference right to select all public lands released from withdrawal by the order.

JOHN M. KELLY,
*Assistant Secretary of the Interior.*

OCTOBER 13, 1961.

[F.R. Doc. 61–9971; Filed, Oct. 18, 1961; 8:46 a.m.]

00074

May 1, 1967 - 4

M-36761

LEASABILITY OF LANDS IN THE VICINITY OF EKLUTNA
WITHDRAWN BY PUBLIC LAND ORDER NO. 2427

Alaska:  Indian and Native Affairs--Withdrawals and Reservations:
  Generally--Indian Lands:  Leases and Permits:  Generally--Accounts:
  Distribution of Receipts

Lands in Alaska withdrawn "in connection with the administration

of native affairs in the vicinity of Eklutna " was for the benefit

of the Alaska natives at Eklutna and may be leased by the Secretary

of the Interior for uses that will promote the purposes of the

withdrawal, but rents must be covered into the Treasury of the

United States and cannot be paid to the natives.

AR002571



IN REPLY REFER TO:

**UNITED STATES
DEPARTMENT OF THE INTERIOR
OFFICE OF THE SOLICITOR**
WASHINGTON, D.C.  20240

00075

May 1, 1967

M-36761

Memorandum

To:      Regional Solicitor, Anchorage

From:    Associate Solicitor, Indian Affairs

Subject: Leasability of lands in the vicinity of Eklutna
         withdrawn by Public Land Order No. 2427

The Field Solicitor's memorandum opinion of February 25, 1966, deals
with: (1) the leasability of certain reservations for natives of
Alaska established by Executive orders entered prior to 1919; (2) the
leasability of native reservations designated by the Secretary pur-
suant to the Act of May 1, 1936, 49 Stat. 1250, 48 U.S.C. § 385(a)
(1958 ed.); and (3) the leasability under the surface leasing act of
August 19, 1955, 69 Stat. 559, as amended, 25 U.S.C. § 415 (Supp. I,
1965), of land withdrawn by Public Land Order No. 2427 "for use in
connection with administration of Native affairs in the vicinity by
Eklutna."

At this time I will express my views concerning Eklutna.  The history
of the reserve indicates that in 1924 the United States Bureau of
Education established at Eklutna, near Anchorage, an industrial board-
ing school for natives of Alaska.  By 1927 seven buildings had been
erected on a tract of approximately 1,400 acres of public domain land.
Upon recommendation of the Bureau of Education and the Secretary of
the Interior this tract was "reserved for use of the United States
Bureau of Education for educational purposes" by Executive Order
No. 4778 on December 5, 1927.  (The same order also reserved an
unrelated and separate tract of 10 acres at Cordova for educational
purposes.)  The order was slightly modified June 8, 1934, by Executive
Order No. 6734, in order to accommodate a homestead entryman who had
mistakenly occupied part of the reserved land, thus reducing the
school reserve from 1,368 acres to 1,365 acres.

The reservation thus established was clearly "for educational purposes."
The Executive order could not have established a true Indian reservation
since by the Act of June 30, 1919, 41 Stat. 34, 43 U.S.C. § 150 (1964),
Congress declared that in the future Indian reservations were to be
established only by act of Congress.

In 1936 Congress provided an additional method whereby reservations
could be set aside for natives of Alaska.  By the Act of May 1, 1936,

AR002572

00070

supra, the provisions of the Indian Reorganization Act of June 18, 1934, as amended, 48 Stat. 984, 49 Stat. 378, were extended to Alaska.

By Section 2 of the 1936 Act, as codified, the Secretary of the Interior was authorized to:

> * * * designate as an Indian reservation any area of land which has been reserved for the use and occupancy of Indians or Eskimos by Section 356 of this title [land for schools or missions], or by Section 14 of the Act of March 3, 1891 (26 Stat. 1101), or Section 358 of this title [Annette Islands], or which was reserved prior to May 1, 1936, under any executive order and placed under the jurisdiction of the Department of the Interior or any bureau thereof, together with additional public lands adjacent thereto within the Territory of Alaska, or any other public lands which are actually occupied by Indians or Eskimos within said territory; * * *. (Emphasis and parenthetical material added.)

The act further provides that the designation of an area as a reservation shall be effective only upon approval, in a special election, by a majority of the native inhabitants of the area.

Under this act, between 1941 and 1949, eleven proclamations were issued by the Secretary designating specific areas for the use and occupancy of the natives of specifically named villages. The following proclamations were issued:

| Date | Village | Citation | | |
|---|---|---|---|---|
| December 10, 1941 | Unalakleet | 7 | Fed. Reg. | 548 |
| May 20, 1943 | Akutan | 8 | Fed. Reg. | 7731 |
| | Shishmaref | 8 | Fed. Reg. | 7731 |
| | Venetie | 8 | Fed. Reg. | 7732 |
| | White Mountain | 8 | Fed. Reg. | 7731 |
| May 22, 1943 | Karluk | 8 | Fed. Reg. | 8557 |
| June 17, 1943 | Wales | 8 | Fed. Reg. | 9464 |
| April 22, 1946 | Diomede | 11 | Fed. Reg. | 6143 |
| November 30, 1949 | Hydaburg | 14 | Fed. Reg. | 7318 |
| | Shungnak | 14 | Fed. Reg. | 7318 |
| | Barrow | 14 | Fed. Reg. | 7318 |

Shishmaref and White Mountain voted against designation as reservations. The Barrow and Shungnak designations were revoked March 12, 1951. The proclamations all specified that they should become effective only upon approval in an election by the natives. Seven of these villages voted to be constituted reservations: Akutan, Diomede, Hydaburg, Karluk, Unalakleet, Venetie and Wales. In United States v. Libby, McNeil and Libby, 107 F. Supp. 697, 700 (D. Alaska 1952), Hydaburg was declared not validly created under the 1936 Act. The other six are the only Secretarial reservations now in existence. Eklutna can

2

AR002573

not be considered a Secretarial reservation, despite the fact that the 1936 Act has been invoked in connection with withdrawals relating thereto made since the act became effective.  On October 30, 1936, the Acting Secretary temporarily withdrew a tract of 328,000 acres, including the original 1,365 acres, "for the use and benefit of the said Eklutna Industrial School, subject to all outstanding with-drawals and existing valid rights, until the matter of their perma-nent withdrawal as a reservation can be taken up with the Indian or Eskimo occupants, as provided by Section 2 of the Act of May 1, 1936 ( Public No. 538; 74th Congress)."  This was apparently the first action taken under the act.  The difference between this action and that taken with respect to the eleven areas discussed above, which were designated as reservations in praesenti for the natives of specific villages, subject to native approval, is obvious.

The expansion of the Eklutna school area effected by the 1936 order had been proposed by the Office of Indian Affairs (which in 1931 had taken over the Bureau of Education's functions in Alaska) on the basis of recommendations by the Supervisor and the Director of Education at Juneau.  Their reports stress the expanding vocational program at the Eklutna school and the need for large land areas for training in farm-ing, fishing, grazing, hunting, timbering, etc.  They refer also to an anticipated increase in settlement near the original reserve because of the fact that it was traversed by the Alaska Railroad and the Anchorage-Matanuska Valley Highway, the need for protecting the school from outside "encroachment," the beneficial effect of such a large withdrawal on the preservation of game, and the usefulness of the larger area to graduates of the school.  Sixty-seven students attended in 1927; by 1936 the number had increased to 112.

On January 21, 1942, however, the General Superintendent at Juneau recommended revocation of the 1936 order and establishment of a smaller reserve of 9,200 acres.  BIA file No. 82150-36-304.3.  Reasons given were:  increased pressures from the Anchorage community for use of woodland within the larger area due to establishment of Fort Richardson military reserve; the probability of locating the school at a more central area; and the fact that the anticipated increase in native population on the reserve area had not occurred.

On December 18, 1942, the Secretary, again citing the 1936 Act, revoked the 1936 order, except as to 9,200 acres.  The approved recom-mendation states that a "much smaller area than at first anticipated will meet the needs of the natives living in that vicinity," and requests that "the 9,200 acres be retained in a withdrawal or reserved status with a view to later recommending establishment of a reservation for the native inhabitants, should it be determined that such a reser-vation is desirable and necessary."  (BIA file 82150-36-304.3).  Again, the necessary procedure for establishment of a reservation was not completed.

3

000078

The Eklutna school was discontinued in 1946, and the buildings were sold or transferred to the use of the Alaska Railroad. Soon thereafter the General Superintendent of the Alaska Native Service recommended reduction of the reserve to approximately 2,000 acres (BIA file 24413-48-307.4). Later, the Area Director recommended giving up the entire reserve (telegram of May 25, 1953; Memorandum of May 28, 1953, BIA to BLM, in BIA File 16338-52-335).

In 1950, the natives of Eklutna Village petitioned for a hearing to determine their possessory rights to the 9,200 acres, and requested that "those lands, plus any additional lands necessary to protect our way of life and assure us the change to make a decent living be reserved to our use in accordance with the Act of May 1, 1936" (BIA file 5202-49-307.4).

After the Bureau's proposal to abandon the entire area, the natives again requested a reservation, this time limited to 1,938.31 acres. Thereupon, an investigation was made to determine native needs, resulting in a recommendation to secure legislation reserving the 1,900 acres for the Indians and to return the remainder of the land to public domain status. Letter from Acting Area Director to the Commissioner of Indian Affairs, November 4, 1954, BIA file 16338-52-335. The reasons indicated for use of the legislative method appear to be based on a misunderstanding of the requirements of the Act of May 1, 1936, and the desire to assure the natives a compensable interest in the land.

From this and other pre-1961 correspondence in the Bureau files it seems clear that the decision to retain the 1,819 acres rather than to relinquish the entire reserve was made in order to provide for the needs of the natives. Public Land Order No. 2427 (26 Fed. Reg. 6343, issued by the Secretary on July 5, 1961; corrected 10/13/61 by P.L.O. No. 2516, 26 Fed. Reg. 9832) revoked preceding Executive and Secretarial Orders, effected a new withdrawal of 1,819 acres, and reserved the area "under jurisdiction of the Bureau of Indian Affairs for use in connection with administration of native affairs in the vicinity of Eklutna." Authority for this action is, of course, contained in the Act of June 25, 1910, 36 Stat. 847, 43 U.S.C. § 141, and Executive Order No. 10355. The 1961 order therefore effected a temporary withdrawal of public lands for a public purpose.

In addition to the Act of June 25, 1910, supra, the order cites Section 2 of the Act of May 1, 1936, supra, as authority for its issuance. Unlike the orders issued in 1936 and 1942, however, it does not expressly state that the withdrawal is made in aid of designating the land as a native reservation, although it certainly does not foreclose the possibility. Of course, it does not purport to designate a reservation nor authorize an election to be held by the natives concerned.

4

AR002575

00079

It is thus apparent that the 1961 Eklutna order does not establish
or provide for the establishment of a reservation under the 1936 Act.

I therefore cannot agree with the conclusion that the Eklutna with-
drawal is on an equal footing with the six reservations designated
by Secretarial order for the use and occupancy of the natives and
confirmed as reservations in elections by these natives. Consequently,
the Eklutna reserve does not fall within the language of the surface
leasing act, 25 U.S.C. 415 (1964), which provides that "Any restricted
Indian lands, whether tribally or individually owned, may be leased by
the Indian owners * * *," nor is it "tribal" land within the definition
of 25 CFR 131.1(c). Had the reserve been created before 1919 a different
conclusion might have been reached.

It is, however, apparent from the order, the administrative history of
the area and the actual use that is made of it, that the purpose of
the 1961 withdrawal was to benefit the Eklutna natives. The situation
is thus analogous to that which obtained at Tyonek. The Executive
order of February 27, 1915, relating to Tyonek was issued reserving
land for the "use of the United States Bureau of Education," to provide
a school for and advance the interests of the natives. In order to
carry out this purpose, the Superintendent of Education recommended in
1923 that a lease be executed between the Tyonek Native Store and a
Mr. Magill, who proposed to erect and operate a cannery on the land.
The proceeds of the lease were to be used for the benefit of the
natives. The Solicitor held that although there was no statutory
authority for the natives to execute the lease, the Secretary had the
power under R.S. § 441, as amended, 5 U.S.C. § 485, to execute such
a lease on their behalf. <u>Leasing of Lands Within Reservations Created
for the Benefit of the Natives of Alaska</u>, 49 L.D. 592 (1923). In
reviewing this opinion, the Comptroller General found that the Tyonek
area had been:

> * * * reserved for the use of the Bureau of Education in
> connection with its activities incident to providing the
> natives of Alaska with a means of education and support.
> If the establishment and operation of a commercial can-
> nery within said reservation will tend to promote educa-
> tion and support within said territory, aside from any
> revenue which may be derived from the lease of ground
> for such purpose, or for fishing privileges, it is
> within the administrative discretion of the Commissioner
> of Education, with the approval of the Secretary of the
> Interior, to enter into the proposed arrangement for the
> erection and operation of said cannery; but in the
> absence of any specific statute to the contrary the money
> received for the lease and for fishing privileges must

5

AR002576

00080

be covered into the Treasury as miscellaneous receipts
as required by Sections 3617 and 3618, Revised Statutes.
Unpublished Opinion, June 12, 1923 (A.D. 7697).

Since it is clear that the Eklutna withdrawal was made for the benefit
of the natives in the area and for the administration of their affairs,
I conclude that the lands within the area defined by the 1961 order
may be leased by the Secretary under the authority of 5 U.S.C. § 485
and 25 U.S.C. § 2 for uses that will promote the purposes of the
withdrawal. While the rents must be covered into the Treasury of
the United States and cannot be paid to the natives, it is entirely
possible that the natives may derive substantial colleteral benefits
from the making of appropriate leases. All applications for leases
mustbe considered in terms of promotion of the interests of the
natives and accomplishment of the purpose of the withdrawal.

Richmond F. Allan





DATE DOWNLOADED: Tue Nov 24 11:58:37 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
587 (1969)   Alaska native land claims. Hearings, Ninety-first Congress, first
session, on H.R. 13142 ... and H.R. 10193 ... 2

ALWD 6th ed.
. Alaska native land claims. Hearings, Ninety-first Congress, first session, on H.R.
13142 .. and H.R. 10193 .. 2 (1969).

APA 7th ed.
(1969). Alaska native land claims. Hearings, Ninety-first Congress, first session, on
H.R. 13142 .. and H.R. 10193 .. 2. .

Chicago 7th ed.
Alaska native land claims. Hearings, Ninety-first Congress, first session, on H.R.
13142 .. and H.R. 10193 .. 2. , .

McGill Guide 9th ed.
Alaska native land claims. Hearings, Ninety-first Congress, first session, on H.R.
13142 .. and H.R. 10193 .. 2 (: ., 1969)

MLA 8th ed.
Alaska native land claims. Hearings, Ninety-first Congress, first session, on H.R.
13142 .. and H.R. 10193 .. 2. , . HeinOnline.

OSCOLA 4th ed.
Alaska native land claims. Hearings, Ninety-first Congress, first session, on H.R.
13142 .. and H.R. 10193 .. 2. , .

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
 Conditions of the license agreement available at
 *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

AR002578

587

Mr. HALEY. If you will do so, we will appreciate it.

Mr. EDMONDSON. Mr. Chairman, I would like to ask that counsel staff for the committee be asked to contact the Bureau of Indian Affairs to get that information directly from the Bureau of Indian Affairs because I think they have the resources to get it, and the gentleman before us has not.

Mr. HALEY. Without objection, the counsel will attempt to get this from the Bureau of Indian Affairs.

(Information supplied for the record follows:)

U.S. DEPARTMENT OF THE INTERIOR,
BUREAU OF INDIAN AFFAIRS,
*Washington, D.C., December 5, 1969.*

Mr. LEWIS A. SIGLER,
*Counsel and Consultant on Indian Affairs, Committee on Interior and Insular Affairs, House of Representatives, Washington, D.C.*

DEAR MR. SIGLER: In response to your letter of November 24, we are pleased to furnish you information concerning land set aside for the Eklutna Indians.

The United States Bureau of Education established at Eklutna in 1924 an industrial boarding school for Natives of Alaska. By 1927 seven buildings had been erected on a tract of approximately 1,400 acres of public domain land. Upon recommendation of the Bureau of Education and the Secretary of the Interior this tract was "reserved for the use of United States Bureau of Education for educational purposes" by Executive Order No. 4778 on December 5, 1927. The order was slightly modified June 8, 1934, By Executive Order No. 6734, in order to accommodate a homestead entry man who had mistakenly occupied part of the reserved land, thus reducing the school reserve from 1,368 acres to 1,365 acres.

On October 30, 1936, the Acting Secretary of the Interior temporarily withdrew a tract of 328,000 acres, including the original 1,365 acres, "for the use and benefit of the said Eklutna Industrial School, subject to all outstanding withdrawals and existing valid rights, until the matter of their permanent withdrawal as a reservation can be taken up with the Indian or Eskimo occupants, as provided by Section 2 of the Act of May 1, 1936 (Public No. 538; 74th Congress)" (49 Stat. 1250).

The expansion of the Eklutna school area effected by the 1936 order had been proposed by the Office of Indian Affairs (which in 1931 had taken over the Bureau of Education's functions in Alaska) on the basis of recommendations by the Supervisor and the Director of Education at Juneau. Their reports stressed the expanding vocational program at the Eklutna school and the need for large land areas for training in farming, fishing, grazing, hunting, timbering, etc. They referred also to an increase in settlement near the original reserve because of the fact that it was traversed by the Alaska Railroad and the Anchorage-Matanuska Valley Highway, the need for protecting the school from oustide "encroachment," the beneficial effect of such a large withdrawal on the preservation of game, and the usefulness of the larger area to graduates of the school. Sixty-seven students attended in 1927; by 1936 the number had increased to 112.

On January 21, 1942, however, the General Superintendent at Juneau recommended revocation of the 1936 order and establishment of a smaller reserve of 9,200 acres. Reasons given were increased pressures from the Anchorage community for use of woodland within the larger area due to establishment of the Fort Richardson military reserve; the probability of locating the school at a more central area; and the fact that the anticipated increase in native population on the reserve area had not occurred.

On December 18, 1942, the Secretary, again citing the 1936 Act, revoked the 1936 order, except as to 9,200 acres. The approved recommendation states that a "much smaller area than at first anticipated will meet the needs of the natives living in the vicinity," and requested that "the 9,200 acres be retained in a withdrawal or reserved status with a view to later recommending establishment of a reservation for the native inhabitants, should it be determined that such a reservation is desirable and necessary."

The Eklutna school discontinued in 1946, and the buildings were sold or transferred to the Alaska Railroad. So thereafter the General Superintendent of the

Alaska Native Service recommended reduction of the reserve to approximately 2,000 acres.

In 1950, the Natives of Eklutna village petitioned for a hearing to determine their possessory rights to the 9,200 acres, and requested that "those lands, plus any additional lands necessary to protect our way of life and assure us the chance to make a decent living be reserved to our use in accordance with the Act of May 1, 1936". However, the Area Director by telegram of May 25, 1953, recommended giving up the entire reserve.

After the Bureau's proposal to abandon the entire area, the Natives again requested a reservation, this time limited to 1,938.31 acres. Thereupon an investigation was made to determine native needs, which resulted in a recommendation to secure legislation reserving 1,900 acres for the Indians and returning the remainder of the land to public domain status. The reasons indicated for use of the legislative method appear to be based on a misunderstanding of the requirements of the Act of May 1, 1936, and the desire to assure the Natives a compensable interest in the land.

From correspondence in the Bureau files it seems clear that the subsequent decision to retain 1,819 acres rather than to relinquish the entire reserve was made in order to provide for the needs of the natives. Public Land Order No. 2427 (26 Fed. Reg. 6343, issued by the Secretary on July 5, 1961; corrected October 13, 1961 by Public Land Order No. 2516, 26 Fed. Reg. 9832) revoked preceding Executive and Secretarial orders, effected a new withdrawal of 1,819 acres, and reserved the area "under jurisdiction of the Bureau of Indian Affairs for use in connection with administration of native affairs in the vicinity of Eklutna."

If we can furnish you any further information, please let use know.

Sincerely yours,

T. W. TAYLOR,
*Acting Commissioner.*

Mr. POLLOCK. I would like to thank Peter Ezi for being here and I would like to say that I think this is one of the grossest examples of the encroachment of civilization, if you please, and of the white man in pushing the Indian aside. They once had a broad, broad reservation, and it encompassed a lot of the area and the whole development around Anchorage has just pushed and grown and gone into their areas. I think this would be an interesting history for the committee to receive.

Mr. HALEY. Thank you very much for your testimony here today.

Mr. EZI. Thank you.

Mr. HALEY. The Chair next calls to the witness stand Mr. William Hensley, State Representative.

Mr. Representative, give your name, where you reside, and whom you represent if other than yourself.

You may proceed.

Do you have a written statement?

Mr. HENSLEY. No, sir.

Mr. HALEY. You recognize that you have 5 minutes.

## STATEMENT OF WILLIAM HENSLEY, STATE REPRESENTATIVE

Mr. HENSLEY. Thank you.

My name is Representative William Hensley and I live in Kotzebue. I am also a member of the AFN Board. I represented the Northwest Alaska Native Association and previously was Chairman of the Alaska Claims Task Force that came up with the initial proposals to attempt to resolve the problem of the land claims.

It was unfortunate that you didn't make it to Kotzebue, I know you weren't able to fly into the town, but we were expecting you to tell you some of our problems.

# Department of the Interior
# Departmental Manual

**Effective Date**:   3/16/92
**Series**:   Delegations
**Part 209**:   Secretarial Officers
**Chapter 3**:   Solicitor

**Originating Office**:   Office of the Solicitor

---

| This chapter has been given a new release number.*   No text changes were made. |
|---|

**209 DM 3**

3.1   **General Authority**.   Subject to the limitations contained in 200 DM 1 the Solicitor is authorized to exercise all of the authority of the Secretary, including, but not limited to:

A.   All the legal work of the Department,

B.   The authority to issue amendments of and additions to the material in the Code of Federal Regulations,

C.   The administration of the oath of office or any oath required by law in connection with employment.

**3.2   Authority in Specified Matters**.

A.   The responsibilities of the Solicitor in 209 DM 3.1A include but are not limited to the authority:

(1)   Conferred by the provisions of 28 U.S.C. 2672, with respect to tort claims;

(2)   With respect to claims under 25 U.S.C. 388, for damage arising out of the survey, construction, operation, or maintenance of irrigation works on Indian irrigation projects; and under Public Works for Water Appropriation Acts, for damage to or loss of property, personal injury, or death arising out of activities of the Bureau of Reclamation:

(3)   With respect to the disposition of appeals to the Secretary:

(a)   Involving estates of Indians of the Five Civilized Tribes;

(b)   From decisions of the Appellate Division of the High Court of American Samoa which affirm sentences of death pursuant to section 3.0505, as amended, of the Code of

AR002582

American Samoa (1961 Ed.);

(4)     To supervise, administer, and control all activities within or on behalf of the Department relating to intellectual property including patents, inventions, trademarks, and copyrights;

(5)     When acting upon a proposal by a bureau, to acquire real estate for the United States by condemnation pursuant to section 1 of the Act of August 1, 1888, as amended (40 U.S.C. 257) whenever in the opinion of the Solicitor it is necessary or advantageous to the Government to do so and to submit to the Attorney General of the United States applications for the institution of proceedings for condemnation;

(6)     Under section 1 of the Act of February 26, 1931 (40 U.S.C. 258a), to sign declarations of taking;

(7)     When acting upon a proposal to acquire real estate for the United States pursuant to section 3 of the Helium Act (50 U.S.C. 167a) by condemnation pursuant to section 1 of the Act of August 1, 1888, as amended (40 U.S.C. 257) whenever the Solicitor determines that a satisfactory agreement to acquire such land or interests in land cannot be made and that such acquisition by condemnation is necessary in the national interest and to submit to the Attorney General of the United States applications for the institution of proceedings for condemnation;

(8)     Under 43 CFR Part 2, with respect to the availability of official records and testimony of employees;

(9)     With respect to the settlement of claims against the United States by employees for damage to, or loss of personal property pursuant to the Military Personnel and Civilian Employee Claims Act of 1964, as amended (31 U.S.C. 240-243);

(10)   With respect to claims arising under the Act of March 9, 1920 (46 U.S.C. 742, 747, 749 and 750), as amended by Public Law 92-417, also known as the Suits in Admiralty Act; and

(11)   To issue final legal interpretations, in the form of M-Opinions published in Decisions of the United States Department of the Interior, on all matters within the jurisdiction of the Department, which shall be binding, when signed, on all other Departmental offices and officials and which may be overruled or modified only by the Solicitor, the Deputy Secretary, or the Secretary.

B.     The Solicitor is authorized:

(1)     To determine, compromise, and settle claims and demands of the United States pursuant to section 12 of the Act of August 20, 1937, as amended (16 U.S.C. 832K);

(2)     If he/she determines in connection with a claim under a contract that, as a matter of justice and equity, all or any part of the liquidated damages assessed on or after July 1,

1949, because of delay, against a party to a contract made by the Department on behalf of the Government should be remitted, to recommend to the Comptroller General that such remission be made, pursuant to the provisions of 41 U.S.C. 256a;

(3)    To accept on behalf of any Secretarial Officer service of judicial process and service of process issued by the legislative branch of the Government.

3.3    **Authority to Redelegate.**   The Solicitor may, in writing, redelegate or authorize written redelegation of any authority delegated to him/her in this chapter except where prohibited by statute, Executive Order or limitations established by other competent authority.   However, the Solicitor may redelegate the authority described in 209 DM 3.2A(11) only to a Deputy Solicitor.
*
3/16/92 #3537
Replaces 3/16/92 #2937

AR002584